Mark R. Gaylord
Tyler M. Hawkins
Ballard Spahr LLP
One Utah Center, Suite 800
201 South Main Street
Salt Lake City, Utah 84111-2221
Telephone: 801.531.3000
Facsimile: 801.531.3001
gaylord@ballardspahr.com
hawkinst@ballardspahr.com

*Attorneys for Defendants Adam Jeremy Edelman,*
*Heath Spence, and Israel Bobsled Skeleton, LLC*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **DAVID NICHOLLS, ADAPTIVE BOBSLED & SPORTS ASSOCIATION, INC.,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**DAVID GREAVES, LARRY SIDNEY, ADAM JEREMY EDELMAN, HEATH SPENCE, BOBSLEIGH SKELETON ISRAEL, LLC, ISRAEL BOBSLED SKELETON, LLC,**<br><br>**Defendants.** | **MOTION TO DISMISS**<br><br>**Case No. 2:24-cv-00412-AMA-CMR**<br><br>**Honorable Ann Marie McIff Allen**<br>**Magistrate Judge Cecilia M. Romero** |

## TABLE OF CONTENTS

**Page**

I.    This Court lacks jurisdiction to adjudicate this matter ........................................................ 6

    A.    This Court lacks subject matter jurisdiction because IBSF permits appeals exclusively to the International Court of Sport.................................................. 6

    B.    This Court lacks personal jurisdiction over the defendants. ................................ 12

    C.    This Court should decline to exercise jurisdiction because the dispute about selection of Israeli Olympic athletes is not appropriate for federal court .................................................................................................................... 14

II.   Plaintiffs Fail to State a Claim ........................................................................................ 17

    A.    Defamation........................................................................................................... 17

    B.    RICO .................................................................................................................... 18

        1.    Plaintiffs have not sufficiently pled any acts of mail or wire fraud under Rule 9(b) .......................................................................................... 19

        2.    Plaintiffs have not Alleged Sufficient Acts to Constitute a Pattern .......... 21

    C.    Tortious Interference with Business Relations ...................................................... 23

DMFIRM #413534639 v7

Defendants Adam Jeremy Edelman ("Edelman"), Heath Spence ("Spence"), and Israel Bobsled Skeleton, LLC, by and through undersigned counsel, hereby move to dismiss the claims against them in their entirety pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

This action was brought by an Israeli Olympic bobsledding hopeful, David Nicholls ("Nicholls"), who is disgruntled because the national governing body of his sport—defendant Bobsleigh Skeleton Israel, LLC ("BSI")—issued a sanction that prevented him from competing in qualifying races for the 2022 Winter Olympics on behalf of Israel. Nicholls appealed this sanction in November 2021 to the appeals tribunal of the International Bobsleigh & Skeleton Federation ("IBSF"), the international governing body of the sport. IBSF denied the immediate relief Nicholls sought to permit him to compete, and retained jurisdiction for the remaining issues. Nicholls never sought appellate review through the arbitration in the international Court of Arbitration for Sport that is available and indeed the exclusive avenue for appealing an IBSF decision. Instead, three years later, he has attempted to recast the issues in his IBSF petition as federal and state-law claims asserted in this action. As detailed herein, those claims are entirely without merit and should be dismissed for that reason alone. But even more importantly, this case—which ultimately centers on the qualification of Israeli athletes to compete on behalf of Israel in the Olympics—has no place in United States federal court, which lacks personal jurisdiction over the defendants and subject matter jurisdiction over the claims at issue.

In the Complaint, Nicholls nominally pleads claims for RICO, defamation, and tortious interference with business relations. In substance, however, Nicholls is seeking to impose liability upon defendants for BSI's decision to sanction him. Nicholls alleges—without any concrete facts to support the improbable theory—that defendants conspired to essentially fix the

outcome of Israel's trials for the 2022 Winter Olympics by ensuring that he could not compete. The only damages Nicholls alleges are his lost economic opportunities he claims would have been available to him had he qualified for the Olympics, and the expenses he incurred in attempting to campaign for the Olympics.

This is the wrong forum to litigate this dispute. First, this Court lacks subject matter jurisdiction. Nicholls already appealed BSI's decision to deny him a license through the IBSF appeals process, and per IBSF procedures (as well as terms applicable to all prospective IBSF and BSI competitors), Nicholls waived the right to appeal the IBSF tribunal's decision in any forum other than the CAS. The Court also lacks personal jurisdiction. None of the defendants reside or conduct regular activities in Utah, and the operative events occurred in Calgary, Canada. Even if the Court could justify exercising subject matter and personal jurisdiction, the discretionary doctrine of international comity warrants dismissal. This case deals with an Israeli governing body's determination of whether the alleged misconduct of an Israeli Olympic hopeful justified a bar on representing Israel in the Olympics. The United States has minimal, if any, interest in such a dispute.

Finally, even if the Court were to reach the merits of the claims, each claim contains fatal deficiencies justifying dismissal pursuant to Rule 12(b)(6). Plaintiffs' defamation claims are barred by the one-year statute of limitations, which expired in November 2022, at the latest. These claims are also subject to dismissal for failing to allege any defamatory statements that actually caused Plaintiffs' alleged harm. Plaintiffs' general and conclusory allegations of mail and wire fraud are also insufficient to state a claim for RICO, which not only requires alleging the circumstances surrounding fraudulent conduct with particularity under Federal Rule 9(b), but which also requires alleging a continuous pattern of criminal conduct that extends over more

than a few months—or threatens such continuity. The Complaint's vague assertions of mail and wire fraud over the course of a three-month period satisfy neither requirement. Finally, Plaintiffs' tortious interference claim is entirely derivative of their defamation and RICO claims; the only purportedly tortious conduct alleged is the conduct alleged in the first two claims. Thus for the same reason the defamation and RICO claims fail, the tortious interference claim fails. The Court should dismiss the Complaint in its entirety for these independent reasons.

## STATEMENT OF FACTS[1]

Plaintiff Nicholls is an Israeli citizen who sought to compete on behalf of Israel in Olympic bobsledding in the 2022 Olympic Games. Compl. ¶ 10. Nicholls brought this action after being sanctioned by the national governing body of bobsledding in Israel, BSI. The sanction prevented him from competing in qualifying events for the 2022 Olympics. *Id.* ¶¶ 91-97.

BSI's sanction arose from a transaction between Nicholls and Spence. *Id.* ¶¶ 41-50. During the course of its investigation, the BSI determined that Nicholls had not signed for the 2021-2022 season the BSI Athlete Agreement or the IBSF Code of Conduct. *Id.* Ex. K. Ultimately, the BSI sanctioned Nicholls after it determined he had deceived the governing body in connection with an investigation involving Nicholls' role in the transaction. *Id.* Ex. L.

Nicholls sought an emergency appeal of BSI's sanction to the IBSF, the international governing body for Nicholls' sport. *Id.* ¶¶ 56, 58. Specifically, Nicholls sought "an emergency hearing and a final order directing the BSI provide an IBSF driver's license to Plaintiff." *Id.* The IBSF declined Nicholls' request for emergency relief but retained jurisdiction to consider other issues raised by Nicholls. *See id.* at ¶ 76. In October 2022, Nicholls filed a complaint in Israeli

---

[1] For the purpose of this Motion, Edelman, Spence, and Israel Bobsled Skeleton, LLC accept Plaintiffs' factual allegations (as opposed to legal conclusions) as true.

court in Tel Aviv against BSI, Greaves, Sydney, and the Olympic Committee of Israel seeking, *inter alia*, monetary relief for damages allegedly incurred as a result of BSI's decision not to issue a license to Nicholls, and Nicholls' resulting inability to compete in Olympic-qualifying events. *See* October 25, 2022 complaint, attached as Exhibit A.[2]

Plaintiffs filed the Complaint in this action on June 7, 2024, alleging RICO violations via mail and wire fraud, defamation, and tortious interference with business relations. *See generally,* Compl. In sum, the Complaint avers that the events that led to Nicholls' disqualification from qualifying competitions were the result of a contrived plan to (1) disparage Nicholls' character and (2) enable Edelman, rather than Nicholls, to qualify for the 2022 Olympics. *Id.* ¶¶ 38-39. Plaintiffs aver that Defendants conspired to prevent Nicholls from participating in qualifying races in order to "eliminate the only obstacle to the Edelman fast track to Olympic glory." *Id.* ¶ 38.

Plaintiffs plead a number of allegations which generally or nominally allege wire and mail fraud, or false statements. Specifically, the Complaint alleges:

- "From September 12, through October 6, 2021, all Defendants via phone, email, Facebook, and other social media fraudulently claimed Plaintiff Nicholls was a thief and a liar and had stolen a sled and shipping crate from another Israeli athlete, AJ Edelman." *Id.* ¶ 43.

- "The Defendants Greaves, Sidney, Edelman, Spence and others … continued to phone, email and Facebook messages [sic.] to others in a campaign to discredit Plaintiff Nicholls by known false statements he stole a bobsled and/or shipping crate. Specifically, Defendants Edelman and Spence contacted RJ Shannon, Track Manager of the Utah Olympic Park, to inform him Nicholls was storing the stolen property at the equipment storage bins at the Park City Olympic Park. Shannon then contacted Plaintiff Nicholls demanding he remove his stored stolen property." *Id.* ¶ 52.

- "On November 18, 2021, it was clear, Dave Nicholls, incomplete quadriplegic bobsled driver for Israel and his push athletes were denied the opportunity to

---

[2] Exhibit A contains an unofficial translation of the complaint, which was written and filed in Hebrew.

qualify for and compete in the Beijing 2022 Winter Olympic 4-man Bobsled Race as a result of the continuing conspiracy and conduct of wire and mail fraud by Defendants depriving Plaintiff, Nicholls, and the Plaintiffs' athlete pushers of the opportunity to be Olympians." *Id.* ¶ 77.

- "The acts of slander and libel via mail fraud and wire fraud from the enterprise, Bobsleigh Skeleton Israel, Defendants Greaves, Sidney, Spence and Edelman and his solely owned marketing company Defendant, Israel Bobsled Skeleton LLC, have continued through 2022 until the present day." *Id.* ¶ 84.

Notably, the Complaint lacks specifics regarding these allegedly fraudulent statements. It does not identify the date on which any such statement was made, nor does it provide direct quotes from oral communications, or cite to the allegedly fraudulent written communications—including the ones that were purportedly made publicly on social media.

## ARGUMENT

This case must be dismissed for two independently dispositive reasons: this Court lacks personal and subject matter jurisdiction, and Plaintiffs have failed to plead any claims for which relief may be granted.

### I.     This Court lacks jurisdiction to adjudicate this matter

Before considering the merits of a dispute, a federal court must determine that it has subject matter jurisdiction over the claims at issue and personal jurisdiction over the parties. *See Hankishiyev v. ARUP Labs.*, 732 Fed. Appx. 673, 677 (10th Cir. 2018); *XMission, L.C. v. PureHealth Rsch.*, 105 F. 4th 1300, 1307 (10th Cir. 2024). The Court here has neither.

#### A.     This Court lacks subject matter jurisdiction because IBSF permits appeals exclusively to the International Court of Sport

As a threshold matter, federal courts may not adjudicate disputes over which they lack subject matter jurisdiction. *See Hankishiyev*, 732 Fed. Appx. at 677. Subject matter jurisdiction is lacking here because Nicholls was required to bring any appeal of the IBSF decision against him to the Court of Arbitration for Sport ("CAS"). Nicholls failed to do so, and thereby failed to exhaust the remedies available to him and waived any right he may have had to seek relief in

federal court.

Where the law provides for dispute resolution through specified channels, such as administrative remedies, a plaintiff's failure to exhaust such remedies renders federal courts without subject matter jurisdiction. *See In re Precedent Health Ctr. Operations, LLC*, 392 Fed. Appx. 618, 623 (10th Cir. 2010) (affirming dismissal for lack of subject matter jurisdiction where "[Plaintiff's] only avenue for relief was through the administrative review process and there is no dispute that [Plaintiff] failed to exhaust administrative remedies"); *Tiernan v. IRS*, No. 2:22-cv-00534-TC-JCB, 2023 U.S. Dist. LEXIS 37269, at *2 (D. Utah Mar. 3, 2023) ("[Plaintiff] fails to carry her burden [of establishing subject matter jurisdiction] because her complaint fails to allege that she exhausted her administrative remedies[.]")

Here, as in *Tiernan*, Plaintiffs does not allege that Nicholls exhausted his administrative remedy. His failure to do so is fatal. Plaintiffs seek recourse for BSI's decision not to issue Nicholls an IBSF license to compete in the 2021-2022 season. This decision was reached by BSI through its established dispute resolution process, and Nicholls subsequently sought relief through the IBSF appeals procedure. Compl. ¶¶ 56-72. The IBSF tribunal denied Nicholls' motion for emergency relief and "retained jurisdiction over the appeal to consider other issues raised[.]" Compl. ¶ 76. Plaintiffs do not identify any final resolution of the IBSF procedure, nor do they allege that an appeal was taken from any decision issued by the IBSF.

As detailed by statutes promulgated by the IBSF (the "IBSF Statutes"), a copy of which is attached as Exhibit B, "[t]he IBSF is the 'supreme authority' in all matters relating to international Bobsleigh and Skeleton." *Id*. § 1.3. The IBSF cooperates with, *inter alia*, the International Olympic Committee ("IOC"). *Id*. § 1.4. One of the IBSF's purposes is "[t]o govern and regulate the sport at the international level, and to recognize National Federations to govern

and regulate the sport at a national level, in accordance with and subject to the IBSF's ultimate authority over the sport[.]" *Id*. § 3.13. These national federations, including BSI, are members of the IBSF. *Id*. §§ 5.1-5.3. *See* IBSF, The National Federations at a Glance (available at https://www.ibsf.org/en/inside-ibsf/who-we-are/national-federations) (last accessed September 6, 2024) (listing BSI as the national federation member for Israel). IBSF members such as BSI are required to "adopt and implement and enforce … regulations that are consistent with [the IBSF] Statutes and other IBSF regulations[.]" IBSF Statutes § 7.2.

The IBSF Statutes contain a mandatory dispute resolution process. Section 18.1 provides:

> Any dispute arising between Members, or between one or more Members and the IBSF (including any dispute as to sanctions imposed by the Executive Committee), or between the IBSF and any individual or entity that is a member of or affiliated to a Member (each, a Dispute), **shall be resolved exclusively by the means set out in this Article 18, to the exclusion of any other means. All of the aforementioned parties waive (to the fullest extent permitted by applicable law) any rights of recourse they might otherwise have to any court or other forum for resolution of such Disputes.**

*Id.* §18.1 (emphasis added). Pursuant to the IBSF Statutes, Disputes are to be referred to the IBSF Appeals Tribunal, whose decisions "**shall be final and binding on the parties, and may only be challenged by way of appeal to the Court of Arbitration for Sport in Lausanne, Switzerland (CAS)[.]**" *Id.* §§ 18.2-18.3 (emphasis added).

The procedural rules governing proceedings before the IBSF Appeals Tribunal also provide for appeals to be brought exclusively to the CAS. *See* IBSF, Appeals Tribunal Code, X.[3] Specifically, the rules provide:

> Any decision of the Tribunal … maybe appealed to the Court for Sport (CAS) under the CAS Code of Sports-Related Arbitration within twenty-one calendar days of the issuance of the Order[.] … **CAS shall have exclusive jurisdiction over**

---

[3] The Appeals Tribunal Code is available at https://www.ibsf.org/fileadmin/user_upload/Resources/Federation/Statutes/Appeals_Tribunal_Code_-_E_IBSF_2018.pdf (last accessed September 8, 2024).

**appeals from decision of the Tribunal, and no other arbitration, court, or legal body under any jurisdiction shall have authority to hear appeals.**

*Id.* (emphasis added).

In addition to the Statutes and the Appeals Tribunal Code, the IBSF also administers International Bobsleigh Rules, which govern the participation in IBSF competitions. IBSF, International Bobsleigh Rules 2023 ("IBSF Rules"). These Rules require that all athletes competing in IBSF-supervised events are registered by their national federation for an IBSF International license. "IBSF Rules", 8.4.[4] They further provide that by registering an athlete for a license, the national federation "verifies and confirms that the athlete … has signed a copy of the IBSF Athlete Code of Conduct." *Id.* The IBSF Athlete Code of Conduct contains a dispute resolution provision stating: "If a dispute arises between the IBSF and me [the athlete], or any third party involved in Bobsled or Skeleton I will use the appropriate IBSF appeal and dispute resolution channels, and **I acknowledge that ultimately Swiss law and CAS will be the final arbitrator of any dispute.**" IBSF Code of Conduct for Athletes, attached hereto as Exhibit C (emphasis added).[5]

It is thus made clear through multiple IBSF materials that any appeal of IBSF tribunal decisions may only be adjudicated through the Court of Arbitration for Sport, and that parties to IBSF proceedings waive any rights they otherwise have to seek relief in other jurisdictions.

---

[4] The IBSF Rules are available at https://www.ibsf.org/fileadmin/user_upload/Resources/Sports/Rules_Quotas/2023_International_Rules_BOBSLEIGH.pdf (last accessed September 6, 2024).

[5] Notably, Nicholls alleges that he was issued an IBSF License and competed in IBSF races from 2011 through 2021. Compl. ¶ 10. Nicholls therefore was required to sign the IBSF Code of Conduct, and is subject to its mandatory dispute resolution provision. *See* IBSF Code of Conduct for Athletes ("This Code of Conduct must be signed by the athlete in order to obtain an IBSF license and compete or train in IBSF events.") The Code of Conduct has no defined term and is therefore still in effect.

Nicholls voluntarily submitted to the IBSF tribunal by requesting that it take jurisdiction over his appeal of BSI's decision. He was therefore bound by these dispute resolution provisions, and may not now seek recourse for the same dispute in federal court.[6]

Though Plaintiffs have fashioned their allegations in this action as claims for defamation, tortious interference with business relations, and RICO violations, Plaintiffs are fundamentally seeking recourse for the decision made by BSI to disqualify Nicholls from Olympic-qualifying competitions. Federal courts have routinely rejected similar attempts at pleading around the exhaustion requirement or the preemption of mandatory arbitration by athletes and coaches subject to sanctions by Olympic authorities. For American athletes and coaches, disputes regarding eligibility for Olympic qualification and competition are governed by the Ted Stevens Act, formerly the Amateur Sports Act, which requires that all disputes be adjudicated by the United States Olympic Committee and therefore preempts state and federal court jurisdiction. *See Lee v. United States Taekwondo Union*, 331 F. Supp. 2d 1252, 1256 (D. Haw. 2004) (questions of athlete eligibility are "preempted by the Amateur Sports Act's grant of exclusive jurisdiction to the USOC over all matters pertaining to the United States participation in the Olympic Games"). Athletes and coaches have attempted on various occasions to plead around this preemption, and courts have consistently struck down these efforts where the gravamen of the claims are that the plaintiffs were denied eligibility for Olympic participation.

---

[6] In addition to having voluntarily submitted to the IBSF's jurisdiction for this specific dispute, Nicholls was already bound by the dispute resolution provisions because (1) he was required to sign the IBSF Code of Conduct in order to compete over the many years he competed, and (2) he could not have obtained the relief he sought—a license to race in IBSF competitions—without executing it. Nicholls would also have been required to execute the BSI Athlete Agreement in order to compete on behalf of BSI in any IBSF events. The BSI Athlete Agreement also provides for mandatory arbitration of disputes through the CAS. *See* BSI Athlete Agreement, attached as Exhibit D.

DMFIRM #413534639 v7

For example, in *Graham v. United States Anti-Doping Agency*, a track and field coach accused of providing performance enhancing drugs to athletes brought constitutional and tort claims against the United States Anti-Doping Agency arising from the agency's sanction banning him from Olympic coaching. No. 5:10-CV-194-F, 2011 U.S. Dist. LEXIS 34637, at *2-3 (E.D.N.C. Mar. 31, 2011). The Plaintiff alleged that the agency violated his constitutional rights via slander and by failing to provide a constitutionally sufficient hearing. *Id*. Despite this framing, the court found: "all of these claims are premised on challenging [Plaintiff's] eligibility. … In other words, **although [Plaintiff] has *labeled* his claims as violations under the Constitution and the state law of slander, his claim undoubtedly challenges his eligibility to participate as a coach to amateur Olympic athletes.**" *Id*. at *14 (emphasis added). The District of Hawaii held similarly in *Lee v. United States Taekwondo Union*, where a taekwondo coach was removed from the 2004 United States Olympic team, and filed suit in federal court challenging the removal as racially discriminatory. 331 F. Supp. 2d at 1254. There, the court recognized that the plaintiff's state-law claims "clearly challenge the eligibility requirements for the coach of the 2004 United States Olympic Taekwondo Team[,]" and the plaintiff therefore was required to exhaust remedies under the Amateur Sports Act. *Id*. at 1257 (breach of contract and negligence claims "preempted … because those claims sought to challenge the method by which the USOC determined the eligibility of athletes"). The District of West Virginia reached the same conclusion in *Barnes v. International Amateur Athletic Federation*, dismissing a complaint where the plaintiff failed to pursue the binding arbitration required by the USOC Constitution, and thus "render[ed] the court without subject matter jurisdiction over [Plaintiff's] claims." *Barnes v. Int'l Amateur Athletic Fed'n*, 862 F. Supp. 1537, 1546 (D.W.V. 1993). *See also Reynolds v. Athletics Congress of U.S.A.*, No. C-2-91-0003, 1991 U.S. Dist. LEXIS 21191,

at *11-12 (S.D. Ohio, Mar. 19, 1991) (athlete's failure to pursue arbitration constituted a failure to exhaust administrative remedies).

Jurisdiction is equally lacking here, where Plaintiffs' federal and state law claims are entirely dependent on losses allegedly incurred as a result of BSI's denial of Nicholls' license. Plaintiffs' alleged damages are entirely dependent on and directly flow from Nicholls' inability to compete in the Olympic qualifying events. For this reason independently, the Court should dismiss the Complaint.

**B.      This Court lacks personal jurisdiction over the defendants.**

The Court also lacks personal jurisdiction over the defendants, which independently justifies dismissal under Federal Rule 12(b)(2). *See OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1098 (10th Cir. 1998). To survive a motion to dismiss, plaintiffs must "make a *prima facie* showing of personal jurisdiction." *Id*. at 1091. Here, it is evident from the face of the complaint that personal jurisdiction is lacking.

"Personal jurisdiction is established by the laws of the forum state and must comport with constitutional due process." *Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can.*, 703 F.3d 488, 492 (10th Cir. 2012). Utah law permits courts to exercise jurisdiction "to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code Ann. § 78B-3-201(3); *XMission, L.C*, 105 F. 4th at 1307. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). Thus a court's "authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *XMission, L.C.*, 105 F. 4th at 1307-08

DMFIRM #413534639 v7

(quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)).

Personal jurisdiction can be established either as "general" or "specific" jurisdiction. *Xmission, L.C.*, 105 F. 4th at 1308. Where a defendant is subject to general jurisdiction, the court can hear any claim against that defendant, while specific jurisdiction only permits the court to exercise jurisdiction for suits that "arise out of or relate to the defendant's contacts with the forum." *Id.* Here, Plaintiffs have made no attempt to allege that this Court may exercise personal jurisdiction over Spence, Edelman, or Israel Bobsled Skeleton, LLC and in fact, it may not. First, none of them resides in Utah or has sufficient continuous contacts with the state to justify general jurisdiction. Spence is an Australian citizen who resides in Calgary, Canada; Edelman is a dual Israeli and American citizen who resides in New York; and the entity is allegedly a New York corporation with no alleged presence in Utah. Compl. ¶¶ 5-6, 8. There are no allegations that would justify general jurisdiction over Spence, Edelman, or Israel Bobsled Skeleton, LLC.

Plaintiffs, therefore, must demonstrate that this Court has specific jurisdiction over defendants, which requires that defendants' "contacts with the forum must make being sued there foreseeable so that the defendant could 'reasonably anticipate' the suit[,]" and "[t]he litigation must result from alleged injuries that arise out of or relate to those activities." *Fireman's Fund Ins. Co.*, 703 F.3d at 493. This requires a showing "(i) that the defendant must have 'purposefully directed its activities at residents in the forum state,' and (ii) that 'the plaintiff's injuries must arise out of [the] defendant's forum-related activities.'" *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017). "Mere foreseeability of causing injury in another state is insufficient to establish purposeful direction." *Id.* at 905. Rather, the defendant must have "deliberately [] engaged in significant activities within a State" such that it has "manifestly [] availed [itself] of the privilege of conducting business there." *Id.* Thus merely interacting with a

person in the forum state is not sufficient to establish minimum contacts if the defendant's interaction with the state is the "result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person." *Rayware Ltd. v. New Creations Brands*, No. 2:23-cv-00355-DBB-DAO, 2024 U.S. Dist. LEXIS 75794, at *7 (D. Utah Apr. 24, 2024).

The Complaint clearly demonstrates that specific jurisdiction is lacking. There are no allegations that Spence ever even entered Utah, and the only time Edelman is alleged to have done so was to compete in a qualifying race wholly unrelated to the claims at issue. Compl. ¶ 78. Likewise, there are no allegations of any conduct in Utah by Israel Bobsled Skeleton, LLC. *See* Compl. Dismissal is warranted where, like here, a complaint fails to identify any basis for personal jurisdiction. *See Gould v. Wyse*, No. 22-2075, 2023 U.S. App. LEXIS 20140, at *11 (10th Cir. Aug. 4, 2023); *Johnson v. Nw. Dist. of the Wesleyan Church*, No. 1:23-cv-00870-SKC-KAS, 2024 U.S. Dist. LEXIS 64876, at *7 (D. Colo. Apr. 9, 2024).

**C.      This Court should decline to exercise jurisdiction because the dispute about selection of Israeli Olympic athletes is not appropriate for federal court**

Even if this Court had personal and subject matter jurisdiction to hear this dispute, the prudential doctrine of international comity counsels dismissal. United States federal court is not the proper venue for litigating this dispute about the procedure for disqualifying an athlete from representing Israel in Olympic qualifying races. International comity provides that when a matter is already subject to adjudication in a competent foreign forum, federal courts should decline to exercise jurisdiction. This is the case here, where Nicholls already submitted the dispute to the IBSF and had the CAS appeal available for review of any adverse decision. Moreover, even if CAS appeal were insufficient, this dispute has also already been submitted to the jurisdiction of an Israeli court through Nicholls' 2022 complaint.

Comity reflects "the recognition which one nation allows within its territory to the

legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or other persons who are under the protection of its laws." *HSBC Bank (Uruguay) S.A. v. Seaboard Corp.*, No. 21-cv-2435-DDC-TJJ, 2022 U.S. Dist. LEXIS 173216, at *43 (D. Kan. Sept. 23, 2022) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)). "When a federal court is presented with a case within its jurisdiction but which involves an issue within the competence of an administrative body, in an independent proceeding, comity and avoidance of conflict as well as perhaps other considerations suggest propriety in referring the issue." *Sunflower Elec. Coop., Inc. v. Kansas Power & Light Co.*, 603 F.2d 791, 795 (10th Cir. 1979).

These principles are essential here, where the Complaint challenges a foreign nation's Olympic selection process and alleges claims already asserted in and subject to the adjudication of an international authority, as well as the CAS. The doctrine of comity counsels dismissal where litigation invokes claims and issues that have been properly submitted to another jurisdiction in a parallel action. *HSBC Bank (Uruguay)*, 2022 U.S. Dist. LEXIS 173216, at *43-45. Key guiding principles of international comity include "proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." *Id.* Courts evaluating whether a separate action is sufficiently related to justify dismissal under comity principles should consider:

> the similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction.

*Id.* at *45.[7] These factors overwhelmingly support dismissal here. The individuals party to the

---

[7] While the Tenth Circuit has not provided direct guidance on the doctrine of international comity, the Kansas District Court provided a thorough analysis of the doctrine in other federal

IBSF and Israeli actions are substantially the same as the parties to this action, and the issues are likewise parallel: in each, Nicholls complains that the statements and actions of defendants through the course of the BSI disciplinary and appeals process were improper efforts to prevent him from participating in Olympic qualifying races. Importantly, neither the claims nor the parties need be identical in order for actions to be parallel; it is sufficient for the parties and the "issues involved in each" to be "substantially similar." *Nat'l Union Fire Ins. Co.*, 115 F. Supp. 2d at 1247.

Moreover, Nicholls cannot reasonably contend he would be prejudiced by being required to follow the IBSF appeals procedure when he filed the IBSF appeals himself and requested that the IBSF exercise jurisdiction. Indeed, Plaintiffs have made no assertions that the IBSF procedure, including the available appellate relief through the CAS, was insufficient. The same is true of the Israeli action, where Nicholls also chose the forum. Further, this dispute is intimately connected to the IBSF—whose sole purpose is to administer and govern international bobsleigh competition, including Olympic eligibility, in partnership with national federations. Similarly, Israel has a substantial interest in this dispute given that it arises from the selection of its own Olympic team. By contrast, this dispute has little to no connection to the United States. Nicholls and Edelman were seeking to compete on behalf of Israel, and the events that gave rise to this dispute occurred in Calgary, Canada. Lastly, the temporal sequence of filing favors deference to both the IBSF and Israeli proceedings; Nicholls filed the IBSF action in November 2021, nearly

---

circuits and determined that the Tenth Circuit would follow the Second Circuit's approach, as outlined herein. *HSBC Bank (Uruguay) S.A.*, 2022 U.S. Dist. LEXIS 173216, at *48. These same factors were applied by the Colorado District Court in *Nat'l Union Fire Ins. Co. v. Kozeny*, and reaffirmed in *Fuel Automation Station v. Frac Shack*. *See Nat'l Union Fire Ins. Co. v. Kozeny*, 115 F. Supp. 2d 1243, 1247 (D. Colo. 2000); *Fuel Automation Station v. Frac Shack*, No. 20-cv-01492-STV, 2021 U.S. Dist. LEXIS 247555, at *38 n.19 (D. Colo. Mar. 12, 2021).

three years before filing the Complaint in this action, and he filed the Israeli action in October 2022, two years before this Complaint. Compl. ¶ 58. This dispute does not belong in United States court. Thus, even if there were personal and subject matter jurisdiction, this case should be dismissed pursuant to principles of international comity. *See Armstrong v. Tygart*, 886 F. Supp. 2d 572, 590 (W.D. Tex. 2012) (citing "considerations of international comity" in dismissal of Lance Armstrong's action for an injunction relating to anti-doping dispute, and stating: "[t]he court declines to circumvent the longstanding system of international arbitration in Olympic sports by unilaterally enjoining that system's operation"); *In re Urethane Antitrust Litig*. 683 F. Supp. 2d 1214, 1223 (D. Kan. 2010); *EMA Garp Fund, L.P. v. Banro Corp.*, 783 Fed. Appx. 82, 84-85 (2d Cir. 2019).

## II.    Plaintiffs Fail to State a Claim

Even if the Court had jurisdiction, the Complaint must be dismissed for failure to state a claim for which relief can be granted. Here, each of the substantive counts in the complaint suffers from at least one fatal deficiency. As a result, even if the court reaches the merits of the Complaint, the Complaint should still be dismissed in its entirety.

### A.    Defamation

Plaintiffs allege Defendants defamed them (though notably, Plaintiffs fail to identify any specific defamatory statements). This claim must be dismissed as untimely. A statute of limitations defense is "appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022). The statute of limitations for libel and slander claims under Utah law is one year. Utah Code Ann. § 78B-2-302(4). Here, the allegedly defamatory statements attributed to Edelman and Spence were made before November 2021. *See* Compl. ¶¶ 43, 52 (alleging statements made by "all Defendants" from September 12 through

October 6, 2021, and that Defendants, including Edelman and Spence, continued to make false statements prior to Nicholls' IBSF appeal in November 2021). These claims are clearly time-barred and must be dismissed with prejudice. *See Radloff-Francis v. Wyo. Med. Ctr., Inc.* 524 Fed. Appx. 411, 413 (10th Cir. 2013); *Scott v. Wingate Wilderness Therapy, LLC*, No. ,4:18-CV-0002-DN, 2019 U.S. Dist. LEXIS 42956, at *10 (D. Utah Mar. 14, 2019)

Nor can the Complaint's single allegation of defamation (pled as "slander and libel") after 2021 salvage Plaintiffs' untimely claim. Plaintiffs allege in conclusory fashion: "The acts of slander and libel via mail fraud and wire fraud form [sic.] the enterprise … have continued through 2022 until the present day." Compl. ¶ 84. This conclusory allegation fails to meet the standard set by *Twombly*, as it merely states the legal claims without any supporting facts. Moreover, even if this allegation was adequately pled, it could not form the basis of a defamation claim because it did not cause the harm alleged in the Complaint. In order to succeed on a defamation claim, Plaintiffs must prove, *inter alia*, "that the [allegedly defamatory] statements resulted in damages." *Davidson v. Baird*, 438 P.3d 928, 936 (Utah Ct. App. 2019). Here, the damages Plaintiffs seek to recover in this action all purportedly resulted from BSI's decision to deny Nicholls a license for the 2021-2022 season. No statements made after Nicholls had already missed the opportunity to qualify for the 2022 Olympics can possibly have caused this harm. Hence, the Court should dismiss the defamation claim as time-barred.

**B.    RICO**

Plaintiffs' RICO claim is equally deficient, as Plaintiffs have failed to satisfy the elements of RICO. First, to establish a RICO violation, a plaintiff must allege that defendants committed more than one "racketeering" or "predicate" act, as defined by statute. 18 U.S.C. § 1962(a). In addition, a civil RICO plaintiff must also prove that the defendant engaged in "a *pattern* of racketeering activity." 18 U.S.C. § 1962(a) (emphasis added). The Supreme Court has

instructed that this requires proof of two or more predicate criminal acts "that were related and that amounted to, or threatened the likelihood of, continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237 (1989). The allegations in the Complaint, which vaguely describe conduct that took place over the course of only a few months and directed at a single purported victim, fail to meet this standard.

1.    Plaintiffs have not sufficiently pled any acts of mail or wire fraud under Rule 9(b)

"The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based … Rule 9(b) also safeguards defendant's reputation and goodwill from improvident charges of wrongdoing." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992). To satisfy Rule 9(b)'s heightened pleading standard, a plaintiff must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Mighty Siren LLC v. Bates*, No. 2023 U.S. Dist. LEXIS 137267, at *3 (W.D. Okla. June 8, 2023) (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000)) (internal quotations omitted). Allegations relying on "labels and conclusions ... devoid of factual enhancement" are insufficient to satisfy Rule 9(b). *Jensen v. Am. Lender*, 425 Fed. Appx. 761, 763 (10th Cir. 2011) (affirming dismissal for failure to state fraud with particularity).

Plaintiffs' mail and wire fraud allegations fall far short of this standard. Plaintiffs generally allege that entire categories of communications were mail and wire fraud, without identifying any specific communications. Plaintiffs aver that defendants "fraudulently claimed Plaintiff Nicholls was a thief and liar[,]" through "phone, email, Facebook, and other social media" over an approximately three-week period. Compl. ¶ 42. Plaintiffs also aver that "private phone calls, mailed correspondence and emails by the Defendants, Greaves (Canada) and Sidney

(Arizona), with the DRAD Special Select Committee were acts of wire and mail fraud, providing false information that BSI had previously 'suspended' Nicholls, to the Committee for the purpose of rendering its decision to ban Nicholls," and that defendants "continued to phone, email and Facebook messages [sic.] others in a campaign to discredit Plaintiff Nicholls by known false statements," including an alleged communication (on an unspecified date) to the track manager of the Utah Olympic Park regarding storage of stolen property, *Id.* ¶¶ 51-52. Lastly, Plaintiffs allege that defendants "have continued to discredit Plaintiff Nicholls in a pattern of making false and defamatory statements in public or private phone and written correspondence" regarding the incident with the Calgary Police. *Id*. ¶ 90. These allegations fail to plead "the who, what, when, where, and how" required by Rule 9(b). *U.S. ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018). *See also Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter Day Saints*, 665 F. Supp. 3d 1263, 1287 (D. Utah 2023) (dismissing complaint for failure to plead fraud with particularity).

In *George v. Urban Settlement Services*, the Tenth Circuit explained that allegations that lack information such as the date on which an allegedly fraudulent communication occurred, the identity of all parties to the communication, or the specific content of the communications, cannot satisfy Rule 9(b). 833 F.3d 1242, 1255-56 (10th Cir. 2016). Here, Plaintiffs' allegations identify only the general nature of the alleged statements, but not when any such statements were made, or to whom, by whom, or through what channel or platform they were made. While several of the allegations contain *some* of this information, none of them contain all of it. This lack of specificity renders the allegations insufficient to state a claim for mail or wire fraud. Without particular facts supporting Plaintiffs' allegations, the Complaint does not allege more than a suspicion of communications Nichols believes constitute mail and wire fraud—which is

not enough to survive a motion to dismiss. *See Cracraft v. Utah Valley Univ.*, No. 2:19-cv-397-TC, 2020 U.S. Dist. LEXIS 193017, at *23 (D. Utah Oct. 19, 2020) ("Suspicion and theories do not satisfy Rule 9(b), particularly in the civil RICO context.")

The failure to satisfy Rule 9(b) is not a trivial infraction in a case of this nature. Plaintiffs have alleged that Defendants—an Olympic athlete, Olympic coach, and the officers of the national governing body for the sport of bobsledding in Israel—essentially fixed the Olympic qualifiers for the 2022 games. Plaintiffs support this claim with general, conclusory allegations based apparently on Plaintiffs' theories and suspicions. Defendants are entitled to know the alleged underlying facts so that they can defend themselves against Plaintiffs' claims. The Complaint fails to satisfy that high standard, and it should be dismissed on that basis.

2.      Plaintiffs have not Alleged Sufficient Acts to Constitute a Pattern

A plaintiff pursuing a civil RICO claim must prove, among other things, that defendants engaged in "a *pattern* of racketeering activity." 18 U.S.C. § 1962(a) (emphasis added). That requires proof at least two predicate acts—i.e., separate instances of mail or wire fraud—that "relate to each other, and amount to a threat of continued racketeering activity." *Johnson v. Heath*, 56 F.4th 851, 858 (10th Cir. 2022) (citing *H.J., Inc.*, 492 U.S. at 239). Moreover, a plaintiff must prove that *each defendant* engaged in two predicate acts. *Just Us Realtors, LLC v. Nudge, LLC*, No. 2:18-cv-00128-TC-CMR, 2019 U.S. Dist. LEXIS 102853, at *17 (D. Utah June 19, 2019) ("To sustain a claim under 18 U.S.C. §1962(c), a plaintiff must plead that each defendant engaged in a pattern of racketeering activity by committing at least two predicate acts.") (dismissing civil RICO claim for failure to plead pattern of racketeering activity).

The pattern requirement "was specifically intended to forestall RICO's use against isolated or sporadic criminal activity, and to prevent RICO from becoming a surrogate for garden variety fraud actions property brought under state law." *Perseverance Med, LLC v. Trujillo*, No.

DMFIRM #413534639 v7

21

18-cv-02719-CMA-KMT, 2019 U.S. Dist. LEXIS 177795, at *18 (D. Colo. Aug. 15, 2019) (internal quotation marks omitted)); *Hansen v. Native Am. Refinery Co.*, No. 2:06cv00109, 2007 U.S. Dist. LEXIS 27013, at *14 (D. Utah Apr. 10, 2007) ("This requirement of continuity, and RICO's pattern requirement more broadly, are designed to ensure that RICO is only employed in the long-term criminal situations envisioned by Congress, rather than in garden-variety fraud cases.") Consequently, "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Kolar v. Preferred Real Estate Invs., Inc.*, 361 Fed. Appx. 354, 363 (3d Cir. 2010).

Here, as detailed above, Plaintiffs have not pleaded with particularity *any* instances of mail or wire fraud, much less a pattern of such instances. Nonetheless, even if Plaintiffs' allegations did not fail to meet the 9(b) standard, Plaintiffs' RICO claim would still fail because they have not pleaded continuity, i.e., that Defendants engaged in two predicate acts that amount to or pose a threat of *continued criminal activity*. To establish continuity, a plaintiff must either demonstrate "closed-ended" continuity ("a closed period of repeated conduct") or open-ended continuity ("past conduct that by its nature projects into the future with a threat of repetition"). *H.J., Inc.*, 492 U.S. at 241.

Closed-ended continuity requires "a series of related predicates extending over a substantial period of time," meaning more than a few months. *Id.* at 242 (finding "[p]redicate acts extending over a few weeks or months" insufficient). Here, the allegedly fraudulent acts occurred over the course of three months—from September through November 2021. This is too short to satisfy the standard set by the Supreme Court for closed-ended continuity.

Plaintiffs likewise have failed to plead open-ended continuity, which is based on a tacit or

overt threat that defendants will continue to engage in future criminal activity. "Open-ended continuity requires a clear threat of future criminal conduct related to past criminal conduct." *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1273 (10th Cir. 1989). Here, Plaintiffs have alleged only a single scheme to prevent Nicholls from competing in the 2022 Olympic Games. Plaintiffs have not identified any other alleged victims, nor have they identified any specific acts that have occurred since 2021 that suggest the alleged criminal conduct has continued. At most, Plaintiffs aver generally that defendants "have continued to discredit Plaintiff Nicholls" and stated that he "will never receive an IBSF license" to represent Israel. Compl ¶ 90. This statement alone, without any concrete facts to support it, does not clearly create a threat of criminal conduct.

Further, courts consistently caution that continuity is rarely established where the plaintiff is the only identified victim. *See, e.g., Erikson, v. Farmers Group, Inc.*, 151 Fed. App'x 672, 667-78 (10th Cir. 2005) ("A single scheme to accomplish one discrete goal, directed at a finite group of individuals, with no potential to extend to other persons or entities, rarely will suffice to establish a threat of continuing activity."). Here, Plaintiffs plead conduct relating exclusively to Nicholls and allege no facts indicating the conduct complained of has been directed at any other victims.

In sum, Plaintiffs have failed to allege a pattern of predicate acts because (1) they have failed to sufficiently allege *any* predicate acts, and (2) they have not pleaded the continued criminal conduct necessary for a civil RICO claim. Plaintiffs' RICO claims should be dismissed.

## C.    Tortious Interference with Business Relations

Finally, Plaintiffs' tortious interference claim fails along with their defamation and RICO claims. In support of their tortious interference count, Plaintiffs allege that (1) Defendants "recognized the economic opportunity" for benefits that could potentially flow to Edelman's

DMFIRM #413534639 v7

23

team and the BSI officers, (2) Plaintiffs could only raise sufficient funds to support Nicholls' campaign, and (3) Defendants "conspired and succeeded in[] contriving and perpetuating the false claims of theft and perjury" to prevent Nicholls from competing in the qualifying events and thereby "denying the economic benefits to Plaintiffs and divert[ing] instead to the Defendants." Compl. ¶¶ 95-97. There are no additional facts alleged specific to the tortious interference claim, which rests entirely on the facts averred in support of the RICO and defamation claims. As detailed above, Plaintiffs have not sufficiently alleged any fraudulent acts on the part of Edelman or Spence, nor have Plaintiffs alleged any defamatory statements made by Edelman or Spence that caused the damages averred in the Complaint. Moreover, because Plaintiffs' tortious interference claims depend on the allegedly defamatory conduct, they are time-barred pursuant to the statute of limitations for defamation. *See Diamond Ranch Academy, Inc. v. Filer*, No. 2:14-CV-751-TC, 2016 U.S. Dist. LEXIS 19210, at *56 (D. Utah 2016) (tortious interference claim based on the "same operative facts that would support a defamation action" is "subject to the one-year statute of limitations"). As a result, Plaintiffs' tortious interference claim must be dismissed as well.

## CONCLUSION

For the foregoing reasons, Defendants Edelman, Spence, and Israel Bobsled Skeleton, LLC respectfully request that this Court dismiss the Complaint against them in its entirety.

DATED this 3rd day of October 2024.

/s/ Mark R. Gaylord
Mark R. Gaylord
Tyler M. Hawkins
Ballard Spahr LLP
*Attorneys for Defendants, Adam Jeremy Edelman, Heath Spence, and Israel Bobsled Skeleton, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing **MOTION TO DISMISS**

was served on the following this 3rd day of October 2024, in the manner set forth below:


[ X ] Electronic Filing

[  ] Hand Delivery

[  ] U.S. Mail, postage prepaid

[  ] E-mail:

> Thomas J. Jones, Jr.
> THOMAS J JONES JR PC
> 410 Biden St. Ste. 301
> Scranton, PA 18503
> *Attorneys for Plaintiffs, David Nicholls and Adaptive Bobsled & Sports Association, Inc.*
>
> Jared C. Bowman
> ROSING DAVIDSON FROST
> 136 Heber Ave Ste. 205
> Park City, UT 84060
> *Attorneys for Plaintiffs, David Nicholls and Adaptive Bobsled & Sports Association, Inc.*
>
> Kendra M. Brown
> MANNING CURTIS BRADSHAW & BEDNAR PLLC
> 201 S Main St  Ste 750
> Salt Lake City, Ut 84111
> *Attorneys for Defendants, David Greaves, Larry Sidney, and Bobsleigh Skeleton Israel, LLC*
>
> Mitchell M. Longson
> MANNING CURTIS BRADSHAW & BEDNAR PLLC
> 201 S Main St  Ste 750
> Salt Lake City, Ut 84111
> *Attorneys for Defendants, David Greaves, Larry Sidney, and Bobsleigh Skeleton Israel, LLC*


*/s/ Mark R. Gaylord*