Mitch M. Longson (15661)
Kendra M. Brown (16409)
**MANNING CURTIS BRADSHAW**
**& BEDNAR PLLC**
201 South Main Street, Suite 750
Salt Lake City, Utah 84111
Telephone: (801) 363-5678
mlongson@mc2b.com
kbrown@mc2b.com

*Attorneys for Defendants David Greaves,*
*Larry Sidney, and Bobsleigh Skeleton Israel, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| DAVID NICHOLLS, ADAPTIVE BOBSLED & SPORTS ASSOCIATION, INC., | MOTION TO DISMISS |
| Plaintiffs,<br><br>v. | Civil No. 2:24-cv-00412-AMA-CMR |
| DAVID GREAVES, LARRY SIDNEY, ADAM JEREMY EDELMAN, HEATH SPENCE, BOBSLEIGH SKELETON ISRAEL, LLC., and ISRAEL BOBSLED SKELETON, LLC, | District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Cecilia M. Romero |
| Defendants. | |

Pursuant to Rule 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure and

DUCivR 7-1, Defendants David Greaves, Larry Sidney, and Bobsleigh Skeleton Israel, LLC

("BSI Defendants"), through their undersigned counsel, submit this Motion to Dismiss Plaintiffs'

Complaint.

**TABLE OF CONTENTS**

RELIEF REQUESTED AND GROUNDS THEREFOR ............................................................... 1

FACTS ............................................................................................................................................ 3

MOTION TO DISMISS STANDARD ........................................................................................... 7

ARGUMENT .................................................................................................................................. 7

    I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS' EXCLUSIVE REMEDY IS WITH THE IBSF AND COURT OF ARBITRATION FOR SPORT ........................................................................................................................... 7

    II.  THIS COURT SHOULD ABSTAIN FROM ADJUDICATING WHAT IS A PURELY FOREIGN DISPUTE ...................................................................................................11

    III. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER ANY OF THE DEFENDANTS ............................................................................................................ 12

    IV. PLAINTIFFS' RICO CLAIM FAILS ON MULTIPLE, INDEPENDENT GROUNDS ....................................................................................................................................13

        A.  Plaintiffs Have Not Pled Wire or Mail Fraud With Particularity ..................................... 14

        B.  Plaintiffs Have Not Alleged a Pattern of Racketeering Activity ....................................... 16

        C.  Plaintiffs Cannot Establish That They Have Standing to Pursue a RICO Claim ............ 19

    V.  PLAINTIFFS HAVE NOT STATED A CLAIM FOR DEFAMATION OR TORTIOUS INTERFERENCE ......................................................................................................... 20

        A.  Plaintiffs' State Law Claims Are Time-Barred ............................................................. 21

        D.  Plaintiffs' Alleged Facts Do Not Establish Actionable Defamation or Tortious Interference. ........................................................................................................................ 23

CONCLUSION............................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Ortez*, 802 P.2d 1307 (Utah 1990) ................................................................. 21

*Allergy Res. Group v. Rez Candles Inc.*,2022 WL 1004214 (D. Utah April 4, 2022)..............25

*Anderson Dev. Co. v. Tobias*, 2005 UT 36, 116 P.3d 323 ........................................... 23

*Armstrong v. Tygart*, 886 F. Supp. 2d 572 (W.D. Tex. 2012)...................................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................... 7

*Bates v. Utah Ass'n of Realtors*, 2013 UT App 34, 297 P.3d 49 ................................. 22

*Bridges v. Lezell Law, PC*, 842 F. Supp. 2d 261 (D.D.C. 2012) ................................ 18

*Calhoun v. Buck*, 371 F. Supp. 3d 1008 (D. Utah 2019)............................................... 3

*Celtig, LLC*, 347 F. Supp. 3d 976 (D. Utah. 2018) ..................................................... 25

*Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226 (10th Cir. 2006) ............................... 13

*Deck v. Engineered Laminates*, 349 F.3d 1253 (10th Cir 2003) ................................ 19

*Diamond Ranch Acad., Inc. v. Filer*, 2016 WL 633351 (D. Utah Feb. 17, 2016) ...... 21

*EMA Garp Fund, L.P. v. Banro Corp.*, 783 Fed. Appx. 82 (2d Cir. 2019)................... 12

*Eskamani v. Auto-Owners Ins. Co.*, 2020 UT App 137, 476 P.3d 542........................ 23

*Fin. Bancorp, Inc. v. Pingree & Dahle, Inc.*, 880 P.2d 14 (Utah Ct. App. 1994) ........ 21

*Gaddy v. Corp. of President of Church of Jesus Christ of Latter-day Saints*, 665 F. Supp. 3d 1263
    (D. Utah. 2023) .......................................................................................... 14

*Gilbert v. U.S. Olympic Committee*, 2019 WL 1058194 (D. Utah. 2019) ................... 19

*Graham v. United States Anti-Doping Agency*, 2011 WL 1261321 (E.D.N.C. Mar. 31, 2011).....11

*Green v. Lexis-Nexis*, 513 Fed. App'x 772 (10th Cir. 2013)......................................... 7

*Hankishiyev v. ARUP Labs.*, 732 Fed. App'x 673 (10th Cir 2018)................................ 8

*Hilton v. Guyot*, 159 U.S. 113 (1895) ..........................................................................11

*HSBC Bank (Uruguay) S.A. v. Seaboard Corp.*, 2022 WL 4447416 (D. Kan. Sept. 23, 2022)
    ...........................................................................................................11, 12

*In re Precedent Health Ctr. Operations, LLC*, 392 Fed. App'x 618 (10th Cir. 2010) .... 8

*In re Urethane Antitrust Litig.*, 683 F. Supp. 2d 1214 (D. Kan. 2014) ....................... 12

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) .................................................... 12

*Jensen v. Sawyers*, 2005 UT 81, 130 P.3d 325............................................................ 21, 22

*Johnson v. Heath*, 56 F.4th 851 (10th Cir. 2022) ............................................ 14, 16, 17, 18

*Lee v. United States Taekwondo Union*, 331 F. Supp. 2d 1252 (D. Haw. 2004)...........11

*Percival Partners Ltd. v. Nduom*, 99 F.4th 696 (4th Cir. 2024) ................................. 20

*Phillips v. Oosterbaan*, 508 F. Supp. 3d 1103, 1112 (D. Utah 2020)...........................6

*RJR Nabisco v. European Community*, 579 U.S. 325 (2016) ...................................... 20

*Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017)....................... 18

*SelectHealth, Inc. v. Risinger*, 18 F. Supp. 3d 1268 (D. Utah 2014) ......................... 13

*Slaney v. The Intern. Amateur Athletic Federation*, 244 F.3d 580 (7th Cir. 2001) ...... 18

*Smith v. Babcock Poultry Farms, Inc.*, 469 F.2d 456 (10th Cir. 1972)....................... 18

*Tiernan v. IRS*, No. 2:22-cv-00543, 2023 WL 2346317 (D. Utah March 3, 2023)........................ 8
*Total Quality Sys., Inc. v. Universal Synaptics Corp.*, 2024 WL 2396979 (D. Utah May 23, 2024)
.............................................................................................................................................. 22, 23
*Van Ornum v. Am. Med. Ass'n*, 2017 WL 9481018 (D. Utah Mar. 14, 2017).............................. 13
*Wade v. Gaither*, 623 F. Supp. 2d 1277 (D. Utah 2009) .................................................... 14, 15, 16
*West v. Thomson Newspapers*, 872 P.2d 999 (Utah 1994) ........................................................ 23
*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)............................................... 12

## Statutes

18 U.S.C. § 1961(1) .................................................................................................................... 14
18 U.S.C. § 1961(5) ................................................................................................................ 14, 16
18 U.S.C. § 1962(c) .................................................................................................................... 14
Utah Code § 78B-2-302(4) .......................................................................................................... 21

## Rules

Fed. R. Civ. P. 8(a) ................................................................................................................ 23, 24
Fed R. Civ. P 9(b)................................................................................................................... 14, 18
Fed R. Civ. P. 12........................................................................................................................... i
DUCivR 7-1 ................................................................................................................................. i

**RELIEF REQUESTED AND GROUNDS THEREFOR**

Plaintiffs Nicholls and Adaptive Bobsled & Sports Association, Inc. allege that Defendants formed an enterprise for the purpose of spreading false information about Nicholls to support BSI Defendants' decision to deny him the ability qualify for the 2022 Winter Olympics bobsled team for Israel ("Olympic Team" or "Team Israel"). Plaintiffs fashion these allegations as violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and also bring claims under state law for defamation and tortious interference with business relations.

This Court lacks subject-matter jurisdiction over all of these claims because they are based on Nicholls's eligibility to compete for Team Israel. Plaintiffs have attempted to refashion what are essentially claims that Nicholls was precluded from competing for Team Israel into U.S. federal and state law claims seeking damages. But Nicholls's sole recourse for purportedly being excluded from Team Israel in 2022 (and prospectively in 2026) is to exhaust Israeli and international sport tribunal remedies he abandoned before filing this lawsuit. Indeed, Nicholls has sued BSI Defendants *in Israel*, alleging virtually identical facts and seeking similar remedies, and now attempts to seek recourse through U.S. laws for the same conduct. Under international comity principles, this Court should refuse to exercise jurisdiction—if it has such jurisdiction to begin with—over what are purely foreign Olympic eligibility claims in disguise.

This Court also lacks personal jurisdiction over the Defendants. Plaintiffs have brought claims in Utah against Defendants residing in Canada, New York, and Nevada. Under RICO, personal jurisdiction over nonresident defendants can only be established where at least one defendant resides in or has sufficient minimum contacts with Utah. Plaintiffs fail to even attempt

1

to allege personal jurisdiction over any of the Defendants, providing independent grounds for dismissal.

Plaintiffs' claims also each fail substantively. Plaintiffs stretch the purposes and remedies of RICO beyond recognition, while attempting to revive long-expired defamation and tortious interference claims that are themselves inadequately pled. Plaintiffs' RICO claim is based on allegations that BSI Defendants sought to discredit Nicholls through mail and wire fraud to support BSI's *own decision* to not issue a license to or select Nicholls for the Olympic Team. Plaintiffs' RICO claim fails for at least three independent reasons. First, Plaintiffs have failed to plead the allegedly fraudulent conduct with any specificity. Second, Plaintiffs have not alleged a pattern of racketeering activity. And third, Plaintiffs cannot establish that they have standing to pursue a RICO claim because they have not alleged an injury to business or property and they have not alleged that the injury suffered was caused by BSI Defendants' allegedly fraudulent statements.

Plaintiffs' state law claims are also fatally flawed. Plaintiffs' defamation and tortious interference with economic relations claims are both premised on BSI Defendants' publishing false statements on the internet about Nicholls stealing a bobsled and lying to police in Calgary, Canada, and allegedly false statements made to international tribunals. Plaintiffs allege that the publications first occurred on September 12, 2021, and the statements made to the international tribunals occurred in November 2021. Based on these dates, Plaintiffs' state law claims are time-barred as pled under Utah's one-year statute of limitations. Even if the claims were timely, however, Plaintiffs have failed to plausibly allege defamation or tortious interference with the

requisite specificity, and regardless, Plaintiffs' alleged harm bears no causal relationship with the alleged tortious conduct.

For each of these independent reasons, BSI Defendants respectfully request that the Court dismiss the Complaint with prejudice.

### FACTS[1]

1. Plaintiff Nicholls is an incomplete quadriplegic who attempted to compete for a position on Israel's 2022 Winter Olympic bobsled team. *Id.* ¶¶ 10, 16. 20.

2. Defendant David Greaves resides in Canada and is the President of BSI. *Id.* ¶ 3.

3. Defendant Larry Sidney resides in Nevada and is the Secretary General of BSI. *Id.* ¶ 4.

4. Defendant BSI is the governing body for Israel's Olympic Bobsled and Skeleton team with an Israeli mailing address and is allegedly headquartered at the "homes and offices of" Greaves and Sidney. *Id.* ¶ 7.

5. None of the remaining defendants reside in Utah. *Id.* ¶¶ 5–6, 8.

6. In 2019, Nicholls purchased a bobsled and shipping crate from Defendant Heath Spence, and allegedly did not receive the crate. *Id.* ¶¶ 17–18.

7. Later, Nicholls purchased another bobsled from a different individual and drove to Canada to retrieve it. While at the facility, Nicholls also sought to retrieve the shipping crate he purchased from Defendant Spence. *Id.* ¶¶ 22–28.

---

[1] As is required at the motion-to-dismiss stage the Court "assumes the truth of well-pleaded facts and draws reasonable inference in a light most favorable to the plaintiff." *Calhoun v. Buck*, 371 F. Supp. 3d 1008, 1013 (D. Utah 2019). For purposes of this Motion only and unless otherwise noted, BSI Defendants accept Plaintiffs' allegations of well-pled facts as true, but reserve the right to contest Plaintiffs' allegations at future stages of this litigation.

8.      Defendant Spence could not assist Nicholls in locating and loading the shipping crate, but others assisted Nicholls in loading the crate that he claimed was still owed to him. *Id.* ¶¶ 29–31. Nicholls drove the bobsled and shipping crate back to Nicholls's residence in Utah. *Id.* ¶ 32.

9.      On September 9, 2021, Defendant Spence reported to Canadian police that Nicholls had stolen the bobsled and shipping crate, and later changed the report to theft of only the shipping crate. *Id.* ¶¶ 34, 36.

10.     The Calgary police "issued a final report on the afternoon of September 10" and did not charge Nicholls with a crime. *Id.* ¶ 37.

11.     Based on these events, Defendants allegedly "hatched" a "conspiracy" to "eliminate" Nicholls from participating in Olympic-qualifying races *Id.* ¶ 38. According to Plaintiffs, Defendants "conferred and agreed" to continue to claim Nicholls had stolen a bobsled. *Id.* ¶ 39.

12.     Following this "plan," BSI Defendants denied Nicholls the required license to compete in the Olympic-qualifying races. *Id.*

13.     According to Plaintiffs, "[f]rom September 12, through October 6, 2021, all Defendants via phone, email, Facebook, and other social media fraudulently claimed Plaintiff Nicholls was a thief and liar and had stolen a sled and shipping crate from another Israeli athlete, AJ Edelman." *Id.* ¶ 43.

14.     BSI Defendants believed that Nicholls's statements to the Calgary police were "misleading and untruthful" and referred the issue to the third-party "DRAD Special Committee," which held "a disciplinary hearing" on September 21, 2021. *Id.* ¶¶ 41, 45–46.

15.    DRAD issued its decision that Nicholls's conduct did not require expulsion or suspension from BSI. *Id.* ¶ 48.

16.    BSI Defendants allegedly disagreed with the DRAD decision and denied Nicholls "a license by the BSI to compete" in the Olympic-qualifying races. *Id.* ¶¶ 50–51.

17.    Plaintiffs concede that BSI itself had the authority to determine who would be licensed and who would make the Olympic Team. *Id.* ¶ 50 (alleging "Nicholls would be denied a license by the BSI to compete" in Olympic-qualifying races); *id.* ¶ 56 (alleging Nicholls requested an Israeli tribunal to direct "BSI [to] provide an IBSF driver's license to [Nicholls] … [and] for the BSI to register and enter Nicholls" for the qualifying races); *id.* ¶ 69 (alleging "BSI officers refused to issue IBSF licenses to [Nicholls] … and to register and enter" him in the Olympic-qualifying races).

18.    Plaintiffs allege that BSI Defendants "mailed correspondence" and sent emails to the DRAD Special Select Committee and that these were "acts of wire fraud, and mail fraud." *Id.* ¶ 51. Plaintiffs claim these communications included "false information that BSI had previously 'suspended' Nicholls" for the purpose of BSI rendering BSI's decision to "ban Nicholls" from the Olympic Team. *Id.* ¶ 51.

19.    Nicholls appealed BSI's decision to the Israel National Olympic Committee ("INOC") in October 2021. *Id.* ¶ 56. Nicholls also filed two emergency appeals before the International Bobsleigh & Skeleton Federation ("IBSF") Appeals Tribunal in November 2021. *Id.* ¶¶ 57–58, 61.

20.    The IBSF is "the 'supreme authority' in all matters relating to international Bobsleigh and Skeleton" and cooperates with the International Olympic Committee ("IOC").

Exhibit 1, IBSF Statutes, §§ 1.3–1.4.[2] The IBSF governs and regulates the sport at the international level and recognizes National Federations (such as BSI) to govern and regulate the sport at the national level, "subject to the IBSF's ultimate authority." *Id.* § 3.13. BSI is a National Federation that is subject to IBSF. *Id.* §§ 5.1–5.3.

21.    According to Plaintiffs, BSI Defendants "continued a pattern of wire and mail fraud" by informing the IBSF tribunal that the INOC had "jurisdiction" to resolve the appeal and that BSI Defendants "were trying to 'assist' Plaintiffs through the appeal process." *Id.* ¶ 63. Plaintiffs have not identified when these communications occurred or which statements were false.

22.    BSI Defendants allegedly "gave false information to the IBSF Appeals Tribunal to delay consideration of the Plaintiff's case," but Plaintiffs have not identified the allegedly false information. *Id.* ¶ 64.

23.    Plaintiffs allege that the "reason and motive for Defendants to discredit Nicholls and eliminate him from competition" was to ensure Defendant Edelman made the Olympic Team and that the benefits of making the team would "flow to Edelman." *Id.* ¶ 79.

24.    In October 2022, Plaintiffs filed a complaint in Israeli court against BSI Defendants, among others, seeking the same damages requested in this lawsuit and stemming from the same allegedly tortious conduct. *See* October 25, 2022 Complaint, attached as Exhibit

---

[2] Because BSI Defendants challenge the facts upon which subject matter jurisdiction depends, the Court "has wide discretion to allow affidavits and other documents to resolve disputed jurisdictional facts under Rule 12(b)(1)" of the Federal Rules of Civil Procedure without converting the motion to a summary judgment motion. *Phillips v. Oosterbaan*, 508 F. Supp. 3d 1103, 1112 (D. Utah 2020).

2.[3] The Israeli court denied the injunction claim as moot, but notified Nicholls that he could seek damages in a separate Israeli court with proper jurisdiction. Israeli Court Decision, attached as Exhibit 3.

25.     On June 7, 2024, Plaintiffs filed this lawsuit. Plaintiffs' alleged damages for each of the claims stems from Nicholls's ineligibility for the Olympic Team and economic benefits that could have been derived therefrom. *See generally* Compl.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up); *See* Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (cleaned up). Dismissal of a claim is appropriate where the plaintiff has made only "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements" and the facts "do not permit the court to infer more than a mere possibility of misconduct." *Id.* "In ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specifical factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Green v. Lexis-Nexis*, 513 Fed. App'x 772 (10th Cir. 2013) (cleaned up).

## ARGUMENT

I.   **THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS' EXCLUSIVE REMEDY IS WITH THE IBSF AND COURT OF ARBITRATION FOR SPORT.**

---

[3] Exhibits 2 and 3 contain both the original Israeli filings in Hebrew and unofficial English translations of each.

This Court does not have subject matter jurisdiction over Plaintiffs' claims because the claims are required to be adjudicated in IBSF administrative proceedings, with exclusive appeal rights to the Court of Arbitration for Sport ("CAS"). Before considering the merits of a dispute, a federal court must determine that it has subject matter jurisdiction over the claims at issue. *See Hankishiyev v. ARUP Labs.*, 732 Fed. App'x 673, 677 (10th Cir 2018). Where applicable law provides for dispute resolution through administrative remedies, a plaintiff's failure to exhaust such remedies deprives the court of subject matter jurisdiction. *See In re Precedent Health Ctr. Operations, LLC*, 392 Fed. App'x 618, 623 (10th Cir. 2010) (affirming lack of subject matter jurisdiction where plaintiff's "only avenue for relief was through the administrative review process and there is no dispute that [the plaintiff] failed to exhaust administrative remedies"); *Tiernan v. IRS*, No. 2:22-cv-00543, 2023 WL 2346317, at *2 (D. Utah March 3, 2023) (concluding plaintiff failed "to carry her burden [of establishing subject matter jurisdiction] because her complaint fails to allege that she exhausted her administrative remedies").

Here, Nicholls alleges that he partially engaged in the IBSF administrative process but does not allege that he exhausted his administrative remedies. Compl. ¶¶ 56, 58–59, 61. This deprives the Court of subject matter jurisdiction over Plaintiffs' claims. While Plaintiff styles his claims as RICO, defamation, and tortious interference claims, Plaintiffs merely seek recourse for BSI's decision not to issue Nicholls an IBSF license to compete during the 2021–2022 season. *Id.* ¶¶ 90–91, 93, 97 ("Defendants … conspired and succeeded in contriving and perpetuating the false claims of theft and perjury in order to have Plaintiffs eliminated from competition for the BSI Olympic 4 man Bobsled Team …."). BSI reached this decision through its established dispute resolution process, and Nicholls subsequently pursued relief through the IBSF appeals

8

procedure. Compl. ¶¶ 56–72. The IBSF tribunal denied Nicholls's motion for emergency relief and "retained jurisdiction over the appeal to consider other issues raised[.]" *Id.* ¶ 76. Plaintiffs do not identify any final resolution of the IBSF procedure, nor whether any appeal was pursued before the CAS. *See id.*

As detailed by IBSF Statutes, "[t]he IBSF is the 'supreme authority' in all matters relating to international Bobsleigh and Skeleton" and cooperates with the International Olympic Committee. *See* Exhibit 1 ,§§ 1.3, 1.4. IBSF exercises "ultimate authority over the sport," including its governance and regulation at the "international level." *Id.* § 3.13. BSI is Israel's National Federation for bobsled and is subject to IBSF. *Id.* §§ 5.1–5.3. *See* IBSF, The National Federations at a Glance (*available at* https://www.ibsf.org/en/inside-ibsf/who-we-are/national-federations) (last visited September 26, 2024). BSI, as an IBSF member, is required to "adopt and implement and enforce … regulations that are consistent with [the IBSF] Statutes and other IBSF regulations." Exhibit 1, § 7.2.

The IBSF Statutes contain the following mandatory dispute resolution process:

> **Any dispute** arising between Members, or between one or more Members and the IBSF … or between the IBSF and any individual or entity that is a member of or affiliated to a Member (each, a Dispute), **shall be resolved exclusively by the means set out in this Article 18, to the exclusion of any other means. All of the aforementioned parties waive (to the fullest extent permitted by applicable law) any rights of recourse they might otherwise have to any court or other forum for resolution of such Disputes.**

*Id.* § 18.1 (emphasis added). Pursuant to the IBSF Statutes, Disputes are to be referred to the IBSF Appeals Tribunal, whose decisions "shall be final and binding on the parties, and may only be challenged by way of appeal to [CAS]." *Id.* §§ 18.2–18.3; *see also* IBSF Appeals Tribunal

9

Code, X.[4]

Any athlete competing in IBSF-supervised events must be registered by their national federation for an IBSF International license. *See* Int'l Bobsleigh Rules 2023, at 8.4.[5] By registering an athlete for a license, the national federation "verifies and confirms that the athlete … has signed a copy of the IBSF Athlete Code of Conduct." *Id.* This Code of Conduct contains a dispute resolution provision stating: "If a dispute arises between the IBSF and me [the athlete], or any third party involved in Bobsled or Skeleton I will use the appropriate IBSF appeal and dispute resolution channels, and I acknowledge that ultimately Swiss law and CAS will be the final arbitrator of any dispute." Exhibit 4, IBSF Athlete Code of Conduct, § 4.

Based on all of the foregoing, disputes regarding athlete eligibility to compete between an athlete and an IBSF national federation (like BSI) may only be adjudicated through the IBSF process described above. Here, Nicholls voluntarily submitted to the IBSF tribunal by requesting that it take jurisdiction over his appeal of BSI's decision, and he also alleges that he competed in IBSF races under IBSF licensure between 2011 and 2021 (Compl. ¶ 10), which subjected him to IBSF Statutes. He is therefore bound by the IBSF dispute resolution process, and this Cout does not have jurisdiction to decide his claims. Though Plaintiffs attempt to shoehorn their claims into violations of U.S. federal and state law, which attempts fail for other reasons (*see infra* Sections IV, V), the sole damages Plaintiffs seek pertain to Nicholls's inability to obtain IBSF licensure and compete in the 2021–2022 season. *See id.* ¶¶ 90–91, 93, 97. These claims and damages are

---

[4] The Appeals Tribunal Code is available at https://www.ibsf.org/fileadmin/user_upload/Resources/Federation/Statutes/Appeals_Tribunal_Code_-_E_IBSF_2018.pdf (last accessed September 26, 2024).

[5] The IBSF Rules are available at https://www.ibsf.org/fileadmin/user_upload/Resources/Sports/Rules_Quotas/2023_International_Rules_BOBSLEIGH.pdf (last accessed September 26, 2024).

entirely dependent on the losses allegedly incurred as a result of BSI's denial of Nicholls's license. Under his own allegations, had Nicholls been issued a license to compete, he would not have suffered the alleged monetary losses. Therefore, his claims constitute a "Dispute" regarding his competition eligibility and licensure and are subject to the foregoing exclusive administrative remedies. *See Graham v. United States Anti-Doping Agency*, 2011 WL 1261321, at *5 (E.D.N.C. Mar. 31, 2011) ("[A]ll of these claims are premised on challenging [Plaintiff's] eligibility. … In other words, although [Plaintiff] has labeled his claims as violations under the Constitution and the state law of slander, his claim undoubtedly challenges his eligibility to participate as a coach to amateur Olympic athletes."); *Lee v. United States Taekwondo Union*, 331 F. Supp. 2d 1252, 1254 (D. Haw. 2004) (requiring plaintiff's discrimination claims to be exhausted under Amateur Sports Act). This Court should therefore dismiss the Complaint with prejudice.

## II.   THIS COURT SHOULD ABSTAIN FROM ADJUDICATING WHAT IS A PURELY FOREIGN DISPUTE.

Even if this Court did have subject matter jurisdiction to adjudicate Plaintiffs' claims, the Court should decline to exercise jurisdiction because the dispute pertains exclusively to the eligibility and non-selection of Israeli athletes for Israel's Olympic team, which has no place in United States federal courts. The prudential doctrine of international comity counsels in favor of dismissal.

"The Supreme Court has described international comity abstention as 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or other persons who are under the protection of its laws.'" *HSBC Bank (Uruguay) S.A. v. Seaboard Corp.*, 2022 WL 4447416, at *17 (D. Kan. Sept. 23, 2022) (quoting *Hilton v. Guyot,*

159 U.S. 113, 164 (1895)). Courts evaluating whether a separate action is sufficiently related to justify dismissal under comity principles should consider:

> the similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction.

*HSBC Bank (Uruguay)*, 2022 WL 4447416, at *18. These factors overwhelmingly support dismissal here, where Plaintiff Nicholls has already sued BSI Defendants in an Israeli court for the same relief and damages he seeks in this case, and also partially sought administrative remedies with the IBSF. There is simply no connection to the United States, and Nicholls's own actions in Israeli court and the IBSF demonstrate that his remedies lie elsewhere. For these reasons, explained more fully in the Motion to Dismiss filed by Edelman Defendants, the Court should refuse to exercise jurisdiction over this purely foreign dispute. *See Armstrong v. Tygart*, 886 F. Supp. 2d 572, 590 (W.D. Tex. 2012); *In re Urethane Antitrust Litig.*, 683 F. Supp. 2d 1214, 1223 (D. Kan. 2014); *EMA Garp Fund, L.P. v. Banro Corp.*, 783 Fed. Appx. 82, 84–85 (2d Cir. 2019).

## III.    THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER ANY OF THE DEFENDANTS.

The Court also lacks personal jurisdiction over Defendants, which constitutes an independent reason for dismissal. "Due process requires that the defendant be given adequate notice of the suit and be subject to the personal jurisdiction of the court." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (cleaned up). To attain personal jurisdiction over a defendant, a plaintiff must show either that the defendant is a resident of or

has sufficient minimum contacts with the state in which he is being sued. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Tenth Circuit has determined that RICO provides for nationwide service of process where the plaintiff can satisfy personal jurisdiction over at least one defendant. *Van Ornum v. Am. Med. Ass'n*, 2017 WL 9481018, at *4 (D. Utah Mar. 14, 2017), *report and recommendation adopted*, 2017 WL 4339653 (D. Utah Sept. 29, 2017) (quoting *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006)). To "satisfy the constitutional requirement of due process there must be 'minimum contacts' between the defendant and the forum state." *SelectHealth, Inc. v. Risinger*, 18 F. Supp. 3d 1268, 1271–72 (D. Utah 2014) (cleaned up).

Plaintiffs have not alleged that any of the defendants reside or have a principal place of business in Utah nor otherwise alleged ***any facts*** supporting any contact by any defendant with Utah. *See* Compl. ¶¶ 3–8. All defendants are alleged to reside in either Canada, New York, or Nevada. *Id.* The only references to Utah relate to Nicholls's residence in Utah and some of *his* training in Utah. *Id.* ¶¶ 1–2, 15. Accordingly, Plaintiffs fail to meet their burden of alleging personal jurisdiction over Defendants.

## IV.   PLAINTIFFS' RICO CLAIM FAILS ON MULTIPLE, INDEPENDENT GROUNDS.

Plaintiffs allege that all Defendants engaged in wire fraud and mail fraud in a conspiracy to "eliminate" Nicholls from Olympic-qualifying competitions for "their own private economic benefit derived from financial support."[6] Compl. ¶¶ 38, 51, 63, 77, 84. For several reasons, this

---

[6] BSI Defendants refer to the plural "Plaintiffs" throughout this Motion. However, nothing on the face of the Complaint refers to an actionable claim against Plaintiff Adaptive Bobsled & Sports Association, Inc. *See generally* Compl. The claims are subject to dismissal for the reasons set forth in this Motion regardless of whether each claim is brought by Nicholls individually or by both Plaintiffs.

claim fails as pled.

RICO prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To plead a valid RICO claim, "a plaintiff must plausibly allege that a defendant (1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Johnson v. Heath*, 56 F.4th 851, 858 (10th Cir. 2022). "'Racketeering activity' consists of the criminal offenses listed in 18 U.S.C. § 1961(1), and a 'pattern' requires at least two racketeering acts committed within ten years of each other." *Id.* (quoting 18 U.S.C. § 1961(5)). These criminal offenses include, among others, wire fraud and mail fraud. *See* 18 U.S.C. § 1961(5).

Plaintiffs' RICO claim fails because (A) they have not pled fraud with particularity; (B) they have not pled a pattern of racketeering activity; and (C) the injury suffered was not proximately caused by the allegedly fraudulent conduct.

## A. Plaintiffs Have Not Pled Wire or Mail Fraud With Particularity.

Because Plaintiffs allege that the "racketeering activity" in which BSI Defendants engaged was mail fraud and wire fraud, Plaintiffs are required to plead the fraudulent conduct with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. *Gaddy v. Corp. of President of Church of Jesus Christ of Latter-day Saints*, 665 F. Supp. 3d 1263, 1281 (D. Utah. 2023). "Rule 9(b) generally requires a plaintiff to identify the time, place, and content of each allegedly fraudulent representation or omission, to identify the particular defendant responsible for it, and to identify the consequence thereof." *Id.* at 1281 (cleaned up).

14

This Court has previously determined that Rule 9(b)'s requirements apply to mail fraud and wire fraud. *See Wade v. Gaither*, 623 F. Supp. 2d 1277, 1283 (D. Utah 2009). To demonstrate fraud, Plaintiffs must specifically allege: "(1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) the hearer's right to rely on it; and (9) injury." *Id.* at 1283 (cleaned up).

Here, it is entirely unclear from Plaintiffs' Complaint what representations were made through the mail or wire that Plaintiffs believe were both material and false; therefore, Plaintiffs cannot satisfy the first three elements of wire or mail fraud. *Id.* BSI Defendants are left to guess what specific statements Plaintiffs believe were made, which statements Plaintiffs believe were "false" and were also conveyed by mail or wire, and to whom.

Plaintiffs instead provide conclusory allegations that BSI Defendants engaged in "wire and mail fraud in phone communications with the IBSF Chair of the IBSF Appeals Tribunal and emails falsely claiming the [INOC] still had jurisdiction of the appeal filed by Plaintiffs and they were trying to 'assist' Plaintiffs through the appeal process." Compl. ¶ 63. But Plaintiffs fail to identify any specific fraudulent statements in connection with these allegations, including when they were made, or how they were false or material. The only other times "wire fraud" and "mail fraud" are mentioned in the Complaint are in reference to broad characterizations of the harm Plaintiffs claim to have suffered. *See, e.g.,* Compl. ¶¶ 51, 77, 84 ("The private phone calls, mailed correspondence and emails by [BSI Defendants], with the DRAD Special Select Committee were acts of wire and mail fraud, providing false information that BSI had previously 'suspended' Nicholls, to the Committee for the purpose of rendering its decision to ban Nicholls

15

….”). None of these conclusory allegations are supported by any facts that show when the representations were made, what the representations were, or to whom they were made.

Further, Plaintiffs have not even attempted to allege the following elements of fraud: "(5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) [and] the hearer's right to rely on it." *Wade*, 623 F. Supp. 2d at 1283 (cleaned up). None of the allegations in the Complaint touch on whether BSI Defendants intended for the INOC or the IBSF Appeals Tribunal to act on false information or in what way. None of the allegations state that those governing bodies or other individuals ignored the falsity of the representations, relied on them, or had a right to rely on elusive, allegedly false statements. Accordingly, Plaintiffs have failed to plead the elements of RICO predicate acts with particularity.

**B. Plaintiffs Have Not Alleged a Pattern of Racketeering Activity.**

As a required element of establishing a RICO claim, Plaintiffs must allege a "pattern" of "racketeering activity." *Johnson*, 56 F.4th at 858. Plaintiffs have not done so. "In order to state a pattern of racketeering activity claim under 18 U.S.C. § 1961(5) and survive a motion to dismiss …, Plaintiff must initially allege facts sufficient to support at least two predicate acts." *Wade*, 623 F. Supp. 2d at 1285. "Merely pleading two predicate acts … will not support a finding that a pattern of racketeering activity exists." *Id.* Instead the plaintiff "must also demonstrate that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* (cleaned up). "No pattern exists without this continuity plus relationship." *Id.* (cleaned up).

When determining continuity, duration alone is insufficient and instead courts "also

consider the extensiveness of the alleged racketeering scheme." *Johnson*, 56 F.4th at 859–60 . And when "evaluating extensiveness, [courts] consider the number of victims, the number of racketeering acts, the variety of racketeering acts, whether the injuries were distinct, the complexity and size of the scheme, and the nature or character of the enterprise." *Id.* (cleaned up). In analyzing whether the scheme is complex, courts look to "the number of perpetrators involved, the extent of the planning required to perform the scheme, the extent of the management required to run the scheme, the sophistication of products involved in running the scheme, and the amount of money involved." *Id.* at 861.

In *Johnson*, the Tenth Circuit affirmed dismissal of a RICO claim in which "the underlying fraudulent conduct hardly varied"; the plaintiff "did not allege a large or complex scheme" because the allegations included only a handful of people engaged in the fraudulent conduct and the amount of money related to the fraudulent transactions related to the gas prices was small; and the defendants "performed this scheme only once" for "only one discrete goal." *Id.* (cleaned up).

Here, just like in *Johnson*, Plaintiffs' claim is simply not the sort that RICO is intended to address. Assuming that Plaintiffs sufficiently pled predicate acts of mail fraud and wire fraud— they did not—the alleged predicate acts and injuries were minimal and do not support a pattern of racketeering conduct. First, Plaintiffs have alleged there is only one victim: Nicholls.[7] *See* Compl. ¶¶ 90–91. Second, the number of racketeering acts is minimal, given that Plaintiffs have alleged that the BSI Defendants made some allegedly defamatory statements between September 12 and October 6, 2021, and alleged false representations in November 2021. *Id.* ¶¶ 43, 76.

---

[7] As noted above, Plaintiffs make no effort in the Complaint to explain how Adaptive Bobsled & Sports Association Inc. has been harmed or why it is a named Plaintiff. *See* Compl. ¶ 96.

Third, there is no "variety of racketeering acts," because Plaintiffs allege only that Defendants made false statements to unspecified parties about Nicholls theft and lying, as well as unidentified "false and misleading statements" to two foreign tribunals in November 2021. *Id.* Fourth, Plaintiffs have alleged only one injury: Nicholls not making the Olympic Team and the financial gain that purportedly would have come from making the team.[8] *Id.* ¶ 91. Fifth, the alleged scheme amounted to "only a single, noncomplex scheme with a discrete goal" to keep Nicholls from making the Olympic Team. *See Johnson*, 56 F.4th at 862. Finally, and relatedly, the nature and character of the enterprise does not support a RICO scheme because Plaintiffs have alleged that the BSI Defendants have "performed this scheme only once."[9] *Id.*; *see also Bridges v. Lezell Law, PC*, 842 F. Supp. 2d 261, 266 (D.D.C. 2012) (dismissing RICO claim based on "a single scheme with a single injury to a single specified victim" based on repeated fraudulent statements about an investment "that took place over a mere five months").

Because Plaintiffs have alleged only one scheme with a single discrete end goal and have not alleged any facts to show that BSI Defendants engaged in any sort of complex RICO scheme, Plaintiffs cannot establish a pattern of continued racketeering activity. In short, Plaintiffs'

---

[8] Significantly, Nicholls cannot show that he would have made the Olympic Team if he had been permitted to compete for the position. It is entirely speculative whether Nicholls would have received a better time in competition than the athletes who made the Olympic Team had he been licensed, let alone what purported financial gain Nicholls lost by being excluded from the team. *Smith v. Babcock Poultry Farms, Inc.*, 469 F.2d 456, 459 (10th Cir. 1972) ("Damages which are based on conjecture or speculation are, of course, not recoverable.").

[9] Plaintiffs vaguely allege that BSI Defendants may still be publishing the allegedly false statements to prevent him from making the 2026 Winter Olympics team, Compl. ¶ 88, but setting aside the fact that these allegations of "ongoing" fraud include none of the required specific factual support that Rule 9(b) requires, parties cannot recover under RICO as a matter of law for speculative future injury. *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 888–89 (10th Cir. 2017) ("[A] plaintiff cannot recover for emotional, personal, or speculative future injuries under [RICO] § 1964(c).").

allegations "do[] not come close to fitting the family of claims Congress intended the RICO statute to cover." *Slaney v. The Intern. Amateur Athletic Federation*, 244 F.3d 580, 600 (7th Cir. 2001) (affirming dismissal of RICO claim by U.S. Olympic athlete regarding drug testing program that precluded her from competing).

### C. Plaintiffs Cannot Establish That They Have Standing to Pursue a RICO Claim.

Plaintiffs allege that the injury resulting from BSI Defendants' conduct is that Nicholls did not make the Olympic Team. His alleged injury is insufficient to invoke standing. A "plaintiff may not bring a civil RICO claim unless it has proper standing required by the statute." *Gilbert v. U.S. Olympic Committee*, 2019 WL 1058194, at *23 (D. Utah. 2019). "[RICO] presents substantial hurdles for plaintiffs to overcome to establish a proper claim." *Id.* (quoting *Deck v. Engineered Laminates*, 349 F.3d 1253, 1255 (10th Cir 2003)). "Specifically, a plaintiff has standing to bring a RICO claim only if he was injured in his business or property by reason of the defendant's violation of § 1962." *Id.* (cleaned up). "Standing has two elements: (1) an injury to business or property, and (2) the injury was caused by the underlying predicate violations." *Id.* To recover damages for violations of RICO, the damages must "flow from the commission of the predicate acts." *Id.* (cleaned up).

Plaintiffs have not alleged any injury to business or property. *See generally* Compl. Instead, Plaintiffs have alleged that BSI Defendants' alleged mail and wire fraud resulted in Nicholls not making the Olympic Team and not contributing "any financial aid." *Id.* ¶¶ 77, 91. Plaintiffs have not pled how any "business" of Plaintiffs' was injured. *Gilbert*, 2019 WL 1058194, at *23. Absent such allegations, Plaintiffs lack RICO standing as a matter of law.

Further, Plaintiffs have not alleged that the "injury was caused by the underlying

19

predicate violations." *Id.* Plaintiffs merely allege that BSI Defendants published false and defamatory statements about Nicholls's theft of a bobsled and lying to police between September 12 and October 6, 2021, and that BSI Defendants made unspecified false statements to two tribunals in November 2021. Compl. ¶¶ 43, 76. But Plaintiffs have also conceded in the Complaint that it is BSI itself that determines who licenses athletes and ultimately who makes the Olympic bobsled team. *Id.* ¶¶ 50, 55, 56. Accordingly, any statements made by BSI Defendants to third parties cannot have affected, let alone proximately caused, BSI Defendants' *own decision* whether to select Nicholls as an athlete for the Olympic Team. Based on their own allegations, Plaintiffs therefore cannot establish any proximate cause between the alleged mail fraud and wire fraud and Plaintiffs' alleged injury. Plaintiffs thus lack RICO standing in multiple respects.[10]

For each of these reasons, Plaintiffs' RICO claim should be dismissed on its merits, with prejudice.

## V. PLAINTIFFS HAVE NOT STATED A CLAIM FOR DEFAMATION OR TORTIOUS INTERFERENCE.

Plaintiffs have raised state law claims for defamation and tortious interference with business relations (hereinafter "tortious interference"). Compl. ¶ 92–97. Plaintiffs have alleged that Defendants made allegedly defamatory statements through various platforms and through the alleged mail and wire fraud to foreign tribunals. Relatedly, Plaintiffs claim that Defendants

---

[10] Additionally, for reasons similar to those underlying BSI Defendants' international comity arguments, Plaintiffs cannot establish that the alleged fraud somehow affected foreign or interstate commerce, or that Plaintiffs have suffered "domestic injury," as required to plead and prove a RICO claim. *RJR Nabisco v. European Community*, 579 U.S. 325, 344 (2016) ("Enterprises whose activities lack that anchor to U.S. commerce cannot sustain a RICO violation."); *Percival Partners Ltd. v. Nduom*, 99 F.4th 696, 704 (4th Cir. 2024) (finding, at the pleading stage, that plaintiff failed to allege domestic injury under RICO).

tortiously interfered with Plaintiffs' business relations by publishing these allegedly defamatory statements. Each of these claims fail as pled. First, neither of the state law claims are timely. Second, Plaintiffs have failed to plead actionable defamation or tortious interference claims.

### A. Plaintiffs' State Law Claims Are Time-Barred.

"In Utah, the statute of limitations for defamation actions is one year." *Diamond Ranch Acad., Inc. v. Filer*, 2016 WL 633351, at *8 (D. Utah Feb. 17, 2016) (citing Utah Code § 78B-2-302(4)).[11] The statute of limitations for defamation begins to run on the date the statement is published and the publication is known or reasonably discoverable." *Id.*; *see also Allen v. Ortez*, 802 P.2d 1307, 1313–14 (Utah 1990) (same). And when a tortious interference claim is based on the "same operative facts that would support a defamation action," then the tortious interference claim is "subject to the one-year statute of limitations." *Diamond Ranch Academy, Inc. v. Filer*, 2016 WL 633351, at *19 (D. Utah 2016); *see also Jensen v. Sawyers*, 2005 UT 81, ¶ 53, 130 P.3d 325 (same). Utah courts have applied the one-year statute of limitations under these circumstances "because otherwise virtually any defamation claim may be recast as" a different tort action that "would effectively neuter the one-year defamation limitations." *Id.*

Because Plaintiffs filed this action on June 7, 2024, their defamation and tortious interference claims can survive only if the alleged defamatory statements were first made on or after June 7, 2023. None of the alleged defamatory statements were made within the limitations period. Plaintiffs allege that the defamatory statements about the theft and lying occurred between "September 12, through October 6, 2021." Compl. ¶ 43. By Plaintiffs' own allegations,

---

[11] "Utah follows the majority position that limitation periods are generally procedural in nature. Therefore, as a general rule, Utah's statutes of limitation apply to actions brought in Utah." *Fin. Bancorp, Inc. v. Pingree & Dahle, Inc.*, 880 P.2d 14, 16 (Utah Ct. App. 1994) (cleaned up).

they were required to bring the defamation claim by September 12, 2022. They did not.

Plaintiffs also vaguely allege that BSI Defendants made "written statements" to the IBSF, the IBSF Appeals Panel, and the INOC that were defamatory. *Id.* ¶ 93. These unspecified communications were allegedly made sometime between November 5 and November 9, 2021. *Id.* ¶¶ 62–65. Plaintiffs' claim for defamation based on these statements, too, is therefore time-barred.[12]

The only defamation damages Plaintiffs seek allegedly result from the deprivation of "the economic opportunity to earn fame and celebrity by competing as a Paraplegic Bobsled Pilot in the Olympic Winter Games of 2022." *Id.* ¶ 93. This damages allegation only serves to reinforce the fact that all the alleged defamation occurred *prior to* the 2022 Winter Olympic Games. The defamation claim is clearly untimely.

With respect to the tortious interference claim, Plaintiffs allege in conclusory fashion that BSI Defendants "conspired and succeeded in[] contriving and perpetuating the false claims of theft and perjury in order to have Plaintiffs eliminated from the competition," which denied "economic benefits to Plaintiffs." Compl. ¶ 97. Plaintiffs' tortious interference claim is merely derivative of the defamation claim and is subject to a one-year statute of limitations. *Jensen, 2005 UT 81, ¶ 53*; *Bates v. Utah Ass'n of Realtors*, 2013 UT App 34, ¶ 3, 397 P.3d 49. Therefore,

---

[12] Notwithstanding the allegation that their damages stem from their inability to compete in the 2022 Winter Olympic Games, Plaintiffs make reference in their general allegations to unspecified "acts of slander and libel … continu[ing] through 2022 until the present day." Compl. ¶¶ 84–88. Plaintiffs fail to identify with any degree of particularity any act of BSI Defendants (or any Defendants for that matter) during this time period that would constitute actionable defamation. Plaintiffs do not even attempt to identify any "continuing" defamatory conduct. Such conclusory allegations of later defamation cannot support a defamation claim and do not save Plaintiffs' claim from the statute of limitations. *See Total Quality Sys., Inc. v. Universal Synaptics Corp.*, 2024 WL 2396979, at *14 (D. Utah May 23, 2024) (dismissing defamation claim for failure to plead with particularity under Rule 8(a)).

the tortious interference claim is also untimely as a matter of law.

### D. Plaintiffs' Alleged Facts Do Not Establish Actionable Defamation or Tortious Interference.

Even if the state law claims were not time-barred, Plaintiffs also fail to allege actionable defamation or tortious interference.

Under Utah law, to state a claim for defamation, the plaintiff "must show that defendants published the statements concerning him, that the statements were false, defamatory and not subject to any privilege, that the statements were published with the requisite degree of fault, and that *their publication* resulted in damage." *West v. Thomson Newspapers*, 872 P.2d 999, 1007–08 (Utah 1994) (emphasis added). To succeed on a claim for tortious interference, "a plaintiff must demonstrate (1) the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff." *Eskamani v. Auto-Owners Ins. Co.*, 2020 UT App 137, ¶ 28, 476 P.3d 542 (quoting *Anderson Dev. Co. v. Tobias* 2005 UT 36, ¶ 20, 116 P.3d 323). Plaintiffs fail to allege these elements beyond conclusory assertions.

First, Plaintiffs' defamation claims must be pled with particularity under federal law. *Total Quality Sys., Inc.*, 2024 WL 2396979, at *14 ("Federal courts have consistently interpreted Fed. R. Civ. P. 8(a) as requiring that defamation claims be pleaded with particularity to provide a defendant with fair notice." (cleaned up)). "A defendant is not required to parse through a pleading to deduct the basis of the allegations against them." *Id.* In contravention of this pleading standard, Plaintiffs never identify with particularity any false statement or who made it. The Complaint repeats generalities about "false claims of theft and lying" that somehow prevented Nicholls from "the economic opportunity to earn fame and celebrity by competing" on the

23

Olympic Team. (Compl. ¶¶ 88, 93). But Plaintiffs never identify a specific publication of a specific statement Plaintiffs believe to be false. For this reason alone, Plaintiffs fail to allege actionable defamation, and the claim should be dismissed.

Second, while Plaintiffs' defamation claim lacks the requisite specificity, Plaintiffs allege enough to make clear that the claim is nonsensical. There was not and cannot be any tie between the alleged defamatory statements and Plaintiffs' alleged harm. The general basis for the claim appears to relate to statements to the effect that "Nicholls was a thief and liar." Compl. ¶ 43. But as acknowledged by Plaintiffs, BSI Defendants—the same Defendants who made the alleged defamatory statements—alone decided whether Nicholls would be licensed and would make the Olympic Team. *See, e.g.*, Compl. ¶¶ 50, 55, 56. Thus, the publication of these statements to third parties did not (and could not) inform the BSI Defendants' *own decision* regarding who made the Olympic Team, nor could it, by extension, deprive Plaintiff the "fame and celebrity" of competing in the Olympic games.

To the extent that Plaintiffs' defamation claim relies on unspecified "written statements" to the IBSF and the INOC, the claim fails for the same reasons. Compl. ¶ 93. Again, Plaintiffs fail to identify any such statements, or who made them, with particularity. Further, the publication of the "written statements" BSI Defendants allegedly made to the tribunals would not affect BSI Defendants' *own decision* with respect to who would be licensed with BSI and who would make the Olympic Team. *See id.* Thus, even if Plaintiffs' vague allegations satisfied Rule 8(a), which they do not, Plaintiffs' alleged harm bears no causal relationship with the alleged defamation.

Finally, to the extent Plaintiffs rely on the alleged defamatory statements as the conduct that interfered with Plaintiffs' alleged "business relations," the tortious interference claim fails for the same reasons above. The claim further fails because Plaintiffs have not alleged any facts identifying any "existing" or "potential economic" relationships with which BSI Defendants somehow interfered. *See Celtig, LLC v. Patey*, 347 F. Supp. 3d 976, 986 (D. Utah. 2018). Plaintiffs only make vague reference to "economic opportunity for marketing, sponsorship, and corporate/private charitable contributions," Compl. ¶ 95, but Plaintiffs do not identify any third party from whom Plaintiffs would have somehow received "economic benefits" had it not been for Defendants' allegedly defamatory statements. *See generally* Compl. Without alleging that BSI Defendants somehow interfered with "specific third-party relationships," Plaintiffs fail to state a plausible claim of tortious interference. *Allergy Res. Group, LLC v. Rez Candles Inc.*, 2022 WL 1004214, at *3, *12 (D. Utah April 4, 2022) (dismissing tortious interference claim at the Rule 12 stage where claimant failed to identify "specific third-party relationships").

For any of these reasons, Defendants respectfully request that the Court dismiss Plaintiffs' defamation and tortious interference claims with prejudice.

## CONCLUSION

For the foregoing reasons, BSI Defendants respectfully request that the Court dismiss the Complaint and all claims against them with prejudice.

//

//

//

25

DATED this 3rd day of October, 2024.

**MANNING CURTIS BRADSHAW
& BEDNAR PLLC**

/s/ Mitch M. Longson
Mitch M. Longson
Kendra M. Brown
*Attorneys for BSI Defendants*

## CERTIFICATE OF SERVICE

I certify that on October 3, 2024, a copy of the foregoing was electronically filed with the

Clerk of the Court and served through e-filing to the following parties:

Jared C. Bowman (11199)
**ROSING DAVIDSON FROST**
136 Heber Ave., Suite 205
Park City, Utah 84060
Telephone: (435) 731-5451
bowman@rosingdavidson.com
*Attorney for Plaintiffs*

Mark R. Gaylord
Tyler M. Hawkins
**BALLARD SPAHR LLP**
201 South Main Street, Suite 800
Salt Lake City, Utah 84111
Telephone: (801-531-3000)
gaylord@ballardspahr.com
hawkinst@ballardspahr.com
*Attorneys for Defendants Adam Jeremy Edelman,*
*Heath Spence, and Israel Bobsled Skeleton, LLC*

/s/ Lori Anderson

27