Mitch M. Longson (15661)
Kendra M. Brown (16409)
**MANNING CURTIS BRADSHAW**
**& BEDNAR PLLC**
201 South Main Street, Suite 750
Salt Lake City, Utah 84111
Telephone: (801) 363-5678
mlongson@mc2b.com
kbrown@mc2b.com

*Attorneys for Defendants David Greaves,*
*Larry Sidney, and Bobsleigh Skeleton Israel, LLC*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| DAVID NICHOLLS, ADAPTIVE BOBSLED & SPORTS ASSOCIATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DAVID GREAVES, LARRY SIDNEY, ADAM JEREMY EDELMAN, HEATH SPENCE, BOBSLEIGH SKELETON ISRAEL, LLC., and ISRAEL BOBSLED SKELETON, LLC, <br><br> Defendants. | **MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** <br><br> Civil No. 2:24-cv-00412-AMA-CMR <br><br> District Judge Ann Marie McIff Allen <br><br> Magistrate Judge Cecilia M. Romero |

Pursuant to Rule 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure and DUCivR 7-1, Defendants David Greaves, Larry Sidney, and Bobsleigh Skeleton Israel, LLC ("BSI Defendants"), through their undersigned counsel, respectfully submit this Motion to Dismiss Plaintiffs' Amended Complaint.

## TABLE OF CONTENTS

RELIEF REQUESTED AND GROUNDS THEREFOR..............................................................1

FACTS.................................................................................................................................3

MOTION TO DISMISS STANDARD ...................................................................................7

ARGUMENT........................................................................................................................7

    I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS' EXCLUSIVE REMEDY IS WITH THE IBSF AND COURT OF ARBITRATION FOR SPORT ...................................................................................................................7

    II.  THIS COURT SHOULD ABSTAIN FROM ADJUDICATING WHAT IS A PURELY FOREIGN DISPUTE .......................................................................................11

    III. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER ANY OF THE DEFENDANTS..................................................................................................12

    IV. PLAINTIFFS HAVE NOT STATED A CLAIM FOR DEFAMATION OR TORTIOUS INTERFERENCE .................................................................................................13

        A.  Plaintiffs' State Law Claims Are Time-Barred..............................................14

        A.  Plaintiffs' Alleged Facts Do Not Establish Actionable Defamation or Tortious Interference........................................................................................................16

CONCLUSION....................................................................................................................19

ii

**TABLE OF AUTHORITIES**

Cases

*Allen v. Ortez*, 802 P.2d 1307 (Utah 1990) ................................................14
*Anderson Dev. Co. v. Tobias*,2005 UT 36, 116 P.3d 323.............................16
*Armstrong v. Tygart*, 886 F. Supp. 2d 572 (W.D. Tex. 2012) ....................12
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................7
*Bates v. Utah Ass'n of Realtors*, 2013 UT App 34, 397 P.3d 49 .................15
*Calhoun v. Buck*, 371 F. Supp. 3d 1008 (D. Utah 2019) ..............................3
*Celtig, LLC*, 347 F. Supp. 3d 976 (D. Utah. 2018) ....................................18
*Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226 (10th Cir. 2006) ...............13
*Diamond Ranch Acad., Inc. v. Filer*, 2016 WL 633351 (D. Utah Feb. 17, 2016) .......................14
*EMA Garp Fund, L.P. v. Banro Corp.*, 783 Fed. Appx. 82 (2d Cir. 2019)..................12
*Eskamani v. Auto-Owners Ins. Co.*, 2020 UT App 137, 476 P.3d 542........................16
*Fin. Bancorp, Inc. v. Pingree & Dahle, Inc.*, 880 P.2d 14 (Utah Ct. App. 1994) .......................14
*Graham v. United States Anti-Doping Agency*, 2011 WL 1261321 (E.D.N.C. Mar. 31, 2011).....11
*Green v. Lexis-Nexis*, 513 Fed. App'x 772 (10th Cir. 2013) ........................7
*Hankishiyev v. ARUP Labs.*, 732 Fed. App'x 673 (10th Cir 2018)................8
*Hilton v. Guyot*, 159 U.S. 113 (1895)..........................................................11
*HSBC Bank (Uruguay) S.A. v. Seaboard Corp.*, 2022 WL 4447416 (D. Kan. Sept. 23, 2022) ……………………………………………………………………………………..11, 12
*In re Precedent Health Ctr. Operations, LLC*, 392 Fed. App'x 618 (10th Cir. 2010) ...................8
*In re Urethane Antitrust Litig.*, 683 F. Supp. 2d 1214 (D. Kan. 2014) .......................12
*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ...................................13
*Jensen v. Sawyers*, 2005 UT 81, 130 P.3d 325............................................ 14, 15
*Lee v. United States Taekwondo Union*, 331 F. Supp. 2d 1252 (D. Haw. 2004)...........................11
*Rez Candles Inc.,* 2022 WL 1004214 (D. Utah April 4, 2022)....................18
*SelectHealth, Inc. v. Risinger*, 18 F. Supp. 3d 1268 (D. Utah 2014).............................13
*Tiernan v. IRS*, No. 2:22-cv-00543, 2023 WL 2346317 (D. Utah March 3, 2023) .......................8
*Total Quality Sys., Inc. v. Universal Synaptics Corp.*, 2024 WL 2396979 (D. Utah May 23, 2024) ......................................................................................... 15, 16
*Van Ornum v. Am. Med. Ass'n*, 2017 WL 9481018 (D. Utah Mar. 14, 2017) .............................13
*West v. Thomson Newspapers*, 872 P.2d 999 (Utah 1994).........................16
*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)..............................12

Statutes

Utah Code § 78B-2-302(4).............................................................................14

Rules

iii

iv

Fed. R. Civ. P. 8(a) ................................................................................................... 17, 18

Rule 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure ............................................... i

Other Authorities

DUCivR 7-1 .................................................................................................................... i

**RELIEF REQUESTED AND GROUNDS THEREFOR**

Plaintiffs David Nicholls and Adaptive Bobsled & Sports Association, Inc. allege that Defendants spread false information about Nicholls to support BSI Defendants' decision to deny him the ability qualify for the 2022 Winter Olympics bobsled team for Israel ("Olympic Team" or "Team Israel"). Plaintiffs bring claims under state law for defamation and tortious interference with business relations. In their original Complaint, Plaintiffs also sought relief under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), but in their Amended Complaint, Plaintiffs abandon that claim and make virtually no effort to address the fatal deficiencies in their remaining claims. Plaintiffs have now made two attempts to plead their claims, but it remains the case that this Court lacks both subject-matter and personal jurisdiction, and Plaintiffs have not pled timely or actionable state law claims.

This Court lacks subject-matter jurisdiction over all of Plaintiffs' claims because they are based on Nicholls's eligibility to compete for Team Israel. Plaintiffs have attempted to refashion what are essentially allegations that Nicholls was precluded from competing for Team Israel into U.S. state law claims seeking damages. But Nicholls's sole recourse for purportedly being excluded from Team Israel in 2022 (and prospectively in 2026) is to exhaust Israeli and international sport tribunal remedies he abandoned before filing this lawsuit. Indeed, Nicholls has sued BSI Defendants *in Israel*, alleging virtually identical facts and seeking similar remedies, and now attempts to seek recourse through U.S. courts for the same conduct. Under international comity principles, this Court should refuse to exercise jurisdiction—if it has such jurisdiction to begin with—over what are purely foreign Olympic eligibility claims disguised as state law torts.

1

This Court also lacks personal jurisdiction over the Defendants, and while Defendants' prior Motion to Dismiss explained why such jurisdiction is lacking, Plaintiffs still make ***no effort*** to explain why this Court has personal jurisdiction over any Defendant. Plaintiffs have brought claims in Utah against Defendants residing in Canada, New York, and Nevada, but fail to even attempt to allege personal jurisdiction over any of the Defendants in Utah. This provides independent grounds for dismissal.

Plaintiffs' state law claims are also fatally flawed as pled. Plaintiffs' defamation and tortious interference with economic relations claims are both premised on BSI Defendants' allegedly publishing false statements on the internet about Nicholls stealing a bobsled and lying to police in Calgary, Canada, and allegedly false statements made to international tribunals. Plaintiffs allege that the publications first occurred on September 12, 2021, and the statements made to the international tribunals occurred in November 2021. Based on these dates, Plaintiffs' state law claims are time-barred as pled under Utah's one-year statute of limitations. Even if the claims were timely, however, Plaintiffs have failed to plausibly allege defamation or tortious interference with the requisite specificity, and regardless, Plaintiffs' alleged harm bears no causal relationship with the alleged tortious conduct.

For each of these independent reasons, and because Plaintiffs have now tried and failed *twice* to allege actionable claims, BSI Defendants respectfully request that the Court dismiss the Complaint with prejudice.

**FACTS**[1]

1.      Plaintiff Nicholls is an incomplete quadriplegic who attempted to compete for a position on Israel's 2022 Winter Olympic bobsled team. Am. Compl. at ¶¶ 10, 16. 20.

2.      Defendant David Greaves resides in Canada and is the President of BSI. *Id.* ¶ 3.

3.      Defendant Larry Sidney resides in Nevada and is the Secretary General of BSI. *Id.* ¶ 4.

4.      Defendant BSI is the governing body for Israel's Olympic Bobsled and Skeleton team with an Israeli mailing address and is allegedly headquartered at the "homes and offices of" Greaves and Sidney. *Id.* ¶ 7.

5.      In 2019, Nicholls purchased a bobsled and shipping crate from Defendant Heath Spence, and allegedly did not receive the crate. *Id.* ¶¶ 17–18.

6.      Later, Nicholls purchased another bobsled from a different individual and drove to Canada to retrieve it. While at the facility, Nicholls also sought to retrieve the shipping crate he purchased from Defendant Spence in 2019. *Id.* ¶¶ 22–24, 20–22 (p.13). [2]

7.      Defendant Spence could not assist Nicholls in locating and loading the shipping crate, but others assisted Nicholls in loading the crate that he claimed was still owed to him. *Id.*

---

[1] As is required at the motion-to-dismiss stage the Court "assumes the truth of well-pleaded facts and draws reasonable inference in a light most favorable to the plaintiff." *Calhoun v. Buck*, 371 F. Supp. 3d 1008, 1013 (D. Utah 2019). For purposes of this Motion only and unless otherwise noted, BSI Defendants accept Plaintiffs' allegations of well-pled facts as true, but reserve the right to contest Plaintiffs' allegations at future stages of this litigation.

[2] On page 13 of Plaintiffs' Amended Complaint, the numbered paragraphs are not listed sequentially. Instead, the paragraphs go from Paragraph 24 and restart at Paragraph 20. BSI Defendants have attempted to direct the Court to the appropriate paragraphs throughout this Motion.

¶¶ 22–23 (pp.13–14). Nicholls drove the bobsled and shipping crate back to Nicholls's residence in Utah. *Id.* ¶¶ 24–27 (pp.14–15).

8.　　On September 9, 2021, Defendant Spence reported to Canadian police that Nicholls had stolen the bobsled and shipping crate, and later changed the report to theft of only the shipping crate. *Id.* ¶¶ 29, 31.

9.　　The Calgary police "issued a final report on the afternoon of September 10" and did not charge Nicholls with a crime. *Id.* ¶ 32.

10.　　Based on these events, Defendants allegedly "hatched" a "conspiracy" to "eliminate" Nicholls from participating in Olympic-qualifying races *Id.* ¶ 33. According to Plaintiffs, Defendants "conferred and agreed" to continue to claim Nicholls had stolen a bobsled. *Id.* ¶ 34.

11.　　Following this "plan," BSI Defendants denied Nicholls the required license to compete in the Olympic-qualifying races. *Id.*

12.　　According to Plaintiffs, "[f]rom September 12, through October 6, 2021, all Defendants via phone, email, Facebook, and other social media fraudulently claimed Plaintiff Nicholls was a thief and liar and had stolen a sled and shipping crate from another Israeli athlete, AJ Edelman." *Id.* ¶ 38.

13.　　BSI Defendants believed that Nicholls's statements to the Calgary police were "misleading and untruthful" and referred the issue to the third-party "Special Committee DRAD," which held "a disciplinary hearing" on September 21, 2021. *Id.* ¶¶ 36, 41–42.

14.　　DRAD issued its decision that Nicholls's conduct did not require expulsion or suspension from BSI. *Id.* ¶ 44.

4

15.     BSI Defendants allegedly disagreed with the DRAD decision and denied Nicholls "a license by the BSI to compete" in the Olympic-qualifying races. *Id.* ¶ 46.

16.     Plaintiffs concede that BSI itself had the authority to determine who would be licensed and who would make the Olympic Team. *Id.* ¶ 46 (alleging "Nicholls would be denied a license by the BSI to compete" in Olympic-qualifying races); *id.* ¶ 53 (alleging Nicholls requested an Israeli tribunal to direct "BSI [to] provide an IBSF driver's license to [Nicholls] … [and] for the BSI to register and enter Nicholls" for the qualifying races); *id.* ¶ 65 (alleging "BSI officers refused to issue IBSF licenses to [Nicholls] … and to register and enter" him in the Olympic-qualifying races).

17.     Nicholls appealed BSI's decision to the Israel National Olympic Committee ("INOC") in October 2021. *Id.* ¶ 53. Nicholls also filed two emergency appeals before the International Bobsleigh & Skeleton Federation ("IBSF") Appeals Tribunal in November 2021. *Id.* ¶¶ 54, 57.

18.     The IBSF is "the 'supreme authority' in all matters relating to international Bobsleigh and Skeleton" and cooperates with the International Olympic Committee ("IOC"). Exhibit 1, IBSF Statutes, §§ 1.3–1.4.[3] The IBSF governs and regulates the sport at the international level and recognizes National Federations (such as BSI) to govern and regulate the sport at the national level, "subject to the IBSF's ultimate authority." *Id.* § 3.13. BSI is a National Federation that is subject to IBSF. *Id.* §§ 5.1–5.3.

---

[3] Because BSI Defendants challenge the facts upon which subject matter jurisdiction depends, the Court "has wide discretion to allow affidavits and other documents to resolve disputed jurisdictional facts under Rule 12(b)(1)" of the Federal Rules of Civil Procedure without converting the motion to a summary judgment motion. *Phillips v. Oosterbaan*, 508 F. Supp. 3d 1103, 1112 (D. Utah 2020).

19.     BSI Defendants allegedly "gave false information to the IBSF Appeals Tribunal to delay consideration of the Plaintiff's case," but Plaintiffs do not identify the allegedly false information. *Id.* ¶ 60.

20.     Plaintiffs allege they made several requests for relief before the IBSF tribunal, including that BSI be ordered to license Nicholls and for sanctions for allegedly submitting false information to the IBSF tribunal. *Id.* ¶¶ 68–73.

21.     Plaintiffs allege that the "reason and motive for Defendants to discredit Nicholls and eliminate him from competition" was to ensure Defendant Edelman made the Olympic Team and that the benefits of making the team would "flow to Edelman." *Id.* ¶ 75.

22.     In October 2022, Plaintiffs filed a complaint in Israeli court against BSI Defendants, among others, seeking the same damages requested in this lawsuit and stemming from the same allegedly tortious conduct. *See* October 25, 2022 Complaint, attached as Exhibit 2.[4] The Israeli court denied the injunction claim as moot, but notified Nicholls that he could seek damages in a separate Israeli court with proper jurisdiction. *See* Israeli Court Decision, attached as Exhibit 3.

23.     On June 7, 2024, Plaintiffs filed this lawsuit. Plaintiffs' alleged damages for each of the claims stems from Nicholls's ineligibility for the Olympic Team and economic benefits that could have been derived therefrom. *See generally* Am. Compl.

24.     In the Amended Complaint, Plaintiffs allege that Defendants are "continuing a pattern of false claims of theft and lying against Plaintiff" and in 2023 and 2024 have continued "DRAD … claiming [Nicholls] is guilty of theft and lying to IBSF officials and Canadian

---

[4] Exhibits 2 and 3 contain both the original Israeli filings in Hebrew and unofficial English translations of each.

6

Police." *Id.* ¶¶ 84–86.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up); *See* Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (cleaned up). Dismissal of a claim is appropriate where the plaintiff has made only "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements" and the facts "do not permit the court to infer more than a mere possibility of misconduct." *Id.* "In ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Green v. Lexis-Nexis*, 513 Fed. App'x 772 (10th Cir. 2013) (cleaned up).

## ARGUMENT

I.  **THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS' EXCLUSIVE REMEDY IS WITH THE IBSF AND COURT OF ARBITRATION FOR SPORT.**

This Court does not have subject matter jurisdiction over Plaintiffs' claims because the claims are required to be adjudicated in IBSF administrative proceedings, with exclusive appeal rights to the Court of Arbitration for Sport ("CAS"). Before considering the merits of a dispute, a federal court must determine that it has subject matter jurisdiction over the claims at issue. *See Hankishiyev v. ARUP Labs.*, 732 Fed. App'x 673, 677 (10th Cir 2018). Where applicable law provides for dispute resolution through administrative remedies, a plaintiff's failure to exhaust

7

such remedies deprives the court of subject matter jurisdiction. *See In re Precedent Health Ctr. Operations, LLC*, 392 Fed. App'x 618, 623 (10th Cir. 2010) (affirming lack of subject matter jurisdiction where plaintiff's "only avenue for relief was through the administrative review process and there is no dispute that [the plaintiff] failed to exhaust administrative remedies"); *Tiernan v. IRS*, No. 2:22-cv-00543, 2023 WL 2346317, at *2 (D. Utah March 3, 2023) (concluding plaintiff failed "to carry her burden [of establishing subject matter jurisdiction] because her complaint fails to allege that she exhausted her administrative remedies").

Here, Nicholls alleges that he partially engaged in the IBSF administrative process but does not allege that he exhausted his administrative remedies. Am. Compl. ¶¶ 53–57, 64, 68, 72. This deprives the Court of subject matter jurisdiction over Plaintiffs' claims. While Plaintiffs style their claims as defamation and tortious interference, Plaintiffs merely seek recourse for BSI's decision not to issue Nicholls an IBSF license to compete during the 2021–2022 season. *Id.* ¶¶ 90–91, 93, 97 ("Defendants … conspired and succeeded in contriving and perpetuating the false claims of theft and perjury in order to have Plaintiffs eliminated from competition for the BSI Olympic 4 man Bobsled Team …."). BSI reached this decision through its established dispute resolution process, and Nicholls subsequently pursued relief through the IBSF appeals procedure. *Id.* ¶¶ 53–72. The IBSF tribunal denied Nicholls's motion for emergency relief and "retained jurisdiction over the appeal to consider other issues raised[.]" *Id.* ¶ 72. Plaintiffs do not identify any final resolution of the IBSF procedure, nor whether any appeal was pursued before the CAS. *See id.*

As detailed by IBSF Statutes, "[t]he IBSF is the 'supreme authority' in all matters relating to international Bobsleigh and Skeleton" and cooperates with the International Olympic

Committee. *See* Exhibit 1, §§ 1.3, 1.4. IBSF exercises "ultimate authority over the sport," including its governance and regulation at the "international level." *Id.* § 3.13. BSI is Israel's National Federation for bobsled and is subject to IBSF. *Id.* §§ 5.1–5.3. *See* IBSF, The National Federations at a Glance (*available at* https://www.ibsf.org/en/inside-ibsf/who-we-are/national-federations) (last visited September 26, 2024). BSI, as an IBSF member, is required to "adopt and implement and enforce … regulations that are consistent with [the IBSF] Statutes and other IBSF regulations." Exhibit 1, § 7.2.

The IBSF Statutes contain the following mandatory dispute resolution process:

> **Any dispute** arising between Members, or between one or more Members and the IBSF … or between the IBSF and any individual or entity that is a member of or affiliated to a Member (each, a Dispute), **shall be resolved exclusively by the means set out in this Article 18, to the exclusion of any other means. All of the aforementioned parties waive (to the fullest extent permitted by applicable law) any rights of recourse they might otherwise have to any court or other forum for resolution of such Disputes.**

*Id.* § 18.1 (emphasis added). Pursuant to the IBSF Statutes, Disputes are to be referred to the IBSF Appeals Tribunal, whose decisions "shall be final and binding on the parties, and may only be challenged by way of appeal to [CAS]." *Id.* §§ 18.2–18.3; *see also* IBSF Appeals Tribunal Code, X.[5]

Any athlete competing in IBSF-supervised events must be registered by their national federation for an IBSF International license. *See* Int'l Bobsleigh Rules 2023, at 8.4.[6] By

---

[5] The Appeals Tribunal Code is available at https://www.ibsf.org/fileadmin/user_upload/Resources/Federation/Statutes/Appeals_Tribunal_Code_-_E_IBSF_2018.pdf (last accessed September 26, 2024).

[6] The IBSF Rules are available at https://www.ibsf.org/fileadmin/user_upload/Resources/Sports/Rules_Quotas/2023_International_

9

registering an athlete for a license, the national federation "verifies and confirms that the athlete … has signed a copy of the IBSF Athlete Code of Conduct." *Id.* This Code of Conduct contains a dispute resolution provision stating: "If a dispute arises between the IBSF and me [the athlete], or any third party involved in Bobsled or Skeleton I will use the appropriate IBSF appeal and dispute resolution channels, and I acknowledge that ultimately Swiss law and CAS will be the final arbitrator of any dispute." Exhibit 4, IBSF Athlete Code of Conduct, § 4.

Based on all of the foregoing, disputes regarding athlete eligibility to compete between an athlete and an IBSF national federation (like BSI) may only be adjudicated through the IBSF process described above. Here, Nicholls voluntarily submitted to the IBSF tribunal by requesting that it take jurisdiction over his appeal of BSI's decision, and he also alleges that he competed in IBSF races under IBSF licensure between 2011 and 2021 (Am. Compl. ¶ 10), which subjected him to IBSF Statutes. He is therefore bound by the IBSF dispute resolution process, and this Court does not have jurisdiction to decide his claims. Though Plaintiffs attempt to shoehorn their claims into violations of U.S. state law, which attempts fail for other reasons (*see infra* Sections II–IV), the sole damages Plaintiffs seek pertain to Nicholls's inability to obtain IBSF licensure and compete in the 2021–2022 season. Am. Compl. ¶¶ 85–86, 88, 94. These claims and damages are entirely dependent on the losses allegedly incurred as a result of BSI's denial of Nicholls's license. Under his own allegations, had Nicholls been issued a license to compete, he would not have suffered the alleged monetary losses. Therefore, his claims constitute a "Dispute" regarding his competition eligibility and licensure and are subject to the foregoing exclusive administrative remedies. *See Graham v. United States Anti-Doping Agency*, 2011 WL 1261321, at *5 (E.D.N.C.

---

Rules_BOBSLEIGH.pdf (last accessed September 26, 2024).

Mar. 31, 2011) ("[A]ll of these claims are premised on challenging [Plaintiff's] eligibility. … In other words, although [Plaintiff] has labeled his claims as violations under the Constitution and the state law of slander, his claim undoubtedly challenges his eligibility to participate as a coach to amateur Olympic athletes."); *Lee v. United States Taekwondo Union*, 331 F. Supp. 2d 1252, 1254 (D. Haw. 2004) (requiring plaintiff's discrimination claims to be exhausted under Amateur Sports Act). Plaintiffs have made no effort in their Amended Complaint to explain how this Court nevertheless may exercise jurisdiction over this dispute. This Court should therefore dismiss the Amended Complaint with prejudice.

## II.   THIS COURT SHOULD ABSTAIN FROM ADJUDICATING WHAT IS A PURELY FOREIGN DISPUTE.

Even if this Court did have subject matter jurisdiction to adjudicate Plaintiffs' claims, the Court should decline to exercise jurisdiction because the dispute pertains exclusively to the eligibility and non-selection of Israeli athletes for Israel's Olympic team, which has no place in United States federal courts. The prudential doctrine of international comity counsels in favor of dismissal.

"The Supreme Court has described international comity abstention as 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or other persons who are under the protection of its laws.'" *HSBC Bank (Uruguay) S.A. v. Seaboard Corp.*, 2022 WL 4447416, at *17 (D. Kan. Sept. 23, 2022) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)). Courts evaluating whether a separate action is sufficiently related to justify dismissal under comity principles should consider:

> the similarity of the parties, the similarity of the issues, the order in

11

which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction.

*HSBC Bank (Uruguay)*, 2022 WL 4447416, at *18. These factors overwhelmingly support dismissal here, where Plaintiff Nicholls has already sued BSI Defendants in an Israeli court for the same relief and damages he seeks in this case, and also partially sought administrative remedies with the IBSF. *See* Exs. 2, 3; Am. Compl. ¶¶ 53–76. There is simply no connection to the United States, and Nicholls's own actions in Israeli court and the IBSF demonstrate that his remedies lie elsewhere. For these reasons, explained more fully in the Motion to Dismiss Plaintiffs' original Complaint filed by Edelman Defendants and unaddressed in Plaintiffs' Amended Complaint, the Court should refuse to exercise jurisdiction over this purely foreign dispute. *See Armstrong v. Tygart*, 886 F. Supp. 2d 572, 590 (W.D. Tex. 2012); *In re Urethane Antitrust Litig.*, 683 F. Supp. 2d 1214, 1223 (D. Kan. 2014); *EMA Garp Fund, L.P. v. Banro Corp.*, 783 Fed. Appx. 82, 84–85 (2d Cir. 2019).

## III.    THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER BSI DEFENDANTS.

The Court also lacks personal jurisdiction over Defendants, which constitutes an independent reason for dismissal. "Due process requires that the defendant be given adequate notice of the suit and be subject to the personal jurisdiction of the court." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (cleaned up). To attain personal jurisdiction over a defendant, a plaintiff must show either that the defendant is a resident of or has sufficient minimum contacts with the state in which he is being sued. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). To "satisfy the constitutional requirement of due process

12

there must be 'minimum contacts' between the defendant and the forum state." *SelectHealth, Inc. v. Risinger*, 18 F. Supp. 3d 1268, 1271–72 (D. Utah 2014) (cleaned up). And importantly, "[t]he plaintiff has the burden of establishing jurisdiction." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020) (affirming dismissal for lack of personal jurisdiction).

Plaintiffs have not alleged that any of the defendants reside or have a principal place of business in Utah nor otherwise alleged ***any facts*** supporting any contact by any defendant with Utah. *See* Am. Compl. ¶¶ 3–8. And the BSI Defendants, according to Plaintiffs, reside in either Canada or Nevada. *Id.* The Amended Complaint's only references to Utah still relate only to Nicholls's residence in Utah and some of *his* training in Utah, *id.* ¶¶ 1–2, 15, 20–21, 66, and thus, Plaintiffs have made no effort in their Amended Complaint to address personal jurisdiction deficiencies identified in BSI Defendants' prior Motion to Dismiss. Accordingly, Plaintiffs still fail to meet their burden of alleging personal jurisdiction over any defendant.

## IV.    PLAINTIFFS HAVE NOT STATED A CLAIM FOR DEFAMATION OR TORTIOUS INTERFERENCE.

Plaintiffs have raised state law claims for defamation and tortious interference with business relations (hereinafter "tortious interference"), which in all material respects remain the same as they were pled in Plaintiffs' original Complaint. *See* Am. Compl. ¶¶ 14–94. Plaintiffs have alleged that Defendants made allegedly defamatory statements through various platforms and through alleged mail and wire to foreign tribunals. Relatedly, Plaintiffs claim that Defendants tortiously interfered with Plaintiffs' business relations by publishing these allegedly defamatory statements. Each of these claims fails as pled. First, neither of the state law claims are timely. Second, Plaintiffs have failed to plead actionable defamation or tortious interference.

## A. Plaintiffs' State Law Claims Are Time-Barred.

"In Utah, the statute of limitations for defamation actions is one year." *Diamond Ranch Acad., Inc. v. Filer*, 2016 WL 633351, at *8 (D. Utah Feb. 17, 2016) (citing Utah Code § 78B-2-302(4)).[7] "The statute of limitations for defamation begins to run on the date the statement is published and the publication is known or reasonably discoverable." *Id.*; *see also Allen v. Ortez, 802 P.2d 1307, 1313–14 (Utah 1990)* (same).

Relatedly, when a tortious interference claim is based on the "same operative facts that would support a defamation action," then the tortious interference claim is "subject to the one-year statute of limitations" applicable to defamation claims. *Filer*, 2016 WL 633351, at *19 (D. Utah 2016); *see also Jensen v. Sawyers*, 2005 UT 81, ¶ 53, 130 P.3d 325 (same). Utah courts have applied the one-year statute of limitations under these circumstances "because otherwise virtually any defamation claim may be recast as" a different tort action that "would effectively neuter the one-year defamation limitations." *Id.*

Because Plaintiffs filed this action on June 7, 2024, their defamation and tortious interference claims can survive only if the alleged defamatory statements were *first* made on or after June 7, 2023. None of the alleged defamatory statements were made within the limitations period. Plaintiffs allege that defamatory statements about theft and lying occurred between "September 12, through October 6, 2021." Am. Compl. ¶ 38. By Plaintiffs' own allegations, they were required to bring the defamation claim by September 12, 2022. They did not. Further, Plaintiffs' untimeliness is not saved by their bare allegation that BSI Defendants' alleged

---

[7] "Utah follows the majority position that limitation periods are generally procedural in nature. Therefore, as a general rule, Utah's statutes of limitation apply to actions brought in Utah." *Fin. Bancorp, Inc. v. Pingree & Dahle, Inc.*, 880 P.2d 14, 16 (Utah Ct. App. 1994) (cleaned up).

defamation has somehow "continued through 2022 until the present day." *Id.* ¶ 80. The statute of limitations for defamation restarts upon "republication" only where the republication includes substantively new information "with the goal of reaching a *new* audience." *Filer*, 2016 WL 633351, at \*11–12 (cleaned up). As explained in further detail below, Plaintiffs' only claim for damages related to the defamatory statements is solely based on BSI Defendants' decision to not select Nicholls for the Olympic Team. Plaintiffs do not identify what these alleged "continued" publications are or the dates they were allegedly published, let alone identify any "new audience" to which the statements were directed. Thus, there is no basis on which to use any accrual date other than the initial publication dates expressly alleged in the Amended Complaint.

Plaintiffs also vaguely allege that BSI Defendants made "written statements" to the IBSF, the IBSF Appeals Panel, and the INOC that were defamatory. Am. Compl. ¶ 88. These unspecified communications were allegedly made sometime between November 5 and November 9, 2021. *Id.* ¶¶ 58–63. Plaintiffs' claim for defamation based on these statements, too, is therefore time-barred. Plaintiffs attempt to skirt the one-year statute of limitations by stating that Defendants are "continuing a pattern of false claims of theft and lying against Plaintiff" and in 2023 and 2024 have continued "a pattern of making false and defamatory statements … claiming [Nicholls] is guilty of theft and lying to IBSF officials and Canadian Police." *Id.* ¶¶ 85–86. But these are exactly the same type of statements made in or around September through November 2021. Plaintiffs make no attempt to identify any timely defamatory statements, nor do they identify *any* audience for these statements, let alone a new audience.[8] *See Filer*, 2016 WL

---

[8] Confusingly, the only defamation damages Plaintiffs seek allegedly result from the deprivation of "the economic opportunity to earn fame and celebrity by competing as a Paraplegic Bobsled Pilot in the Olympic Winter Games of 2022." *Id.* ¶ 88. Plaintiffs' conclusory allegation that

633351, at *11–12. Accordingly, none of Plaintiffs' allegations of defamatory statements are timely and they fail to address these defects in their Amended Complaint.

With respect to the tortious interference claim, Plaintiffs allege in conclusory fashion that BSI Defendants "conspired and succeeded in[] contriving and perpetuating the false claims of theft and perjury in order to have Plaintiffs eliminated from the competition," which denied "economic benefits to Plaintiffs." Am. Compl. ¶ 92. Plaintiffs' tortious interference claim is merely derivative of the defamation claim and is subject to a one-year statute of limitations. *Jensen*, 2005 UT 81, ¶ 53; *Bates v. Utah Ass'n of Realtors*, 2013 UT App 34, ¶ 3, 397 P.3d 49. Therefore, the tortious interference claim is also untimely as pled.

### A. Plaintiffs' Alleged Facts Do Not Establish Actionable Defamation or Tortious Interference.

In addition to pleading untimely claims, Plaintiffs' Amended Complaint still fails to allege actionable defamation or tortious interference. Under Utah law, to state a claim for defamation, the plaintiff "must show that defendants published the statements concerning him, that the statements were false, defamatory and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage." *West v. Thomson Newspapers*, 872 P.2d 999, 1007–08 (Utah 1994). To succeed on a claim for tortious interference, "a plaintiff must demonstrate (1) the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff." *Eskamani v. Auto-Owners Ins. Co.*, 2020 UT App 137, ¶ 28, 476 P.3d 542 (quoting *Anderson Dev. Co. v. Tobias* 2005 UT 36, ¶ 20, 116 P.3d

---

alleged defamation is somehow "continuing"—which it apparently makes in an effort to evade the statute of limitations—is internally inconsistent with its own damages allegation that assumes defamation could *only* have occurred prior to 2022.

16

323). Plaintiffs fail to allege these elements beyond conclusory assertions.

First, Plaintiffs' defamation claims must be pled with particularity under federal law. *Total Quality Sys., Inc.*, 2024 WL 2396979, at *14 ("Federal courts have consistently interpreted Fed. R. Civ. P. 8(a) as requiring that defamation claims be pleaded with particularity to provide a defendant with fair notice." (cleaned up)). "A defendant is not required to parse through a pleading to deduct the basis of the allegations against them." *Id.* In contravention of this pleading standard, Plaintiffs never identify with particularity any false statement or who made it. The Complaint repeats generalities about "false claims of theft and lying" that somehow prevented Nicholls from "the economic opportunity to earn fame and celebrity by competing" on the Olympic Team. Am. Compl. ¶¶ 84, 88. But Plaintiffs never identify a specific publication by BSI Defendants of a specific statement Plaintiffs believe to be false. For this reason alone, Plaintiffs fail to allege actionable defamation, and the claim should be dismissed.

Second, while Plaintiffs' defamation claim lacks the requisite specificity, Plaintiffs allege enough to make clear that the claim is nonsensical. There was not and cannot be any tie between the alleged defamatory statements and Plaintiffs' alleged harm. The general basis for the claim appears to relate to statements to the effect that "Nicholls was a thief and liar." Am. Compl. ¶ 38. But as acknowledged by Plaintiffs, BSI Defendants—the same Defendants who made the alleged defamatory statements—alone decided whether Nicholls would be licensed and would make the Olympic Team. *See, e.g.*, Am. Compl. ¶¶ 46, 53, 65. Thus, the publication of these statements to third parties did not (and could not) inform the BSI Defendants' *own decision* regarding who made the Olympic Team, nor could it, by extension, deprive Plaintiff the "fame and celebrity" of competing in the Olympic games.

To the extent that Plaintiffs' defamation claim relies on unspecified "written statements" to the IBSF and the INOC, the claim fails for the same reasons. Again, Plaintiffs fail to identify any such statements, or who made them, with particularity. Further, the publication of the "written statements" BSI Defendants allegedly made to the tribunals would not affect BSI Defendants' *own decision* with respect to who would be licensed with BSI and who would make the Olympic Team. *See id.* Thus, even if Plaintiffs' vague allegations satisfied Rule 8(a), which they do not, Plaintiffs' alleged harm bears no causal relationship with BSI Defendants' alleged defamation.

Finally, to the extent Plaintiffs rely on the alleged defamatory statements as the conduct that interfered with Plaintiffs' alleged "business relations," the tortious interference claim fails for the same reasons above. The claim further fails because Plaintiffs have not alleged any facts identifying any "existing" or "potential economic" relationships with which BSI Defendants somehow interfered. *See Celtig, LLC v. Patey*, 347 F. Supp. 3d 976, 986 (D. Utah. 2018). Plaintiffs only make vague reference to "economic opportunity for marketing, sponsorship, and corporate/private charitable contributions," Am. Compl. ¶ 90, but Plaintiffs do not identify any third party from whom Plaintiffs would have somehow received "economic benefits" had it not been for Defendants' allegedly defamatory statements. *See generally* Am. Compl. Without alleging that BSI Defendants somehow interfered with "specific third-party relationships," Plaintiffs fail to state a plausible claim of tortious interference. *Allergy Res. Group, LLC v. Rez Candles Inc.*, 2022 WL 1004214, at *3, *12 (D. Utah April 4, 2022) (dismissing tortious interference claim at the Rule 12 stage where claimant failed to identify "specific third-party relationships").

For any of these reasons, Defendants respectfully request that the Court dismiss Plaintiffs' defamation and tortious interference claims with prejudice.

## CONCLUSION

For the foregoing reasons, and because Plaintiffs have now tried and failed twice to plead their claims, BSI Defendants respectfully request that the Court dismiss the Complaint and all claims against them with prejudice.

DATED this 7th day of November, 2024.

**MANNING CURTIS BRADSHAW
& BEDNAR PLLC**

/s/ Mitch M. Longson
Mitch M. Longson
Kendra M. Brown
*Attorneys for BSI Defendants*

## CERTIFICATE OF SERVICE

I certify that on November 7, 2024, a copy of the foregoing was electronically filed with the Clerk of the Court and served through e-filing to the following parties:

Jared C. Bowman
**ROSING DAVIDSON FROST**
136 Heber Ave., Suite 205
Park City, Utah 84060
Telephone: (435) 731-5451
bowman@rosingdavidson.com

Thomas J. Jones, Jr. (*pro hac vice*)
**THOMAS J. JONES, JR., P.C.**
410 Biden Street, Suite 301
Scranton, PA 18503
Telephone: (570) 342-9296
tjjoneslaw@gmail.com
*Attorneys for Plaintiffs*

Mark R. Gaylord
Tyler M. Hawkins
**BALLARD SPAHR LLP**
201 South Main Street, Suite 800
Salt Lake City, Utah 84111
Telephone: (801-531-3000)
gaylord@ballardspahr.com
hawkinst@ballardspahr.com
*Attorneys for Defendants Adam Jeremy Edelman,*
*Heath Spence, and Israel Bobsled Skeleton, LLC*

/s/ Lori Anderson