Mark R. Gaylord
Tyler M. Hawkins
Ballard Spahr LLP
One Utah Center, Suite 800
201 South Main Street
Salt Lake City, Utah 84111-2221
Telephone: 801.531.3000
Facsimile: 801.531.3001
gaylord@ballardspahr.com
hawkinst@ballardspahr.com

*Attorneys for Defendants Adam Jeremy Edelman,
Heath Spence, and Israel Bobsled Skeleton, LLC*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **DAVID NICHOLLS, ADAPTIVE BOBSLED & SPORTS ASSOCIATION, INC.,** | **RENEWED MOTION TO DISMISS** |
| **Plaintiff,** | |
| **vs.** | |
| | **Case No. 2:24-cv-00412-AMA-CMR** |
| **DAVID GREAVES, LARRY SIDNEY, ADAM JEREMY EDELMAN, HEATH SPENCE, BOBSLEIGH SKELETON ISRAEL, LLC, ISRAEL BOBSLED SKELETON, LLC,** | **Honorable Ann Marie McIff Allen**<br>**Magistrate Judge Cecilia M. Romero** |
| **Defendants.** | |

DMFIRM #414400960 v1

Defendants Adam Jeremy Edelman ("Edelman"), Heath Spence ("Spence"), and Israel Bobsled Skeleton, LLC, by and through undersigned counsel, hereby renew their motion to dismiss the claims against them in their entirety pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure. The Motion to Dismiss is attached hereto as Exhibit A.

**INTRODUCTION**

Plaintiff filed the Complaint in this action on June 7, 2024, and Movants moved to dismiss the claims against them on October 3, 2024 (the "Motion to Dismiss").[1]  The Complaint alleged three counts: RICO Conspiracy, Defamation, and Tortious Interference with Business Relations. Compl. ¶¶ 14-97. These claims each centered on Defendants' alleged roles in preventing Plaintiff David Nicholls from competing in the bobsled to qualify for the 2022 Olympics on behalf of Israel. *Id*. In the Motion to Dismiss, Movants explained that the Complaint should be dismissed because this Court lacks personal and subject matter jurisdiction, and even absent these deficiencies, principles of international comity warrant dismissal. Motion to Dismiss at 6-14. Movants further moved for dismissal on the basis that the Complaint failed to state a claim for which relief could be granted due to fatal deficiencies in each count. On October 28, 2024, Plaintiff filed an Amended Complaint. ECF Dkt. No. 33 (the "Amended Complaint"). The Amended Complaint is nearly identical to the original Complaint, except that it removed the RICO count, and added several conclusory, and functionally duplicative, allegations regarding the tortious interference claim. These allegations were pled solely against Defendants Greaves and Sidney. The Amended Complaint did not address the deficiencies that render this Court

---

[1] Movants were never properly served with the Complaint, and filed the Motion to Dismiss after counsel entered limited appearances for purposes of the motion. *See* ECF Dkt. Nos. 31-33.

without jurisdiction, nor did it resolve the fatal deficiencies in the defamation or tortious interference claims.

Because the Amended Complaint fails to make any material change addressing the deficiencies identified in the Motion to Dismiss as it relates to Edelman and Heath, the Court should consider and grant the motion. *See Peek v. Allbaugh*, No. CIV-16-1404-M, 2017 U.S. Dist. LEXIS215894, at *1, n.1 (W.D. Okla. June 12, 2017) (Where amended complaint was materially identical to the original complaint the court "determined the Amended Complaint did not moot the outstanding dispositive motions.")

**STATEMENT OF FACTS**

Movants hereby incorporate by reference the Statement of Facts set forth in the Motion to Dismiss. The only changes made by the Amended Complaint to the facts alleged in the Complaint are the removal of any allegations that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and new allegations that only Defendants Greaves and Sydney, not Edelman or Heath:

- "wrongfully and intentionally interfered with the ability of Nicholls and his Teammates to participate in the 2022 Olympic Winter Games by improper means contrary to the IBSF Statutes, Israel National Olympic Committee Rules and the Olympic Charter in that Defendants falsely engaged in dilatory conduct delaying the IBSF Athlete Appeal Process for Nicholls past the time for any National Team to participate and qualify for the 2022 Olympics[;]" Am. Compl. ¶ 93; and

- "wrongfully and intentionally interfered with the ability of Nicholls and his Teammates to participate in the 2022 Olympic Winter Games by improper means contrary to the IBSF Statutes, Israel National Olympic Committee Rules and the

Olympic Charter in that Defendants engaged in Slander and Liable [sic.] accusing Plaintiffs of stealing a Bobsled and Shipping Crate and corrupting the Athlete Statutory Appeal Process by reversing the Decision of the DRAD Committee Ruling Plaintiff Nicholls should be Licensed and permitted to participate in the IBSF NAC 2022 Olympic Qualifying Races in Whistler, Canada, Park City, Utah and Lake Placid, New York." Am. Compl. ¶ 94.

These two paragraphs are the only new allegations in the Amended Complaint, and together with the deletion of the RICO allegations, are the only substantive changes made between the Complaint and the Amended Complaint. These paragraphs specifically state that the allegations pertain to Greaves and Sydney. Am. Compl. ¶¶93-94. No new allegations are asserted against Movants.[2]

## ARGUMENT

The Motion to Dismiss fully sets forth the reasons for which the Amended Complaint should be dismissed. As such, in the interest of efficiency, the Court should consider the motion, and "construe [it] to apply to the [] Amended Complaint." *See Kansas v. Biden*, No. 24-1057-DDC-ADM, 2024 U.S. Dist. LEXIS 91708, at * (D. Kan. May 22, 2024) (construing motion to dismiss to apply to an amended complaint).

While an amended complaint typically moots a motion to dismiss, courts have discretion to apply a motion to dismiss against an amended complaint where the amended complaint fails to remedy the deficiencies identified in the motion, and is substantially similar to the original

---

[2] A PDF reflecting all changes made in the Amended Complaint is attached hereto as Exhibit B. The Amended Complaint also changes capitalization of certain phrases, and addresses several typographic errors in the Complaint. These non-substantive changes are not material to the Motion to Dismiss.

complaint. *Id. See also Peek*, 2017 U.S. Dist. LEXIS215894, at *1 ("The Amended Complaint is in all other respects identical to the original Complaint. Therefore, in the interest of judicial economy and to avoid unnecessary prejudice to Defendants, this Court determined the Amended Complaint did not moot the outstanding dispositive motions."); *Skistimas v. Hotworx Franchising LLC*, No. 3:23-cv-05974-DGE, 2024 U.S. Dist. LEXIS 123209, at *2-3 (W.D. Wash. July 12, 2024) ("[A] court may decline to deny as moot a motion to dismiss filed prior to an amended complaint when the amended complaint suffers from the same deficiencies as the original complaint. Additionally, when the amended complaint is substantially identical to the original complaint, the amended complaint will not moot a pending motion to dismiss.") (internal citations and quotations omitted); *Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021) ("[D]istrict courts may exercise their discretion and apply a pending motion to dismiss to portions of an amended complaint that are substantially identical to the original complaint.")

This is a clear-cut scenario where a motion to dismiss should be construed against an amended complaint. Here, despite having the benefit of Movants' Motion to Dismiss—and a separate motion to dismiss filed by other defendants in this action—Plaintiffs have failed to adequately allege facts from which it can be found that this Court has jurisdiction, or that they have stated a claim for which relief can be granted. In fact, the *only* new allegations Plaintiffs have made are specifically asserted against Defendants Sydney and Greaves, and are merely conclusory and vague repetitions of previously made allegations. *See* Am. Compl. ¶¶ 93-94. There are no new facts alleged regarding Movants, and the only change in the Amended Complaint that affects them is the removal of the RICO allegations. There is no reason that the Motion to Dismiss should be mooted.

Movants therefore hereby incorporate and renew the following sections of their Motion to

Dismiss: the entirety of Section I ("This Court lacks jurisdiction to adjudicate this matter"), Section II (A) ("Defamation"), and Section II (C) ("Tortious Interference with Business Relations"). On the basis of the arguments asserted therein, Plaintiffs' claims against Movants should be dismissed in their entirety.

## CONCLUSION

For the foregoing reasons, Defendants Edelman, Spence, and Israel Bobsled Skeleton, LLC respectfully request that this Court consider their Motion to Dismiss on the merits, and accordingly dismiss the Amended Complaint against them in its entirety.

DATED this 12th day of November 2024.

/s/ *Tyler M. Hawkins*
Mark R. Gaylord
Tyler M. Hawkins
Ballard Spahr LLP
*Attorneys for Defendants, Adam Jeremy Edelman,*
*Heath Spence, and Israel Bobsled Skeleton, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **RENEWED MOTION TO DISMISS** was served on the following this 12th day of November, 2024, in the manner set forth below:

[ X ] Electronic Filing

[  ] Hand Delivery

[  ] U.S. Mail, postage prepaid

[  ] E-mail:

Thomas J. Jones, Jr.
THOMAS J JONES JR PC
410 Biden St. Ste. 301
Scranton, PA 18503
*Attorneys for Plaintiffs, David Nicholls and Adaptive Bobsled & Sports Association, Inc.*

Jared C. Bowman
ROSING DAVIDSON FROST
136 Heber Ave Ste. 205
Park City, UT 84060
*Attorneys for Plaintiffs, David Nicholls and Adaptive Bobsled & Sports Association, Inc.*

Kendra M. Brown
MANNING CURTIS BRADSHAW & BEDNAR PLLC
201 S Main St  Ste 750
Salt Lake City, Ut 84111
*Attorneys for Defendants, David Greaves, Larry Sidney, and Bobsleigh Skeleton Israel, LLC*

Mitchell M. Longson
MANNING CURTIS BRADSHAW & BEDNAR PLLC
201 S Main St  Ste 750
Salt Lake City, Ut 84111
*Attorneys for Defendants, David Greaves, Larry Sidney, and Bobsleigh Skeleton Israel, LLC*

*/s/ Kylie Horrocks*

# EXHIBIT A

Mark R. Gaylord
Tyler M. Hawkins
Ballard Spahr LLP
One Utah Center, Suite 800
201 South Main Street
Salt Lake City, Utah 84111-2221
Telephone: 801.531.3000
Facsimile: 801.531.3001
gaylord@ballardspahr.com
hawkinst@ballardspahr.com

*Attorneys for Defendants Adam Jeremy Edelman,*
*Heath Spence, and Israel Bobsled Skeleton, LLC*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **DAVID NICHOLLS, ADAPTIVE BOBSLED & SPORTS ASSOCIATION, INC.,** | **MOTION TO DISMISS** |
| **Plaintiff,** | |
| **vs.** | **Case No. 2:24-cv-00412-AMA-CMR** |
| **DAVID GREAVES, LARRY SIDNEY, ADAM JEREMY EDELMAN, HEATH SPENCE, BOBSLEIGH SKELETON ISRAEL, LLC, ISRAEL BOBSLED SKELETON, LLC,** | **Honorable Ann Marie McIff Allen Magistrate Judge Cecilia M. Romero** |
| **Defendants.** | |

# **TABLE OF CONTENTS**

**Page**

I. This Court lacks jurisdiction to adjudicate this matter ........................................................ 6
    A. This Court lacks subject matter jurisdiction because IBSF permits appeals exclusively to the International Court of Sport ........................................................ 6
    B. This Court lacks personal jurisdiction over the defendants. ................................ 12
    C. This Court should decline to exercise jurisdiction because the dispute about selection of Israeli Olympic athletes is not appropriate for federal court .............................................................................................................. 14
II. Plaintiffs Fail to State a Claim ........................................................................................ 17
    A. Defamation ........................................................................................................ 17
    B. RICO ................................................................................................................. 18
        1. Plaintiffs have not sufficiently pled any acts of mail or wire fraud under Rule 9(b) ............................................................................ 19
        2. Plaintiffs have not Alleged Sufficient Acts to Constitute a Pattern ......... 21
    C. Tortious Interference with Business Relations ..................................................... 23

DMFIRM #413534639 v7

i

Defendants Adam Jeremy Edelman ("Edelman"), Heath Spence ("Spence"), and Israel Bobsled Skeleton, LLC, by and through undersigned counsel, hereby move to dismiss the claims against them in their entirety pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure.

## **INTRODUCTION**

This action was brought by an Israeli Olympic bobsledding hopeful, David Nicholls ("Nicholls"), who is disgruntled because the national governing body of his sport—defendant Bobsleigh Skeleton Israel, LLC ("BSI")—issued a sanction that prevented him from competing in qualifying races for the 2022 Winter Olympics on behalf of Israel. Nicholls appealed this sanction in November 2021 to the appeals tribunal of the International Bobsleigh & Skeleton Federation ("IBSF"), the international governing body of the sport. IBSF denied the immediate relief Nicholls sought to permit him to compete, and retained jurisdiction for the remaining issues. Nicholls never sought appellate review through the arbitration in the international Court of Arbitration for Sport that is available and indeed the exclusive avenue for appealing an IBSF decision. Instead, three years later, he has attempted to recast the issues in his IBSF petition as federal and state-law claims asserted in this action. As detailed herein, those claims are entirely without merit and should be dismissed for that reason alone. But even more importantly, this case—which ultimately centers on the qualification of Israeli athletes to compete on behalf of Israel in the Olympics—has no place in United States federal court, which lacks personal jurisdiction over the defendants and subject matter jurisdiction over the claims at issue.

In the Complaint, Nicholls nominally pleads claims for RICO, defamation, and tortious interference with business relations. In substance, however, Nicholls is seeking to impose liability upon defendants for BSI's decision to sanction him. Nicholls alleges—without any concrete facts to support the improbable theory—that defendants conspired to essentially fix the

outcome of Israel's trials for the 2022 Winter Olympics by ensuring that he could not compete. The only damages Nicholls alleges are his lost economic opportunities he claims would have been available to him had he qualified for the Olympics, and the expenses he incurred in attempting to campaign for the Olympics.

This is the wrong forum to litigate this dispute. First, this Court lacks subject matter jurisdiction. Nicholls already appealed BSI's decision to deny him a license through the IBSF appeals process, and per IBSF procedures (as well as terms applicable to all prospective IBSF and BSI competitors), Nicholls waived the right to appeal the IBSF tribunal's decision in any forum other than the CAS. The Court also lacks personal jurisdiction. None of the defendants reside or conduct regular activities in Utah, and the operative events occurred in Calgary, Canada. Even if the Court could justify exercising subject matter and personal jurisdiction, the discretionary doctrine of international comity warrants dismissal. This case deals with an Israeli governing body's determination of whether the alleged misconduct of an Israeli Olympic hopeful justified a bar on representing Israel in the Olympics. The United States has minimal, if any, interest in such a dispute.

Finally, even if the Court were to reach the merits of the claims, each claim contains fatal deficiencies justifying dismissal pursuant to Rule 12(b)(6). Plaintiffs' defamation claims are barred by the one-year statute of limitations, which expired in November 2022, at the latest. These claims are also subject to dismissal for failing to allege any defamatory statements that actually caused Plaintiffs' alleged harm. Plaintiffs' general and conclusory allegations of mail and wire fraud are also insufficient to state a claim for RICO, which not only requires alleging the circumstances surrounding fraudulent conduct with particularity under Federal Rule 9(b), but which also requires alleging a continuous pattern of criminal conduct that extends over more

DMFIRM #413534639 v7

3

than a few months—or threatens such continuity. The Complaint's vague assertions of mail and

wire fraud over the course of a three-month period satisfy neither requirement. Finally,

Plaintiffs' tortious interference claim is entirely derivative of their defamation and RICO claims;

the only purportedly tortious conduct alleged is the conduct alleged in the first two claims. Thus

for the same reason the defamation and RICO claims fail, the tortious interference claim fails.

The Court should dismiss the Complaint in its entirety for these independent reasons.

**STATEMENT OF FACTS[1]**

Plaintiff Nicholls is an Israeli citizen who sought to compete on behalf of Israel in

Olympic bobsledding in the 2022 Olympic Games. Compl. ¶ 10. Nicholls brought this action

after being sanctioned by the national governing body of bobsledding in Israel, BSI. The sanction

prevented him from competing in qualifying events for the 2022 Olympics. *Id.* ¶¶ 91-97.

BSI's sanction arose from a transaction between Nicholls and Spence. *Id.* ¶¶ 41-50.

During the course of its investigation, the BSI determined that Nicholls had not signed for the

2021-2022 season the BSI Athlete Agreement or the IBSF Code of Conduct. *Id.* Ex. K.

Ultimately, the BSI sanctioned Nicholls after it determined he had deceived the governing body

in connection with an investigation involving Nicholls' role in the transaction. *Id.* Ex. L.

Nicholls sought an emergency appeal of BSI's sanction to the IBSF, the international

governing body for Nicholls' sport. *Id.* ¶¶ 56, 58. Specifically, Nicholls sought "an emergency

hearing and a final order directing the BSI provide an IBSF driver's license to Plaintiff." *Id.* The

IBSF declined Nicholls' request for emergency relief but retained jurisdiction to consider other

issues raised by Nicholls. *See id.* at ¶ 76. In October 2022, Nicholls filed a complaint in Israeli

---

[1] For the purpose of this Motion, Edelman, Spence, and Israel Bobsled Skeleton, LLC accept
Plaintiffs' factual allegations (as opposed to legal conclusions) as true.

court in Tel Aviv against BSI, Greaves, Sydney, and the Olympic Committee of Israel seeking, *inter alia*, monetary relief for damages allegedly incurred as a result of BSI's decision not to issue a license to Nicholls, and Nicholls' resulting inability to compete in Olympic-qualifying events. *See* October 25, 2022 complaint, attached as Exhibit A.[2]

Plaintiffs filed the Complaint in this action on June 7, 2024, alleging RICO violations via mail and wire fraud, defamation, and tortious interference with business relations. *See generally,* Compl. In sum, the Complaint avers that the events that led to Nicholls' disqualification from qualifying competitions were the result of a contrived plan to (1) disparage Nicholls' character and (2) enable Edelman, rather than Nicholls, to qualify for the 2022 Olympics. *Id.* ¶¶ 38-39. Plaintiffs aver that Defendants conspired to prevent Nicholls from participating in qualifying races in order to "eliminate the only obstacle to the Edelman fast track to Olympic glory." *Id.* ¶ 38.

Plaintiffs plead a number of allegations which generally or nominally allege wire and mail fraud, or false statements. Specifically, the Complaint alleges:

- "From September 12, through October 6, 2021, all Defendants via phone, email, Facebook, and other social media fraudulently claimed Plaintiff Nicholls was a thief and a liar and had stolen a sled and shipping crate from another Israeli athlete, AJ Edelman." *Id.* ¶ 43.

- "The Defendants Greaves, Sidney, Edelman, Spence and others … continued to phone, email and Facebook messages [sic.] to others in a campaign to discredit Plaintiff Nicholls by known false statements he stole a bobsled and/or shipping crate. Specifically, Defendants Edelman and Spence contacted RJ Shannon, Track Manager of the Utah Olympic Park, to inform him Nicholls was storing the stolen property at the equipment storage bins at the Park City Olympic Park. Shannon then contacted Plaintiff Nicholls demanding he remove his stored stolen property." *Id.* ¶ 52.

- "On November 18, 2021, it was clear, Dave Nicholls, incomplete quadriplegic bobsled driver for Israel and his push athletes were denied the opportunity to

---

[2] Exhibit A contains an unofficial translation of the complaint, which was written and filed in Hebrew.

qualify for and compete in the Beijing 2022 Winter Olympic 4-man Bobsled Race as a result of the continuing conspiracy and conduct of wire and mail fraud by Defendants depriving Plaintiff, Nicholls, and the Plaintiffs' athlete pushers of the opportunity to be Olympians." *Id.* ¶ 77.

- "The acts of slander and libel via mail fraud and wire fraud from the enterprise, Bobsleigh Skeleton Israel, Defendants Greaves, Sidney, Spence and Edelman and his solely owned marketing company Defendant, Israel Bobsled Skeleton LLC, have continued through 2022 until the present day." *Id.* ¶ 84.

Notably, the Complaint lacks specifics regarding these allegedly fraudulent statements. It does not identify the date on which any such statement was made, nor does it provide direct quotes from oral communications, or cite to the allegedly fraudulent written communications— including the ones that were purportedly made publicly on social media.

## ARGUMENT

This case must be dismissed for two independently dispositive reasons: this Court lacks personal and subject matter jurisdiction, and Plaintiffs have failed to plead any claims for which relief may be granted.

### I.  This Court lacks jurisdiction to adjudicate this matter

Before considering the merits of a dispute, a federal court must determine that it has subject matter jurisdiction over the claims at issue and personal jurisdiction over the parties. *See Hankishiyev v. ARUP Labs.*, 732 Fed. Appx. 673, 677 (10th Cir. 2018); *XMission, L.C. v. PureHealth Rsch.*, 105 F. 4th 1300, 1307 (10th Cir. 2024). The Court here has neither.

#### A.  This Court lacks subject matter jurisdiction because IBSF permits appeals exclusively to the International Court of Sport

As a threshold matter, federal courts may not adjudicate disputes over which they lack subject matter jurisdiction. *See Hankishiyev*, 732 Fed. Appx. at 677. Subject matter jurisdiction is lacking here because Nicholls was required to bring any appeal of the IBSF decision against him to the Court of Arbitration for Sport ("CAS"). Nicholls failed to do so, and thereby failed to exhaust the remedies available to him and waived any right he may have had to seek relief in

DMFIRM #413534639 v7

6

federal court.

Where the law provides for dispute resolution through specified channels, such as administrative remedies, a plaintiff's failure to exhaust such remedies renders federal courts without subject matter jurisdiction. *See In re Precedent Health Ctr. Operations, LLC*, 392 Fed. Appx. 618, 623 (10th Cir. 2010) (affirming dismissal for lack of subject matter jurisdiction where "[Plaintiff's] only avenue for relief was through the administrative review process and there is no dispute that [Plaintiff] failed to exhaust administrative remedies"); *Tiernan v. IRS*, No. 2:22-cv-00534-TC-JCB, 2023 U.S. Dist. LEXIS 37269, at *2 (D. Utah Mar. 3, 2023) ("[Plaintiff] fails to carry her burden [of establishing subject matter jurisdiction] because her complaint fails to allege that she exhausted her administrative remedies[.]")

Here, as in *Tiernan*, Plaintiffs does not allege that Nicholls exhausted his administrative remedy. His failure to do so is fatal. Plaintiffs seek recourse for BSI's decision not to issue Nicholls an IBSF license to compete in the 2021-2022 season. This decision was reached by BSI through its established dispute resolution process, and Nicholls subsequently sought relief through the IBSF appeals procedure. Compl. ¶¶ 56-72. The IBSF tribunal denied Nicholls' motion for emergency relief and "retained jurisdiction over the appeal to consider other issues raised[.]" Compl. ¶ 76. Plaintiffs do not identify any final resolution of the IBSF procedure, nor do they allege that an appeal was taken from any decision issued by the IBSF.

As detailed by statutes promulgated by the IBSF (the "IBSF Statutes"), a copy of which is attached as Exhibit B, "[t]he IBSF is the 'supreme authority' in all matters relating to international Bobsleigh and Skeleton." *Id*. § 1.3. The IBSF cooperates with, *inter alia*, the International Olympic Committee ("IOC"). *Id*. § 1.4. One of the IBSF's purposes is "[t]o govern and regulate the sport at the international level, and to recognize National Federations to govern

and regulate the sport at a national level, in accordance with and subject to the IBSF's ultimate authority over the sport[.]" *Id.* § 3.13. These national federations, including BSI, are members of the IBSF. *Id.* §§ 5.1-5.3. *See* IBSF, The National Federations at a Glance (available at https://www.ibsf.org/en/inside-ibsf/who-we-are/national-federations) (last accessed September 6, 2024) (listing BSI as the national federation member for Israel). IBSF members such as BSI are required to "adopt and implement and enforce … regulations that are consistent with [the IBSF] Statutes and other IBSF regulations[.]" IBSF Statutes § 7.2.

The IBSF Statutes contain a mandatory dispute resolution process. Section 18.1 provides:

> Any dispute arising between Members, or between one or more Members and the IBSF (including any dispute as to sanctions imposed by the Executive Committee), or between the IBSF and any individual or entity that is a member of or affiliated to a Member (each, a Dispute), **shall be resolved exclusively by the means set out in this Article 18, to the exclusion of any other means. All of the aforementioned parties waive (to the fullest extent permitted by applicable law) any rights of recourse they might otherwise have to any court or other forum for resolution of such Disputes.**

*Id.* §18.1 (emphasis added). Pursuant to the IBSF Statutes, Disputes are to be referred to the IBSF Appeals Tribunal, whose decisions "**shall be final and binding on the parties, and may only be challenged by way of appeal to the Court of Arbitration for Sport in Lausanne, Switzerland (CAS)[.]**" *Id.* §§ 18.2-18.3 (emphasis added).

The procedural rules governing proceedings before the IBSF Appeals Tribunal also provide for appeals to be brought exclusively to the CAS. *See* IBSF, Appeals Tribunal Code, X.[3] Specifically, the rules provide:

> Any decision of the Tribunal … maybe appealed to the Court for Sport (CAS) under the CAS Code of Sports-Related Arbitration within twenty-one calendar days of the issuance of the Order[.] … **CAS shall have exclusive jurisdiction over**

---

[3] The Appeals Tribunal Code is available at https://www.ibsf.org/fileadmin/user_upload/Resources/Federation/Statutes/Appeals_Tribunal_Code_-_E_IBSF_2018.pdf (last accessed September 8, 2024).

**appeals from decision of the Tribunal, and no other arbitration, court, or legal body under any jurisdiction shall have authority to hear appeals.**

*Id.* (emphasis added).

In addition to the Statutes and the Appeals Tribunal Code, the IBSF also administers International Bobsleigh Rules, which govern the participation in IBSF competitions. IBSF, International Bobsleigh Rules 2023 ("IBSF Rules"). These Rules require that all athletes competing in IBSF-supervised events are registered by their national federation for an IBSF International license. "IBSF Rules", 8.4.[4] They further provide that by registering an athlete for a license, the national federation "verifies and confirms that the athlete … has signed a copy of the IBSF Athlete Code of Conduct." *Id.* The IBSF Athlete Code of Conduct contains a dispute resolution provision stating: "If a dispute arises between the IBSF and me [the athlete], or any third party involved in Bobsled or Skeleton I will use the appropriate IBSF appeal and dispute resolution channels, and **I acknowledge that ultimately Swiss law and CAS will be the final arbitrator of any dispute.**" IBSF Code of Conduct for Athletes, attached hereto as Exhibit C (emphasis added).[5]

It is thus made clear through multiple IBSF materials that any appeal of IBSF tribunal decisions may only be adjudicated through the Court of Arbitration for Sport, and that parties to IBSF proceedings waive any rights they otherwise have to seek relief in other jurisdictions.

---

[4] The IBSF Rules are available at https://www.ibsf.org/fileadmin/user_upload/Resources/Sports/Rules_Quotas/2023_International_Rules_BOBSLEIGH.pdf (last accessed September 6, 2024).

[5] Notably, Nicholls alleges that he was issued an IBSF License and competed in IBSF races from 2011 through 2021. Compl. ¶ 10. Nicholls therefore was required to sign the IBSF Code of Conduct, and is subject to its mandatory dispute resolution provision. *See* IBSF Code of Conduct for Athletes ("This Code of Conduct must be signed by the athlete in order to obtain an IBSF license and compete or train in IBSF events.") The Code of Conduct has no defined term and is therefore still in effect.

Nicholls voluntarily submitted to the IBSF tribunal by requesting that it take jurisdiction over his appeal of BSI's decision. He was therefore bound by these dispute resolution provisions, and may not now seek recourse for the same dispute in federal court.[6]

Though Plaintiffs have fashioned their allegations in this action as claims for defamation, tortious interference with business relations, and RICO violations, Plaintiffs are fundamentally seeking recourse for the decision made by BSI to disqualify Nicholls from Olympic-qualifying competitions. Federal courts have routinely rejected similar attempts at pleading around the exhaustion requirement or the preemption of mandatory arbitration by athletes and coaches subject to sanctions by Olympic authorities. For American athletes and coaches, disputes regarding eligibility for Olympic qualification and competition are governed by the Ted Stevens Act, formerly the Amateur Sports Act, which requires that all disputes be adjudicated by the United States Olympic Committee and therefore preempts state and federal court jurisdiction. *See Lee v. United States Taekwondo Union*, 331 F. Supp. 2d 1252, 1256 (D. Haw. 2004) (questions of athlete eligibility are "preempted by the Amateur Sports Act's grant of exclusive jurisdiction to the USOC over all matters pertaining to the United States participation in the Olympic Games"). Athletes and coaches have attempted on various occasions to plead around this preemption, and courts have consistently struck down these efforts where the gravamen of the claims are that the plaintiffs were denied eligibility for Olympic participation.

---

[6] In addition to having voluntarily submitted to the IBSF's jurisdiction for this specific dispute, Nicholls was already bound by the dispute resolution provisions because (1) he was required to sign the IBSF Code of Conduct in order to compete over the many years he competed, and (2) he could not have obtained the relief he sought—a license to race in IBSF competitions— without executing it. Nicholls would also have been required to execute the BSI Athlete Agreement in order to compete on behalf of BSI in any IBSF events. The BSI Athlete Agreement also provides for mandatory arbitration of disputes through the CAS. *See* BSI Athlete Agreement, attached as Exhibit D.

For example, in *Graham v. United States Anti-Doping Agency*, a track and field coach accused of providing performance enhancing drugs to athletes brought constitutional and tort claims against the United States Anti-Doping Agency arising from the agency's sanction banning him from Olympic coaching. No. 5:10-CV-194-F, 2011 U.S. Dist. LEXIS 34637, at *2-3 (E.D.N.C. Mar. 31, 2011). The Plaintiff alleged that the agency violated his constitutional rights via slander and by failing to provide a constitutionally sufficient hearing. *Id*. Despite this framing, the court found: "all of these claims are premised on challenging [Plaintiff's] eligibility. … In other words, **although [Plaintiff] has *labeled* his claims as violations under the Constitution and the state law of slander, his claim undoubtedly challenges his eligibility to participate as a coach to amateur Olympic athletes.**" *Id*. at *14 (emphasis added). The District of Hawaii held similarly in *Lee v. United States Taekwondo Union*, where a taekwondo coach was removed from the 2004 United States Olympic team, and filed suit in federal court challenging the removal as racially discriminatory. 331 F. Supp. 2d at 1254. There, the court recognized that the plaintiff's state-law claims "clearly challenge the eligibility requirements for the coach of the 2004 United States Olympic Taekwondo Team[,]" and the plaintiff therefore was required to exhaust remedies under the Amateur Sports Act. *Id*. at 1257 (breach of contract and negligence claims "preempted … because those claims sought to challenge the method by which the USOC determined the eligibility of athletes"). The District of West Virginia reached the same conclusion in *Barnes v. International Amateur Athletic Federation*, dismissing a complaint where the plaintiff failed to pursue the binding arbitration required by the USOC Constitution, and thus "render[ed] the court without subject matter jurisdiction over [Plaintiff's] claims." *Barnes v. Int'l Amateur Athletic Fed'n*, 862 F. Supp. 1537, 1546 (D.W.V. 1993). *See also Reynolds v. Athletics Congress of U.S.A.*, No. C-2-91-0003, 1991 U.S. Dist. LEXIS 21191,

at *11-12 (S.D. Ohio, Mar. 19, 1991) (athlete's failure to pursue arbitration constituted a failure to exhaust administrative remedies).

Jurisdiction is equally lacking here, where Plaintiffs' federal and state law claims are entirely dependent on losses allegedly incurred as a result of BSI's denial of Nicholls' license. Plaintiffs' alleged damages are entirely dependent on and directly flow from Nicholls' inability to compete in the Olympic qualifying events. For this reason independently, the Court should dismiss the Complaint.

**B.      This Court lacks personal jurisdiction over the defendants.**

The Court also lacks personal jurisdiction over the defendants, which independently justifies dismissal under Federal Rule 12(b)(2). *See OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1098 (10th Cir. 1998). To survive a motion to dismiss, plaintiffs must "make a *prima facie* showing of personal jurisdiction." *Id*. at 1091. Here, it is evident from the face of the complaint that personal jurisdiction is lacking.

"Personal jurisdiction is established by the laws of the forum state and must comport with constitutional due process." *Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can.*, 703 F.3d 488, 492 (10th Cir. 2012). Utah law permits courts to exercise jurisdiction "to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code Ann. § 78B-3-201(3); *XMission, L.C*, 105 F. 4th at 1307. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). Thus a court's "authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *XMission, L.C.*, 105 F. 4th at 1307-08

(quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)).

Personal jurisdiction can be established either as "general" or "specific" jurisdiction. *Xmission, L.C.*, 105 F. 4th at 1308. Where a defendant is subject to general jurisdiction, the court can hear any claim against that defendant, while specific jurisdiction only permits the court to exercise jurisdiction for suits that "arise out of or relate to the defendant's contacts with the forum." *Id*. Here, Plaintiffs have made no attempt to allege that this Court may exercise personal jurisdiction over Spence, Edelman, or Israel Bobsled Skeleton, LLC and in fact, it may not. First, none of them resides in Utah or has sufficient continuous contacts with the state to justify general jurisdiction. Spence is an Australian citizen who resides in Calgary, Canada; Edelman is a dual Israeli and American citizen who resides in New York; and the entity is allegedly a New York corporation with no alleged presence in Utah. Compl. ¶¶ 5-6, 8. There are no allegations that would justify general jurisdiction over Spence, Edelman, or Israel Bobsled Skeleton, LLC.

Plaintiffs, therefore, must demonstrate that this Court has specific jurisdiction over defendants, which requires that defendants' "contacts with the forum must make being sued there foreseeable so that the defendant could 'reasonably anticipate' the suit[,]" and "[t]he litigation must result from alleged injuries that arise out of or relate to those activities." *Fireman's Fund Ins. Co.*,703 F.3d at 493. This requires a showing "(i) that the defendant must have 'purposefully directed its activities at residents in the forum state,' and (ii) that 'the plaintiff's injuries must arise out of [the] defendant's forum-related activities.'" *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017). "Mere foreseeability of causing injury in another state is insufficient to establish purposeful direction." *Id. at 905*. Rather, the defendant must have "deliberately [] engaged in significant activities within a State" such that it has "manifestly [] availed [itself] of the privilege of conducting business there." *Id*. Thus merely interacting with a

person in the forum state is not sufficient to establish minimum contacts if the defendant's interaction with the state is the "result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person." *Rayware Ltd. v. New Creations Brands*, No. 2:23-cv-00355-DBB-DAO, 2024 U.S. Dist. LEXIS 75794, at *7 (D. Utah Apr. 24, 2024).

The Complaint clearly demonstrates that specific jurisdiction is lacking. There are no allegations that Spence ever even entered Utah, and the only time Edelman is alleged to have done so was to compete in a qualifying race wholly unrelated to the claims at issue. Compl. ¶ 78. Likewise, there are no allegations of any conduct in Utah by Israel Bobsled Skeleton, LLC. *See* Compl. Dismissal is warranted where, like here, a complaint fails to identify any basis for personal jurisdiction. *See Gould v. Wyse*, No. 22-2075, 2023 U.S. App. LEXIS 20140, at *11 (10th Cir. Aug. 4, 2023); *Johnson v. Nw. Dist. of the Wesleyan Church*, No. 1:23-cv-00870-SKC-KAS, 2024 U.S. Dist. LEXIS 64876, at *7 (D. Colo. Apr. 9, 2024).

> **C. This Court should decline to exercise jurisdiction because the dispute about selection of Israeli Olympic athletes is not appropriate for federal court**

Even if this Court had personal and subject matter jurisdiction to hear this dispute, the prudential doctrine of international comity counsels dismissal. United States federal court is not the proper venue for litigating this dispute about the procedure for disqualifying an athlete from representing Israel in Olympic qualifying races. International comity provides that when a matter is already subject to adjudication in a competent foreign forum, federal courts should decline to exercise jurisdiction. This is the case here, where Nicholls already submitted the dispute to the IBSF and had the CAS appeal available for review of any adverse decision. Moreover, even if CAS appeal were insufficient, this dispute has also already been submitted to the jurisdiction of an Israeli court through Nicholls' 2022 complaint.

Comity reflects "the recognition which one nation allows within its territory to the

legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or other persons who are under the protection of its laws." *HSBC Bank (Uruguay) S.A. v. Seaboard Corp.*, No. 21-cv-2435-DDC-TJJ, 2022 U.S. Dist. LEXIS 173216, at *43 (D. Kan. Sept. 23, 2022) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)). "When a federal court is presented with a case within its jurisdiction but which involves an issue within the competence of an administrative body, in an independent proceeding, comity and avoidance of conflict as well as perhaps other considerations suggest propriety in referring the issue." *Sunflower Elec. Coop., Inc. v. Kansas Power & Light Co.*, 603 F.2d 791, 795 (10th Cir. 1979).

These principles are essential here, where the Complaint challenges a foreign nation's Olympic selection process and alleges claims already asserted in and subject to the adjudication of an international authority, as well as the CAS. The doctrine of comity counsels dismissal where litigation invokes claims and issues that have been properly submitted to another jurisdiction in a parallel action. *HSBC Bank (Uruguay)*, 2022 U.S. Dist. LEXIS 173216, at *43-45. Key guiding principles of international comity include "proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." *Id.* Courts evaluating whether a separate action is sufficiently related to justify dismissal under comity principles should consider:

> the similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction.

*Id.* at *45.[7] These factors overwhelmingly support dismissal here. The individuals party to the

---

[7] While the Tenth Circuit has not provided direct guidance on the doctrine of international comity, the Kansas District Court provided a thorough analysis of the doctrine in other federal

IBSF and Israeli actions are substantially the same as the parties to this action, and the issues are likewise parallel: in each, Nicholls complains that the statements and actions of defendants through the course of the BSI disciplinary and appeals process were improper efforts to prevent him from participating in Olympic qualifying races. Importantly, neither the claims nor the parties need be identical in order for actions to be parallel; it is sufficient for the parties and the "issues involved in each" to be "substantially similar." *Nat'l Union Fire Ins. Co.*, 115 F. Supp. 2d at 1247.

Moreover, Nicholls cannot reasonably contend he would be prejudiced by being required to follow the IBSF appeals procedure when he filed the IBSF appeals himself and requested that the IBSF exercise jurisdiction. Indeed, Plaintiffs have made no assertions that the IBSF procedure, including the available appellate relief through the CAS, was insufficient. The same is true of the Israeli action, where Nicholls also chose the forum. Further, this dispute is intimately connected to the IBSF—whose sole purpose is to administer and govern international bobsleigh competition, including Olympic eligibility, in partnership with national federations. Similarly, Israel has a substantial interest in this dispute given that it arises from the selection of its own Olympic team. By contrast, this dispute has little to no connection to the United States. Nicholls and Edelman were seeking to compete on behalf of Israel, and the events that gave rise to this dispute occurred in Calgary, Canada. Lastly, the temporal sequence of filing favors deference to both the IBSF and Israeli proceedings; Nicholls filed the IBSF action in November 2021, nearly

---

circuits and determined that the Tenth Circuit would follow the Second Circuit's approach, as outlined herein. *HSBC Bank (Uruguay) S.A.*, 2022 U.S. Dist. LEXIS 173216, at *48. These same factors were applied by the Colorado District Court in *Nat'l Union Fire Ins. Co. v. Kozeny*, and reaffirmed in *Fuel Automation Station v. Frac Shack. See Nat'l Union Fire Ins. Co. v. Kozeny*, 115 F. Supp. 2d 1243, 1247 (D. Colo. 2000); *Fuel Automation Station v. Frac Shack*, No. 20-cv-01492-STV, 2021 U.S. Dist. LEXIS 247555, at *38 n.19 (D. Colo. Mar. 12, 2021).

three years before filing the Complaint in this action, and he filed the Israeli action in October

2022, two years before this Complaint. Compl. ¶ 58. This dispute does not belong in United

States court. Thus, even if there were personal and subject matter jurisdiction, this case  should

be dismissed pursuant to principles of international comity. *See Armstrong v. Tygart*, 886 F.

Supp. 2d 572, 590 (W.D. Tex. 2012) (citing "considerations of international comity" in dismissal

of Lance Armstrong's action for an injunction relating to anti-doping dispute, and stating: "[t]he

court declines to circumvent the longstanding system of international arbitration in Olympic

sports by unilaterally enjoining that system's operation"); *In re Urethane Antitrust Litig.* 683 F.

Supp. 2d 1214, 1223 (D. Kan. 2010); *EMA Garp Fund, L.P. v. Banro Corp.*, 783 Fed. Appx. 82,

84-85 (2d Cir. 2019).

## II.        Plaintiffs Fail to State a Claim

Even if the Court had jurisdiction, the Complaint must be dismissed for failure to state a

claim for which relief can be granted. Here, each of the substantive counts in the complaint

suffers from at least one fatal deficiency. As a result, even if the court reaches the merits of the

Complaint, the Complaint should still be dismissed in its entirety.

### A.        Defamation

Plaintiffs allege Defendants defamed them (though notably, Plaintiffs fail to identify any

specific defamatory statements). This claim must be dismissed as untimely. A statute of

limitations defense is "appropriately resolved on a Rule 12(b) motion when the dates given in the

complaint make clear that the right sued upon has been extinguished." *Herrera v. City of*

*Espanola*, 32 F.4th 980, 991 (10th Cir. 2022). The statute of limitations for libel and slander

claims under Utah law is one year. Utah Code Ann. § 78B-2-302(4). Here, the allegedly

defamatory statements attributed to Edelman and Spence were made before November 2021. *See*

Compl. ¶¶ 43, 52 (alleging statements made by "all Defendants" from September 12 through

October 6, 2021, and that Defendants, including Edelman and Spence, continued to make false statements prior to Nicholls' IBSF appeal in November 2021). These claims are clearly time-barred and must be dismissed with prejudice. *See Radloff-Francis v. Wyo. Med. Ctr., Inc.* 524 Fed. Appx. 411, 413 (10th Cir. 2013); *Scott v. Wingate Wilderness Therapy, LLC*, No. ,4:18-CV-0002-DN, 2019 U.S. Dist. LEXIS 42956, at *10 (D. Utah Mar. 14, 2019)

Nor can the Complaint's single allegation of defamation (pled as "slander and libel") after 2021 salvage Plaintiffs' untimely claim. Plaintiffs allege in conclusory fashion: "The acts of slander and libel via mail fraud and wire fraud form [sic.] the enterprise … have continued through 2022 until the present day." Compl. ¶ 84. This conclusory allegation fails to meet the standard set by *Twombly*, as it merely states the legal claims without any supporting facts. Moreover, even if this allegation was adequately pled, it could not form the basis of a defamation claim because it did not cause the harm alleged in the Complaint. In order to succeed on a defamation claim, Plaintiffs must prove, *inter alia*, "that the [allegedly defamatory] statements resulted in damages." *Davidson v. Baird*, 438 P.3d 928, 936 (Utah Ct. App. 2019). Here, the damages Plaintiffs seek to recover in this action all purportedly resulted from BSI's decision to deny Nicholls a license for the 2021-2022 season. No statements made after Nicholls had already missed the opportunity to qualify for the 2022 Olympics can possibly have caused this harm. Hence, the Court should dismiss the defamation claim as time-barred.

## B.    RICO

Plaintiffs' RICO claim is equally deficient, as Plaintiffs have failed to satisfy the elements of RICO. First, to establish a RICO violation, a plaintiff must allege that defendants committed more than one "racketeering" or "predicate" act, as defined by statute. 18 U.S.C. § 1962(a). In addition, a civil RICO plaintiff must also prove that the defendant engaged in "a *pattern* of racketeering activity." 18 U.S.C. § 1962(a) (emphasis added). The Supreme Court has

instructed that this requires proof of two or more predicate criminal acts "that were related and that amounted to, or threatened the likelihood of, continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237 (1989). The allegations in the Complaint, which vaguely describe conduct that took place over the course of only a few months and directed at a single purported victim, fail to meet this standard.

        1.      <u>Plaintiffs have not sufficiently pled any acts of mail or wire fraud under Rule 9(b)</u>

"The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based … Rule 9(b) also safeguards defendant's reputation and goodwill from improvident charges of wrongdoing." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992). To satisfy Rule 9(b)'s heightened pleading standard, a plaintiff must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Mighty Siren LLC v. Bates*, No. 2023 U.S. Dist. LEXIS 137267, at *3 (W.D. Okla. June 8, 2023) (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000)) (internal quotations omitted). Allegations relying on "labels and conclusions ... devoid of factual enhancement" are insufficient to satisfy Rule 9(b). *Jensen v. Am. Lender*, 425 Fed. Appx. 761, 763 (10th Cir. 2011) (affirming dismissal for failure to state fraud with particularity).

Plaintiffs' mail and wire fraud allegations fall far short of this standard. Plaintiffs generally allege that entire categories of communications were mail and wire fraud, without identifying any specific communications. Plaintiffs aver that defendants "fraudulently claimed Plaintiff Nicholls was a thief and liar[,]" through "phone, email, Facebook, and other social media" over an approximately three-week period. Compl. ¶ 42. Plaintiffs also aver that "private phone calls, mailed correspondence and emails by the Defendants, Greaves (Canada) and Sidney

(Arizona), with the DRAD Special Select Committee were acts of wire and mail fraud, providing false information that BSI had previously 'suspended' Nicholls, to the Committee for the purpose of rendering <u>its decision</u> to ban Nicholls," and that defendants "continued to phone, email and Facebook messages [sic.] others in a campaign to discredit Plaintiff Nicholls by known false statements," including an alleged communication (on an unspecified date) to the track manager of the Utah Olympic Park regarding storage of stolen property, *Id.* ¶¶ 51-52. Lastly, Plaintiffs allege that defendants "have continued to discredit Plaintiff Nicholls in a pattern of making false and defamatory statements in public or private phone and written correspondence" regarding the incident with the Calgary Police. *Id*. ¶ 90. These allegations fail to plead "the who, what, when, where, and how" required by Rule 9(b). *U.S. ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018). *See also Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter Day Saints*, 665 F. Supp. 3d 1263, 1287 (D. Utah 2023) (dismissing complaint for failure to plead fraud with particularity).

In *George v. Urban Settlement Services*, the Tenth Circuit explained that allegations that lack information such as the date on which an allegedly fraudulent communication occurred, the identity of all parties to the communication, or the specific content of the communications, cannot satisfy Rule 9(b). 833 F.3d 1242, 1255-56 (10th Cir. 2016). Here, Plaintiffs' allegations identify only the general nature of the alleged statements, but not when any such statements were made, or to whom, by whom, or through what channel or platform they were made. While several of the allegations contain *some* of this information, none of them contain all of it. This lack of specificity renders the allegations insufficient to state a claim for mail or wire fraud. Without particular facts supporting Plaintiffs' allegations, the Complaint does not allege more than a suspicion of communications Nichols believes constitute mail and wire fraud—which is

not enough to survive a motion to dismiss. *See Cracraft v. Utah Valley Univ.*, No. 2:19-cv-397-TC, 2020 U.S. Dist. LEXIS 193017, at *23 (D. Utah Oct. 19, 2020) ("Suspicion and theories do not satisfy Rule 9(b), particularly in the civil RICO context.")

The failure to satisfy Rule 9(b) is not a trivial infraction in a case of this nature. Plaintiffs have alleged that Defendants—an Olympic athlete, Olympic coach, and the officers of the national governing body for the sport of bobsledding in Israel—essentially fixed the Olympic qualifiers for the 2022 games. Plaintiffs support this claim with general, conclusory allegations based apparently on Plaintiffs' theories and suspicions. Defendants are entitled to know the alleged underlying facts so that they can defend themselves against Plaintiffs' claims. The Complaint fails to satisfy that high standard, and it should be dismissed on that basis.

### 2. Plaintiffs have not Alleged Sufficient Acts to Constitute a Pattern

A plaintiff pursuing a civil RICO claim must prove, among other things, that defendants engaged in "a *pattern* of racketeering activity." 18 U.S.C. § 1962(a) (emphasis added). That requires proof at least two predicate acts—i.e., separate instances of mail or wire fraud—that "relate to each other, and amount to a threat of continued racketeering activity." *Johnson v. Heath*, 56 F.4th 851, 858 (10th Cir. 2022) (citing *H.J., Inc.*, 492 U.S. at 239). Moreover, a plaintiff must prove that *each defendant* engaged in two predicate acts. *Just Us Realtors, LLC v. Nudge, LLC*, No. 2:18-cv-00128-TC-CMR, 2019 U.S. Dist. LEXIS 102853, at *17 (D. Utah June 19, 2019) ("To sustain a claim under 18 U.S.C. §1962(c), a plaintiff must plead that each defendant engaged in a pattern of racketeering activity by committing at least two predicate acts.") (dismissing civil RICO claim for failure to plead pattern of racketeering activity).

The pattern requirement "was specifically intended to forestall RICO's use against isolated or sporadic criminal activity, and to prevent RICO from becoming a surrogate for garden variety fraud actions property brought under state law." *Perseverance Med, LLC v. Trujillo*, No.

18-cv-02719-CMA-KMT, 2019 U.S. Dist. LEXIS 177795, at *18 (D. Colo. Aug. 15, 2019) (internal quotation marks omitted)); *Hansen v. Native Am. Refinery Co.*, No. 2:06cv00109, 2007 U.S. Dist. LEXIS 27013, at *14 (D. Utah Apr. 10, 2007) ("This requirement of continuity, and RICO's pattern requirement more broadly, are designed to ensure that RICO is only employed in the long-term criminal situations envisioned by Congress, rather than in garden-variety fraud cases.") Consequently, "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Kolar v. Preferred Real Estate Invs., Inc.*, 361 Fed. Appx. 354, 363 (3d Cir. 2010).

Here, as detailed above, Plaintiffs have not pleaded with particularity *any* instances of mail or wire fraud, much less a pattern of such instances. Nonetheless, even if Plaintiffs' allegations did not fail to meet the 9(b) standard, Plaintiffs' RICO claim would still fail because they have not pleaded continuity, i.e., that Defendants engaged in two predicate acts that amount to or pose a threat of *continued criminal activity*. To establish continuity, a plaintiff must either demonstrate "closed-ended" continuity ("a closed period of repeated conduct") or open-ended continuity ("past conduct that by its nature projects into the future with a threat of repetition"). *H.J., Inc.*, 492 U.S. at 241.

Closed-ended continuity requires "a series of related predicates extending over a substantial period of time," meaning more than a few months. *Id.* at 242 (finding "[p]redicate acts extending over a few weeks or months" insufficient). Here, the allegedly fraudulent acts occurred over the course of three months—from September through November 2021. This is too short to satisfy the standard set by the Supreme Court for closed-ended continuity.

Plaintiffs likewise have failed to plead open-ended continuity, which is based on a tacit or

DMFIRM #413534639 v7

22

overt threat that defendants will continue to engage in future criminal activity. "Open-ended continuity requires a clear threat of future criminal conduct related to past criminal conduct." *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1273 (10th Cir. 1989). Here, Plaintiffs have alleged only a single scheme to prevent Nicholls from competing in the 2022 Olympic Games. Plaintiffs have not identified any other alleged victims, nor have they identified any specific acts that have occurred since 2021 that suggest the alleged criminal conduct has continued. At most, Plaintiffs aver generally that defendants "have continued to discredit Plaintiff Nicholls" and stated that he "will never receive an IBSF license" to represent Israel. Compl ¶ 90. This statement alone, without any concrete facts to support it, does not clearly create a threat of criminal conduct.

Further, courts consistently caution that continuity is rarely established where the plaintiff is the only identified victim. *See, e.g., Erikson*, *v. Farmers Group, Inc.*, 151 Fed. App'x 672, 667-78 (10th Cir. 2005) ("A single scheme to accomplish one discrete goal, directed at a finite group of individuals, with no potential to extend to other persons or entities, rarely will suffice to establish a threat of continuing activity."). Here, Plaintiffs plead conduct relating exclusively to Nicholls and allege no facts indicating the conduct complained of has been directed at any other victims.

In sum, Plaintiffs have failed to allege a pattern of predicate acts because (1) they have failed to sufficiently allege *any* predicate acts, and (2) they have not pleaded the continued criminal conduct necessary for a civil RICO claim. Plaintiffs' RICO claims should be dismissed.

### C. Tortious Interference with Business Relations

Finally, Plaintiffs' tortious interference claim fails along with their defamation and RICO claims. In support of their tortious interference count, Plaintiffs allege that (1) Defendants "recognized the economic opportunity" for benefits that could potentially flow to Edelman's

DMFIRM #413534639 v7

team and the BSI officers, (2) Plaintiffs could only raise sufficient funds to support Nicholls'

campaign, and (3) Defendants "conspired and succeeded in[] contriving and perpetuating the

false claims of theft and perjury" to prevent Nicholls from competing in the qualifying events

and thereby "denying the economic benefits to Plaintiffs and divert[ing] instead to the

Defendants." Compl. ¶¶ 95-97. There are no additional facts alleged specific to the tortious

interference claim, which rests entirely on the facts averred in support of the RICO and

defamation claims. As detailed above, Plaintiffs have not sufficiently alleged any fraudulent acts

on the part of Edelman or Spence, nor have Plaintiffs alleged any defamatory statements made

by Edelman or Spence that caused the damages averred in the Complaint. Moreover, because

Plaintiffs' tortious interference claims depend on the allegedly defamatory conduct, they are

time-barred pursuant to the statute of limitations for defamation. *See Diamond Ranch Academy,*

*Inc. v. Filer*, No. 2:14-CV-751-TC, 2016 U.S. Dist. LEXIS 19210, at *56 (D. Utah 2016)

(tortious interference claim based on the "same operative facts that would support a defamation

action" is "subject to the one-year statute of limitations"). As a result, Plaintiffs' tortious

interference claim must be dismissed as well.

## **CONCLUSION**

For the foregoing reasons, Defendants Edelman, Spence, and Israel Bobsled Skeleton,

LLC respectfully request that this Court dismiss the Complaint against them in its entirety.

DATED this 3rd day of October 2024.

/s/ Mark R. Gaylord
Mark R. Gaylord
Tyler M. Hawkins
Ballard Spahr LLP
*Attorneys for Defendants, Adam Jeremy Edelman,*
*Heath Spence, and Israel Bobsled Skeleton, LLC*

DMFIRM #413534639 v7

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing **MOTION TO DISMISS**

was served on the following this 3rd day of October 2024, in the manner set forth below:


[ X ] Electronic Filing

[  ] Hand Delivery

[  ] U.S. Mail, postage prepaid

[  ] E-mail:

> Thomas J. Jones, Jr.
> THOMAS J JONES JR PC
> 410 Biden St. Ste. 301
> Scranton, PA 18503
> *Attorneys for Plaintiffs, David Nicholls and Adaptive Bobsled & Sports Association, Inc.*
>
> Jared C. Bowman
> ROSING DAVIDSON FROST
> 136 Heber Ave Ste. 205
> Park City, UT 84060
> *Attorneys for Plaintiffs, David Nicholls and Adaptive Bobsled & Sports Association, Inc.*
>
> Kendra M. Brown
> MANNING CURTIS BRADSHAW & BEDNAR PLLC
> 201 S Main St  Ste 750
> Salt Lake City, Ut 84111
> *Attorneys for Defendants, David Greaves, Larry Sidney, and Bobsleigh Skeleton Israel, LLC*
>
> Mitchell M. Longson
> MANNING CURTIS BRADSHAW & BEDNAR PLLC
> 201 S Main St  Ste 750
> Salt Lake City, Ut 84111
> *Attorneys for Defendants, David Greaves, Larry Sidney, and Bobsleigh Skeleton Israel, LLC*


/s/ *Mark R. Gaylord*

# EXHIBIT A

בית המשפט המחוזי בתל אביב – יפו
ניקולס נ' האיגוד הישראלי לסקלטון מזחלות ע.ר. 580622298 ואח'
ת"א 41311-10-22
סוג עניין: תביעה כספית אחרת
תאריך פתיחה: 25 אוקטובר 2022
רמת חיסיון: פתוח לציבור

בית המשפט המחוזי
בתל אביב

**מוגש ביום 25.10.22**

**בעניין שבין:**

**דייויד ניקולס, ת.ז. 1069611**345
מלון ספורט, מכון וינגייט נתניה
טלפון: 03-9676656  מייל: bobsledgold@gmail.com
ע"י ב"כ עו"ד רז בן ארצי מ.ר. 53633
מרח' הנחושת 3, תל אביב-יפו
טלפון: 03-9676656  פקס: 03-6963213
דואר אלקט': raz@razlegal.com

**התובע**



‫- נגד -‬

1. **האיגוד הישראלי לסקלטון מזחלות ע.ר. 580622298**
רח' בית הלל 131, בית הלל
2. **דוד יוסף גריבס ת.ז. 324664556**
רח' רקפות 38, קריית טבעון
3. **לארי סידני ת.ז.(לא ידוע)**
מרח' (לא ידוע)
4. **הועד האולימפי הישראלי ע"ר 580040707**
מרח' שטרית 6 תל אביב- יפו
טל: 03-6498385  מייל: nocil@nocil.co.il

**הנתבעים**

מהות התובענה – כספית, צו עשה

סכום התביעה : **600,000 ₪**

– הסעדים המבוקשים –

1. צו עשה לנתבעת 1, ולפיו תפנה באופן מיידי אל IBSF ותודיע כי התובע, ישתתף בתחרויות מזחלות בעונה הקרובה (2022-2023) בשם מדינת ישראל. כמו כן, תאפשר לתובע להירשם לכל תחרות רלוונטית בגביע צפון אמריקה (NAC), גביע אירופה, וגביע העולם, אשר הם עומדים בקריטריונים להשתתפות.

2. צו עשה לנתבעת 1, ולפיו תאפשר באופן מיידי לתובע לחתחרות בעונה הקרובה של תחרויות המזחלות בשם מדינת ישראל, על כל הכרוך בכך.

3. צו עשה לנתבעת 4 ולפיו תורה לנתבעת 1 לבצע את הנדרש ממנה בסעיפים 1-2 לעיל, ותוודא את הביצוע.

4. סעד כספי כנגד כל הנתבעים לפיצוי התובע בסך **600,000 ₪** בגין נזקים שנגרמו לו.

אגרה שיש לשלם : 15,000 ₪ [לפי סעיף 8 לתוספת לתקנות בתי המשפט (אגרות), תשס"ז-2007]

לא קיים הליך משפטי נוסף בין הצדדים

1

הזמנה לדין

הואיל והתובע דייוויד ניקולס הגיש כתב תביעה זה נגדך, אתה מוזמן להגיש כתב הגנה בתוך 60 ימים מיום שהומצאת לך הזמנה זו.

לתשומת ליבך, אם לא תגיש כתב הגנה אזי לפי תקנה 130 לתקנות סדר הדין האזרחי, התשע"ט-2018, תהיה לתובע הזכות לקבל פסק דין שלא בפניך.

## כתב תביעה

### כללי

התובע מתכבד בזאת להגיש לבית המשפט הנכבד את כתב התביעה.

התובע יהיה מיוצג על ידי הח"מ, כמפורט בכותרת, ותטען כמפורט להלן.

כל הטענות בכתב תביעה זה נטענות במצטבר ו/או לחילופין ו/או על דרך ההשלמה, הכול על פי הקשר הדברים והדבקם.

### חלק שני- תמצית הטענות

#### הצדדים:

1. מר דיווייד ניקולס (להלן: "ניקולס"), טייס, מייסד וקפטן הקבוצה של נבחרת ישראל במזחלות. ניקולס הוא ספורטאי המזחלת הראשון מזה למעלה מעשרים שנה שהתחרה משך 5 שנים תחת דגל ישראל, וייצג אותה בכבוד.

2. ניקולס הוא אמריקאי/ ישראלי שעלה לארץ בשנת 2017 כעולה חדש. גר בנתניה והתאמן מחוץ לעונה במכון וינגייט. הרעיון "לעשות עלייה" היה רעיון עליו חשב שנים רבות. כנכד של קורבנות שואה, לחיות, להתחרות למען ישראל היו חלום חייו. יצוין כי ניקולס הוא נכה, משותק הרתוק לכיסא גלגלים, ולמרות זאת מתחרה בספורט המזחלות כנגד ספורטאים בריאים.

3. לפני כחמש שנים פגש ניקולס את דיווייד גריבס שהזמין אותו להתחרות עבור ישראל בתור טייס המזחלות הראשון שלה מזה עשרים שנה. ניקולס וגריבס ניהלו דיון בדבר רצונו של ניקולס להתחרות במשחקים האולימפיים בפיונגצ'אנג (2018), אבל גריבס טען שהדיבור כבר מאוחר, ולכן הוסכם ביניהם להשיג את תנאי ההשתתפות לאולימפיאדת החורף בבייג'ינג 2022. גריבס וסידני, מנהלי הנתבעת 1, הכניסו את קבוצת ניקולס לתחרויות רבות במסגרת צפון אמריקה וגביע אירופה, על מנת לאמן ולהכשיר את הקבוצה לתחרות אליפות העולם והאולימפיאדה.

אמנם, ניקולס היה מאוד גאה, שמח וחש כבוד גדול לייצג את ישראל עם סמל מגן הדוד על המדים בתחרויות הבינלאומיות. עם זאת, הופתע ניקולס במהירות מהיעדר תמיכת הנתבעת 1, והיה ברור שהנתבעים 3-1 ידעו מעט מאוד על מזחלות, מכיוון שהם ניהלו רק אתלטי שלד בעבר. ניקולס התחרה בענף המתפתח של מזחלת אדם אחד, אך המשיך את הכשרתו כאחד הטייסים היושבים היחידים בעולם שקיבלו רישיון להתחרות בענף מזחלות שני אנשים. לארי סידני ודיווייד גריבס מ-BSI הכניסו אותו למספר מרוצי גביע צפון אמריקה (NAC) שהתחרו

2

לצד ספורטאים בעלי גוף. הכללים אפשרו לו להיכנס למזחלת בתור הטייס, לפני ששאר הספורטאים המתחרים התחילו לדחוף את המזחלת.

4. משנת 2017 ועד היום, הייתה לישראל נבחרת ותוכנית מזחלות. זו הייתה התוכנית של ניקולס והצוות שלו. בשנת 2018/19 זכו להיות נבחרת המזחלות הראשונה של ישראל שהגיעה לפודיום והשיגה את המקום ה-6 בענף מזחלות 4 אנשים בגביע צפון אמריקה בפארק סיטי, יוטה ארה"ב במסלול הפארק האולימפי, כאשר ניקולס הוא הטייס.

5. ניקולס ארגן, גייס, מימן, צייד, ניהל ותפעל את הצוות של קבוצת צוות ניקולס ב-4-3 השנים האחרונות, והוציא במהלך 4 השנים האחרונות למעלה מ-USD$500,000 במסע לקראת השתתפות באולימפיאדה, עבור אימונים ותחרויות.

6. בענה שעברה, התקציב היה כ-$128,000 USD (פחות משנים קודמות, היות ונמנע מהצוות להתאמן כראוי). ניקולס מימן את כל חברי הצוות והספורטאים של הקבוצה בנסיעות, טיסות, ארוחות, מלונות, רכבים שכורים, דמי מרוץ, מזחלות בוב, רצים ומדים, דמי אימון – כמעט הכל בעצמו, ועל חשבונו, ובסיוע מזערי על ידי מממנים חיצוניים, הוועד האולימפי ו/או BSI.

7. עד לשנה שעברה, צוות ניקולס הייתה הקבוצה היחידה שהתאמנה, התחרתה וייצגה את ישראל בכל תחרות.

8. נכון לעכשיו, צוות ניקולס הוא עדיין הקבוצה הישראלית היחידה הכשירה להשתתף בתחרות גביע העולם בצוות מזחלות של 4 איש.

9. ניקולס זכה עבור ישראל **במדליות הזהב, הכסף והארד** הראשונות שלה בספורט (במסגרת ספורט פאראלימפי) והיה הראשון לייצג את ישראל ולהתחרות באליפות העולם בשנת 2019 שנערכה בוויסלר, קנדה. ניקולס והקבוצה היו הראשונים אי פעם שהיו כשירים להתחרות בשנה שאינה אולימפית, בתחרות גביע העולם של IBSF בשנת 2019 בוויסלר, קנדה, במסלולים הטכניים והמהירים בעולם. **ניקולס והקבוצה נותרו עד היום היחידים שייצגו את מדינת ישראל בפורום הזה.**

10. צוות ניקולס הייתה גם הקבוצה הראשונה שהגיעה לפודיום בספורט בשנת 2020 בקבוצת 4 איש.

11. ניקולס ידוע ומוכר בעולם ובקהילה הספורטיבית הבכירה כחלוץ בספורט זה לבעלי מוגבלויות, ועדיין טייס המזחלות הראשון והיחיד בעולם, הכשיר למרוץ כמשותק יושב, בצוות של 2 ו-4 אנשים בריאים. הוא קיבל הסמכה זו מה-IBSF, מכיוון שהוא עוסק בספורט במשך 18 שנים והיה גורם מרכזי בפתיחת הספורט בפני חיילים משוחררים, קטועי גפיים וספורטאים משתקים.

12. הנתבעת 1, האיגוד הישראלי לסקלטון מזחלות (לעיל ולהלן: "BSI") היא **עמותה רשומה בישראל** ופועלת בארה"ב כגוף c-3501 ללא מטרות רווח. BSI מנוהל על ידי שניים: הנתבע 2, מר דיוויד גריבס כמייסד והנשיא שלה במשך 20 השנים האחרונות, והנתבע 3, מר לארי סידני (ספורטאי עבר בספורט סקלטון, המתחרה כיום בנבחרת הקרלינג האולימפית הלאומית של ישראל). הנתבעת 1 אימצה את **התקנון המצוי.**

העתק דו"ח רשם העמותות של הנתבעת 1 מצ"ב כ**נספח 1**

3

13. הגוף המנהל הבינלאומי של הספורט ידוע בשם International Bobsleigh and Skeleton Federation (להלן: "IBSF"), שמכיר, משום מה, באיגוד הישראלי בשני ענפי ספורט, סקלטון ומזחלות (הנתבעת 1), הידוע גם בשם Bobsleigh Skeleton Israel (לעיל ולהלן: "BSI") כגוף המנהל הלאומי של הספורט הישראלי -National Governing Body- NGB. החדגש על "**משום מה**", נעשה היות ול-BSI אין כל ניסיון בספורט המזחלות. למר לארי סידני יש ניסיון מה בספורט הסקלטון, אבל אף אחד מהמנהלים או דירקטורים לא התחרה מעולם בספורט זה. על כן, לאף אחד ב BSI אין כל ניסיון בתחרות, אימון, ניהול או בהבנת הלוגיסטיקה בענף ספורט זה.

14. BSI מציג עצמו כחלק מהוועד האולימפי הישראלי, ועל מסמכים מטעמו מתנוסס, במקביל לסמל של BSI, גם הסמל של הוועד האולימפי הישראלי. רק לדוגמה, על הסכם הספורטאי אותו מפרסמת BSI יש לוגו ועד אולימפי.

העתק הסכם הספורטאי אותו מפרסמת BSI מצ"ב כ**נספח 2**

15. כאמור, הנתבעת 1 היא הגוף הלאומי המנהל (NGB) לספורט סקלטון מזחלות ומוכר ככזה על ידי הוועד האולימפי בישראל, איגוד הסקלטון מזחלות הבינלאומי (IBSF), מחלקת הספורט העילי וכל הגופים האחרים המעורבים בניהול הספורט. כתוצאה מהברה זו של הועד האולימפי הישראלי, BSI היא הישות היחידה המוסמכת לבקש להנפיק רישיונות IBSF הדרושים להכשרה, ולהתחרות בספורט זה בכל מקום בעולם.

16. ברי כי אף קבוצה אינה יכולה להשתתף או לייצג את ישראל כמשלחת ישראלית או נבחרת ישראלית, אלא אם כן מקבלת אישור מ-BSI וזו מנפיקה לה את רישיונות ה-IBSF.

17. הנתבעת 4 הינה עמותה רשומה בישראל, אשר תפקידה הרשמי הוא לטפח בישראל את הרעיונות אשר לשמם נוסדו ונערכים המשחקים האולימפיים הבינלאומיים, ולייצג את כל מוסדות הספורט בישראל בפני הועד האולימפי הבינלאומי.
העתק דו"ח רשם העמותות של הנתבעת 4 מצ"ב כ**נספח 3**

**העובדות:**

18. בשנה שעברה מר א. גייי. אדלמן - AJ Adam Edelman (להלן: "**אדלמן**") (המתחרה הישראלי האולימפי הראשון וקודם ספורטאי סקלטון) החליט שאינו מרוצה מהביצועים של ישראל בספורט, והחליט להקים קבוצת מזחלות בוב נוספת עם 4 ספורטאים. יותר מפעם אחת הוא ניסה לצוד את חברי הצוות של ניקולס, כולל, אך לא רק, לשחד אותם לעזוב את הצוות ולעבור אליו תמורת 1500$ לחודש. הוא גם השמיע בפני חברי הקבוצה הערות מזלזלות ומפלות, בעניין המוגבלות של ניקולס ואמר להם "דייוויד מנסה להעפיל לאולימפיאדה, זה כמו טניסאי בלי ידיים שמנסה להגיע לווימבלדון או לחותר בלי ידיים שמנסה להגיע לאולימפיאדת החתירה".

19. למרות אזהרות וסנקציות קודמות, אדלמן המשיך להציק ולשלול את ההישגים של ניקולס ושל הקבוצה. BSI היה מודע להפרות אלו ואחרות של קוד ההתנהגות והאתיקה, וסירב לבצע כל פעולה נוספת שתמנע את ההתנהגות הזו.

4

20. בכל מקרה, BSI **הבהירה שהם תומכים בצוות אדלמן ולא בצוות ניקולס**, למרות שניקולס הוא הטייס המנוסה יותר, עם ניסיון של 17 שנה ומזחלות וציוד מהשורה הראשונה, ואילו צוות אדלמן לא הציג כל הישגים.

21. התובע משער, בהיעדר כל הסבר הגיוני אחר, כי הבחירה של ISB בצוות אדלמן, נובע משיקולים זרים, יתכן ומדובר בקבלת תמורה כלשהי עבור הכרה זו.

22. ל-BSI אין מושג או הבנה של מה שנדרש כדי להפעיל נבחרת מזחלות לאומית. כך גם לא לוועד האולימפית הישראלי.

**<u>סמכות בית המשפט הנכבד</u>**

23. לבית משפט נכבד זה הסמכות **העניינית** על פי הסעדים המבוקשים, והסמכות **המקומית** לדון בתובענה זו לפי כתובתה של הנתבעת 4.

## <u>חלק שלישי- פירוט הטענות</u>

24. התובע חזר וביקש, משך תקופה ארוכה, הן מ- BSI והן מהוועד האולימפי הישראלי, לקבל את חוקת ו/או תקנון ו/או מסמכי ההתאגדות של ISB. עד להגשת כתב תביעה זה, לא התקבל דבר, היות וכל הבקשות זכו להתעלמות.

25. התברר כי BSI אימצה את התקנון המצוי.
**העתק התקנון המצוי אותו אימצה הנתבעת מצ"ב כ<u>נספח 4</u>.**

26. היות ומדובר בתקנון המצוי, אין כל התייחסות למוסדות שיפוט פנימי. על כן, ולמרות היות הנתבעת 1 עמותה בתחום הספורט, ולמרות ש**חוק הספורט, תשמ"ח-1988** מטיל עליה לקבוע הליכי שיפוט, אין כאלה בתקנון הנתבעת. ועל כן לבית משפט נכבד זה סמכות לדון בתביעה.

27. נוכל בקלות לקבוע שהאגודה אינה פועלת לפי או מכבדת גם את התקנון המצוי, ומפרה את עקרונותיו.

28. למרות שלכאורה, רשומים מספר גורמים המנהלים את הנתבעת 1 (ועל פי המסמכים המופיעים במשרד המשפטים), המציאות היא, שבפועל היא מנוהלת על ידי רק אחד, נשיא האגודה - הוא הנתבע 2, על פיו יישק דבר. אלא, שמר גריבס מפעיל את "התאחדות הספורט הלאומית" הזו כאילו היא מועדון פרטי, בניגוד לפדרציה לאומית לספורט מזחלות, כפי שראוי היה.

29. ISB הפרה את התקנון המצוי אותו אימצה, בין היתר, בהפרת סעיף 3 בו - פקיעת חברות- סעיף 3(א)(3)- "בהוצאתו מן העמותה". הסעיף מפרט את הסיבות בעטיין ניתן להוציא חבר מהעמותה. סעיף 3(ג) קובע- **"לא יציע הועד לאספה הכללית להוציא חבר מן העמותה אלא לאחר שנתן לו הזדמנות נאותה להשמיע טענותיו לפניו, ולא יציע מהטעמים האמורים בתקנת משנה (ב)(1), (2) או (3) אלא לאחר שהתרה בחבר ונתן לו זמן סביר לתיקון המעוות"**. התובעים יטענו כי לא ניתנה להם כל הזדמנות נאותה להשמיע טענות עמדתם, או לתקן את "המעוות", לכאורה. יתרה מכך, לא פנו אליהם בכל טענה כי הם אינם עומדים בתקנות.

אמנם, ולמען הגילוי הנאות נציין, כי הנתבעת 1 שלחה ביום 17.3.22 מכתב התראה לתובע, ובו טענות נגדו על הכפשתה. לתובעים לא ברור באם מדובר בטענות שקריות, בכוונת מכוון, או פשוט בטעות. בכל מקרה, המכתב נענה על ידי התובע, שהסביר שהטענות פשוט אינן נכונות.

5

מכתב התשובה מדבר בעד עצמו, וכלל לא ברור האם המכתב מיום 17.3.22 היווה את הוצאת התובע מחברותו באיגוד.

המכתב מהנתבעת 1 מיום 17.3.22, ומכתב התשובה של התובע מיום 1.6.22 מצ"ב כ**נספח 5**

30. הנתבעת פועלת בניגוד מוחלט לתקנון שאימצה. התובע יוכיח כי הנתבעים הפרו את התנאים, המדיניות והכללים שלהם:

   30.1     במהלך הזמן שהתובע היה חבר באגודה 2017-2022 (הפדרציה הלאומית), מעולם לא הייתה כל אסיפה כללית.

   30.2     מאחר שמעולם לא התקיימה "אסיפה כללית", מעולם לא היו תקנות, כללים או החלטות שהופצו לחבריה באספה הכללית.

   30.3     מעולם לא נמסרו "יעדים", הצהרת מטרה, תקנון, כללים או סעיפים לחברים.

   30.4     במקרה זה, הנתבעים (חברי הוועדה והמנהלים) נקטו בפעולות ישירות, ספציפיות וזדוניות כדי לפגוע ולגרום נזק נפשי, פיזי וכלכלי בלתי הפיך לניקולס (ספורטאי אולימפי לאומי נכה) ולצוות הספורטאים שלו. חברי העמותה ללא הליך תקין, הצעות נדרשות, הודעה ופגישה באספה הכללית.

   30.5     הנתבעים, ובמיוחד הנשיא דיוויד גריבס והמזכיר לארי סידני הפרו את הזכויות והחברות של ניקולס וחברי הצוות שלו, מכיוון שלא פעלו לפי נהלי ספר החוקים של האגודה כאשר מנעו מהם את זכויותיהם להליך הוגן בניסיון לגרש את ניקולס והצוות שלו.

   30.6     ניקולס והצוות שלו לא קיבלו שום הודעה בכתב מהאגודה או הזדמנות לרפא כל עוול בו חטאו, לכאורה, לפני תוכניותיה למנוע מניקולס וצוותו תוך הפרה ברורה של ההליך התקין, זכויות ניקולס וספר החוקים של ההתאחדות. למעשה, כאשר הוקמה ועדה עצמאית (DRAD) כדי לחקור עוולות לכאורה, זה היה ההפך. ועדת "DRAD" קבעה שלא הייתה הפרה מצד ניקולס או מי מחברי הצוות שלו.

31. ניקולס וצוותו השקיעו זמן, מאמץ, אנרגיה וכסף רבים בהכנות לאירוע אימון טרום אולימפי היות והם היו הצוות הישראלי היחיד שהיה כשיר להשתתף באולימפיאדה בבייג'ינג, סין. הם תכננו להשתתף באירוע באוקטובר 2021. ניקולס והצוות שלו התקשו מאוד, ונאלצו להוציא הוצאות גדולות כדי להשיג ויזה סינית. התהליך דרש שעות עבודה רבות, בקשות וניירת בירוקרטית סבוכה. היו גם בעיות לוגיסטיות איומות בגלל מגיפת הקורונה, מכיוון שרק חברת תעופה אחת טסה מצפון אמריקה או מישראל לסין. ניקולס בילה שעות אינסופיות בארגון הובלת המזחלות מצפון אמריקה לסין. עם זאת, ללא שום אסיפה כללית או שימוע או בירור בפני ועדה כלשהי, דיוויד גריבס אמר לניקולס ולצוות שלו שהם לא יכולים להשתתף, והוא לא יבקש רישיונות IBSF עבורו או עבור הצוות שלו.

זו הייתה מכה הרסנית לניקולס ולצוותו, וניצול בוטה של סמכות ושיקול דעת והפרה של האמנה האולימפית של הועד האולימפי הישראלי ושל זכויות הספורטאים להתחרות. לגריבס ולסידני פשוט לא היה אכפת. הם נקטו פעולה זו בהתבסס על שמועות ומידע מהיתי ספנס (המאמן של קבוצת אדלמן, המתחרה של ניקולס) וחבר אישי של גריבס, ללא שום שימוע או החלטה של ועדה מוסמכת או בית משפט, שפגעו קשות בניקולס וצוותו ובסיכוייים להתאמן, להתחרות ולנצח עבור מדינת ישראל! היתי סיפר לגריבס שניקולס גנב מזחלת ומנשא למזחלת, דבר שהוכח מאוחר יותר כהכפשה והשמצה לא נכונים, ותו לא. אבל, גריבס ירה תחילה וסימן

6

את המטרה לאחר מכן, ואפילו לא חקר או בדק לפני שנקט בפעולות מזיקות כאלה נגד ניקולס וצוותו. ניקולס ביצע למעלה מ-100 הזמנות שונות של חברות תעופה עם הודעות דוא"ל רבות לוועדה המארגנת ולשגרירות האולימפית של סין בנוגע ללוגיסטיקה אחרת עבור העברות לנמל תעופה ומזחלות ולינה - הכל לשווא! פעולות גריבס היו אכזריות, זדוניות, הרסניות וללא הכשר והפרה את ספר חוקי ההתאחדות, הליך הוגן וזכויות הספורטאים להתחרות.

32. ניקולס וצוותו היו אמורים להתאמן, להשתתף ולהתחרות, בראש ובראשונה במרוצי הסמכה בוויסלר, קולומביה הבריטית, קנדה בנובמבר 2021 בגביע NAC IBSF North America. דייוויד גריבס ולארי סידני (BSI) ידעו שניקולס והצוות שלו כבר הכינו תוכניות וסידורים לוגיסטיים להתאמן למרוץ שם. חבר צוות ניקולס כבר הסיע את המזחלות על פני ארצות הברית (חמישה ימים נסיעה) מלייק פלסיד, ניו יורק, ארה"ב לפארק סיטי, הפארק האולימפי ביוטה, ארה"ב ולאחר מכן המשיך לוויסלר קנדה, שם פגש את ניקולס ושאר הצוות. שוב, וללא הודעה מוקדמת, כינוס האספה הכללית, הצבעה או שימוע, גריבס וסידני שוב סירבו לבקש רישיונות מ-IBSF בשם ניקולס והצוות שלו שכבר היו שם וגרמו לנזק נפשי, פיזי, רגשי ופיזי נוסף. על ידי אי הכללה של ניקולס וצוותו, נבחרת AJ Edelman יכולה להיות בטוחה שתזכה לרישיונות עבור כל מרוצי ההסמכה.

בשלב זה, גריבס וסידני (BSI) הזמינו את ניקולס לערער על החלטתם באמצעות תהליך הערעור לכאורה של BSI (שאינו מצוי בספר כללים כלשהו, חוקים או תקנות). יותר מפעם אחת, גריבס וסידני - באופן שקרי ובמודע, תוך הצגה בזדון בפני ניקולס והצוות שלו שקיים הליך ערעור, כאשר אין כזה! הם הזמינו את ניקולס להגיש ערעור לוועד האולימפי הישראלי. גריבס וסידני ו-BSI גם הציגו בפני כל החברים, באופן שקרי לחלוטין, כי קיימת ועדת ערר לחברי ספורטאים בהסכם הספורטאי של BSI. רבים מספורטאי ניקולס אינם קוראים אנגלית ולכן ביקשו התובעים שהסכם הספורטאי יתורגם לעברית, מה שקרה רק חודשים לאחר מכן. אלא, שגריבס, סידני ו-BSI נקטו בפעולות אלו **לפני שנחתם** הסכם ספורטאי כלשהו.

33. ניקולס רכש מזחלת וארגז משלוח (עריסה) משומש מהיתי ספנס בשנת 2019. בדיעבד התברר, כי מר ספנסר הוא המאמן של של מר אדלמן, וחבר קרוב של מר גריבס. תמורת הרכישה שולמה במלואה, אבל ניקולס מעולם לא קיבל את הארגז.
עותק של הקבלה המציג את התשלום במלואו מצ"ב כ**נספח 6**

34. BSI, שניזון מדבריו המסיתים של אדלמן, החליט שניקולס גנב, ומבלי לערוך שימוע כנדרש, מנע בשל כך מהקבוצה להתחרות, תוך הפרת התקנון המצוי.

35. ביום 27.9.21 הגישה וועדת הבדיקה של BSI דו"ח, שלא נמסר לתובע, והמליצה על סנקציה נגד התובע- השהיה ומניעה מקבלת אישור ל- IBSF להתחרות בעונת 2022-2021.

36. חבר קבוצת ניקולס, מר דיוויד קורץ הכין, בהמלצת BSI, ערעור שהוגש לוועדת הספורט ההישגי של הועד האולימפי הישראלי, לבטל את החלטה שהתקבלה על ידי BSI המונעת מהקבוצה את היכולת להתחרות בעונת החורף האולימפית של 2021-2020.
העתק הערעור שהכין קורץ מצ"ב כ**נספח 7**

37. הדו"ח של ועדת הבדיקה של BSI, שלא נמסר לתובע, יצר המתנה של 19 ימים (בין התאריכים 13.11-26.10), שכמובן עלתה לניקולס ממון רב, תשלום לבית מלון, מזון, דלק, שינוע המזחלות

7

והציוד, אימונים וכו' לכל הקבוצה. ההמתנה הזו, בדיעבד, התבררה לניקולס כהמתנת שווא, שלא הייתה לה כל תכלית.

בדיעבד התברר, כי כל תקופת ההמתנה בוויסלר קולומביה הבריטית קנדה, בת 19 הימים, בהמתנה לכאורה ל"ועדת הערעור" היה בזבוז זמן מוחלט, פשוט שקר של BSI- לערעור שמעולם לא קרה, ולא יכול היה לקרות. BSI טענה שחברי הקבוצה יכולים לערער בפני הוועד האולימפי הישראלי, אבל האחרון טען שאין בכלל הליך כזה. BSI שיקרו לקבוצה והציגו מצג שווא שקיימת וועדה, בעוד במציאות לא הייתה. הועד האולימפי הישראלי טען כי אין לו כל סמכות לבצע ערעורים.

מצ"ב מכתבו של מנכ"ל הנתבעת 4 מיום 1.11.21 ומיום 13.7.22, **כנספח 8**

שניים מאנשי הקבוצה, אור דרור ועדי דגני, עזבו את הצוות בגלל המצב האבסורדי שנוצר, והיות ולא עמדו בכך מבחינה רגשית.

38. BSI גורמת לאפליה והטיה נגד ספורטאי נכה, מכיוון שסירבה להנפיק לניקולס ולכל חברי הקבוצה רישיונות IBSF, בהעדיפה ספורטאים בריאים, למרות שדווקא זה הנכה בעל הישגים טובים בהרבה. אפליה זו מנעה מקבוצת ניקולס להתחרות בעונה הקודמת במרוצי המוקדמות האולימפיים בבייג'ינג - תהליך שהתחלו בו בעונה הקודמת והיו בדרך למוקדמות.

39. ניקולס פנה אל BSI בבקשה רשמית להפיק עבור קבוצת ניקולס אישור ל־IBSF על מנת שתוכל להשתתף בתחרויות העונה הקרובה.

העתק המכתב לבקשת אישור IBSF מצ"ב **כנספח 9**

40. בתגובה לכך, קיבל ניקולס במענה "מכתב שחרור" מ־BSI המופנה אל IBSF מיום 18.7.22. באותו מכתב, החתום בידי הנתבעים 2-3, מאשרת הנתבעת 1 את שחרור ניקולס מהארגון של נתבעת 1, וכי היחסים ביניהם הגיעו לסיום. אמנם, "באדיבותה", מסכימה הנתבעת 1 כי ככל וניקולס יחפוץ לייצג מדינה אחרת, ולא את מדינת ישראל, לא תמנע זאת ממנו. אלא שניקולס לא ביקש להשתחרר, היה ועודנו מעוניין בהחלט לייצג את מדינת ישראל, והוא וקבוצתו הם בעלי הסיכוי היחיד של מדינת ישראל לייצוג בכבוד בספורט אולימפי זה.

העתק "מכתב השחרור" מצ"ב **כנספח 10**

41. תשובתו של ניקולס מיום 20.7.22 מבהירה זאת לחלוטין. היות והדברים מדברים בעד עצמם, נביא מחלק דברי ניקולס שכתב, בין היתר, כך: **"אתה לא יכול פשוט למחוק חמש שנים של עבודה קשה, מדליות, פודיומים, אימון, הישגים אישיים וקבוצתיים, מטרות, הקרבה, גיוס כספים, נותני חסות, דם יזע ודמעות במשיכת העט שלך. לאף אחד אין סמכות כזו וזו לא המטרה של אף NGB. אתה עשוי להאמין שאתה יכול להיות שופט, חבר מושבעים ותליין כאשר התנגדת ודחית ועדת חקירה עצמאית בעונה שעברה, מה שגרם לי ולנבחרת ישראל ניקולס לנזק נפשי, פיזי, רגשי וכלכלי בלתי הפיך. אבל, זה לא עובד ככה. לא אתה, (BSI), או הועד האולימפי הישראלי, מימנתם את הצוות שלנו, שילמתם עבור המאמנים שלנו, שילמתם עבור הנסיעות שלנו, שילמתם עבור הציוד שלנו, שילמתם עבור האוכל שלנו, שילמתם עבור ההסעות שלנו, שילמתם עבור המדים שלנו, השתתפתם בתכנות שלנו או גיוס עובדים, השתתפתם בצוות ובהצלחה האישית שלנו, שילמתם עבור הביטוח שלנו, שילמתם עבור המזחלות שלנו, שילמתם עבור הרופאים או הטיפול הרפואי שלנו, או סיפקם את התמיכה המצופה מכל פדרציה לגיטימית.**

8

חברינו בוועד האולימפי הישראלי מציעים לנו לפעול לפי החוקים והתקנון של BSI כדי לפתור כל בעיה. עם זאת, ברור שאין תקנון כזה. למעשה, ביקשנו ממך אותם בעונה שעברה ולא קיבלנו כלום. סעיף 5.4.1.2 של חוקי העזר של IBSF מחייב את כל הפדרציות החברות להגיש ולתחזק סט של חוקים וחוקי עזר כתנאי לחברות. ביקשנו גם מ-IBSF עותק של חוקי BSI והם השיבו משהו כמו 'לא היה להם אותם וליצור קשר ישירות עם ISB'. בכל הכבוד, ISB לוקה בחסר על פי חוק IBSF. ללא מסמך ארגוני בסיסי שכזה הוא גורם נזק, אי בהירות ובלבול לספורטאים החברים בו. המסמך היחיד שאנו מקבלים (מתחננים אליו בעברית) הזכיר איזו ועדת 'ערעורים' ונוהל במסגרת הוועד האולימפי הישראלי. זה היה עוד מצג שווא ברור שכן הוועד האולימפי הישראלי ממשיך לטעון 'אין ועדה כזו, ואין להם שום סמכות שיפוט על BSI בעניינים אלה'. ברור שאתה מפעיל את ISB כמועדון אישי בניגוד לפדרציה לאומית, המבצע מניפולציות בתחרות באופן שרירותי תוך הפרה של אמנת ה-IOC לפי גחמתך, בניגוד לכיבוד כל כלל של הליך הוגן, חוק עזר ותחרות בספורט. ההטיה והאפליה שלך כלפי טייס משותק יושב וצוות ספורטאים ותיקים בצה"ל עם פוסט טראומה לעומת צוות בעל גוף מלא היו בוטים וניכרים כשהעלמתם עין מההתנהגות המטרידה, ההצקה המפלה והמתעתעת שלהם. מכיוון שאתה ו-(BSI) מפרים באופן ברור את זכויות הספורטאים, הבאנו את פעולותיך העצמאיות והלא מורשות לתשומת לבו של הוועד האולימפי הישראלי לצורך פעולה ובדיקה. ייעצנו גם לנציגי הספורטאים של IBSF בהתאם. לאחרונה הושטנו את ידנו בידידות לטובת הספורטיביות והפדרציה שלנו במאמץ לפתור כל בעיה בדרכי שלום, אבל אתם מסרבים. מר גריבס, זו לא הפדרציה שלך, אלא הפדרציה שלנו. למעשה, כספורטאים אנו מאמינים שזה לטובת הספורט, הצוות והפדרציה שלנו שאתה ולארי תתפטר מיד. נא לא להציג מצג שווא של הצוות שלנו או הרצונות של הצוות שלנו מבלי לתקשר איתנו או להשתתף בהליך תקין כלשהו תוך הפרה של זכויות הספורטאים שלנו להתחרות. מכתב צוות לעקוב".

העתק התשובה מיום 20.7.22 מצ"ב כ**נספח 11**

42. ברי כי הוצאת ניקולס גם מחוונה הקרובה, תמנע ממנו להתחרות ולהשיג את תנאי הכניסה לאולימפיאדת החורף הבאה, ותשלול ממנו את החלום האולימפי. הדבר גם ימנע ממדינת ישראל את הסיכוי היחיד הריאלי להתחרות בענף האולימפי הזה, עם סיכוי ממשי למדליה אולימפית.

<u>הנתבעים 3-2 אחראים לנזקי התובע באופן אישי.</u>

43. הנתבעים 3-2 הם המושכים בחוטים בנתבעת 1. הם שהיו בקשר רציף עם התובע, הם שמנעו ממנו באופן אישי להתחרות, וגרמו לנזקים. יובהר כי התביעה נגדם מוגשת **באופן אישי**, ולא כאורגנים בנתבעת 1.

44. הנתבעים 3-2 החליטו שלא לאפשר לתובע להתחרות, על בסיס שמועות זדוניות שאינן נכונות, לא טרחו לברר את הטענות לעומקן, ולשמוע את תגובת התובע. כל זאת, ממניעים זרים, ככל הנראה תמורה כספית.

45. בכך, פעלו הנתבעים 3-2 בשרירות לב, תוך התעלמות בוטה מנזקי התובעים הנגרמים ממעשיהם. הנתבעים 3-2 פעלו הן כגוף המאשים, הן כגוף השופט והן כגוף המבצע.

46. בכך, **במקרה הטוב** התרשלו הנתבעים 3-2, במקרה **הגרוע**, **והיותר סביר**, פעלו בזדון נגד התובע, תוך שהם גורמים נזקים בלתי הפיכים.

9

הנתבעת 4

47. הנתבעת 1 משתמשת בלוגו של הנתבעת 4, הועד האולימפי הישראלי, ומציגה אותו על מסמכיה.

48. גם הנתבעת 4 עצמה, מחשיבה את הנתבעת 1 כחלק בלתי נפרד ממנה.

49. כעת, הועד האולימפי הישראלי מנסה למשוך ידו מ-BSI. כך, מכתב התי"מ מיום 4.7.22 אל מנכ"ל הנתבעת 4 מר גילי לוסטיג ואל היו"ר, הגב' יעל ארד, ובו בקשה למפגש אישי, על מנת שיתערב ויפתור את הסכסוך בין הצדדים, נותר בלא מענה.

העתק חמכתב מיום 4.7.22 מצ"ב כ**נספח 12**

50. כך, גם כל פניות ניקולס אל מנכ"ל הנתבעת 4, מר גילי לוסטיג, על מנת שיפעל מול BSI סורבו בנימוס.

51. גם פניית החי"מ אל היועמ"יש של הנתבעת 4, עו"ד גיל עטר, סורבה בנימוס.

העתק מיילים מיום 16.8.22 מצ"ב כ**נספח 13**

52. היה מצופה מהנתבעת 4, כגוף האמון על חייצוג האולימפי של מדינת ישראל, שידרוש מ- BSI להתנהל בהתאם למעמדו בספורט המזחלות, כ- NGB של ישראל. אלא, שהנתבעת 4, המודעת לכשלים של הנתבעת 1, מרחיקה עצמה מכל אחריות ו/או הקשר לנתבעת 1, ונמנעת מכל התערבות.

53. כך, הנתבעת 1 אינה עומדת בתקנות IBSF במספר נקודות מהותיות:

53.1 ל- BSI אין תקנות ספציפי (פרט לתקנון המצוי שאימץ) כנדרש בתקנה 5.4.1.2.

53.2 אין ל- BSI מנגנון של ערעור ספורטאים חברים.

53.3 סעיף 7.1 לתקנות קובע כי החברים כפופים וחייבים לציית לחוקי IBSF, כל הכללים והתקנות של IBSF, כללי ה-IBSF למניעת סימום, קוד האתי של IBSF, כל כללי ההתנהגות הרלוונטיים. BSI הפר את קוד ההתנהגות והקוד האתי של IBSF כאשר הם נכשלו, ביודעין, בנקיטת פעולה כלשהי נגד ספורטאי חבר ההתאחדות AJ Edelman, כאשר זה שיחד ספורטאים מקבוצת ניקולס, ושידל אותם לעזוב את צוות ניקולס ולעבור לנבחרת שלו. BSI הפרו את קוד ההתנהגות והאתיקה של IBSF כאשר לא נקטו צעדים נגד AJ Edelman ומנעו ממנו להטריד, להציק ולשלוח הודעות טקסט ואימיילים לא ראויים לניקולס. BSI הפרו את קוד ההתנהגות של IBSF כאשר הם ניסו להעביר ביודעין תמונה של ארגז המשלוח למזחלת 2 אנשים, כאילו זה היה ארגז משלוח למזחלת 4 אנשים, שניקולס רכש כדין ב-2019, אך מעולם לא קיבל.

53.4 BSI הפר את קוד ההתנהגות והאתיקה של IBSF כאשר הם לא נקטו צעדים נגד הספורטאי AJ Edelman כאשר נודע להם AJ לועג לנכות של ניקולס, ופרסם זאת ברבים.

53.5 BSI פועלת באופן מפר חוק בארה"ב, כאשר מצד אחת מגייסת תרומות בארה"ב, אבל גם במדינת ניו יורק וגם באריזונה אין כל מידע עליה.

העתק תקנון IBSF מצ"ב כ**נספח 14**

54. התובע ציפה כי הנתבעת 4 תפעל לטובת ספורט המזחלות בישראל, כדלקמן:

54.1 הוועד האולימפי הישראלי צריך היה להורות ל-BSI להנפיק רישיונות IBSF לתובע למשך 4 העונות הבאות.

54.2 הוועד האולימפי הישראלי צריך היה להנחות את BSI לאפשר לתובע להשתתף בכל תחרויות גביע העולם, גביע אירופה, תחרות גביע צפון אמריקה, לבחירתו, ואליו הוא כשיר, ללא אפליה.

10

54.3 הוועד האולימפי הישראלי צריך היה להורות ל-BSI להנפיק לתובע וקבוצתו התחברות לרישיון האלקטרוני של IBSF, על מנת לוודא שאכן יוכלו להשתתף בכל תחרות לה יהיו כשירים.

55. אלא, כאמור, שהעובדות מצביעות כי הנתבעת 1 והנתבעת 4 קשורות ביניהן ופועלות בצוותא. על כן, ברי כי הנתבעת 1 והנתבעת 4 פועלות בשיתוף פעולה ביניהן בעניין נשוא התביעה. כתוצאה מכך, אחראית הנתבעת 4 לנזקי התובע וקבוצתו, ביחד ולחוד עם הנתבעת 1.

**הנזק:**

56. הנזק הראשי שנגרם לחברי הצוות הוא אובדן האפשרות להתחרות באולימפיאדת החורף בבייגיינג. כמו כל ספורטאי אולימפי, ההשתתפות באולימפיאדה היא פסגת השאיפות. בעיקר כאשר יש סיכוי טוב גם לזכות במדליה. קשה לכמת את הצער ועוגמת הנפש שחוו חברי הקבוצה, עת התברר כי לא יוכלו להתחרות בקנדה, כתנאי כניסה לבייגיינג, ולאחר מכן כמובן להשתתף באולימפיאדה.

57. יתרה מכך, התובע צפוי לנזק נוסף ככל וימנע ממנו להתחרות בעונה הקרובה. יתכן שעקב כך יפסידו גם את אולימפיאדת החורף הבאה, המתוכננת להיערך באיטליה בשנת 2026, ככל ולא יתחרו ולא יוכלו להציג את היישגים לקראתה.

58. חברי הקבוצה הפסיקו את חייהם ואת עבודתם מתוך הקרבה ואמונה בניקולס ובעונה האולימפית שלהם. היו להם הציוד, כוח האדם, המדים והניסיון. BSI גרמה לניקולס ולצוות שלו פגיעה בלתי הפיכה, כשמנעה מהם להשלים את תהליך ההסמכה והמרוצים בעונה הקודמת, ללא הרישיונות הדרושים. מדובר על מאות אלפי דולרים שהוצאו על מזחלות, רצים, ציוד, חליפות מהירות, נעלי ספייק מיוחדות, מדים, נסיעות וטיסות לישראל וממנה לספורטאים לאימונים בארה"ב, מלונות, אוכל, רכבים שכורים, דמי מסלול, דמי אימון ועוד.

59. הנזק הנוסף, הוא כמובן, הנזק הכספי שנגרם, ההוצאות העצומות שנאלץ ניקולס להוציא למימון הקבוצה, על כל המשתמע מכך, הוצאה שבסופו של דבר, לא הניבה דבר, עקב המניעה להמשיך ולהתחרות.

59.1 התובע ידרוש מ- BSI להחזיר לו את כל ההוצאות המבוזבזות של העונה שעברה, קרי:

א) טיסות בעונת 2021 – סך של 10,582$

ב) הוצאה עבור השהות בבתי המלון וחדרי אירוח ־ סך של 15,410$

ג) שכר ומשכורת לספורטאים בקבוצה בעונה שעברה - סך של 9,399$

ד) שכר מאמנים- סך של 6,837$

ה) רכישת מזחלת 4 אנשים וארגז משלוח ממר ספנסר- 5,500$

ו) רכישת מזחלת 4 אנשים ומנשא מנבחרת ברזיל – סך שך 25,491$

ז) השכרת רכבים ומשאיות לשינוע – סך של 7,736$

ח) הוצאות דלק- סך של 4,692$

ט) תשלום עבור מסלול אימונים בפארק האולימפי – סך של 2,879$

י) הוצאות חדר כושר- סך של 2,543$

11

יא) תחזוקת מזחלות- סך של 2,968$

יב) מחליקי קרח למזחלות- סך של 10,342$

יג) הוצאות דמי אימון במסלול או בבית קרח מקורה בלייק פלאסיד, סך של 3,000$. יודגש כי מר גריבס התחייב מפורשות כי BSI תשלם את החשבון הזה, אולם הדבר לא נעשה. היות והחוב שולם על ידי BSI עד עתה, נאלץ ניקולס לשלם את החוב בעצמו, אולם קיומו של החוב עד עתה מנע מצוות ניקולס להתאמן במתקנים עד לביצוע התשלום. רק לאחר התשלום על ידי ניקולס, יכול כעת צוות ניקולס להתאמן במתקן.

יד) הוצאות המזון לקבוצה בעונת 2021- סך של 10,588$.

טו) הוצאות אחרות, סך של 13,213$

סך כולל של הוצאות שנת 2021 : 128,134$, שהם **440,780** ש"ח, לפי שער יציג של 3.44 ש"ח לדולר.

יש לציין כי **הוצאות לשנים 2018-220 לא נכללו בחישוב זה**, והתובע שומר לעצמו את הזכות לעדכן את סכום התביעה בהתאם.

59.2   ובנוסף לאמור לעיל, פיצוי התובע עבור הלחץ הנפשי, הרגשי והפיזי שנגרם לו על ידי פעולות הזדון של BSI, ובעיקר האילוץ לוותר על חלום ההשתתפות באולימפיאדת החורף בבייג'ינג, וסיכוי ריאלי למדליה אולימפית, חלומו של כל ספורטאי. התובע סבור שהפיצוי המגיע לו עומד לסך של **500,000** ש"ח, אולם משיקולי תשלום אגרה יעמיד את הסכום על 159,220 ש"ח, בלבד.

60.   יצוין כי צוות ניקולס איבד גם ספונסרים יקרי ערך כמו VISA ואחרים, בנוסף ללחץ הפיזי, הנפשי והרגשי. רבים מחברי הצוות, שהם אזרחים ישראלים המתגוררים בארץ, ויתרו על עבודתם במשרה מלאה, על המשפחה והדירות כדי לצאת לסיור ולהתחרות על מקום באולימפיאדה. החלום הזה נלקח מכולם והם נפגעו כלכלית, רגשית, פיזית ונפשית.

61.   סך כל הפיצוי הכספי הנדרש מהנתבעים עומד על כן לסכום של **600,000** ש"ח.

## הסעדים המבוקשים

62.   לאור כל האמור לעיל, יתבקש בית המשפט הנכבד להורות, כדלקמן:

62.1   צו עשה לנתבעת 1, ולפיו תפנה באופן מיידי אל IBSF ותודיע כי התובע ישתתף בתחרויות מזחלות בעונה הקרובה בשם ישראל. לרבות, אך לא רק:

62.1.1   וויסלר, קנדה, NAC בתאריכים 23-10.22- 13.11.22

62.1.2   וויסלר, קנדה, אליפות העולם, בתאריכים 27.11.22-20

62.1.3   פארק סיטי, יוטה, אליפות העולם, בתאריכים 28.11.22 -4.12.22

62.1.4   לייק פלאסיד, ניו-יורק, אליפות העולם, בתאריכים 12-18.12.22

62.1.5   וינטרברג, גרמניה, אליפות העולם, בתאריכים 2-8.1.23

62.1.6   אלטנברג, גרמניה, אליפות העולם, בתאריכים 15-9.1.23

62.1.7   סנט מוריץ, שוויץ, אליפות העולם, בתאריכים 12.2.23-6

62.2   להורות לנתבעים לפצות את התובע בסך 440,780 ש"ח, בגין נזקים שנגרמו בעונה הקודמת

12

62.3.     להורות לנתבעים לפצות את התובע בסך 159,220 ₪, בגין הנזק הלא ממוני נגרם
לו בגין מניעת ההשתתפות באולימפיאדת החורף בבייג'ינג.

62.4.     להורות על פיטורי הנתבעים 3-2 מהנהלת BSI, ולהודיע על כך ל- IBSF.

62.5.     צו עשה לנתבעת 4 ולפיו תורה לנתבעת 1 לבצע את הנדרש ממנה, ותוודא את
הביצוע.

## סיכום

63. לאור כל האמור לעיל, יתבקש בית המשפט הנכבד לחייב את הנתבעים לשלם לתובע את נזקיו,
ובצירוף הפרשי הצמדה וריבית כדין מיום הגשת התובענה ועד למועד התשלום בפועל.

64. כמו כן, יתבקש בית המשפט הנכבד ליתן צווים כנגד הנתבעים, כמבוקש.

65. כן יתבקש בית המשפט הנכבד לחייב כל אחד מן הנתבעים בהוצאות המשפט ובשכ"ט עו"ד
בצירוף מע"מ.

רו בן ארצי, עו"ד
ב"כ התובע

13

In the District Court
In Tel Aviv

**Filed on October 25, 2022**

**In the matter between:**

    **David Nicholls, ID No. 345069611**
    Sport Hotel, Wingate Institute, Netanya
    Telephone: 03-9676656; Email: bobsledgold@gmail.com
    Through counsel, Adv. Raz Ben-Artzi, License No. 53633
    3 Hanechoshet St., Tel-Aviv-Jaffa
    Telephone: 03-9676656; Fax: 03-6963213
    Email: raz!razlegal.com     **The Plaintiff**

-v e r s u s-

1. **Bobsleigh Skeleton Israel, Registered Association No. 580622298**
   131 Beit Hillel St., Beit Hillel
2. **David Joseph Greaves, ID No. 324664556**
   38 Rakafot St., Kiryat Tivon
3. **Larry Sydney, ID No. (unknown)**
   (Address unknown)
4. **Olympic Committee of Israel, Registered Association No. 580040707**
   6 Shetreet St., Tel Aviv-Jaffa
   Telephone: 03-6498385; Email: noc.il@nocil.co.il     **The Defendants**

Nature of the claim: Monetary, mandatory injunction

Amount of the claim: **NIS 600,000**

The requested reliefs –

1. Mandatory injunction directing Defendant 1 to immediately notify the IBSF that the Plaintiff will be participating in bobsleigh competitions in the coming season (2022-2023) on behalf of the State of Israel. Furthermore, to allow the Plaintiff to be registered for any relevant competition of the North American Cup (NAC), the European Cup and the World Cup, for which the participation criteria are met.
2. Mandatory injunction directing Defendant 1 to immediately allow the Plaintiff to compete in the coming season of bobsleigh competitions on behalf of the State of Israel, with all that involves.
3. Mandatory injunction directing Defendant 4 to instruct Defendant 1 to do whatever is required of it in Sections 1-2 above, and to verify that this has been done.
4. Monetary relief against all the Defendants in the form of compensation to the Plaintiff in the amount of **NIS 600,000** in respect of damages caused to him.

Fee payable: NIS 15,000 (as per Item 8 of the Schedule to the Courts Regulations (Fees), 5767-2007).

There is no other legal proceeding between the parties.

1

**Summons**

Whereas the Plaintiff, David Nicholls, filed this statement of claim against you, you are invited to submit a statement of defense within 60 days after this summons has been served upon you.

Please note, if you do not submit a statement of defense, then in accordance with Regulation 130 of the Civil Procedure Regulations, 5779-2018, the Plaintiff will be entitled to a judgment in your absence.

# Statement of Claim

## General

The Plaintiff respectfully submits this statement of claim to the Honorable Court.

The Plaintiff will be represented by the undersigned, as set out in the heading, and will argue as set forth below.

All the arguments in this statement of claim are made cumulatively and/or in the alternative and/or by way of supplementation, all as dictated by the context.

## Part Two – Summary of Arguments

### The Parties

1. Mr. David Nicholls (hereinafter "**Nicholls**") is pilot, founder and captain of the Israel national bobsleigh team. Nicholls is the first bobsled athlete in more than twenty years to have competed during five years under the Israeli flag, and he has represented Israel with honor.

2. Nicholls is an American/Israeli who came to Israel as a new immigrant in 2017. He lived in Netanya and trained out of season at the Wingate Institute. He had thought to "make Aliyah" for many years. As the grandson of Holocaust survivors, to live and compete on behalf of Israel was his life's dream. It should be noted that Nicholls is a disabled person, paralyzed and wheelchair-bound, in spite of which he competes in the bobsleigh sport against healthy athletes.

3. Some five years ago Nicholls met David Greaves, who invited him to compete for Israel as its first bobsleigh pilot in twenty years. Nicholls and Greaves discussed Nicholls' wish to compete in the Olympic Games in Pyeongchang (2018), but Greaves maintained that it was too late, and they therefore agreed to achieve the conditions for participation in the 2022 Winter Olympics in Beijing. Greaves and Sydney, Defendant 1's managers, entered Nicholls' team in numerous competitions in North America and in the framework of the European Cup, in order to train the team and enable it to qualify for the World Championships and the Olympics.

   Nicholls was very proud and happy and felt it a great honor to represent Israel with the Star of David symbol on the uniform worn by him in international competitions. However, he was quickly surprised by the lack of support on the part of Defendant 1, and it was obvious that Defendants 1-3 knew very little about bobsleds, as they had previously only managed skeleton athletes. Nicholls competed in the

2

developing monobob discipline, but continued to train as one of the world's only seated pilots who received a license to compete in the 2-man bobsled discipline. Larry Sydney and David Greaves of BSI entered him in several North American Cup (NAC) races, competing against able-bodied athletes. The rules allowed him to board the sled as the pilot, before the other competing athletes began pushing the sled.

4. From 2017 until today, Israel had a national bobsleigh team and program. This was Nicholls' and his team's program. In 2018/19, they became the first national bobsleigh team of Israel to mount the podium, reaching the sixth place in the 4-man bobsleigh event in the North American Cup in Park City, Utah, USA, on the Olympic Park Track, with Nicholls as the pilot.

5. Nicholls has organized, recruited, financed, equipped, managed and operated the Nicholls team in the last three to four years, spending over the last four years more than USD 500,000 on training and competitions, on the journey to participating in the Olympics.

6. Last season the budget was USD 128,000 (less than in previous years, since the team was prevented from training properly). Nicholls financed for all the team's athletes and staff the trips, flights, meals, hotels, car rentals, racing fees, bobsleds, runners, uniforms and training fees – virtually all by himself and at his expense, with minimal assistance by outside sponsors, the Olympic Committee and/or BSI.

7. Until last year, the Nicholls team was the only team that trained, competed and represented Israel in every competition.

8. As of now, the Nicholls team is still the only Israel team that has qualified to participate in the World Cup competition in the 4-man bobsleigh event.

9. Nicholls won on behalf of Israel its first **gold, silver and bronze medals** in the sport (in the Paralympic Games), and was the first to represent Israel and compete in the 2019 World Championships which were held in Whistler, Canada. Nicholls and his team were the first ever to qualify to compete in a non-Olympic year, in the 2019 IBSF World Championships in Whistler, Canada, on the world's most technical and fastest tracks. **Nicholls and the team remain to this day the only ones to have represented the State of Israel in this forum.**

10. The Nicholls team also was the fistr team to mount the podium in the sport in 2020 in the 4-man event.

11. Nicholls is known around the world and in the top-tier sports community as a pioneer in this sport for disabled persons, and he is still the first and only bobsled pilot in the world that has qualified to race paralyzed, in a seated position, on a 2- and 4-man team of healthy individuals. He received this certification from the IBSF, since he has engaged in sports for 18 years and was instrumental in opening up the sport to demobilized soldiers and athletes who are amputees or suffer from paralysis.

12. Defendant 1, Bobsleigh Skeleton Israel (hereinafter "**BSI**"), is a **registered association in Israel**, operating in the US as a C-3501 non-profit organization. BSI is managed by two individuals: Defendant 2, Mr. David Greaves, its founder and President during the past 20 years, and Defendant 3,

3

Mr. Larry Sydney, a former athlete in the skeleton discipline, who currently competes on Israel's national Olympic curling team.. Defendant 1 adopted the **Standard Code**.

A copy of a report of the Registrar of Associations with respect to Defendant 1 is attached hereto as **Appendix 1**.

13. The international body administering the sport is known as the International Bobsleigh and Skeleton Federation (hereinafter "**IBSF**"), which for some reason recognizes the Israeli association for two sports disciplines, skeleton and bobsleigh (Defendant 1), known as Bobsleigh Skeleton Israel (above and below "**BSI**"), as the National Governing Body (NGB) of the Israeli sport. The stress on "**for some reason**" is because BSI has no experience in the bobsleigh sport. Mr. Larry Sydney has some experience in the skeleton sport, but none of the managers or directors has ever competed in this sport. Therefore, no one in the BSI has any experience in competition, training and management or logistical understanding in this sports discipline.

14. BSI represents itself as part of the Israel Olympic Committee, and documents issued by it bear, alongside the BSI logo, also the logo of the Israel Olympic Committee. Just as an example, the Athlete Agreement published by BSI bears the logo of the Olympic Committee.

A copy of the Athlete Agreement published by BSI is attached hereto as **Appendix 2**.

15. As noted, Defendant 1 is the National Governing Body of the skeleton and bobsleigh sport and is recognized as such by the Israel Olympic Committee, the International Bobsleigh and Skeleton Federation (IBSF), the Elite Sports Department and all the other bodies involved in administering the sport. As a result of this recognition of the Israel Olympic Committee, BSI is the only entity authorized to request to issue the IBSF licenses required for training and competing in this sport anywhere in the world.

16. Obviously, no team can participate or represent Israel as an Israeli delegation or Israeli national team without the approval of BSI, which issues the IBSF licenses for such delegations or teams.

17. Defendant 4 is an association registered in Israel, with the official role of fostering in Israel the ideals for which the International Olympic Games were founded and in light of which they are conducted, and it represents all sports institutions in Israel before the International Olympic Committee.

A copy of a report of the Registrar of Associations with respect to Defendant 4 is attached hereto as **Appendix 3**.

## The Facts

18. Last year, Mr. AJ Adam Edelman (hereinafter "**Edelman**") (the first Israeli Olympic competitor and formerly a skeleton athlete) decided that he was not satisfied with Israel's performance in the sport, and he decided to set up an additional bobsleigh team with four athletes. More than once he attempted to lure the members of the Nicholls team, including, but not only, by bribing them to leave the team and transfer to him in return for USD 1,500 per month. He also made demeaning and discriminatory remarks to the team members regarding Nicholls' disabilities, telling them, "David is attempting to

4

make it to the Olympics, it's like a tennis player without hands attempting to reach Wimbledon or a rower without hands attempting to reach the rowing Olympics."

19. Despite previous warnings and sanctions, Edelman has continued to bully Nicholls and the team and to belittle their achievements. BSI was aware of these and other violations of the Code of Conduct and Ethics, but refused to take any further action that would prevent this behavior.

20. In any event, **BSI made it clear that they were supporting the Edelman team and not the Nicholls team**, despite the fact that Nicholls is the most experienced pilot, with 17 years of experience, and possesses top-notch bobsleds and equipment, whereas the Edelman team has not presented any achievements.

21. The Plaintiff surmises, in the absence of any other logical explanation, that BSI's choice of the Edelman team stems from extraneous considerations, possibly involving the receipt of some return for this recognition.

22. BSI does not have any idea or understanding of what it takes to run a national bobsleigh team, nor does the Israel Olympic Committee.

## **Jurisdiction of the Honorable Court**

23. This Honorable Court has **subject matter** jurisdiction based on the requested reliefs, and **local** jurisdiction to consider this claim based on Defendant 4's address.

# **Part Three – Detailed Arguments**

24. The Plaintiff repeatedly requested, during an extended period, both from BSI and from the Israel Olympic Committee, to receive the charter and/or code and/or documents of incorporation of BSI. Up to the filing of this statement of claim, nothing was received, since all his requests were ignored.

25. It emerged that BSI had adopted the Standard Code.

    A copy of the Standard Code adopted by the Defendant is attached hereto as **Appendix 4**.

26. Since this is the Standard Code, it does not contain any reference to internal judicial institutions. Therefore, and despite the fact that Defendant 1 is a sports association, and despite the fact that the **Sports Law, 5748-1988** requires it to establish judicial proceedings, there are none such in the Defendant's code, consequently, this Honorable Court has jurisdiction to consider the claim.

27. It can easily be determined that the Association does not operate according to, or honor, the Standard Code, and that it violates its principles.

28. Although ostensibly several people are listed as managing Defendant 1 (according to the documents submitted to the Ministry of Justice), the reality is that it is managed in actuality by only one person, the President of the Association – Defendant 2, who calls all the shots. The fact is, Mr. Greaves runs this "national sports federation" as if it were a private club, instead of a national bobsleigh federation, as it should be run.

5

29. BSI violated the Standard Code adopted by it, inter alia, by violating Article 3 thereof – Cancellation of membership, Article 3(a)(3) – "by his removal from the Association." The article details the reasons based on which a member can be removed from the Association. Article 3(c) provides: "**The Committee may propose to a General Meeting to remove a member from the Association only after it has given him a fair opportunity to state his arguments before it, and it may so propose on the grounds specified in sub-article (b)(1), (2) or (3), only after it has warned the member and given him reasonable time to right the wrong**." The Plaintiff will argue that he was not given a fair opportunity to present his position or to right the supposed "wrong." Moreover, no complaint was made to him that he is not complying with the regulations.

For the sake of proper disclosure, we note that Defendant 1 sent the Plaintiff a letter of warning on March 17, 2022, claiming that he had defamed it. It is not clear to the Plaintiff if these are false allegations made with deliberate intent, or in error. In any event, the Plaintiff replied to the letter, explaining that the allegations are simply untrue. The letter of reply speaks for itself, and it is not at all clear whether the letter of March 17, 2022 constituted the removal of the Plaintiff from his membership in the Association.

Defendant 1's letter dated March 17, 2022 and the Plaintiff's letter of reply dated June 1, 2022 are attached hereto as **Appendix 5**.

30. The Defendant is acting absolutely contrary to the code it adopted. The Plaintiff will show that the Defendants have violated their own conditions, policy and rules:

30.1 During the time the Plaintiff was a member of the Association – 2017-2022 (the National Federation), there never was any General Meeting.

30.2 Since no "General Meeting" was ever held, there never were regulations, rules or resolutions that were distributed to its members in the General Meeting.

30.3 No "targets," statement of objectives, code, rules or articles were provided to the members.

30.4 In this case, the Defendants (the members of the committee and the managers) took direct, specific and malicious actions to harm Nicholls (a disabled National Olympic athlete) and to cause irreversible mental, physical and financial damage to Nicholls and his team of athletes, who are members of the Association, without any due process, required proposals, notice or meeting in the General Meeting.

30.5 The Defendants, and particularly the President David Greaves and the Secretary Larry Sydney, violated the rights and membership of Nicholls and the members of his team, in failing to act in accordance with the code of the Association, denying Nicholls and his team their rights to fair process in an attempt to drive them out.

30.6 Nicholls and his team did not receive any written notice from the Association or opportunity to rectify any wrong supposedly committed by them, prior to the implementation of its plans against Nicholls and his team, in clear violation of due process, Nicholls' rights and the code of the Association. On the contrary, when an independent committee (DRAD) was set up to

6

investigate the supposed wrongdoings, it determined that there had been no violation on the part of Nicholls or any member of his team.

31. Nicholls and his team invested a great deal of time, effort, energy and money in preparations ahead of a pre-Olympic training event, since they were the only Israeli team qualified to participate in the Beijing Olympics in China. They planned to participate in the event in October 2021. Nicholls and his team had great difficulty in obtaining a Chinese visa and were forced to expend large sums on this. The process entailed many hours of work, applications and complicated bureaucratic paperwork. There also were terrible logistical problems due to the coronavirus epidemic, since only one airline flew from North America or Israel to China. Nicholls spent endless hours in organizing the transport of the bobsleds from North America to China. Despite this, without any General Meeting or hearing or clarification before any committee, David Greaves told Nicholls and his team that they could not participate, and he would not request IBSF licenses for him or his team.

This was a devastating blow for Nicholls and his team, and constituted gross abuse of authority and discretion and a violation of the Olympic Charter of the Israel Olympic Committee and of the athletes' rights to compete. Greaves and Sydney simply did not care. They took this action based on rumors and information from Heath Spence (the coach of the Edelman team, Nicholls' competitor, and a personal friend of Greaves), without any hearing or decision of a competent committee or a court, seriously harming Nicholls and his team and the chances of training, competing and winning on behalf of the State of Israel. Heath told Greaves that Nicholls had stolen a bobsled and a bobsled carrier, something which was later shown to be nothing more than false slander and defamation. But Greaves first shot and then drew a circle around the target, and did not even investigate or check before taking such harmful actions against Nicholls and his team. Nicholls booked more than 100 different reservations with airlines and sent numerous email messages to the Organizing Committee and to China's Olympic Embassy regarding the logistics of transporting bobsleds to the airport and accommodation – all for nothing! Greaves' actions were cruel, malicious, destructive and illegitimate, in violation of the code of the Association, fair process and the athletes' rights to compete.

32. Nicholls and his team were supposed to train, participate and compete, first and foremost in qualifying races in Whistler, British Columbia, Canada, in November 2021, in the IBSF North America Cup (NAC). David Greaves and Larry Sydney (BSI) knew that Nicholls and his team had already drawn up plans and made logistical arrangements to train for the race there. A member of Nicholls' team had already transported the bobsleds across the United States (five days of driving), from Lake Placid, New York, USA, to Park City, the Olympic Park, in Utah, USA, continuing afterwards to Whistler, Canada, where he met up with Nicholls and the rest of the team. Again, without any prior notice, convening of the General Meeting, vote or hearing, Greaves and Sydney refused to request from the IBSF licenses in the name of Nicholls and his team, who were already on location, causing further mental, physical and emotional harm. By failing to include Nicholls and his team, AJ Edelman's team was assured of receiving licenses for all the qualifying races.

At this stage, Greaves and Sydney (BSI) invited Nicholls to appeal their decision through the supposed appeals process of BSI (which does not appear in any code, rules or regulations). More than once, Greaves and Sydney – with conscious falsehood, willfully representing to Nicholls and his team

7

that an appellate process exists, when there is no such process! – invited Nicholls to file an appeal with the Israel Olympic Committee. Greaves, Sydney and BSI also represented to all the members, absolutely falsely, that there is an appeals committee for athletes under the BSI's Athlete Agreement. Many of Nicholls' athletes do not read English, and the Plaintiff therefore requested that the Athlete Agreement be translated into Hebrew, which was done only months later. However, Greaves, Sydney and BSI took these actions **before** any Athlete Agreement had been signed.

33. Nicholls purchased a bobsled and a used transport crate (cradle) from Heath Spence in 2019. It turned out after the fact that Mr. Spence is Mr. Edelman's coach and a close friend of Mr. Greaves. The value of the purchase was paid in full, but Nicholls never received the crate.

A copy of the receipt showing full payment is attached hereto as **Appendix 6**.

34. BSI, which relied on Edelman's inflammatory statements, decided that Nicholls is a thief, and without conducting a hearing as required, prevented the team from competing for this reason, in violation of the Standard Code.

35. On September 27, 2021, the BSI's investigation committee submitted a report, which was not provided to the Plaintiff, recommending sanctions against the Plaintiff – suspension and a ban on receiving IBSF approval for competing in the 2021-2022 season.

36. A member of the Nicholls team, Mr. David Kurtz, prepared, at the BSI's recommendation, an appeal, which was submitted to the Elite Sports Committee of the Israel Olympic Committee, to revoke the BSI's decision that prevented the team from competing in the 2020-2021 Winter Olympics.

A copy of the appeal prepared by Kurtz is attached hereto as **Appendix 7**.

37. The report of the BSI's investigation committee, which was not provided to the Plaintiff, caused a wait of 19 days (between October 26 and November 13), which of course cost Nicholls a fortune on payments for hotel accommodation, food, fuel, transporting of the bobsleds and equipment, training, etc., for the entire team. It became apparent to Nicholls, after the fact, that this wait had been for nothing and did not serve any purpose.

It turned out after the fact that the entire 19-day waiting period in Whistler, British Columbia, Canada, for a supposed "appeals committee" was an absolute waste of time, simply a lie on the part of BSI regarding an appeal that never happened and could not happen. BSI asserted that the members of the team could appeal before the Israel Olympic Committee, but the latter maintained that there is no such process. BSI lied to the team, representing that there is a committee, whereas in reality no such committee exists. The Israel Olympic Committee maintained that it does not have any authority to conduct appeals.

Letters of Defendant 4's Secretary General dated November 1, 2021 and July 13, 2022 are attached hereto as **Appendix 8**.

Two of the team's members, Or Dror and Adi Degani, left the team because of the absurd situation that was created, and since they could not withstand the emotional toll.

8

38. BSI is causing discrimination and bias against a disabled athlete, by refusing to issue IBSF licenses to Nichols and all the team members, preferring healthy athletes, despite the fact that it is the disabled person who has by far the better achievements. This discrimination prevented the Nicholls team from competing in the previous season in the Olympic preliminaries in Beijing – a process they had begun in the previous season, putting them on the road to the preliminaries.

39. Nicholls submitted to the BSI an official request to issue an IBSF license for the Nicholls team so that it could participate in the competitions of the coming season.

A copy of the letter of request for an IBSF license is attached hereto as **Appendix 9**.

40. In response, Nicholls received from BSI a "letter of release," dated July 18, 2022, which is addressed to the IBSF. In that letter, which is signed by Defendants 2-3, Defendant 1 confirms Nicholls' release from Defendant 1's organization and the termination of the relationship between them. Defendant 1 "generously" agrees that should Nicholls wish to represent a country other than Israel, it would not prevent him from doing so. However, Nicholls did not request to be released and he was and definitely remains interested in representing the State of Israel, and he and his team are the only ones with a chance to represent Israel honorably in this Olympic sport.

A copy of the "letter of release" is attached hereto as **Appendix 10**.

41. Nicholls' reply of July 20, 2022 makes this absolutely clear. Since the reply speaks for itself, we are quoting a part of what Nicholls wrote, as follows: "**You cannot simply erase five years of hard work, medals, podiums, training, personal and group achievements, goals, sacrifice, fundraising, sponsorships, blood, sweat and tears, with a stroke of your pen. No one has such authority and this is not the purpose of any NGB. You may believe that you can be judge, jury and executioner in opposing and rejecting an independent investigation committee in the previous season, which caused me and the Nicholls Israeli national team irreversible mental, physical, emotional and financial harm. But that is not the way it works. Neither you, (BSI), or the Israel Olympic Committee financed our team, paid for our coaches, paid for our trips, paid for our equipment, paid for our food, paid for our transport, paid for our uniforms, participated in our programming or recruitment of personnel, participated in the team and in our personal success, paid for our insurance, paid for our bobsleds, paid for our doctors or our medical treatment, or provided us with the support expected from any legitimate federation.**

**Our friends in the Israel Olympic Committee suggest to us to act in accordance with BSI's rules and code in order to solve any problem. However, it is clear that there is no such code. In fact, we asked you for them in the previous season and did not receive anything. Article 5.4.1.2 of the IBSF Bylaws requires all the member federations to submit and maintain a set of rules and bylaws as a condition for membership. We also requested from the IBSF a copy of the BSI rules, and they answered along the lines of 'they don't have them and to contact BSI directly.' With all due respect, BSI is lacking under the IBSF rules. Without such a basic organizational document, it is causing damage, uncertainty and confusion among its member athletes. The only document we have received (we are begging for it in Hebrew) mentioned some sort of 'appeals' committee and procedure in the framework of the Israel Olympic Committee. This**

9

**was another obvious misrepresentation, since the Israel Olympic Committee continues to maintain that 'there is no such committee, and they have no judicial authority over BSI in these matters.' It is obvious that you are running BSI as a personal club, rather than a national federation, manipulating a competition arbitrarily, in violation of the IOC Charter, at your whim, without respecting any rule of fair process, bylaw and competition in sports. The bias and discrimination shown by you towards a paralyzed seated pilot and a team of veteran athletes who served in the IDF and suffer from post-trauma, in favor of an able-bodied team, are blatant and evident from your disregard of their harassing behavior and discriminatory and duplicitous bullying. Since you and the (BSI) are clearly violating the athletes' rights, we brought your independent and unauthorized actions to the attention of the Israel Olympic Committee for taking investigative action. We also advised the IBSF athletes' representatives accordingly. Recently, we extended our hand in friendship for the sake of sportsmanship and our federation, in an effort to solve any problem peacefully, but you have rebuffed us. Mr. Greaves, it is not your federation, but our federation. In fact, as athletes we believe that the good of the sport, the team and our federation requires that you and Larry step down immediately. Please do not make any misrepresentation about our team or the wishes of our team without communicating with us or participating in some appropriate proceeding, while violating our athletes' rights to compete. Team letter to be followed up.**"

A copy of the letter of reply dated July 20, 2022 is attached hereto as **Appendix 11**

42. Obviously, the removal of Nicholls from the coming season as well, will prevent him from competing and achieving the qualifying conditions for the next Winter Olympics, denying him the Olympic dream. This will also deprive the State of Israel of the only realistic chance it has to compete in this Olympic discipline, with a real likelihood of winning an Olympic medal.

Defendants 2-3 are personally liable for the Plaintiff's damages

43. Defendants 2-3 are the ones pulling the strings in Defendant 1. They were in continuous contact with the Plaintiff, and it was they who personally prevented him from competing and caused the damages. It should be clarified that the claim against them is submitted **personally**, and not as organs of Defendant 1.

44. Defendants 2-3 decided not to allow the Plaintiff to compete, based on false and malicious rumors, without bothering to clarify the allegations in depth and to hear the Plaintiff's response, out of ulterior motives, apparently involving a monetary return.

45. Defendants 2-3 thereby acted arbitrarily, in blatant disregard of the damages caused to the Plaintiff by their actions. Defendants 2-3 acted as the prosecution, the judiciary and the executive body.

46. Thus, **in the best case**, Defendants 2-3 were negligent, **while in the worst and more likely case**, they acted maliciously against the Plaintiff, causing irreversible damages.

<u>Defendant 4</u>

47. Defendant 1 uses the logo of Defendant 4, the Olympic Committee of Israel, and displays it on its documents.

48. Defendant 4, itself, considers Defendant 1 to be an integral part of its organization.

49. Now, the Israel Olympic Committee is attempting to disown BSI. Thus, the undersigned's letter of July 4, 2022 to Defendant 4's Secretary General, Mr. Gilad Lustig, and to the Chairperson, Ms. Yael Arad, requesting a personal meeting so that it should intervene and resolve the dispute between the parties, remains unanswered.

A copy of the letter dated July 4, 2022 is attached hereto as **Appendix 12**.

50. Thus also, all Nicholls' requests to Defendant 4's Secretary General, Mr. Gilad Lustig, to act vis-à-vis BSI, were politely declined.

51. The undersigned's request to Defendant 4's legal counsel, Adv. Gil Atar, also was politely declined.

A copy of email messages from August 16, 2022 is attached hereto as **Appendix 13**.

52. One would have expected Defendant 4, as the body responsible for the Olympic representation of the State of Israel, to require BSI to conduct itself in keeping with its status as Israel's NGB in the bobsleigh sport. However, Defendant 4, which is aware of Defendant 1's failures, is distancing itself from any responsibility for and/or connection with Defendant 1, and refraining from any intervention.

53. Thus, Defendant 1 is not complying with the IBSF's Code on several major points:

53.1 BSI has no specific regulations (apart from the Standard Code it adopted), as required by Article 5.4.1.2.

53.2 BSI does not have an appeals mechanism for member athletes.

53.3 Article 7.1 of the Code provides that the members are subject to and must abide by the IBSF's statutes, all the IBSF's rules and regulations, the IBSF's Anti-Doping Rules, the IBSF's Code of Ethics, and all the relevant rules of conduct. BSI violated the IBSF's Code of Conduct and Code of Ethics, in failing, knowingly, to take any action against an athlete who is a member of the Federation, AJ Edelman, after he bribed athletes from the Nicholls team and solicited them to leave the Nicholls team and to transfer to his national team. BSI violated the IBSF's Code of Conduct and Ethics in failing to take steps against AJ Edelman and preventing him from harassing, bullying and sending inappropriate text and email messages to Nicholls. BSI violated IBSF's Code of Condut in deliberately attempting to portray the transport crate for a 2-man bobsled as a transport crate for a 4-man bobsled, which Nicholls purchased lawfully in 2019 but never received.

53.4 BSI violated the IBSF's Code of Conduct and Ethics in failing to take steps against the athlete AJ Edelman, on learning that AJ was publicly making fun of his disability.

53.5 BSI is acting in violation of the law in the US, in that on the one hand it raises donations in the US, while there is no information about it either in New York State or in Arizona.

A copy of the IBSF Code is attached hereto as **Appendix 14**.

54. The Plaintiff expected Defendant 4 to act for the benefit of the bobsleigh sport in Israel, as follows:

54.1 The Israel Olympic Committee should have instructed BSI to issue IBSF licenses to the Plaintiff for the next four seasons.

54.2 The Israel Olympic Committee should have instructed BSI to allow the Plaintiff to participate in all World Cup, European Cup and North American Cup competitions, at his choice and for which he qualifies, without discrimination.

54.3 The Israel Olympic Committee should have instructed BSI to issue to the Plaintiff and his team a link to IBSF's electronic license, to ensure that they would in fact be able to participate in any competition for which they qualify.

55. However, as stated, the facts indicate that Defendant 1 and Defendant 4 are connected with each other and acting in tandem. Hence, it is obvious that Defendant 1 and Defendant 4 are cooperating with each other in the matter that is the subject of the claim. Consequently, Defendant 4 is liable for the damages of the Plaintiff and his team, jointly and severally with Defendant 1.

**The Damage**

56. The primary damage caused to the team members is loss of the possibility to compete in the Winter Olympics in Beijing. Like any Olympic athlete, participation in the Olympics is the zenith of aspirations, particularly when there also is a good chance of winning a medal. It is difficult to quantify the regret and emotional distress felt by the team members on learning that they would not be able to compete in Canada, as a condition for qualifying for Beijing, and of course thereafter to participate in the Olympics.

57. Moreover, the Plaintiff can be expected to incur additional damage if he is prevented from competing in the coming season. It is possible that as a result of this, they will lose out also on the following Winter Olympics, which are set to be held in Italy in 2026, insofar as they do not compete and are unable to present achievements ahead of those Olympics.

58. The team members stopped their life and their work, out of a sense of sacrifice and belief in Nicholls and in their Olympic season. They had the equipment, manpower, uniforms and experience. BSI caused Nicholls and his team irreversible harm, in preventing them from completing the qualification process and the races in the previous season, in the absence of the necessary licenses. This involved hundreds of thousands of dollars that were spent on bobsleds, runners, equipment, speed suits, special spike shoes, uniforms, trips and flights of the athletes to and from Israel for training in the US, hotel accommodation, car rentals, track fees, training fees, etc.

12

59. The additional damage is of course the monetary damage that was caused, the tremendous amounts Nicholls was forced to expend on financing the team, with all that implies, which expenditure did not generate any return at the end of the day due to the prevention of continued competition.

59.1 The Plaintiff will demand that BSI reimburse to him all the wasted expenses of the previous season, namely:

a) Flights in the 2021 season – USD 10,582

b) Costs of accommodation in hotels and guestrooms – USD 15,410

c) Wages and salaries of the team's athletes in the previous season – USD 9,399

d) Coaching fees – USD 6,837

e) Purchase of a 4-man bobsled and transport crate from Mr. Spence – USD 5,500

f) Purchase of a 4-man bobsled and carrier from Brazil's national team – USD 25,491

g) Rental of cars and transport trucks - $7,736

h) Fuel costs – USD 4,692

i) Payment for a training track in the Olympic Park – USD 2,879

j) Costs of a fitness room – USD 2,543

k) Maintenance of bobsleds – USD 2,968

l) Ice runners for bobsleds – USD 10,342

m) Fees for training on a track or in a roofed ice house at Lake Placid – USD 3,000. It should be emphasized the Mr. Greaves committed explicitly that BSI would pay this account, but this was not done. Since the debt has not been paid by BSI to date, Nicholls was forced to pay it himself, but the existence of the debt until now prevented the Nicholls team from training in facilities until the payment was made. Only after Nicholls made the payment was the team able to train in a facility.

n) Costs of food for the team in the 2021 season – USD 10,588

o) Other expenses – USD 13,213

Total expenses for 2021: USD 128,134, equivalent to **NIS 440,780** according to a representative rate of 3.44 NIS/USD. It should be noted that **the expenses for the years 2018-2020 are not included in this calculation**, and the Plaintiff reserves the right to adjust the amount of the claim accordingly.

59.2 In addition to the foregoing, compensation to the Plaintiff for the mental, emotional and physical pressure he suffered due to BSI's malicious actions, and primarily the fact that he was forced to give up his dream of participating in the Winter Olympics in Beijing and the

realistic chance of winning an Olympic medal, which is the dream of every athlete. The Plaintiff believes that the compensation due to him amounts to **NIS 500,000**, but for court fee payment considerations he will put the amount at **NIS 159,220** only.

60. It should be noted that apart from the physical, mental and emotional pressure, the Nicholls team also lost valuable sponsors such as Visa and others. Many of the team's members, who are Israeli citizens residing in Israel, left behind full-time jobs, family life and homes in order to go on tour and compete for a place in the Olympics. This dream was taken from all of them, and they suffered financial, emotional, physical and mental harm.

61. The total monetary compensation demanded from the Defendants amounts to **NIS 600,000**.

**The Requested Relief**

62. In light of the foregoing, the Honorable Court will be requested to order as follows:

62.1 Mandatory injunction directing Defendant 1 to immediately notify the IBSF that the Plaintiff will be participating in bobsleigh competitions in the coming season on behalf of the State of Israel, including but not only:

62.1.1 Whistler, Canada, NAC, October 23, 2022 to November 13, 2022

62.1.2 Whistler Canada, World Championships, November 20-27, 2022

62.1.3 Park City, Utah, World Championships, November 28, 2022 to December 3, 2022

62.1.4 Lake Placid, New York, World Championships, December 12-18, 2022

62.1.5 Winterberg, Germany, World Championships, January 2-8, 2023

62.1.6 Altenberg, Germany, World Championships, January 9-15, 2023

62.1.7 St. Moritz, Switzerland, World Championships, December 6-12, 2023

62.2 To order the Defendants to compensate the Plaintiff in the amount of NIS 440,780 for damages caused in the previous season.

62.3 To order the Defendants to compensate the Plaintiff in the amount of NIS 159,220 for non-monetary damage due to prevention of his participation in the Beijing Winter Olympics.

62.4 To order the dismissal of Defendants 2-3 from the BSI management and to notify the IBSF in that regard.

62.5 Mandatory injunction directing Defendant 4 to instruct Defendant 1 to do whatever is required of it, and to verify that this has been done.

## **Conclusion**

63. In light of all the foregoing, the Honorable Court will be requested to order the Defendants to pay the Plaintiff for his damages, with the addition of linkage differentials and interest in accordance with the law from the date of filing of the claim to the date of actual payment.

64. Additionally, the Honorable Court will be requested to issue injunctions against the Defendants, as requested.

65. The Honorable Court will further be requested to order each of the Defendants to pay legal costs and attorney fees with the addition of VAT.

( - )
_____

Ronen Ben-Artzi. Adv.
Counsel for the Plaintiff

לפני תביעה אשר במסגרתה הוגש כתב תביעה אשר כלל שני סעדים, צו עשה וסעד כספי על סך של 600,000 ש"ח.

צו העשה התייחס לשורה של צווי עשה לגבי "העונה הקרובה", כאשר זו הוגדרה כעונת 2022-2023. מכאן, כאשר אנו נמצאים לקראת המחצית השניה של 2024, ברי כי סעדים אלו אינם רלוונטיים עוד.

בית המשפט ציין בפני התובע בדיון מיום 12.5.2024, כי הסעדים לצווי עשה אינם רלוונטיים עוד וכי הסעד הכספי אינו בסמכות בית המשפט המחוזי.

לאור זאת אפשר בית המשפט לתובע להגיש בקשה לתיקון כתב התביעה עד ליום 1.6.2024 וזאת על מנת לכלול בתביעה סעדים אשר בסמכות בית משפט זה.

לא הוגשה בקשה מוסדרת לתיקון כתב תביעה עד ליום 1.6.2024, ולמרות זאת, בית המשפט בהחלטתו מיום 4.6.2024 נתן לתובע אפשרות להגיש בקשה מוסדרת לתיקון כתב התביעה. עד היום לא הוגשה בקשה שכזו לתיקון כתב התביעה.

בנסיבות אלו, כאשר הסעדים לצווי עשה אינם רלוונטיים עוד, וכאשר הסעד הכספי הינו בסך של 600,000 ש"ח, ואינו בגדר סמכותו של בית משפט זה, הרי אין סמכות עניינית לבית המשפט.

שקלתי האם להורות על העברת התיק לבית המשפט המוסמך, הוא בית משפט השלום, או על מחיקת התביעה, ואני סבור כי בנסיבות תיק זה, אין מקום להעברת התיק, אלא על מחיקת התביעה.

מדובר בתביעה אשר על פני הדברים נראית כתביעה שאינה רלוונטית לנסיבות הקיימות כיום, ומכאן הדרך הראויה יותר, הן מהותית והן דיונית, הינה מחיקת התביעה, ומתן אפשרות לתובע להגיש תביעה חדשה ומוסדרת המתאימה לנסיבות היום, ככל והוא עדיין עומד על תביעתו.

לאור האמור לעיל, אני מורה על מחיקת התביעה.

בנסיבות אלו של מחיקת התביעה ללא דיון מהותי, אני סבור שיש לקבוע הוצאות מותנות בלבד. לפיכך, התביעה נמחקת ללא צו להוצאות.

עם זאת, ככל שהתובע יבקש להגיש תביעה חדשה באותן עילות, תנאי להגשת התביעה יהיה תשלום בפועל של ההוצאות הנתבעת 1 וכן הוצאות הנתבעת 4 בסך של 7,500 ש"ח כל אחת מהן.

**נוכחים:**
ב"כ התובע עו"ד רז בן ארצי
התובע – מר דייויד ניקולס
ב"כ הנתבעת 1 עו"ד יפתח אבן עזרא
ב"כ הנתבעת 4 עו"ד גיל עטר
מנכ"ל הועד האולימפי מר גילי לוסטיג
מר דייויד גריבס – חבר ועד הנתבעת 1
מאיה ורד – מתמחה

**פרוטוקול**

**הערת בית המשפט:**

במסגרת פיילוט שמקיימת מערכת בתי המשפט, הנני מביא לידיעת הצדדים כי הדיון יוקלט ויתומלל. עותק מהההקלטה והתמלול יועמד לרשות הצדדים באמצעות אתר נט המשפט או באמצעות מזכירות בית המשפט. הצדדים לא יישאו בעלויות ההקלטה והתמלול.

**החלטה**

בהתאם לסעיף 68א(א) לחוק בתי המשפט [נוסח משולב], התשמ"ד–1984, הנני מורה כי הדיונים בהליך זה ינוהלו בדרך של הקלטה.

**ניתנה והודעה היום ד' אייר תשפ"ד, 12/05/2024 במעמד הנוכחים.**

גלעד הס, שופט

1

| October 2022 Complaint in Israeli court **June 17, 2024 (11 Sivan 5784)** | **Judgment** |
| :--- | ---: |
| **Case 41311-10-22** | |
| **Judge Gilad Hess** | |

Before me is a claim in which a statement of claim was filed that includes two reliefs, a mandatory injunction and monetary relief in the amount of NIS 600,000.

The mandatory injunction relates to a series of mandatory injunctions regarding "the coming season," which was defined as the 2022-2023 season. Hence, given that we are approaching the second half of 2024, it is obvious that this relief is no longer relevant. The Court indicated to the Plaintiff, in the hearing on May 12, 2024, that the relief of mandatory injunctions is no longer relevant and that the monetary relief is not within the jurisdiction of the District Court.

In light of the foregoing, the Court allowed the Plaintiff to submit a motion to amend the statement of claim by June 1, 2024, in order to include in the claim reliefs that are within the jurisdiction of this Court.

No orderly motion to amend the statement of claim was submitted by June 1, 2024, in spite of which the Court, in its decision of June 4, 2024, gave the Plaintiff the possibility to submit an orderly motion to amend the statement of claim.

To this day, no such motion to amend the statement of claim has been submitted.

In these circumstances, when the relief of mandatory injunctions is no longer relevant, and when the monetary relief is for a sum of NIS 600,000, which is not within the jurisdiction of this Court, the Court does not have subject matter jurisdiction.

I considered whether to order the case to be transferred to the competent court, which is the Magistrate's Court, or to have the claim struck out, and I believe that in the circumstances of this case, the case should not be transferred but rather struck out.

This is a claim which on the face of it appears to be irrelevant in today's circumstances, thus the most appropriate course of action, both substantively and procedurally, is to strike out the claim and to allow the Plaintiff to file an orderly, new claim that is suited to present-day circumstances, insofar as he still insists on his claim.

In light of the foregoing, I order that the claim be struck out.

In these circumstances, where the claim is being struck out without any substantive hearing, I believe that only contingent costs should be awarded.

Wherefore, the claim is struck out with no order for costs.

Nevertheless, in the event that the Plaintiff decides to file a claim on the same grounds, a condition for filing the claim shall be the actual payment of Defendant 1's costs as well as Defendant 4's costs, in the amount of NIS 7,500 each.

# EXHIBIT B



IBSF Statutes



# Statutes

Approved by Congress on 15 July 2022

## Contents

| Statutes | | July 2022 | 1 of 20 |
|---|---|---|---|



IBSF Statutes

| | | |
|---|---|---|
| 1 | PREAMBLE | 3 |
| 2 | NAME, REGISTERED OFFICE AND LANGUAGE | 3 |
| 3 | PURPOSE AND TASKS | 3 |
| 4 | TRADEMARKS AND LOGOS | 5 |
| 5 | MEMBERSHIP | 5 |
| 6 | RIGHTS OF MEMBERS | 7 |
| 7 | OBLIGATIONS OF MEMBERS | 7 |
| 8 | BODIES OF THE IBSF | 8 |
| 9 | CONGRESS | 8 |
| 10 | EXECUTIVE COMMITTEE | 10 |
| 11 | EXECUTIVE MANAGEMENT COMMITTEE | 12 |
| 12 | AUDIT COMMITTEE | 12 |
| 13 | COMMITTEES | 13 |
| 14 | VOTING & ELECTIONS | 15 |
| 15 | ASSETS | 16 |
| 16 | ADMINISTRATION | 17 |
| 17 | SECRETARY GENERAL | 17 |
| 18 | RESOLUTION OF DISPUTES | 17 |
| 19 | DISSOLUTION OF THE IBSF | 18 |
| 20 | CHANGES TO THE STATUTES | 19 |
| 21 | ADDITIONAL IBSF REGULATIONS | 19 |
| 22 | GENERAL | 19 |
| 23 | VALIDITY OF THESE STATUTES | 20 |



IBSF Statutes

# 1    PREAMBLE

1.1    The "International Bobsleigh and Skeleton Federation" (IBSF), is the religiously and politically neutral international non-governmental organisation administering the sports of Bobsleigh (including Bob-on-the-Road) and Skeleton. The IBSF, originally the Fédération Internationale de Bobsleigh et de Tobogganing (FIBT), was founded in Paris on the 23rd November 1923, by the delegates of Great Britain, France and Switzerland and the representatives of Canada and the United States.

1.2    The IBSF is the International Federation of all national Bobsleigh and Skeleton Federations and Organisations in accordance with the conditions contained in these Statutes.

1.3    The IBSF is the "supreme authority" in all matters relating to international Bobsleigh and Skeleton. In that capacity, the IBSF asserts its authority over all current and future forms, variations and derivatives of the sport, including those forms, variations and/or derivatives modified or derived from its traditional form.

1.4    The IBSF cooperates with the International Olympic Committee (IOC), the International Paralympic Committee (IPC) and other International Federations on all matters related to the governance of sports and the Olympic Family. The IBSF recognises and observes the Olympic Charter, and supports the ideal of Fair Play in sport.

1.5    The IBSF does not allow any kind of discrimination on improper grounds, in particular discrimination on grounds of race, colour, sex, sexual orientation, language, religion, political or other opinion, national or social origin, property, birth or other status.

# 2    NAME, REGISTERED OFFICE AND LANGUAGE

2.1    The IBSF constitutes a civil association founded for an unlimited period of time having its own legal identity in accordance with Article 60 of the Swiss Civil Code. The IBSF is under the jurisdiction of Switzerland and the location of its legal residence is Lausanne, Canton of Vaud.

2.2    The headquarters of the IBSF shall be at an address in Switzerland designated by the Executive Committee.

2.3    The official languages are English and German. The English text has full priority in the event of conflict between them.

# 3    PURPOSE AND TASKS

The purpose of the IBSF is:

3.1    To promote and develop the sports of Bobsleigh and Skeleton at all levels throughout the world and to supervise and direct all their activities at the international level;

3.2    To establish and maintain friendly relations with and between the Member Federations;



IBSF Statutes

3.3    To develop links with other International Federations, National Governments, Inter-Governmental Organisations and International and National Non-Governmental Organisations in order to promote the interests of sport in general and Bobsleigh and Skeleton in particular throughout the world;

3.4    To support within its authority the objectives of the Member Federations;

3.5    To promote the cooperation and mutual understanding between athletes from all countries;

3.6    To administer and control participation in the Olympic Winter Games; World and Continental Championships; World and Continental Cups as well as other competitions or events which are approved by the Congress or the Executive Committee; including confirmation of results;

3.7    To establish Rules for all competitions approved by the IBSF;

3.8    To recognise only those competitions which comply with these Statutes and the Rules of IBSF and to ensure that these Statutes and all IBSF Rules are observed at such competitions;

3.9    To serve as the highest authority for all questions concerning the sports of Bobsleigh and Skeleton and its Rules and Regulations;

3.10    To represent the IBSF sports to outside interests. To act as an intermediary and to direct Bobsleigh and Skeleton activity at an international level;

3.11    To take into consideration the protection of environment and promote sustainable development;

3.12    To promote and to protect all rights relating to IBSF activities throughout the world, including property rights, intellectual property rights such as copyrights, trademarks, and logos;

3.13    To govern and regulate the sport at the international level, and to recognise National Federations to govern and regulate the sport at a national level, in accordance with and subject to the IBSF's ultimate authority over the sport;

3.14    To protect the independence and autonomy of the IBSF and its Members to govern and regulate the sport, including exercising the right of democratic elections free from any outside influence;

3.15    To preserve the integrity of the sport, including (without limitation) by adopting Rules implementing the World Anti-Doping Code, the Olympic Movement Code on the Prevention of the Manipulation of Competitions of 8 December 2015 as well as any amendments made thereafter by the IOC, and other appropriate codes of conduct and ensuring that such Rules and codes are enforced at all Bobsleigh and Skeleton events sanctioned by the IBSF and/or a Member (as applicable).



IBSF Statutes

## 4 TRADEMARKS AND LOGOS

4.1 The IBSF uses (or has used) the following trademarks and logos.

 

4.2 The IBSF may create other trademarks or logos. The IBSF reserves all rights for the use and the disposal of its trademarks and logos.

## 5 MEMBERSHIP

5.1 Only a legal entity may become a Member of the IBSF. The IBSF has two (2) membership categories:

    5.1.1 Members

    5.1.2 Honorary Members

5.2 Members: Members of the IBSF are organisations concerned with bobsleigh and/or skeleton that:

    5.2.1 Have their headquarters established in the country they represent;

    5.2.2 Have been approved by the IBSF Executive Committee or the Congress as a Member.

5.3 There can be only one Member of the IBSF per Nation.

5.4 Application to become a Member

    5.4.1 The application to become a Member of the IBSF must include:

        5.4.1.1 Formal agreement to be subject to these Statutes, the IBSF International Rules, IBSF Anti-Doping Rules, IBSF Code of Ethics and all relevant IBSF Codes of Conduct;

        5.4.1.2 A copy of the Statutes of the National Federation;

        5.4.1.3 A copy of the Anti-Doping Rules of the National Federation;

        5.4.1.4 Proof that the National Federation is a legal entity in the Nation it represents;

        5.4.1.5 A statement giving the details of membership, including total number of clubs and individual members;

| Statutes | | July 2022 | 5 of 20 |



IBSF Statutes

5.4.1.6 Such applications must be addressed to the Secretary General of the IBSF;

5.4.1.7 A National Federation seeking to become a Member may file an application for membership with the Secretary General at any time other than within the three (3) months leading up to a Congress;

5.4.1.8 The application to become a Member must be approved or disapproved by a majority vote of the Executive Committee, or following a refusal by the Executive Committee by a majority vote of the Congress.;

5.4.1.9 If the application to become a Member is disapproved by the Executive Committee, the Applicant may, within four (4) weeks of notice of the disapproval, appeal to the next Congress. Such an appeal to become a Member must be approved by a majority of those eligible to vote at that Congress.

5.5 Honorary Members: At the request of the Executive Committee, or of the Members, individuals who have attained particular merits or standards for Bobsleigh or Skeleton may be appointed Honorary Members of the IBSF by the Congress. A majority vote of the Congress is required.

5.5.1 Honorary Members are exempt from any fees and are invited to all Congresses. They have no right to vote or submit proposals.

5.6 Resignation, expulsion and suspension.

5.6.1 The resignation of a Member must be declared by registered letter to the Secretary General. Any obligations resulting from the membership must be fulfilled before the termination of the membership.

5.6.2 If a Member has been inactive for three (3) years and has not paid its membership fees for three (3) years the Executive Committee can ask the Congress to remove the Nation as a Member of the IBSF. A two-thirds (2/3) majority is required for this.

5.6.3 In particular cases, the IBSF may enforce the expulsion or suspension of a Member on the grounds set out below, after confirmation by the Congress to do so:

5.6.3.1 In cases of breaches of sport discipline;

5.6.3.2 It has not complied with its financial commitments;

5.6.3.3 In cases of infringement of these Statutes, infringement of the International Rules, Anti-Doping Rules, Code of Ethics or Codes of Conduct;

5.6.3.4 The Member no longer satisfies all of the criteria for membership set out in these Statutes;

5.6.3.5 For other reasons, e.g. fraud or criminal conduct.



IBSF Statutes

5.6.4 The expulsion or suspension of a Member may be dictated by a two-thirds (2/3) vote of the Congress upon a motion by the Executive Committee. Within two (2) weeks after the Congress Resolution the expelled/suspended Member can appeal to the IBSF Appeals Tribunal and finally to the CAS.

5.6.5 A Member may be suspended by the Executive Committee until the next Congress for any of reasons set out in 5.6.3 of these Statutes, wherein the Congress will decide if the Member should be expelled, the suspension continued or the Member reinstated. Such a decision can be appealed to the IBSF Appeals Tribunal and the CAS.

5.6.6 A Member that has been suspended may not exercise any of the rights or benefits of Membership of the IBSF during the period of suspension.

## 6 RIGHTS OF MEMBERS

6.1 Subject always to the powers of suspension of rights of Members set out in these Statutes, any Member of the IBSF has the following rights:

6.1.1 To claim for moral and technical support from the IBSF in the promotion of Bobsleigh and Skeleton, in particular in the development of sports equipment, in connection with the construction of bob tracks and in the running of competitions,

6.1.2 To participate in all the competitions organised by the IBSF and by its Members according to the regulations laid down by the IBSF and race organisers,

6.1.3 To organise international competitions under the control of the IBSF,

6.1.4 To organise National competitions,

6.1.5 To participate at Congress in accordance with these Statutes.

## 7 OBLIGATIONS OF MEMBERS

7.1 Members and their individual members are subject to and must comply with the IBSF Statutes, all IBSF Rules and Regulations, the IBSF Anti-Doping Rules, the IBSF Code of Ethics, all relevant Codes of Conduct and to the decisions taken by the Congress and/or the IBSF Executive Committee.

7.2 Members must adopt and implement and enforce within its territory regulations that are consistent with these Statutes and other IBSF regulations, including (without limitation) Anti-Doping regulations that are compliant with the World Anti-Doping Code and the IBSF Anti-Doping regulations (as amended from time to time).

7.3 Members must at all times maintain the documents and status that is required to become a Member as set out in Articles 5.4.1 – 5.4.1.5. Any changes must be communicated to the ISBF Secretary General.

7.4 Members shall be obligated to pay to the IBSF the following fees:

7.4.1 An Admission fee: for Members on attaining membership of the IBSF; and



IBSF Statutes

> 7.4.2 A Membership fee: this is an annual fee, to be settled by all Members and by the 31st December of each year of their membership.

7.5 A Member shall inform the IBSF of the name and address of its President, Secretary General and other persons responsible for conducting, on its behalf, official correspondence both with IBSF and the other IBSF Members.

7.6 A Member must recognise and enforce within its Country: (A) all decisions of the IBSF's constituent bodies and/or officials made under the IBSF Statutes, Rules and Regulations; (B) periods of ineligibility and other disciplinary sanctions imposed by the IBSF; and (C) periods of ineligibility and other disciplinary sanctions imposed by other Members.

7.7 The IBSF, all of its Members, officials, coaches and athletes must adhere to the World Anti-Doping Code (WADC) and practice the principles with due diligence and without exception.

7.8 Neither these Statutes nor membership of the IBSF shall create a partnership or agency relationship between the IBSF and its Members. Members are not liable for the debts or obligations of the IBSF, and the IBSF is not liable for the debts or obligations of Members.

## 8 BODIES OF THE IBSF

8.1 The IBSF consists of:

> 8.1.1 The Congress;
>
> 8.1.2 The Executive Committee;
>
> 8.1.3 The Executive Management Committee;
>
> 8.1.4 The Auditors; and
>
> 8.1.5 The IBSF Appeals Tribunal.

## 9 CONGRESS

9.1 The Congress is the highest authority of the IBSF, and it consists of:

> 9.1.1 The Delegates nominated by the Members and
>
> 9.1.2 The Executive Committee.

9.2 The Delegate must either:

> 9.2.1 Possess the citizenship of the country they represent; or
>
> 9.2.2 Be an official resident of the country for at least three years prior to the date of the Congress.

9.3 Any Member may appoint an Advisory Assistant to accompany the Delegate to the Congress.

9.4 Honorary Members may attend Congress.



IBSF Statutes

9.5 The Congress is presided over by the President of the IBSF, or one of the Vice-Presidents.

9.6 The Congress meets annually, preferably in the second quarter of the calendar year. The Executive Committee shall fix the date and place of the Congress. The organisation of the Congress shall be entrusted to a Member capable of fulfilling the conditions specified by the Executive Committee.

9.7 The President shall call the Congress by written invitation to the Executive Committee, Members and Honorary Members. The deadline for the presentation of requests from Members shall be fixed in the invitation from the President.

9.8 An Extraordinary Congress may be called at any time at the request of the majority of the members of the Executive Committee, or by a majority of the Members eligible to vote.

9.9 The time required to call an Extraordinary Congress shall not be less than 4 weeks. In this case, the time required for presentation of requests shall not be less than two weeks.

9.10 The authority of Congress is:

9.10.1 Checking of powers, roll-call, verification of entitlement to vote, statement of receipt of invitation and approval of the agenda;

9.10.2 Approval of the Minutes of the last Congress;

9.10.3 Report by the members of the Executive Committee, with the presentation of accounts, budget, and report of the Audit Committee;

9.10.4 Discussion of reports, approval of the accounts and release of the Executive Committee;

9.10.5 Approval of the budget including the annual subscription and/or other fees;

9.10.6 Election of the members of the Executive Committee (every four (4) years);

9.10.7 Election of the Auditors Committee (every two (2) years – three persons);

9.10.8 Election of the members of the IBSF Appeals Tribunal (every four (4) years);

9.10.9 Consideration of proposals from the Executive Committee;

9.10.10 Consideration of proposals to suspend or expel Members;

9.10.11 Consideration of the Indemnity Policy;

9.10.12 Changing of the Statutes;

9.10.13 Dissolution of the IBSF;

9.10.14 To consider any and all other matters properly brought before Congress for consideration and decision;

9.10.15 Requests for honours; and

9.10.16 The allocation of World Championships.



IBSF Statutes

9.11 Additions to the business of the Congress may be presented by the Executive Committee or Members. These must be filed with the Secretary General along with a written statement for the grounds for inclusion pursuant to the deadline fixed in the invitation to the Congress.

9.12 Late additions to the business may only be considered by Congress if they are presented in writing before the opening of the Congress, and agreed by two-thirds (2/3) of the delegates present and entitled to vote. No new proposal to the Congress may be added to the agenda after the beginning of the Congress.

9.13 The Congress Minutes should be drawn up within four (4) weeks of the end of the Congress, and be sent to all members, to the Executive Committee, and to the Auditors.

9.14 The Minutes should be signed by the President following approval at the next Congress.

## 10 EXECUTIVE COMMITTEE

10.1 Subject to the exclusive powers and ultimate authority of Congress, the Executive Committee shall have full power and authority to manage the affairs of the IBSF and exercise all its powers.

10.2 The Executive Committee shall consist of:

　　10.2.1 President;

　　10.2.2 Vice President of Corporate and Financial Affairs;

　　10.2.3 Vice President of Sport;

　　10.2.4 Vice President of International Affairs;

　　10.2.5 Vice President of Marketing and Events;

　　10.2.6 Vice President of Communication;

　　10.2.7 Vice President of Legal Affairs;

　　10.2.8 Co-Chairperson of the Athletes Committee Bobsleigh & Co-Chairperson of the Athletes Committee Skeleton; and

　　10.2.9 The Secretary General (without voting rights).

10.3 Ex-Officio representatives (e.g. Past Presidents) may be invited to attend Executive Committee meetings when required on relevant matters (without voting rights).

10.4 The President and the Secretary General, or their duly authorised alternative/s have authority to bind the IBSF.

10.5 The President of the IBSF shall be the Chair of the Executive Committee. In the absence of the President, the Vice Presidents shall choose a Presiding Officer for the meeting by majority vote.

| Statutes | | July 2022 | 10 of 20 |



IBSF Statutes

10.6 The President shall be the Chief Executive Officer and shall preside at all meetings of the IBSF. The President shall be an ex officio member of all committees and shall perform such other duties as may be assigned by vote of the Executive Committee

10.7 The President may not hold any office or position with a Member of the IBSF or with any sponsor of the IBSF.

10.8 The Vice President of Corporate and Financial Affairs shall be responsible for all matters that concern the finances of the IBSF, including accounting, audits, budgets, taxes, banking, income and expenses.

10.9 The Vice President of Sport shall be responsible for all matters that concern organisation, operation and validation of IBSF competitions for bobsleigh and skeleton including rules, races, tracks, juries and the safety of the athletes.

10.10 The Vice President of International Affairs shall be responsible for international relations that concern the IBSF and the development and growth of the disciplines of bobsleigh and skeleton, including issues of emerging nations and nations requiring special assistance for sporting competition.

10.11 The Vice President of Marketing and Events shall be responsible for all matters that concern the IBSF in regards of media and marketing rights, television production and relations with race organisers.

10.12 The Vice President of Communication shall be responsible for all matters that concern IBSF and the communication strategy, publications, and media.

10.13 The Vice President of Legal Affairs shall be responsible for all matters that concern the law and the IBSF, including rules, Statutes, contracts, property and personal rights, litigation, arbitration, mediation, anti-doping and ethics.

10.14 The Chairpersons of the Athlete Committee shall be responsible for all matters that concern the athletes.

10.15 Decisions regarding the compensation, benefits and the work conditions of the Secretary General are made by majority vote of the Executive Committee.

10.16 Members of the Executive Committee shall be entitled to compensation laid down in an Indemnity Policy. The Indemnity Policy will be proposed by the Ethics Committee and requires the approval of Congress.

10.17 The President and each elected member of the Executive Committee shall have one (1) vote each on all matters before the Congress except for in the elections of the Executive Committee where they are not allowed to vote. The Secretary General is not entitled to vote on any matter before Congress.

10.18 No Member shall have more than one (1) individual elected to the offices of President or any of the Vice Presidents (this does not apply to the Chairpersons of the Athlete Committee)

10.19 The members of the Executive Committee are elected for a four (4) year term corresponding to the Olympic cycle.



IBSF Statutes

10.20 The Executive Committee issues general guidelines and regulations for each single field pertaining to the Vice Presidents

10.21 The Executive Committee provides advice and fulfils the responsibilities stated in these Statutes. The Executive Committee is bound by the decisions of the Congress.

10.22 Members of the Executive Committee shall preferably be present in person at Executive Committee meetings. If circumstances permit members of the Executive Committee may participate in a meeting via phone or a videoconference facility.

10.23 A member of the Executive Committee can be suspended by the Executive Committee following an opinion of the Ethics Committee that recommends this action. The Congress has the authority to reinstate, remove or further suspend the member of the Executive Committee. A two-thirds (2/3) majority vote of Congress is required to remove or suspend a member of the Executive Committee. A member can within two (2) weeks of any such decision by the Executive Committee or Congress appeal to the IBSF Appeals Tribunal and finally the CAS.

10.24 Vacancies on the Executive Committee shall be filled at the next regular Congress by election of a replacement to serve until the next regular election.

10.25 A quorum of the Executive Committee will be a simple majority of its members that have voting rights.

10.26 No person is eligible for election to the Executive Committee if they have reached the Age Limit as at the date of Congress at which they stand for election or if they will reach the Age Limit within six (6) months thereafter. For these purposes, the "Age Limit" is such age that the IOC has implemented as the age limit for membership of the IOC.

## 11 EXECUTIVE MANAGEMENT COMMITTEE

11.1 The President, the Vice President of Corporate and Financial Affairs and the Secretary General shall comprise the Executive Management Committee, and shall have the responsibility for administering the business and routine affairs of the IBSF on a daily basis.

11.2 The Executive Management Committee shall report regularly to the Executive Committee.

## 12 AUDIT COMMITTEE

12.1 The Audit Committee supports the Executive Committee in fulfilling its responsibility towards the Congress relating to:

▪ financial reporting

▪ risk management

▪ compliance

| Statutes | | July 2022 | 12 of 20 |
|---|---|---|---|



IBSF Statutes

12.2 The Audit Committee shall have the authority and responsibility to conduct any audit it deems necessary to perform.

12.3 The Audit Committee shall monitor, make recommendations to the Executive Committee and where appropriate report to the Congress on:

12.3.1 the integrity of the IBSF's financial statements (refer to 12.4),

12.3.2 the effectiveness of the IBSF's risk management and internal control systems,

12.3.3 the IBSF's compliance with legal and regulatory requirements

12.4 In relation to the annual financial audit, the Audit Committee shall:

12.4.1 approve the annual appointment of the independent audit company;

12.4.2 assist in determining the scope and planning of the audit with the independent audit company;

12.4.3 review and discuss the results of the Full Audit with the independent audit company;

12.4.4 review and discuss the results of the Full Audit with the Executive Committee;

12.4.5 report the results of the review of the full audit to the Congress and advise the Congress regarding the release of the Executive Committee.

## 13 COMMITTEES

13.1 There shall be Committees, which shall be advisory to the IBSF, as follows:

13.1.1 Sports Committee for Bobsleigh;

13.1.2 Sports Committee for Skeleton;

13.1.3 Materials Committee for Bobsleigh;

13.1.4 Materials Committee for Skeleton;

13.1.5 Tracks Committee;

13.1.6 Medical Committee;

13.1.7 Athletes Committee;

13.1.8 Ethics Committee;

13.1.9 Para sport Committee; and

13.1.10 Development Committee.

13.2 The Executive Committee appoints the members of the Committees, with the exception of the Athletes Committee which shall be elected in accordance with Article 13.6.

13.3 The duties of each Committee, with the exception of the Athletes Committee and the Ethics Committee, shall be assigned by the President subject to the approval of the Executive Committee.

13.4 The Executive Committee may establish and appoint the members of such other Special Committees as may be necessary.



13.5 The term of each member of each Committee, with the exception of the Athletes Committee, shall run until the next quadrennial meeting following the Olympic Winter Games or until his or her successor is appointed. The Executive Committee can remove, replace or add members of Committees.

Special Committees shall automatically be dissolved on the dissolution date agreed when they are created, or, if no such date is established, when dissolved by the Executive Committee.

The terms of the members of each Special Committee shall expire when the committee is dissolved, or as otherwise provided by the Executive Committee.

13.6 The IBSF Athletes Committee (AC).

13.6.1 The AC shall consist of seven (7) athletes who are over the age of eighteen (18) and have had, or currently hold, a IBSF license and have participated in IBSF Competitions.

13.6.2 Qualification of members

The seven (7) member AC will be comprised of;

a. One (1) athlete, active or retired, from the discipline men's Bobsleigh;
b. One (1) athlete, active or retired, from the discipline women's Bobsleigh;
c. One (1) athlete, active or retired, from the discipline men's Skeleton;
d. One (1) athlete, active or retired, from the discipline women's Skeleton;
e. One (1) athlete, active or retired from the Para disciplines; and
f. One (1) retired athlete from any of the bobsleigh disciplines, who will be the Co-Chairperson of the AC-Bobsleigh.
g. One (1) retired athlete from any of the skeleton disciplines, who will be the Co-Chairperson of the AC-Skeleton.

13.6.3 Each member to be elected from each of the five (5) disciplines will either be a retired athlete that has competed in IBSF Competitions within the preceding four (4) years of the date of Election, or be an active Athlete currently competing in IBSF Competitions.

13.6.4 The Co-Chairperson of the AC-Bobsleigh and the Co-Chairperson of the AC-Skeleton will be retired Athletes from their respective disciplines who have retired within the last five (5) years of the date of the Election. Both Co-Chairpersons will also be members of the IBSF Executive Committee.

13.6.5 Athletes Eligibility to Vote

The eligible voters for the Election of the members of the AC are the competing Athletes in IBSF Competitions (World Cup, Intercontinental Cup, North Americas Cup and Europa Cup, Para events), licensed and results confirmed by Official Time Sheets, from the previous season.

13.6.6 Term of Office for members of the AC



The term of office will be four (4) years; a member is limited to two (2) successive terms in the same office.

13.6.7 Conduct of Election for members of the AC

13.6.7.1 The Election of the members of the AC will take place during the season following the Winter Olympics.

13.6.7.2 A Candidate for Election as a member of the AC must be nominated by his or her National Federation. A National Federation will be limited to having no more than one (1) Athlete elected to the AC.

13.6.7.3 The IBSF will conduct the Election by paper ballot, electronic filing or by any means to provide for secrecy and security of casting votes.

13.6.7.4 Any vacancy in Office for an elected member of the AC for whatever reason will be filled for the remainder of the four (4) year term by the runner up in the election for that position. If no person exists, the AC shall, at their own discretion, co-opt a new member from the relevant discipline, and/or a new election shall be held the following season for that position.

13.6.8 All other regulations relating to the AC election shall be in the AC Election Rules.

## 14 VOTING & ELECTIONS

14.1 Voting

14.1.1 All decisions taken during the IBSF Congress are decided by a simple majority of votes cast unless specifically stated otherwise in these Statutes.

14.1.2 Abstentions and invalid votes are not counted in the determination of the majority.

14.1.3 In the event of a tie this shall be interpreted as a rejection.

14.2 Only Members and the Executive Committee have the right to present proposals and to vote at the Congress. Votes are allocated to Members and the Executive Committee at a particular Congress in the following manner:

14.2.1 A Member shall receive one (1) vote if the Member has competed in at least ten (10) IBSF on ice competitions (excluding Push Championships) in the preceding twenty four (24) months prior to the Congress and in a minimum of two (2) of the six (6) IBSF Olympic sports disciplines.

14.2.2 A Member shall receive one (1) additional vote for satisfying either of the following conditions:

14.2.2.1 The Member has conducted and has taken full responsibility for an IBSF on ice competition (excluding Push Championships) in the preceding twelve (12) months prior to the Congress; or



IBSF Statutes

14.2.2.2 The Member has competed in at least five (5) IBSF on ice competitions (excluding Push Championships) in each of the six (6) Olympic disciplines every season for the last four (4) seasons. (This change comes into force on 1 April 2026.)

14.2.3 No Member shall receive more than two (2) votes as a Member.

14.2.4 Each member of the Executive Committee shall receive one vote except for in the elections of the Executive Committee where they are not allowed to vote.

14.2.5 The vote of a member of the Executive Committee shall not count as a vote of a Member Federation.

14.3 Proxy voting and voting by mail is not permitted.

14.4 Only the Delegate from a Member and the members of the Executive Committee are entitled to vote on matters that come before the Congress.

14.5 Elections

14.5.1 In principle, voting is to be conducted in writing and by secret ballot;

14.5.2 In the event that there should be only one candidate proposed for an office, and if that candidate is prepared to accept the said office, the election may be by a show of hands, if no secret ballot is requested. Candidates are elected if they obtain a simple majority of the votes;

14.5.3 Candidates in absentia may be elected, provided they state their acceptance for the office in writing in advance;

14.5.4 If there are several candidates for election, the candidate who secures at least 50% of the votes is elected. In the event no candidate secures such a number of votes, a second ballot shall take place between the two candidates who secured most votes during the first ballot. In this second ballot a simple majority of votes is decisive for the election.

14.6 Only Members can submit candidates for election to the Executive Committee. Any such candidates must be:

14.6.1 Over twenty one (21) years of age; and

14.6.2 Possess the citizenship of his/her nominating Member; or be an official resident of that Nation for at least three years prior to the date of the Congress.

## 15 ASSETS

15.1 The assets of the IBSF consist of the annual fees from members, interest on bank accounts, donations, contributions, grants and any other income.

15.2 Any debts and liabilities of the IBSF are the sole responsibility of the IBSF and must be settled from the assets of the IBSF. There is no liability for the debts of the IBSF upon its Executive Committee, Members, or Honorary Members.

15.3 The income and property of the IBSF shall be applied solely towards the promotion of its Purposes and Tasks as set forth in these Statutes.



IBSF Statutes

## 16 ADMINISTRATION

16.1 The administration of the IBSF is ruled by financial regulations approved by the Congress.

16.2 The Vice-President of Corporate and Financial Affairs shall prepare each year a financial statement and an estimated budget which shall be submitted to Congress for approval.

16.3 The annual accounts are subject to the examination of the Auditors of Accounts whose report is to be submitted to the Congress.

16.4 The annual accounts should be sent to the Members at least four (4) weeks before the Congress date.

## 17 SECRETARY GENERAL

17.1 The Secretary General is appointed by the Executive Committee.

17.2 The Secretary General has no vote at Congress or Executive Committee meetings.

17.3 The Secretary General accepts proposals from the Members and distributes to Members, Congress and the Executive Committee.

17.4 The Secretary General manages the Office of the IBSF. The Secretary General shall send to the members of the Executive Committee notification of meetings of the Executive Committee at least two (2) weeks in advance of the meeting. In exceptional cases, this time may be shortened.

## 18 RESOLUTION OF DISPUTES

18.1 Any dispute arising between Members, or between one or more Members and the IBSF (including any dispute as to sanctions imposed by the Executive Committee), or between the IBSF and any individual or entity that is a member of or affiliated to a Member (each, a Dispute), shall be resolved exclusively by the means set out in this Article 18, to the exclusion of any other means. All of the aforementioned parties waive (to the fullest extent permitted under applicable law) any rights of recourse they might otherwise have to any court or other forum for resolution of such Disputes.

18.2 In the first instance, a Dispute shall be referred to the IBSF Appeals Tribunal for hearing and determination in a fair and impartial manner in accordance with these Statutes and the IBSF Appeals Tribunal Rules.



IBSF Statutes

18.2.1 The IBSF Appeals Tribunal consists of five members, who are not members of the Executive Committee and who are elected by Congress for a period of four (4) years. The IBSF Appeals Tribunal shall elect its own Chairperson from among those five members.  When a Dispute is referred to the IBSF Appeals Tribunal, the Chairperson will convene a hearing panel of at least three members of the IBSF Appeals Tribunal to hear the Dispute, except in cases where a decision must be rendered on an expedited basis, the Chairperson or a single member of the Appeals Tribunal may hear the Dispute. In the event that a legally qualified member is unavailable to sit on that panel, the Chairperson will appoint a qualified legal adviser to advise the panel.

18.2.2 The Executive Committee shall appoint a new member(s) to fill any vacancy occurring on the IBSF Appeals Tribunal between elections, which new member shall come from a country not already represented on the Tribunal, and any member so appointed shall serve until the next election.

18.3 Decisions of the IBSF Appeals Tribunal shall be final and binding on the parties, and may only be challenged by way of appeal to the Court of Arbitration for Sport in Lausanne, Switzerland (CAS), which is independent of the IBSF and which will resolve the dispute definitively in accordance with the CAS Code of Sports-Related Arbitration. The time limit for filing the appeal against a decision of the IBSF Tribunal is twenty-one days after receipt of the decision.

18.4 In all proceedings under this Article 18, whether before the IBSF Appeals Tribunal or the CAS, the language of the proceedings shall be English and the governing law shall be Swiss law.

## 19  DISSOLUTION OF THE IBSF

19.1 The dissolution of the IBSF can only be pronounced by a decision of two-thirds (2/3) of the Members.

19.2 An Extraordinary Congress shall be convened specifically for that purpose.

19.3 The Extraordinary Congress will decide upon the use of any assets of the IBSF.  If upon the winding-up or dissolution of the IBSF there remains, after the satisfaction of all its debts and liabilities, any property whatsoever, the same shall not be paid to or distributed among the Members, but shall be given or transferred to some other sporting institution or institutions having purposes similar to the Purposes and Tasks of the IBSF and which shall prohibit the distribution of its or their income and property to an extent at least as great as is imposed on the IBSF, such institution or institutions to be determined by the Members of the IBSF at or before the time of dissolution, and if so far as effect cannot be given to such provisions, then to some other sporting purpose.



IBSF Statutes

## 20 CHANGES TO THE STATUTES

20.1 On a vote to change the Statutes a quorum shall be 50% of the Members eligible to vote. A two-thirds (2/3) majority is required to approve any changes.

20.2 For changes to the Statutes each Member that is eligible to vote under 14.2.1 of these Statutes, and each Executive Committee Member has only one vote.

20.3 Any proposed changes to the Statutes by a Member shall be submitted to the Secretary General in writing at least two (2) months before the Congress for referral to the Executive Committee.

20.4 For purposes of clarity and ease of translation all proposed changes to the Statutes shall be submitted in precise statutory language with direct reference to the existing text if any.

## 21 ADDITIONAL IBSF REGULATIONS

21.1 The IBSF shall adopt additional Rules and Regulations to the present Statutes it deems necessary in order to achieve the goals of the IBSF.

21.2 Such Rules and Regulations shall in principle be adopted and put into force by resolution of the Executive Committee, unless the present Statutes or the specific regulations themselves provide for the subsequent ratification of such regulations through the Congress.

## 22 GENERAL

22.1 The Executive Committee is deemed competent to take any decision not foreseen in the present Statutes.

22.2 In case of occurrence of events or circumstances of exceptional nature which are outside the control of the IBSF (such as terrorism, riot, civil unrest, war (regardless of whether declared or not), strike, nuclear or chemical contamination, epidemic, etc.) (the "Extraordinary Event") resulting in the safe and/or regular conduct of activities of the IBSF or sanctioned by the IBSF, notably, but without limitation, the conduct of activities of bodies/commissions of the federation and/or the organization (including preparation thereof) of and/or the participation in events and/or competitions hosted and/or sanctioned by the federation (the "Federation Activities"), being made impossible, objectively endangered, or, in the reasonable judgment of the IBSF Executive Committee, not reasonably possible or appropriate under adequate conditions given the circumstances, the IBSF Executive Committee may decide exceptional protective measures aiming at preserving the safe, peaceful and regular conduct of the Federation Activities.

The protective measures may include the temporary suspension of:

a) the exercise of rights of members representing countries that caused or contributed to or are otherwise relevantly involved in the Extraordinary Event; and/or



b) persons who are affiliated to the members referred in the above lit. a and/or citizens of the concerned countries, to the extent they are participating in the Federation Activities (including without limitation persons who are elected or appointed as members of the bodies/commissions of the federation, athletes, officials, support personnel)

(collectively referred to as the "Concerned Parties").

The protective measures are issued irrespective of any violations by the Concerned Parties of their respective specific obligations under these statutes and/or other rules of the federation.

Without limitation, the protective measures may include restrictions to or exclusion of the right granted to any third party to organise (including for the avoidance of doubt cancellation/removal of already scheduled Federation Activities) and/or restrictions to or exclusion of the right to participate thereto by the Concerned Parties.

Protective and preventive measures may be maintained by the IBSF Executive Committee (as issued or as amended from time to time) as long as reasonably required by the circumstances. They shall be lifted, partially or totally, as soon as reasonably adequate in view of the evolution of the circumstances having led to the issuance of the measures.

Any decisions under this article should be subject for the subsequent ratification of the next Congress wherein the Congress will decide if the protective measures should be maintained or lifted, partially or totally.

22.3   The Executive Committee is obliged to report any decision that it takes pursuant to this Article to the next Congress.

## 23   VALIDITY OF THESE STATUTES

These Statutes come into force by order of the Congress on 15 July 2022.

# EXHIBIT C



INTERNATIONAL BOBSLEIGH & SKELETON FEDERATION

**IBSF Code of Conduct for Athletes**

*This Code of Conduct must be signed by the athlete in order to obtain an IBSF license and compete or train in IBSF events.*

By signing this Code of Conduct (Code) I agree to abide by the Code and I acknowledge that I have read it and fully understand it and the responsibilities and expectations it places on me.

**1. IBSF Sports**

I understand and accept all IBSF Rules. I will report any other athlete or member of my entourage that is breaking IBSF rules to the IBSF Jury.

I am fully aware of the potential risks involved in bobsleigh/skeleton activities be it during training or competition. Consequently, I know and accept that when I engage in such activities, my physical integrity and, in extreme cases, even my life may be at risk.

I will conduct and be responsible for my own inspections and safety checks of the facility and my equipment.

I am fully aware of all aspects of my equipment and take full responsibility for all equipment that I use or intend to use, especially in regard to IBSF rules and safety. I agree that it is not the responsibility of the organizer to inspect or supervise my equipment.

I will keep and maintain the equipment of IBSF, should I be provided with any, during its usage in a good state of repair, normal wear and tear excpected.

**2. Integrity**

I am aware of the IBSF Code of Ethics, have read it and will abide by it.

I will not accept any form of bribery and will take resolute and appropriate action against any form of cheating or corruption in sport.

I reject any form of doping and comply with the IBSF Anti-Doping Rules, the World Anti-Doping Code, and the International Standards issued by WADA, as amended from time to time, and support its programs.

I refrain from any form of betting or promotion of betting activity on IBSF events and will not provide any information that could be used for betting.

I refrain from any form of harassment, abuse bullying or mobbing.

I will take no action which is intended, or would reasonably be expected, to harm the reputation of the IBSF or the sports of bobsled or skeleton, or individual athletes or which would reasonably be expected to lead to unwanted or unfavorable publicity to the IBSF or the sports of bobsled or skeleton or individual athletes.



INTERNATIONAL BOBSLEIGH & SKELETON FEDERATION

### 3. Responsibility

I am medically and physically fit to do the sport of bobsled or skeleton, am aware of the risks and have the appropriate insurance that will cover me in any case of loss or accident.

I will fully cooperate with any IBSF investigation and make myself available to any IBSF hearing.

I will abide by all IBSF rules and regulations.

I will respect the spirit of fair play and non-violence and behave accordingly.

I will respect the environment that I do my sport in and will not in any way hinder others from performing at their best.

To the extent permitted by the applicable law, I release IBSF, my National Federation, and the organizers and their respective members, directors, officers, employees, volunteers, contractors and agents from any liability for any loss, injury, or damage suffered in relation to my participation in IBSF sanctioned competition or training.

If I am under the age of 18 years, I acknowledge that this Code is for my benefit and my competing is conditional upon my parents or guardians providing the signed acknowledgement.

### 4. Dispute Resolution and Sanction

I am aware that any breach of this Code whether intentional or unintentional, by omission or by act can result in me being disciplined by the IBSF.

Complaints made under this Code will be made in writing to the IBSF Ethics Committee (IBSF Secretary General must also be sent any complaint) who will in accordance with the published Rules of Procedure make recommendations on sanctions if warranted to the IBSF Executive Committee.

Sanctions for breaking the Code include but are not limited to a warning, fine, removal from a race or training, and/or a ban from IBSF events.

If a dispute arises between the IBSF and me, or any third party involved in Bobsled or Skeleton I will use the appropriate IBSF appeal and dispute resolution channels, and I acknowledge that ultimately Swiss law and CAS will be the final arbitrator of any dispute.

Family Name/Given Name :

Date of Birth:

Nation:

Signature:

Date:

# EXHIBIT D

 

**Bobsleigh Skeleton Israel**

**ATHLETE AGREEMENT**

**2022/2023**

BOBSLEIGH SKELETON ISRAEL (BSI) PROGRAM

(1)  BOBSLEIGH SKELETON ISRAEL:

(2)  NAME OF ATHLETE:

# Required and Mandatory to obtain IBSF license for current season

# Checklist

⇒ Your current physical mailing address.
⇒ Mobile number and email address.
⇒ Headshot (This is for BSI and IBSF website/licensing/accreditation).
⇒ Date of last doctor's checkup – Must be after March of current year.
⇒ Fit To Slide: **Written confirmation from your doctor.** (See attached).
⇒ Name, **Address and phone number** of your doctor.
⇒ Name, **address** and **policy number** of your insurance.
⇒ Photo of your ISR passport or visa (picture side) must be valid thru **August of 2023** and we must be able to read the detail.
⇒ **Birthdate** and **city**, you were born.
⇒ **Athlete agreement/COC must be signed** before license can be obtained (attached).
⇒ **You and a witness** please sign the BSI waver (attached)
⇒ Please sign declaration of Athletes and BSI team members (attached)
⇒ Please sign IBSF Code of Conduct (attached)
⇒ **Please complete the IMPACT online concussion baseline (See attached)**


⇒ All information must be submitted by **September 1st** of the current year to David Greaves: david@bobsleighskeletonisrael.com and Larry Sidney: larry@bobsleighskeletonisrael.com,

Bobsleigh Skeleton Israel Athlete Agreement

**THIS AGREEMENT** is made on …………………………………………. 2021

**BETWEEN:**

**(1)     Bobsleigh Skeleton Israel (BSI) National Governing Body ("NGB")**

&

**(2)**

(name & address of the "**Athlete**").

**INTRODUCTION:**

(A)     Bobsleigh Skeleton Israel (BSI) is the National Governing Body (NGB) for the sports of Bobsleigh and Skeleton and is recognized as such by the National Olympic Committee of Israel (NOC), International Bobsleigh & Skeleton Federation (IBSF), the NOC's Elite Sport Department and all other bodies involved in the administration of sport.  The organization of national and international competitions and trials and the selection of national teams require the establishment of national federations with certain exclusive powers.  The NGB is such a federation.

(B)     The NGB and the athlete wish to enter into this agreement in order to clarify their respective responsibilities and obligations to enable each member to make the most of his or her sporting career. It is for the NGB to continue to develop Bobsleigh and Skeleton as a high-performance sport program.

**IT IS AGREED** as follows:

**1.   INTERPRETATION**

Words and expressions used in this agreement shall have the meanings set out in Schedule 1.

**2.   STATEMENT OF GENERAL PRINCIPLES**

2.1    We both:

2.1.1   recognize that we strive to represent Israel to the best of our abilities, with the ultimate program goal of winning medals for Israel at International Competitions including the Olympic Winter Games.

2.1.2   acknowledge that this agreement is not a contract of employment; and

2.1.3   acknowledge that all the obligations and duties which we accept under this agreement are beneficial to the effective management of the running of a successful Bobsleigh and Skeleton program.

Bobsleigh Skeleton Israel Athlete Agreement

2.2   You acknowledge and agree that:

2.2.1   the obligations and duties in relation to this agreement are beneficial to your own professional development as a high-performance athlete, and to assist and enable you to win medals at International Competitions as well as qualify for the Olympic Games.

2.2.2   you will not be eligible to be a member of the Bobsleigh or Skeleton team for the 2022-23 season until BSI has received a signed and dated copy of this agreement.

2.2.3   becoming a member of the Bobsleigh or Skeleton Team and your participation in BSI activities will not create an employment relationship between you and BSI;

2.2.4   You are solely responsible for managing your personal financial and tax affairs, including the payment of any tax which might arise on any payments or provision of services or benefits made available to you by BSI under and in connection with this agreement (clothing, NOC funding, reimbursement etc.) Where relevant, the NGB nonprofit in the USA or Amutah in Israel can manage any donations and provide tax receipts to donors.

2.2.5   Any financial support given by NOC/BSI to athletes will be on a year-to-year, case-by-case basis. It is understood that athletes will not receive identical support in all cases. If funding becomes available in a given year, BSI retains the right to support athletes differently based on any or all of the following:

2.2.5.1   Level of performance and perceived (by BSI) opportunity for top race results and Olympic qualifying.

2.2.5.2   Tenure with BSI.

2.2.5.3   Financial need of the athlete.

Bobsleigh Skeleton Israel Athlete Agreement

**3 ELIGIBILITY**

    3.1    In order to compete as a member of BSI you must meet all of the following criteria, and shall immediately notify BSI if you fail at any time to meet one or more of these:

        3.1.1    Our terms and conditions of eligibility;

        3.1.2    The IBSF's eligibility code with respect to your ability to represent Israel;

        3.1.3    Must not be serving a ban from participation in the sport for any reason, including but not limited to: (being found guilty of a doping offense or being found guilty of an offense relating to betting, manipulation of results, corrupt conduct, inside information, Code of Conduct violations or pending hearings/rulings with/from the Dispute Resolution and Disciplinary committee (DRAD) or similar).

        3.1.4    Meet any other criteria decided by BSI to be a member of the Bobsleigh or Skeleton team from time to time, including adhering to Code of Conduct of both the IBSF and BSI.

    3.2    You shall be given the opportunity to rectify a situation as listed above according to the rules and regulations of the applicable governing body or governing bodies named in 3.1.1 and 3.1.2.

**4 BOBSLEIGH SKELETON ISRAEL TEAM MEMBERSHIP PERIOD**

    4.1    Your member Period shall start on the date of signature of this Agreement and shall continue until the end of the Season, April 31, 2022 (I think this should be consistent with the IBSF time period) NEW

    4.2    Your membership in BSI may be suspended or terminated as a consequence of a disciplinary process under the applicable policy or for performance related reasons. Where suspension or termination relates to your performance, BSI will ensure (as a minimum) that you are given early warning of the possibility of removal from BSI and information on the steps or results reasonably required of you to avoid such action. You will be given sufficient time following notification for the necessary improvement to be made (in the case of a performance related decision) and for BSI to have time to reasonably make an assessment.

**5 BOBSLEIGH SKELETON ISRAEL'S RESPONSIBILITIES**

    5.1    To the best of our abilities, BSI will;

        5.1.1    Manage general day to day operations; not limited to relations and interpersonal relations with athletes, ongoing business with NOC, IBSF, other NF's and jury members when required.

        5.1.2    implement, manage and ensure that all athletes are competent to compete on various Bobsleigh and Skeleton Circuits;

        5.1.3    From time to time, meet with coaches to discuss athlete performance,

Bobsleigh Skeleton Israel Athlete Agreement

good or less than.

5.1.4 Collaborate with NGB's for the benefit of BSI's program (shared resources, coaching, mentorship, etc) NEW

5.1.5 confirm that athletes have taken out appropriate insurance coverage to cover the activities an athlete will be carrying out while representing the BSI;

5.1.6 license athletes in the IBSF database, once the athlete has been deemed eligible by BSI and the IBSF;

5.1.7 register BSI athletes for IBSF-sponsored competitions as agreed upon by the BSI administration and athlete;

5.1.8 support your efforts to raise funds for your sport participation, where reasonably possible;

5.2 We will provide such information and instructions as you may reasonably require enabling you to perform your obligations under this agreement. Information provided will include:

5.2.1 BSI Eligibility Requirements (including the criteria set out clause 3 above);

5.2.2 Competition and Training Schedules; (forwarding of all relevant IBSF communication);

5.2.3 Selection races or combines where relevant;

5.2.4 BSI Grievance and Disciplinary Rules and Procedures and the process to access the Dispute Resolution and Disciplinary (DRAD) committee.

5.2.5 BSI Sponsorship Procedures: You must discuss potential sponsors with BSI before entering into an agreement with the sponsor;

5.2.6 IBSF Competition Rules and Regulations. Any changes to the rules and regulations by the IBSF will be communicated by BSI to the athletes;

5.2.7 Media, Social Media Use Policy and Guidelines. Social media will fall under code of conduct. All other media requests must be brought to BSI for approval.

**5.3** BSI will ensure that our staff is available at reasonable times to receive and consider any requests from athletes for advice and information, reports, applications or other matters. **(BSI will make every effort to respond within 24 hours)**

5.4 BSI will provide you with <u>updates</u> detailing relevant changes in BSI.

5.5 BSI will conduct regular reviews, which will take into account the above (and any other relevant) factors, in order to determine whether to continue, suspend or terminate your membership with BSI.

Bobsleigh Skeleton Israel Athlete Agreement

5.6 Further, BSI agrees to:

manage our relationship with all athletes that fosters openness, honesty, mutual trust and respect, and ensures the highest professional and ethical standards from all staff; EDITED

5.6.1 strive to treat all BSI athletes fairly. This means that we will make every effort to provide similar levels of opportunity, expertise, and governance to all BSI athletes, as appropriate to the developmental level of the athlete.

5.6.2 manage and govern all aspects of BSI in a manner that is best practice. This involves ensuring that BSI policies and procedures are regularly reviewed, published and if necessary enhanced to comply with current best practice;

5.6.3 abide by all the policies and procedures adopted by BSI, the IBSF, the Israeli NOC, and any other governing bodies that oversee us and our athletes;

5.6.4 actively encourage and support consultation with you in policy and program development and to ensure timely communication of any revisions with you;

5.6.5 not make any public statement (whether made as part of a formal interview or not) that is damaging to your reputation or otherwise insulting or offensive. Fair comment and criticism of a sporting performance or behaviour linked to a sporting performance or other aspect of BSI is permitted.

## ATHLETE'S RESPONSIBILITIES
### Performance Plan

5.7 You agree:

5.7.1 to develop and agree upon an Individual Performance Plan with BSI so we are aware of where you are competing or would like to compete and how BSI can assist.

5.7.2 to follow your Individual Performance Plan to the best of your abilities and keep BSI up to date with any planned changes

5.7.3 that where you engage the services of a personal coach who is not provided by BSI but is considered part of your team (a "*Personal Coach*"), must sign and adhere to the agreement and BSI conde of conduct). You will ensure that the Personal Coach complies with your obligations in this agreement and that the Personal Coach uses his or her best attempts to work with BSI to further your interests as well as the interests of the BSI as a whole;

5.7.4 that selection for International Competitions shall be conducted in accordance with the BSI Selection, De-Selection Policies and

Bobsleigh Skeleton Israel Athlete Agreement

Procedures;

5.7.5   keep BSI informed in a timely manner of any change of circumstances that may affect your ability to train or compete;

5.7.6   keep BSI informed of any changes to your personal circumstances, such as any change of permanent residential address and, in respect of periods when you are outside the country training or competing, any temporary overseas address.

**Clothing & Equipment**

5.8   You agree:

5.8.1   to wear a race suit that is in the most current style and design as designated by BSI for IBSF race days

5.8.2   to wear outerwear that follows the pattern and style as designated by BSI when in attendance at IBSF official race training and races

5.8.3   to take reasonable care of and not to cause any damage to any BSI equipment;

**Fitness, Injury & Illness**

5.9   You agree and acknowledge:

5.9.1   to use your best efforts, and to work with BSI, to obtain and maintain the highest possible level of health and physical fitness required for consistent training and competition as an elite international competitor in the sport;

5.9.2   not to unreasonably withhold your consent allowing BSI to receive relevant details from consultations and treatments carried out by your doctor, medical officer, physician etc. being released to the appropriate BSI staff. Where BSI does receive your medical information, BSI shall handle such information and athlete confidential information in line with the confidentiality clause found later in this Agreement;

5.9.3   that you may withhold consent for the release of medical information to BSI by notifying the medical practitioner or physician carrying out the consultation and understand that only the notice of its withdrawal will be released to BSI.

5.9.4   to as soon as is reasonably practicable notify BSI as to when as you become injured or ill during training, a competition or at any other times, if the illness or injury interrupts your training for five or more consecutive days or involves any level of concussion protocol;

5.9.5   to as soon as is reasonably practicable notify BSI as soon as you suspect or realize that you are likely to or will be absent from any competition (including organized training events) due to injury or illness. Such notification shall include a written explanation from you via email,

Bobsleigh Skeleton Israel Athlete Agreement

together with copies of any medical report(s) dealing with the injury or illness which you may have obtained;

5.9.6   that the sport carries a risk of physical injury and you agree to take all reasonable care to avoid causing harm to yourself and others.

**World Class Conduct (Standards of Behaviour & Attitude)**

5.10   You recognize that, as an elite competitor representing BSI, your conduct and behavior will reflect on Israel, the NOC, BSI, IBSF and the sport and our Commercial Partners. Accordingly, you agree to conduct yourself in a proper manner at all times whilst being a member of BSI and will:

5.10.1   make a positive commitment to supporting and achieving the aims and objectives of the BSI;

5.10.2   accept and abide by all the sport policies and procedures in relation to membership in BSI, including this Agreement;

5.10.3   not conduct yourself in an improper manner that brings Israel, the NOC BSI, IBSF, the sport and any Commercial Partner or yourself into disrepute when training, competing or acting as a member of the Israeli team;

5.10.4   project a favourable and positive image of Israel, the NOC, BSI, IBSF, the sport and our Commercial Partners, by adopting high standards of behaviour and personal presentation;

5.10.5   do nothing which could undermine your own performance or that of another athlete or the work of an Athlete Support Personnel. You accept that BSI may take whatever reasonable steps as are necessary to maintain these standards, including ultimately withdrawal of your membership from the BSI;

5.10.6   behave reasonably and in a manner that shows proper respect for other athletes and colleagues in the sport and other athletes in any other sport when training, competing or residing in a multi-sport environment (such as in the 'Athletes Village' at the Olympic Games);

5.10.7   refrain from the excessive consumption of alcohol in general, and refrain from the consumption of any alcohol during all competitions;

5.10.8   not participate in the manipulation of results in any way including as follows:

(a)   fix or plan in any way or otherwise improperly influence, or being a party to fix or plot in any way or improperly influence, the result, progress, outcome, conduct or any other aspect of a competition;

(b)   guarantee or seek to guarantee the happening of a particular incident in a competition which is to yours or the participant's knowledge the subject of a bet and for which you, a participant or another person expects to receive or has received a benefit;

Bobsleigh Skeleton Israel Athlete Agreement

(c) seek to underperform or not to perform to the best of your abilities in competition in return for a benefit (or the genuine expectation of a benefit, regardless of whether such benefit is in fact given or received by you);

5.10.9 not participate in any corrupt conduct, including but not limited to the following behaviours:

(a) accept, offer, agree to accept or offer a bribe or other benefit (or the genuine expectation of a benefit, regardless of whether such benefit is in fact given or received by you) to fix or plan in any way or otherwise to influence wrongly the result, progress, outcome, conduct or any other aspect of a competition;

(b) provide, offer, give, request or receive any gift or benefit (or the genuine expectation of a benefit, irrespective of whether such benefit is in fact given or received by you) in circumstances that you or a participant might reasonably have expected could bring you, the participant or the sport into disrepute.

5.10.10 not participate in the improper use of inside information, including but not limited to the following behaviours:

(a) using inside information for betting purposes or otherwise in relation to betting;

(b) releasing inside information to any person with or without benefit where a participant might reasonably be expected to know that its release in such circumstances could be used in relation to betting;

(c) causing, instructing, facilitating or encouraging a participant to commit a breach of any rules in relation to betting, corruption, manipulation of results or inside information referred to above whether in the sport or any other sport;

5.10.11 not participate in other betting, corruption offences. You agree to:

(a) not knowingly assist, cover up or otherwise be complicit in any acts or omissions of the type described above, whether committed by you or another participant;

(b) not fail to disclose to BSI or any other competent authority (without undue delay) full details of any approaches or invitations received by a participant to engage in conduct or incidents that would amount to a breach of BSI's, the International Federation's or Competition rules, policies or procedures in this area;

(c) not fail to disclose to BSI or other competent authority (without undue delay) full details of any incident, fact or matter that comes to your attention that may evidence breach of our, the International Federation's or Competition rules, policies or procedures in this

Bobsleigh Skeleton Israel Athlete Agreement

area by a third party, including (without limitation) approaches or invitations that have been received by any other party to engage in conduct that would amount to a breach of BSI's, the International Federation's or Competition rules, policies or procedures in this area;

(d) not fail to co-operate with any reasonable investigation carried out by BSI or any other competent authority in relation to a possible breach of clauses 5.10.8 to 5.10.10, including failing to provide any information and/or documentation requested by BSI or any competent authority that may be relevant to an investigation;

(e) not accept assistance in training or competition, or have some other professional involvement with, Athlete Support Personnel or any other person, who in BSI's, the IBSF's, the IOC's, or NOC's reasonable opinion has a poor reputation by reason of being involved in practices in any sport including the sport covering the activities listed in clauses 5.10.8 to 5.10.10 above, and end that assistance or involvement if requested to do so by BSI, the IBSF, the IOC, or NOC (as applicable);

5.10.12 not make any unjustifiable public statement (whether made as part of a formal interview or not) on any media (including, without limitation, on social media sites, twitter, blogs and forums etc.) which is insulting of Israel, the NOC, BSI, IBSF, the sport and our commercial partners or any of the bodies working to promote high performance sport in Israel, nor to make any public statement which constitutes a "personal attack" upon another sporting competitor. Fair comment made without the use of offensive language is permitted where the substance of the comment is known (or can be shown) to be true and will not constitute a "personal attack" for the purpose of this agreement;

5.10.13 not commit any act that shocks or offends the community or which manifests contempt or disregard for public morals and decency.

Bobsleigh Skeleton Israel Athlete Agreement

**Anti-Doping**

5.11 Your right to receive benefits and membership in BSI under this Agreement is dependent on the following:

5.11.1 You must comply with the Anti-Doping Rules at all times (including before this Agreement was entered into). This is your personal responsibility, which you cannot delegate to anyone else;

5.11.2 You must not be involved in any criminal offence involving drugs;

5.11.3 If you are notified by BSI or ISRAD that in their opinion a coach or support personnel you are associated with has a poor anti-doping record, you must cease your professional involvement with that person within 28 days of receipt of that notice.

5.12 You must immediately advise BSI if you are charged with a breach of the Anti-Doping Rules or with a criminal offence involving drugs. We may at that point withhold any benefits or support (including, without limitation, any BSI support services) until there has been a final decision of your case (including any appeals). If it is finally decided that you have not committed an anti-doping rule violation or criminal offence, any withheld benefits shall be returned to you as soon as possible (but you are not entitled to any interest or other compensation in respect of this delayed payment), and the benefits and support in this Agreement shall be reinstated without delay.

5.13 If you breach one of the conditions in clause 5.10 before or during the term of this Agreement then BSI may do the following as BSI, in its absolute discretion, sees fit:

5.13.1 suspend or terminate this Agreement with immediate effect;

5.13.2 retain any benefits and other support withheld from you in accordance with the above clauses;

5.14 You also have an obligation to inform BSI and ISRAD of any information you have relating to any doping practices being engaged by other athletes or support personnel (e.g. coaches, trainers, managers, medical staff and team staff) and you must cooperate fully with BSI's own or any ISRAD investigation into doping in the sport.

**Use of Your Image**

5.15 You agree to allow BSI and our Commercial Partners the use of your image during the Membership Period and the conditions below:

5.15.1 We will be entitled to make use of your image in connection with the promotion, publicity or explanation of BSI

5.15.2 We will also be entitled to use your image for archive and historical record purposes after the termination of this Agreement;

Bobsleigh Skeleton Israel Athlete Agreement

5.15.3 the Commercial Partners will only be entitled to make use of your image for reasonable promotional and publicity purposes during the terms of their respective agreements with BSI and then only for the purposes of advertising their association with BSI (and not you specifically);

5.15.4 no use of your image is permitted if it would be detrimental to your reputation, be insulting or offensive.

**You and your own media and promotional work**

5.16 In any period leading up to, during, or after a competition, you agree to give prior notification to the BSI before engaging any media or press activity designed to (or having the effect of) promote a personal sponsor.

5.17 You agree that you will not use BSI's Trademarks or BSI's Commercial Partners' Trademarks for any of your own personal commercial arrangements without our prior written approval.

**General Media**

5.18 You consent to your performance being filmed and recorded by or on our behalf whilst you are training, competing or otherwise carrying out any activity as part of the Israeli Team, or as a member of BSI. You expressly agree that these films and all rights in them will be BSI property and may be used by BSI only for training and coaching purposes and/or purposes consistent with those laid out in in clause 5.15 above.

5.19 Further to clause 5.18 above, you permanently and unconditionally give up the benefits of and agree not to claim any moral or non-transferable rights whether they exist now or in the future in any such film or recording.

5.20 At a competition (including any organized BSI training event or competition), you shall attend any Israeli Team press interview which is reasonably required before engaging in any activity in support of a personal commercial partner or sponsor. This obligation shall apply for a reasonable period before and after the competition.

**Financial & Tax**

5.21 You acknowledge that BSI has not made any deduction for income tax from any amounts paid or the services or benefits made available to you under this Agreement.

**Please note:** [You may be liable to pay income tax and national insurance on such payments, services or benefits in accordance with current tax legislation, and in particular depending on whether or not you are regarded to be a "professional" athlete. For these purposes, "professional" is not the same as "full time" and will depend on whether there is an identifiable business being conducted by you through your participation in the sport. Talk to your tax specialist.

5.22 If BSI is obliged to make any income tax contributions arising out of the payments or the provision of services or benefits made available to you then

you agree to pay us an amount equal to the amount of any payments made. This clause will not apply where the obligation to make a payment arises as a result of some fault by us, including a misinterpretation of the applicable taxation rules.

## 6 CONFIDENTIALITY & DATA PROTECTION

**Confidentiality**

6.1 We both will treat your confidential information and BSI's confidential information as confidential at all times (both during and after the termination of this Agreement), and neither of us shall at any time (directly or indirectly) use for ourselves, or use to the disadvantage of the other, disclose or allow to be disclosed to any person any confidential information except where the information:

6.1.1 is minor or trivial;

6.1.2 is provided to BSI's professional advisers;

6.1.3 is disclosed as a requirement under law;

6.1.4 is already or becomes public knowledge, except if it becomes public knowledge because either of us breached this confidentiality clause;

6.1.5 if either of us agree in writing for it to be disclosed; or

6.1.6 it is reasonably required by this Agreement.

**Data Protection**

6.2 You acknowledge that all personal information (including "sensitive" personal information such as that relating to your race or ethnic origin, physical or mental health, religious beliefs, and other matters covered by the data protection legislation) provided by you or gathered whilst a member of the BSI for the purposes of the BSI may be stored electronically or otherwise, and processed for the purposes of and in connection with the BSI by employees, agents and contractors of the NGB in accordance with current data protection legislation, guidelines and practices.

6.3 You agree to your personal data being provided by BSI to:

6.3.1 the institutes of sport for Israel for the purposes of providing sports science and medicinal services to BSI and/or you;

6.3.2 ISRAD for the purposes of implementing and ensuring compliance with the Anti-Doping Rules; and

6.3.3 where required and lawful, to the Police, Local, State or National Authority or Gambling Commission.

Bobsleigh Skeleton Israel Athlete Agreement

## 7   INTELLECTUAL PROPERTY

**Background Intellectual Property**

7.1   We promise and you acknowledge that the intellectual property and all rights in, attaching to or relating to BSI, its other programs, events, initiatives, marketing and promotional materials are either owned by BSI or that BSI is a lawful user and you will not make use of such intellectual property, except where permitted or required to do under this Agreement. To avoid any doubt, this clause does not mean BSI has ownership rights in any intellectual property that arises in your Image.

**Developed Intellectual Property**

7.2   If, at any time during the membership period, you and BSI together develop any new technology or process with regard to any equipment, training or competition analysis, or other matter, which provides (or may provide) a sport performance benefit and this technology or process is discovered or developed substantially while you are contractually under this Agreement, the developed IP shall be shared by you and BSI. Unless we have agreed otherwise, by signing this Agreement you shall agree to share with BSI in all future rights, title and interest that you may have in relation to the developed IP as noted above. You will enter into and complete documents that BSI reasonably requires to confirm the joint ownership between you and BSI of the developed IP.

## 8   <u>MANAGING DIFFERENCES "DISPUTES"</u>

8.1   Any disputes or grievances which may arise between BSI and Athlete or member in relation to this Agreement, the application of any of the policies and procedures in it or your membership in BSI, shall be dealt with under the procedures set out in the *Dispute Resolution and Disciplinary* (DRAD) *Committee's* guiding principles document. (See Schedule 2)

8.2   We both understand the importance of dealing with disputes openly, honestly and fairly as soon as they arise and **agree to notify the other of the full details of any dispute at the earliest possible opportunity**.

8.3   We agree to appoint an appropriate person, whether or not employed by BSI, to take initial responsibility for the conduct of the dispute.  In doing so, BSI acknowledges the importance of involving someone who is sufficiently removed from the issues in the dispute to take an independent fair and objective view. That person will be the chair of the DRAD committee for the current year.

8.4   We shall ensure that the hearing and appeal procedure that will be used in any dispute between BSI and the athlete or member will conform to the principles of your right to receive natural justice and procedural fairness principles. If neither BSI nor the DRAD committee referenced in 8.3 can successfully produce a resolution with the athlete, the next steps are outlined in *Schedule 2,* referenced in 8.1.

## 9   SUSPENSION & TERMINATION

### Our Rights to Suspend & Terminate

9.1     In addition to any other right of termination or remedy granted to BSI under this Agreement or through our Dispute Resolution and Disciplinary Committee, BSI may, at our absolute discretion, terminate or suspend this Agreement and your membership of BSI at any time and with immediate effect by written notice to you if:

9.1.1   you no longer meet the eligibility criteria set out at clause 3;

9.1.2   you, in accepting membership of BSI, have made a declaration that is untrue;

9.1.3   you breach the Anti-Doping Rules which is a breach of any of clauses 5.11-5.14

9.1.4   you breach clause 5.10 (World Class Conduct (Standards of Behaviour & Attitude) including if you are charged with or found guilty of (before or during the term of the Agreement) a criminal offense or breaking rules relating to Betting, Manipulation of Results, Corrupt Conduct, Insider Information in any sport including your own sport;

9.1.5   you show non-conformance with programs, reporting requirements, policies, procedures and BSI's reasonable request.

9.2     In the following cases where membership is terminated, where required, BSI will give you three months written notice of termination;

9.2.1   unsatisfactory performance by you and/or all members of your team.

### Your ability to Terminate BSI Membership

9.3     You are entitled to terminate your membership of BSI at any time subject to discussing your intentions with BSI.

9.4     Where you do terminate this Agreement it will cease to apply to you immediately upon our acceptance of your termination of your membership of BSI.

Bobsleigh Skeleton Israel Athlete Agreement

**Consequences of Termination**

9.5 On termination of your membership of BSI for any reason you shall:

9.5.1 immediately cease to be a member of BSI;

9.5.2 deliver to BSI or make available for our collection (as we require) all the property or information which was provided or made available to you under this Agreement (and in the case of NGB Confidential Information destroy or delete it from any computer or other information storage device);

9.5.3 <u>if requested, return to us any equipment provided by us, which may include shipping costs to you, the athlete.</u>

## 10 GENERAL

10.1 We both agree to comply with the rules, policies and procedures of BSI as adopted and amended from time to time.

10.2 This Agreement (including any schedules attached and documents referred to herein) creates a whole and only agreement between us relating to your membership of BSI. It takes the place of and terminates any prior drafts, agreements, arrangements between us of any nature whatsoever, whether or not in writing, relating to your membership of BSI.

10.3 This Agreement is governed by the laws of <u>Israel.</u>

**IN WITNESS WHEREOF** this Agreement has been signed on the day and year written at the beginning above.

_____

**SIGNED** for and on behalf of the BSI by:

_____

**Declaration**

By signing below:

1.      I agree to become/continue to be a member of BSI and confirm I meet the eligibility criteria set out in clause 3;

2.      I have had the opportunity to take advice on the contents of this Agreement, understand my entitlements and obligations as a member of BSI and agree to abide by them;

3.      I have read clauses 5.11 to 5.14 and understand my anti-doping obligations to you, ISRAD and confirm I have not committed a breach of the Anti-Doping Rules prior to entering into this Agreement which could lead to a period of ineligibility from the sport being imposed on me;

4.      I agree and understand that you may disclose my personal contact details to the following organizations:

4.1 ISRAD for the purposes of implementing the and ensuring compliance with the National Anti-Doping Policy and the Anti-Doping Rules;

4.2 where required and lawful, to the Police, Local, State or National Authority or Gambling Commission;

4.3 IBSF, NOC and IOC for purposes of registration for competition.

5.      Except for agreements which have been disclosed to BSI or agreed by BSI prior to the signature of this Agreement (a list of which is attached to this Agreement), I have not entered into any other agreement or contract or have any other restriction that might prevent or materially impede my full participation in BSI or that could conflict with my membership of BSI or with any of the provisions of this Agreement;

6..     I will use my best attempts to comply with this Agreement at all times and further understand and agree that any non-compliance on my part may result in my becoming ineligible for further participation in the BSI.

Bobsleigh Skeleton Israel Athlete Agreement

**Signed by:**

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Signature (Athlete) | Print Athlete Name | Date |

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Signature of Witness | Print Witness Name | Date |

(or parent/guardian, or person with parental responsibility, if Athlete is under the age of 18)

Relationship to the Athlete: _____

Bobsleigh Skeleton Israel Athlete Agreement

**SCHEDULE 1**

**Interpretation**

1.1 In this Agreement, the following words and expressions shall have the following meanings:

*"Anti-Doping Rules"* means all applicable anti-doping rules (including our anti-doping rules the rules of the IBSF and the organiser of any Competition in which you participate);

"*Appearance*" means, an appearance, promotion, meeting, photo shoot, interview, filming or other event which you attend;

*"Athlete Support Personnel"* means the Performance Director or any coach, trainer, manager, athlete representative, agent, team staff member, official, medical or para-medical personnel, family member or any other person employed by or working with you or BSI participating in supporting you as a member of BSI and in a Competition;

*"Benefit"* means the direct or indirect receipt or provision (as relevant) of money or monies worth (other than prize money and/or contractual payments to be made under endorsement, sponsorship or other contracts);

*"Bet"* means a wager of money or any other form of financial speculation whether legal or illegal;

*"Betting"* means making, accepting, or laying a Bet and shall include, without limitation, activities commonly referred to as sports betting such as fixed and running odds, totalisator/tote games, live betting, betting exchange, spread betting and other games offered by legal sports betting operators or illegal betting operators;

"*Israeli Team*" means the team which is selected by BSI as the national representative team for the sport in any international competition; or, in the case of the Games, is nominated by us and selected to represent Israel by the BSI Selection Committee;

"*Commercial Partners*" means those sponsors, licensees, supporters, official suppliers and any other commercial entity goods and/or services provided directly or indirectly to Us from time to time during the Membership Period who receive publicity, rights of association or other commercial benefit to them; an up to date list of the Commercial Partners from time to time will be available on the Website;

"*Competition*" means an event or series of events conducted over or one or more days including a National or International Competition;

"*Confidential Information*" means your confidential information and/or BSI's confidential information, as applicable;

"*DRAD Committee*" means Dispute Resolution and Disciplinary Committee

*"Event"* means a race or contest

"*Games*" means the Summer Games and/or the Winter Games as appropriate;

Bobsleigh Skeleton Israel Athlete Agreement

"*IBSF*" means the International Bobsleigh & Skeleton Federation;

"*Inside Information*" means any information relating to any competition that a participant possesses because of his position within the sport.  Such information includes, but is not limited to, factual information regarding the competitors, the conditions, tactical considerations or any other aspect of the competition, but **does not include** such information that is already published or a matter of public record, readily acquired by an interested member of the public or disclosed according to the rules and regulations governing the relevant competition;

"*Intellectual Property*" means the trademarks, other trademarks (including logos and trade dress), domain names, copyright, patents, registered designs, circuit layouts, rights in computer software, databases and lists, rights in inventions, BSI's confidential information, know-how and trade secrets, operating manuals, quality manuals and all other intellectual property, in each case whether registered or unregistered (including applications for the grant of any of the foregoing) and all rights or forms of protection having equivalent or similar effect to any of the foregoing which may subsist anywhere in the world, and all rights of action, powers and benefits of the same;

"*International Competition*" means the Winter Games, World Championships, or any other international competition for the sport recognized by the IBSF;

"*Membership Period*" means the period of time during which you are a member of BSI in accordance with the provisions of this Agreement;

"*National Competition*" means a county, regional or national trials competition of the sport including Israeli qualifying events;

"**NOC**" means the National Olympic Committee of Israel;

"*Our Confidential Information*" means any information or data (not already in the public domain other than as a result of a breach of an obligation of confidentiality):

(i)     which directly or indirectly relates to financial information, accounts or marketing plans, including information about commercial partners and potential future commercial partners and general market opportunities for the sport, which has come to your knowledge as a result of your membership of BSI;

(ii)     relating to BSI operations, processes, competition and training plans, competition and training tactics and intentions;

(iii)     relating directly or indirectly to research and development carried out or being planned by or on BSI's behalf, including any information relating to the construction and use of specialized equipment and the evaluation of the training loads and physical responses of athletes;

(iv)     relating directly or indirectly to the contents of this Agreement, including all documentation relating to the development of support services and any or all drawings, plans, specifications and technical information relating to it; or

(v)     relating directly or indirectly to BSI and/or this Agreement which is clearly by its nature confidential or which was communicated by BSI to you on the direct

Bobsleigh Skeleton Israel Athlete Agreement

or indirect condition that it would remain confidential between us;

*"Participant"* means any athlete, Athlete Support Personnel, judge, referee, delegate, commissioner, jury of appeal member, competition official, BSI team or delegation member and any other accredited person;

"*Performance Director*" means the performance director or equivalent of BSI from time to time or his or her appointed representative;

*"Person"* shall include natural persons, bodies corporate and unincorporated associations and partnerships (whether or not any of them have separate legal personality);

"*Trademarks*" means BSI registered trademarks and those trademarks for which an application for registration is pending (in any registry in the world) which are set out in Schedule 2 to this Agreement or which are adopted and used by BSI after the date of this Agreement;

*"ISRAD"* means Israel Anti-Doping Agency a company incorporated in Israel or any successor to it, responsible for implementing the Israeli Government's National Anti-Doping Policy (a copy of which can be found on ISRAD's website currently located at, www.inado.org.il/iuploads/pdf/israel_nado_code_2017.pdf as amended from time to time;

*"We, Us and Our"* means BSI;

"*Website*" means our official website;

"*Winter Games*" means the Olympic and Paralympic Winter Games held once every four years; and references to the Winter Games shall mean the forthcoming Winter Games from time to time, which at the date of this Agreement are due to be held in Beijing, China in 2022;

*"Year"* means 1 May to 30 April;

*"You, Your and Yourself"* means the athlete;

"*Your Confidential Information*" means all information communicated by you pursuant to your membership of BSI which is clearly by its nature confidential, including (but not limited to) any personal information or data about you, any information or data concerning your fitness and medical condition (including any reports on the same from any doctor or other physician) and any financial information (other than public information such as program grants and funding);

*"Your Image"* means your name, nicknames, likeness, image, photograph, signature, autograph, initials, statements, endorsement, facsimile, reputation, story and accomplishments, physical details, voice, film (including computer generated or animated portrayal), and other personal characteristics and identification of the Athlete and any and all intellectual property rights, personal appearances (whether now known or hereafter invented), in each case whether registered or unregistered and including applications for registration.

Bobsleigh Skeleton Israel Athlete Agreement

1.2 <u>In this Agreement, unless the context indicates otherwise:</u>

(a)     where either of us agree not to do something this includes an obligation not to allow or cause that thing to be done indirectly by another person;

(b)     <u>references to the "sport" shall mean the sports of bobsleigh and skeleton in all their various forms and disciplines;</u>

(c)     <u>w</u>here any clause provides for the consent or approval to be obtained by the other, neither of us shall be entitled to unreasonably withhold or unnecessarily delay such consent. In our case, withholding consent would be reasonable where (amongst other things) in BSI's honest and genuine opinion the giving of consent would have a detrimental effect on your performance or on the functioning of BSI (including a detrimental effect on our relationship with our Commercial Partners).

Bobsleigh Skeleton Israel Athlete Agreement

**SCHEDULE 2**

Bobsleigh Skeleton Israel (BSI)
Dispute Resolution and Disciplinary Committee - Guiding Principles
2022/2023

**Purpose**

This procedure is designed to assist all athletes, members, and Bobsleigh Skeleton Israel (BSI) to achieve and maintain standards of conduct, performance, and trust. The aim is to ensure consistent and fair treatment for all members of BSI.

**Guiding Principles**

⇒ Informal action will be considered, where appropriate, to resolve problems.
⇒ Based on the offense, disciplinary or defensive action may be taken against an athlete or member of BSI while the process is being undertaken and prior to the case being fully presented or investigated.
⇒ For formal action, an athlete or member will be advised of the nature of the complaint against him or her and will be given the opportunity to state his or her case before the BSI Dispute Resolution and Disciplinary committee (BSI-DRAD).
⇒ Athletes/members will be provided, where appropriate or available, with written copies of evidence and relevant witness statements in advance of a disciplinary meeting.
⇒ At all stages of the procedure the athlete or member will have the right to be accompanied by a representative or colleague.
⇒ No athlete or member will be dismissed for a first breach of discipline except in the case of gross misconduct, when the penalty will be dismissal without notice.
⇒ If BSI refers a case to the DRAD committee and a decision is rendered, an athlete or member will have the right to request an appeal.
⇒ The procedure may be implemented at any stage if the athlete's/member's alleged misconduct warrants this.

**The procedure**

Bobsleigh Skeleton Israel Athlete Agreement

### First stage of formal procedure

A first warning for misconduct if conduct does not meet acceptable standards. This will be in writing and set out the nature of the misconduct and the change in behaviour required. The warning will also inform the athlete or member that a final written warning may be considered if there is no sustained satisfactory improvement or change.

### Final written warning

If the offence is sufficiently serious, or if there is further misconduct or a failure to improve performance within a year of a first warning, a final written warning may be given to the athlete or member. It will also warn that failure to improve may lead to dismissal from the team and revocation of IBSF license (or some other action short of dismissal) and will refer to the right of appeal.

### Dismissal or other sanction

If there is still further misconduct or failure to correct or rectify or to improve, the final step in the procedure may be dismissal or some other action short of dismissal such as disciplinary. Dismissal and delicensing decisions can only be taken by the BSI-DRAD Committee or President/Secretary General. The athlete or member will be provided in writing with reasons for dismissal, the date on which the relationship will terminate, and information regarding the right to appeal.

## Gross misconduct

The following list provides examples of offences which are regarded as gross misconduct and will result in immediate termination with possibility for appeal:

- ⇒ theft or fraud
- ⇒ physical violence or bullying
- ⇒ deliberate and serious damage to property
- ⇒ serious misuse of an organization's property or name
- ⇒ serious insubordination
- ⇒ unlawful discrimination or harassment
- ⇒ bringing the organization into serious disrepute
- ⇒ serious incapability brought on by alcohol or illegal drugs
- ⇒ causing loss, damage, or injury through serious negligence
- ⇒ a serious breach of health and safety rules
- ⇒ Negative or disparaging public comments (including media, social media) directed at BSI, Athletes, Officials, NOC, IBSF or partners
- ⇒ a serious breach of confidence/trust

If an athlete or member has acted in a manner or is accused of an act of gross misconduct, they will be suspended while the alleged offence is investigated. If, on completion of the investigation and the full disciplinary procedure, BSI is satisfied that gross misconduct has occurred, the result will be summary dismissal without notice.

## Appeals

An athlete or member who wishes to appeal against a disciplinary decision must do so in writing within five working days. The President/Secretary General will refer appeals to the Dispute Resolution and Disciplinary Committee (DRAD). Once reviewed the committee's ruling will be final.

If the athlete or member wishes to further appeal, they are free to do so with the Court for Arbitration for Sport (CAS).

Bobsleigh Skeleton Israel Athlete Agreement

# EXHIBIT B

Jared C. Bowman (#11199)
ROSING DAVIDSON FROST
136 Heber Ave., Suite 205 Park
City, Utah 84060 Telephone:
(435) 731-5451
bowman@rosingdavidson.com
Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DAVID NICHOLLS, ADAPTIVE BOBSLED & SPORTS ASSOCIATION, INC., Plaintiff, | COMPLAINT |
| and DAVID GREAVES, LARRY SIDNEY, ADAM JEREMY EDELMAN, HEATH SPENCE, BOBSLEIGH SKELETON ISRAEL, LLC., ISRAEL BOBSLED SKELETON, LLC Defendants. | 2024-CV-00412 Jury Trial Demanded |

..................................................................................................

DAVID NICHOLLS, ADAPTIVE BOBSLED  :
& SPORTS ASSOCIATION, INC.,          :
    Plaintiffs          :
  v.          :          2024-CV-00412
          :
DAVID GREAVES, LARRY SIDNEY, ADAM  :          Jury Trial
Demanded JEREMY EDELMAN, HEATH SPENCE,          :
BOBSLEIGH SKELETON ISRAEL, LLC,          :
ISRAEL BOBSLED SKELETON, LLC,          :
    Defendants          :
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## AMENDED COMPLAINT

AND NOW, come the Plaintiffs, David Nicholls and Adaptive Bobsled &

Sports Association, Inc., by and through their counsel, Jared C. Bowman of

Rosing

Davidson Frost Thomas J. Jones Jr., Esquire, of Thomas J. Jones, Jr., P.C., a Pennsylvania Limited Liability Corporation, and bring the within Amended Complaint against Defendants above named, claiming that the Defendants: (1) committed defamation of character by slander and libel causing economic harm and damage to reputation; (2) committed tortious interference with business relations and prospective economic advantages in that Defendants knowingly and intentionally induced the breaking of a business or economic relationship, with improper motive and means; and (3) conspired and engaged in a continuing course of conduct and participation in the enterprise of the

~~Defendant, Bobsleigh Skeleton Israel, LLC,~~ injuring Plaintiffs, denying

them the

opportunity to participate as the Israel Olympic Bobsled Team in the February 2022 Beijing Winter Olympics, ~~in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961et. *seq.*~~, and continuing to prevent Plaintiffs from participating in International Able-bodied and Para Bobsled Events in order to compete in the 2026 Winter Olympic and Paralympic Games.

Additionally, Plaintiffs seek equitable injunctive relief to direct Defendants, Bobsleigh Skeleton Israel, LLC and Secretary General, Larry Sidney, and President, David Greaves to issue licenses and register the Plaintiffs with the International Bobsleigh Skeleton Federation to compete in the ~~2023-2024~~2024-2025 IBSF Bobsleigh Season.

AND further, Plaintiffs are seeking actual damages in excess of $100,000 ~~and treble damages pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO)~~.

## **PARTIES**

~~**Plaintiffs**~~

**P laintiffs**

1. Plaintiff, David Nicholls, is a dual citizen of the United States and Israel with a residence address 2064 Snow Creek Ln., PO Box 680016, Park City, UT 84068.

2. Plaintiff, Adaptive Bobsled & Sports Association, Inc. is an IRS 501 ~~(c)~~

(c) Non-Profit Corporation with a business address the same as Plaintiff, David

Nicholls of 2064 Snow Creek Ln., PO Box 680016, Park City, UT 84068.

~~**Defendants**~~

**D efendants**

3. Defendant, David Greaves, is the President of Defendant, Bobsleigh Skeleton Israel LLC and is a dual Canadian and Israeli citizen, with a residence address 400 – 1205 Grant Ave., Winnipeg, Manitoba, Canada R3N 1Z3.

4. Defendant, Larry Sidney, the Secretary General of Defendant, Bobsleigh Skeleton Israel LLC, is a United States Citizen, with a residence address of 189 Myron Dr., Zephyr Cove, NV 89448.

5. Defendant, Adam Jeremy Edelman, is a dual United States and Israeli citizen, with a residence address of Apt. 11D, 201 East 80th Street New York, NY 10075.

6. Defendant, Heath Spence, is a citizen of Australia, with a residence address of 2804 14 St SW, Calgary, Alberta Canada T2T3V4.

7. Defendant, Bobsleigh Skeleton Israel LLC, (hereinafter simply "BSI") is the National Governing Body of the Olympic Sports of Bobsled and Skeleton along with Para Bobsled for the Nation of Israel with a mailing address of Beit

Hillel, P.B. 131, 1225500-Israel. The Headquarters of Defendant, Bobsleigh Skeleton Israel LLC is operated from the homes and offices of Defendants, David Greaves and Larry Sidney, whose addresses are as listed above.

8.      Defendant, Israel Bobsled Skeleton, LLC, is a New York Limited

Liability Corporation with the New York State Service Agent listed as Defendant,

Adam Jeremy Edelman with the same address, Apt. 11D, 201 East 80th Street,

New York, NY 10075.

~~**JURISDICTION**~~
**J URISDICTION**

9.      This Honorable Court has Jurisdiction of the within Complaint

being brought pursuant to ~~the Racketeer Influenced and Corrupt Organizations~~

~~Act,~~

~~18 U.S.C. §1964 (a) and diversity of citizenship~~Diversity of Citizenship, 28

U.S.C. § 1332.

**A. TECHNICAL ISSUE OF UNDERSTANDING:
ELIGIBILITY AND QUALIFICATION FOR A 4-MAN
BOBSLED
TEAM TO PARTICIPATE IN THE 2022 WINTER OLYMPIC GAMES**

By International Bobsleigh Skeleton Federation (IBSF) International

Rules, only the 60 top ranked bobsled pilots of participating nations were

eligible to be entered into the 2022 Winter Olympic Games being held in

February at Beijing, China. Bobsled pilots from all nations were ranked based on

race points earned in

4

official IBSF Races on the World Cup, Europe Cup and North Americas Cup during the 2021-2022 Season.

The existing IBSF (8-3-2) Rule required that an eligible pilot, in order to qualify to participate in the Olympics, had to compete in 8 races on 3 different tracks over a 2 -year period. That rule was amended by the IBSF due to the global

Covid pandemic to allow the single year 2021-2022 ending January 16, 2022, be the exceptional o ne-year qualifying period for the Winter Olympics in Beijing, February 2022. And a national bobsled team only had to compete in six (6) races in the single season to be eligible to qualify for the Olympic Games.

All IBSF bobsled races in the North Americas Cup (NAC) in Whistler, Canada and Park City, Utah along with Lake Placid, New York in November and December, 2021 were declared to be double races to meet the 6 Race Participation Rule. This presented the unique opportunity for a retired bobsled pilot and even a beginner bobsled pilot to race in oneo ne season earning ranked points to be eligible and qualified for participation in the February 2022 Beijing Winter Olympic Games.

## B.  STATEMENT OF PRINCIPAL PARTIES

10.     Plaintiff, David Nicholls has been a 2 and 4 man bobsleighMan Bobsleigh (hereinafter ""Bobsled"") pilot for the Defendant, Bobsleigh Skeleton Israel LLC (hereinafter BSI), the National Governing Body (NGB) of the Olympic sports of bobsled and skeleton for Israel as well as IBSF Para Bobsled Races (Mono Sled) in the past five years competing in IBSF Races. Plaintiff, Nicholls, had a mission that he and his team, brakeman and side pushers could earn enough ranked points to be

eligible and qualify for the 2022 4-Man Bobsled Competition at the Beijing Winter Olympic Games.

Plaintiff, Dave Nicholls, is an incomplete quadriplegic bound to a wheelchair, but he has competed in IBSF 4-Man Bobsled Races as a driver/pilot, already seated in the bobsled with his 3 able-bodied pushers (2 side pushers and brakeman) sprinting and pushing the bobsled at the 50 ~~meter start~~Meter Start. All other bobsled drivers from all the other nations sprint and push the sled at the start, then load into it with the 3 pushers before the 50 meter start timing eye.

Despite the disadvantage of a slower start, Nicholls and the 3 team sled pushers (including brakeman) have successfully competed and placed ahead of other able bodied national 4-~~man bobsled~~Man Bobsled development teams to have successfully maintained

a legitimate chance to be qualified for and participate in the 2022 Beijing Olympics.

Prior to preparing for the IBSF NAC 2021 Olympic Qualifying Races for Israel, Nicholls with dual citizenship in the United States and Israel, was issued the required IBSF License by the USA and BSI and competed in the IBSF Para Bobsleigh Competitions (seated pilot in mono sled with mechanical start) for both countries from 2011 through 2018. Nicholls and his 3 able bodied team members

competed in IBSF 2-Man and 4-Man ~~races~~Races from 2019 through the 2021 season. His substantial experience driving on the difficult IBSF NAC tracks provided him and his push athletes with an advantage over new pilots from other developing countries learning to drive bobsleds on the difficult Olympic ice tracks (Exhibit A: Nicholls IBSF 2-Man and 4-Man Bobsled Race Results 2019-2021); (Exhibit B, Nicholls IBSF Para Bob Race Results 2016-2021).

11.    Defendant, Adam Jerome Edelstein, was a ~~skeleton~~Skeleton athlete representing Israel in the 2018 Pyeongchang (South Korea) Winter Olympics. He participated in the minimum number of skeleton races in 2017/2018 to qualify for the 2018 Winter Olympics and did not earn enough ranked points to be entered into the Olympic Games. However, Israel was given the final allocated spot of the 30

athlete quota for the Olympic Skeleton Race because 2 athletes with higher ranking from other nations declared they were not attending the Olympics.

Edelman was eliminated from the 2018 Olympic Skeleton Competition after the third heat of four and finished 28th of the 30 athletes with pushing the slowest 50-meter start than all other athletes. He retired from ~~skeleton~~Skeleton competition immediately thereafter as an "Olympian" to become an inspirational speaker and motivational counselor.

After the IBSF announced the qualification period for the 2022 Bobsled Winter Olympics was reduced to one season and not two, Edelman contacted the Korean Bobsled coach, Heath Spence, and arranged to train on a Bobsled with the Koreans and Coach Spence in Pyeongchang, Korea in March 2021. He was entered into an IBSF sanctioned race for 2-~~man bobsled~~Man Bobsled where there were only 4 teams competing and three were from South Korea. It was there Edelman announced he was ~~limning~~forming a 2-~~man~~Man and 4-~~man bobsled~~Man Bobsled team for Israel to compete in the 2022 Beijing Olympics.

12.     The Defendant BSI, has no members other than the athlete members and Defendant, David Greaves, President and Defendant, Larry Sidney, Secretary General. There are no bylaws, statutes or rules of operation; there is no proof that

the National Governing Body (NGB), BSI, "is a legal entity in the nation it represents" (emphasis added); and there is no established due process hearing for protection of athletes rights as required by the IBSF, the Israel National Olympic Committee and the IOC Olympic Charter. The BSI is registered in Israel as an "Amutah", a non-profit organization, that requires the entity to adhere to a "rule book" which contains specific procedures for removing members ignored entirely by the BSI. Defendants David Greaves, President and Larry Sidney, Secretary

General have the absolute, unfettered discretion to operate the BSI, the National Federation for the Olympic Sports of Bobsled & Skeleton, in any manner of their choosing.

13.     Based on IBSF International Rules for participation in the Olympics, Israel would be limited to only one Bobsled Team to represent the Nation of Israel in the 2022 Olympic 4-Man Bobsled Races.

**COUNT ONE ~~RICO~~D EFAMATION**

**DEFENDANTS** ~~CONSPIRED TO CARRY OUT A PLAN TO DISQUALIFY PLAINTIFF, NICHOLLS AND HIS TEAM OF ATHLETES FROM QUALIFYING AND PARTICIPATING AS THE OLYMPIC 4-MAN BOBSLED TEAM FROM ISRAEL IN THE 2022 BEIJING OLYMPIC WINTER GAMES BY~~ **GREAVES, SIDNEY, EDELMAN, SPENCE, BOBSLEIGH SKELETON ISRAEL, LLC, AND ISRAEL BOBSLED SKELETON, LLC, CAUSED PLAINTIFFS DAVID NICHOLLS AND ADAPTIVE BOBSLED & SPORTS ASSOCIATION, INC. ECONOMIC HARM AND DAMAGE TO REPUTATION AS A RESULT OF CONTINUING CONDUCT ENGAGED IN SLANDER AND LIBEL**

IN A CONTINUOUS PATTERN OF WIRE AND MAIL FRAUD THROUGH THE ENTERPRISE OF BOBSLEIGH SKELETON ISRAEL LLC AND CONTINUE TO DENY PLAINTIFF THE OPPORTUNITY TO COMPETE IN THE 2026 WINTER OLYMPIC AND PARALYMPIC GAMES BY ITS CONDUCT IN DIRECT VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1964(c).

14.    Paragraphs 1 through 13, inclusive, set forth above are incorporated herein by reference herein the same as is they wereif set forth here in their entirety.

15.    Plaintiff, Nicholls, having trained originally as a seated driver with an amputee brakeman in a 2-man bobsledMan Bobsled at the Olympic Bobsled Track in Park City, Utah since 2005, did compete in the IBSF Para Bob World Cup Races (Mono Bobsled, Mechanical Start) from 2011 until 2018. The International Paralympic

9

Committee (IPC) in September 2018, announced that the IBSF had failed to sufficiently develop the Sport of Para Mono Bobsled since 2011 and therefore, it would not be included as a sport event at the 2022 Winter Paralympic Games in Beijing.

16.      Plaintiff, Nicholls continued to enter races on the IBSF Para Bob World Cup Tour 2018-2019, however he also started to drive a 2-~~man bobsled~~Man Bobsled again commencing in the IBSF able-bodied NAC Race November 2018 in Park City, Utah. He raced while seated in the 2-~~man bobsled~~Man Bobsled with an able-bodied

brakeman pushing the sled and driver at the 50 meter start. He and his brakeman competed in the able-bodied IBSF 2-Man Bobsled World Championship held at the Whistler Olympic Track in February 2019. That year, Nicholls began to compete in the able bodied IBSF 4-Man Bobsled Races as a seated pilot with 3 able-bodied pushers including the brakeman. Plaintiff, Adaptive Bobsled & Sports Association Inc., received a donation from the Christopher Reeve Foundation which permitted the purchase of a 2-~~man sled~~Man Sled that was used in the World Cup Competition. At the World Championship Race in Whistler, Nicholls rented a sled from New Zealand.

17.     On December 12, 2019, Plaintiff, David Nicholls, purchased a 4-~~man bobsled~~Man Bobsled and a sled shipping crate for $5,500 from Defendant, Heath Spence, a

Canadian resident living in Calgary, Canada, a former Olympic Bobsled Driver from Australia, and the Driving Coach of the Korean Bobsled Team (Exhibit C, Spence to Nicholls Agreement of Sale).

18.     The 4-~~man bobsled~~Man Bobsled was transported from Calgary to Lake Placid, NY where Nicholls was training with his pushers and brakemen, but the sled shipping crate was not delivered. The shipping crate is a valuable necessity to safely transport from race venue to race venue the bobsled and sensitive equipment with carefully protected steel runner blades.

19.     In March 2021, Defendant Edelman, learning the IBSF had changed the 2022 Olympic Qualifying Rules for Bobsled reducing the two-season qualifying period to the one-year season, announced he was forming a team for IBSF 2 and 4-man bobsled racesMan Bobsled Races with the goal of competing in the 2022 Beijing Olympics. He and a brakeman trained at the 2018 Olympic Bobsled Track at Pyeongchang, South Korea for a quickly scheduled IBSF sanctioned race with the Korean Coach, Defendant, Heath Spence, who agreed to be the Head Coach for Edelman and his team at the 2022 Olympics in Beijing.

20.     In August 2021, Nicholls, anticipating he would receive his 2021-2022 IBSF License from the BSI as he had for the previous three years, paid his

assembled Israeli team push athletes to meet and train in Lake Placid, NY at the

newly constructed Indoor ice push track to prepare for the upcoming Olympic

year. The mandatory Race Schedule: NAC Qualifying Races held in Whistler,

Canada (11-2- 21 to 11-14-21), Park City, Utah (11-16-21 to 11-29-21) and Lake

Placid, NY (12-4- 21 to 12-20-21). The team also began training in order to

participate in the open training at the China 2022 Olympic Bobsled Track

(10-2-21 to 10-21-21) and gain valuable experience before the February Olympic

Games.

21.     After training in Lake Placid for 2 weeks, Israel Team Nicholls departed for Park City, Utah, the home base for Nicholls, to do sled preparations and maintenance as well as physical training for the athlete pushers before leaving for the open training in China on the Olympic Bobsled Track beginning October 2.

22.     Nicholls and his team of brakemen and pushers while training and preparing to depart from Park City for China, Nicholls purchased a new 4-man bobsledMan Bobsled and shipping crate from Christiano Paes, a former Olympic bobsled driver from Brazil, now located and residing in Calgary, Canada.

23.     Plaintiff Nicholls and 2 of his Israeli push athletes decided to fly to Great Falls, Montana, and there, rent a car to drive over the Canadian border to Calgary and there, rent a U-Haul truck to pick up the new Brazilian bobsled plus

shipping crate. While there, he would obtain the undelivered Spence ~~sled shipping~~<u>Sled Shipping</u> crate.

24.    On August 26, 2021, Nicholls, accompanied by two (2) of his able-bodied Israeli teammates flew to Great Falls, Montana. There they rented a car for the drive to Calgary where they would rent a truck to pick up the purchased Brazilian sled and ~~shipping crate~~<u>Shipping Crate</u>, as well as load onto the truck the undelivered Spence bobsled shipping crate.

20. 25.On August 27, 2021, upon reaching the Canada/USA border, Canadian customs and border guards would not permit the 2 Israeli athlete pushers to enter Canada because only Americans with a US passport were being granted entry into Canada during the Covid lockdown.

21. 26.Nicholls drove alone for the 3-hour trip from the border to Calgary where he rented a truck and drove to the Canadian Olympic Park to pick up the Brazilian 4- man bobsledMan Bobsled with shipping crate along with the spenceSpence shipping crate.

22. 27.Once approaching Calgary, Nicholls contacted Defendant Spence by phone (9:29 A.M.) and requested Spence meet him at the sled storage bins at the Calgary Olympic Bobsled Track (recently closed and partially dismantled) to

identify the crate he purchased and paid for so he could have the crate loaded and taken back to Park City.

23. 28.Spence said he was too busy to meet Nicholls at the Calgary track, so Nicholls pressed him for information to identify his crate and where it was located. Spence informed Nicholls the crate he purchased would be identified by the name of Spence and street address and possibly the designation AUS (the abbreviated IBSF designation for Australia).

24. Nicholls, contacted Christiano Paes to load up the purchased Brazilian 4-Man Bobsled with shipping crate and further, after that, to assist in locating the Spence sled Shipping Crate and load onto the truck and secure it for transport back to Park City.

25. Paes and a few unknown persons, after loading the Nicholls purchased Brazilian 4-Man Bobsled and crate aboard the truck, located the storage bin where the 4-Man Crate with Spence identification information was stored and when they prepared to lift the crate onto the back of the truck, it was noticed the crate was way too heavy to be empty.

26. Nicholls, still seated in the driver's seat of the truck, unable to walk to see what was taking place at the back of the truck due to the nature of his disability,

spoke with Paes stating he was only owed the sled shipping crate as the 4-~~man bobsled~~Man Bobsled he purchased from Spence had already been delivered to him in Lake Placid and the crate should be empty. Moments later, Paes returned to the driver's side of the truck and informed Nicholls he and his helpers loaded the empty ~~crate~~Crate onto the truck and it was secured for transport to Park City.

27. ~~32.~~Nicholls then left the Calgary track in the rented truck, drove back to the Calgary U-Haul Rental and there, helpers attached the vehicle connection set

up which hooked to the rental car. Nicholls then drove the rented truck with attached rental car back to the Canada USA Border. There he picked up the 2 athlete pushers from Israel and they drove back to Park City with the newly purchased Brazilian ~~bobsled~~Bobsled and crate and the empty Spence ~~shipping crate~~Shipping Crate.

28. ~~33.~~Thirteen days later, on September 9, 2021, Defendant, Heath Spence, called Plaintiff, Nicholls, on his mobile phone and screamed, frantically accusing Nicholls of stealing the Australian 4-~~man bobsled~~Man Bobsled and its ~~shipping crate~~Shipping Crate declaring he would report the theft to the Calgary Police. Nicholls stated he requested the ~~shipping crate~~Shipping Crate be loaded onto his rental truck by Christiano Paes and his helpers and that it was empty, and that it was identified by the information provided by Spence. Nicholls further screamed back that Spence~~'~~'s failure to deliver the ~~crate~~Crate 2

years after it was purchased and paid for by Nicholls was the "“real"” theft (Exhibit D, Spence Text Message Accusation Stolen Sled 9-9-21).

29. ~~34.~~On September 9, 2021, at 10:25 A.M., Defendant, Spence phoned the Calgary Police and reported that Plaintiff, Nicholls had stolen the Australian ~~bobsled~~Bobsled and ~~shipping crate~~Shipping Crate (Exhibit E, Nicholls Calgary Police Report Spence, Edelman Allegations of Theft).

30.    ~~35.~~The Calgary Police immediately investigated and interviewed several people in addition to Spence. Defendant, Edelman claimed to the police the shipping crate belonged to him and Nicholls willfully and knowingly stole it. Later that day, Defendants Spence and Edelman, after contact with Christiano Paes, found the Edelman ~~sled~~Sled in a storage bin where all sleds were kept at the Canada Olympic Park.

31.    ~~36.~~On September 10, 2021, Defendants, Spence and Edelman contacted the Calgary Police and informed them the 4-~~man bobsled~~Man Bobsled was found. However, Edelman insisted that Nicholls be prosecuted for theft of his ~~shipping crate "~~Shipping Crate "willfully and knowingly stolen~~"~~". Defendant, Spence also reported to the police that they located the shipping crate he sold to Nicholls in 2019, sitting alone in the open space at the top of the Canada Olympic Park.

32. 37.The Calgary Police issued a final report on the afternoon of September 10 after email communication with Nicholls, closing the theft investigation finding no evidence of a crime, and suggesting the parties simply exchange shipping cratesShipping Crates or pursue the matter in civil litigation. Notice of the Calgary Police final decision that afternoon was provided to Plaintiff, Nicholls, and

Defendants, Greaves, Sidney, Edelman, Spence and Bobsleigh Skeleton Israel LLC (Exhibit E, Nicholls Calgary Police Report Spence, Edelman Allege Theft).

33. 38.Then the conspiracy was hatched by Defendants to eliminate Plaintiff Nicholls and his 4-man bobsled teamMan Bobsled Team from participating in the IBSF 2022 Olympic Qualifying Races in Whistler, Canada, Park City, Utah and Lake Placid, New York. It was clear to all Defendants, that under the IBSF Nations ranking for participation in the Beijing Olympics, Israel might be able to qualify one, but only one, 4-man bobsled teamMan Bobsled Team, and that 4-man teamMan Team would be selected based upon the ranked points earned by the driver in the qualifying races. It was obvious that Edelman had to place ahead of and finish with higher IBSF ranked points than Nicholls in each NAC 4-Man bobsled raceBobsled Race to be the pilot for the Israel Olympic 4-manMan Bobsled Team at the Beijing Olympic Games. Considering the strong likelihood Edelman, a beginner driver, having never piloted a 4-Man bobsled Bobsled

before in his life, would not finish ahead of Nicholls in the NAC Qualifying Races in 4-Man ~~bobsled~~Bobsled on the difficult North American Olympic Tracks, Defendants agreed amongst themselves to exploit the Calgary Police incident to destroy Plaintiff Nicholls' opportunity to qualify for the 2022 Olympics. Accordingly, Defendants for their own private economic benefit derived from financial support

via personal and corporate sponsorships, charitable contributions, and marketing opportunities, needed to eliminate the only obstacle to the Edelman fast track to Olympic glory. The plan could readily be accomplished by Defendants BSI, Greaves, Sidney and Edelman simply denying Nicholls an IBSF license to compete in IBSF NAC Olympic Qualifying Races.

34. ~~39.~~On or about September 12, 2021, Defendants conferred and agreed to a plan continuing to claim Nicholls had stolen a 4-~~man bobsled~~Man Bobsled and further, to support the false claim by Defendant, Edelman, that Nicholls stole his valuable ~~sled shipping crate~~Sled Shipping Crate. Accordingly, Defendants Greaves and Sidney would take a disciplinary action to suspend Nicholls from membership in the BSI for the 2021- 2022 IBSF Olympic season, thereby denying the issuance of the 2021-2022 IBSF license to Plaintiff Nicholls consequently eliminating him from qualifying and participating in the 4-~~man~~Man Bobsled races in the 2022 Winter Olympics.

35. 40.Defendants were further aware the BSI did not have bylaws or statutes of operation as required by International Rules of the IBSF and the IOC Olympic Charter, had no provision for election of officers and did not have an established written and published code of conduct or athlete dispute resolution procedure required for the protection of athletes' rights in international Olympic competition.

36.    41. On September 13, 2021 Defendants Greaves and Sidney sent a letter to Plaintiff, Nicholls notifying him his statements to the Calgary Police were misleading and untruthful, and a disciplinary hearing would be held on the matter. Furthermore, Nicholls and his team should cancel plans to attend the IBSF Open Training on the 2022 Olympic Bobsled Track in China during October (Exhibit F, BSI September 13, 2021, Correspondence Claiming Nicholls Lied to Calgary Police).

37.    42. On September 14, 2021, Plaintiff Nicholls requested David Kurtz to represent him at the BSI Disciplinary Hearing and he agreed. Mr. Kurtz then contacted Defendants, Greaves and Sidney and requested the Complaint, or Report or Charging Document be forwarded to him in order that he be able to provide adequate representation for the Athlete, Dave Nicholls at time of hearing

(Exhibit G, Kurtz email September 14, 2021, to BSI requesting written Charges against Nicholls).

38.    43.From September 12, through October 6, 2021, all Defendants via phone, email, Facebook, and other social media fraudulently claimed Plaintiff Nicholls was a thief and liar and had stolen a sled and shipping crate from another Israeli athlete, AJ Edelman.

39. 44.On September 15, 2021, Defendants Greaves and Sidney corresponded with David Kurtz, athlete Nicholls' representative, via email, and stated an argument that Nicholls should be suspended from the BSI and further stated the hearing or dispute resolution and appeal procedure would be distributed in the near future and hopefully a hearing scheduled soon (Exhibit H, BSI email to Kurtz notifying Disciplinary Hearing to be scheduled soon).

40. 45.On September 20, 2021, Defendants Greaves and Sidney corresponded via email with David Kurtz informing him the hearing for Nicholls would take place the next evening September 21, before a distinguished panel of independent and highly qualified individuals experienced in elite athletes' grievance procedures and outcomes. The two Defendant BSI officers informed Mr. Kurtz he would receive the Dispute Resolution and Appeal Procedure

Document and Charging Document later that evening (Exhibit I, BSI Email to Kurtz notifying Disciplinary Hearing to be scheduled September 21, 2021).

41. ~~46.~~On September 21, 2021, at 2:17 P.M., Defendants, Greaves and Sidney sent an email to Nicholls and Kurtz with the BSI Report to Special Committee DRAD (Disciplinary Report) attached claiming Nicholls lied to Spence, Calgary Police and BSI Officers as unequivocal facts and that further,

there should be no discussion of the false claims a ~~bobsled~~Bobsled and ~~shipping crate~~Shipping Crate were stolen or ability to question or cross examine the prosecution witnesses at the hearing scheduled for later that evening (Exhibit J, BSI Report to Special Committee DRAD 9-21-2021).

42. ~~46.~~The Zoom hearing commenced at approximately 8:00 P.M., and the Chairman of the Hearing Panel announced at the start of the Hearing, there would be no discussion of a stolen bobsled. Mr. Kurtz vehemently objected stating the international bobsled community was currently ablaze on the internet with the rumor that Plaintiff Nicholls had stolen a ~~bobsled~~Bobsled in Calgary and accordingly, the decision by the hearing panel should begin with the declaratory statement there was no stolen ~~bobsled~~Bobsled. The panel agreed.

43. 47.At the hearing, Plaintiff Nicholls was the only witness or participant to testify under oath, and explained his actions, thoughts and conduct on August 27, 2021, in Calgary. He was questioned extensively by the panel members, and they all appreciated his directness and honest answers, even his disclosure of mistakes and reluctance to speak about a "stolen sled" with the Calgary Police when he knew nothing but that the shipping crate, he thought was the one

purchased from Spence, was ""empty"" that he took with him back home to Park City, Utah.

44. 48.On September 27, 2021, the DRAD Select Special Hearing Committee issued its final unanimous decision. The decision made clear that Nicholls should have been more forthcoming with the Calgary Police and BSI Officers in the conversations about the ""stolen sled and crate"", and further, should not remain in a position of authority and control within the BSI (Team Captain) and, additionally, should send apologies to the Calgary Police, BSI Officers, Heath Spence, and AJ Edelman. The decision did not expel or suspend Nicholls from the BSI but considered it a first offense which would not prevent BSI issuing an IBSF license to compete in the IBSF Olympic Qualifying NAC Races and the open training in China scheduled to begin October 2, 2021. The September 27, 2021,

Final Decision of the Hearing Panel was not issued to Plaintiff Nicholls, but only to the BSI Officers, Defendants, Greaves and Sidney (Exhibit K, September 27, 2021, DRAD Report).

45. Also on September 27, 2021, Defendant Edelman announced on Facebook he and his team were "the Bobsleigh Team of Israel" and they were training at the Lake Placid Icehouse Start Facility.

46.    On October 6, 2021, after the opportunity to travel and train on the Olympic track in Beijing had passed, Defendants Greaves and Sidney finally issued the September 27, 2021, Decision by the special select committee (DRAD) favorable to Plaintiff Nicholls not finding he should be Suspended but instead, licensed to compete. However, the Defendants Greaves and Sidney attached a "preamble" to the Special Committee's September 27, 2021, Final Decision stating the committee failed to take into consideration information privately provided to the DRAD Select Committee by Defendants, Greaves and Sidney, and the final decision of the committee was based upon "faulty evidence" which "rendered the committee's recommendations invalid". The "preamble" stated Nicholls would be denied a license by the BSI to compete in the IBSF NAC Olympic Qualifying

Races and the entire 2021/2022 IBSF Season (emphasis added), (Exhibit L, BSI Preamble Reverse DRAD Report 10-06-21).

47. 51. The private phone calls, mailed correspondence and emails by the Defendants, Greaves (Canada) and Sidney (Arizona), with the DRAD Special Select Committee were acts of wire and mail fraud, providing false information that BSI had previously "suspended" Nicholls, to the Committee for the purpose of rendering its decision to ban Nicholls in order that Defendant Edelman, the novice

bobsled pilot Bobsled Pilot, not place behind Nicholls in an Olympic Qualifying Race (Emphasis added).

48. 52The Defendants Greaves, Sidney, Edelman, Spence and others (Edelman driving coach, Sandra Kiriasis) continued to phone, email and Facebook messages to others in a campaign to discredit Plaintiff Nicholls by known false statements he stole a bobsled and/or shipping crate. Specifically, Defendants Edelman and Spence contacted RJ Shannon, Track Manager of the Utah Olympic Park, to inform him Nicholls was storing the stolen property at the equipment storage bins at the Park City Olympic Park. Shannon then contacted Plaintiff Nicholls demanding he remove his stored stolen property.

49. ~~53.~~As a result of the Defendant, BSI, failure to have operating ~~bylaws, statutes, articles of corporation or association~~Bylaws, Statutes, Articles of Corporation or Association, there was no required publication of Athletes Rights and specifically the right to appeal a decision of the Executive Officers denial of the right to compete contrary to all Rules of International Olympic Sport Federations.

50. ~~54.~~From October 6 to October 25, 2021, in light of the fact there was no published appeal procedure to follow, and time was of the essence considering the first training for the NAC Olympic Qualifying Races in Whistler, Canada were

scheduled to begin November 2, 2021, the Team Manager for Dave Nicholls Bobsled Team, Rich Sarro, and Defendant, David Greaves were involved in negotiations to settle the case.

51. Plaintiff Nicholls' Team Manager, Sarro, negotiated in good faith and believed Defendant Greaves was doing so as well. When the two got close to an agreement to permit Nicholls and his team to train and race in the IBSF NAC qualifying events, Defendant Greaves pulled out from any negotiations stating no way would he permit Nicholls and his team participate in the NAC races and qualify for the Olympics.

53. With time being of the essence to appeal and obtain relief and a remedy for the BSI unjustified denial of an IBSF driver's license to Plaintiff, Nicholls and his Team Push Athletes and Brakeman, Nicholls filed an appeal to the Israel National Olympic Committee, Chairman of the Elite Sports Department (as required by the late provided, newly minted BSI Rules of Procedure) on October 28, 2021, served on the BSI Officers Greaves and Sidney. The Appeal requested an emergency hearing and a final order directing the BSI provide an IBSF driver's license to Plaintiff, Nicholls and further, for the BSI to register and

enter Nicholls and his team for the NAC Olympic Qualifying Races (Exhibit M, Nicholls Appeal to the Israel National Olympic Committee).

53. 57.On November 1, 2021, Gilad Lustig, the CEO of the Israel National Olympic Committee, notified the BSI and Nicholls that the Israel National Olympic Committee has no jurisdiction over an independent national Olympic federation such as the Defendant, BSI, but only those federations that are members of the Israel National Olympic Committee (Exhibit N, Israel National Olympic Committee Denial Jurisdiction of Appeal).

54. 58.On November 4, 2021, Nicholls filed an emergency appeal before the IBSF Appeals Tribunal claiming the Appeals Tribunal could exercise discretionary

jurisdiction to hear the appeal pursuant to the IBSF Appeals Tribunal Code; Section IV, Subsection D (iv), which states:

> ""The Tribunal shall have no power to hear and shall not exercise jurisdiction over the following matters: iv.
>
> iv.   Any dispute among individuals who belong to the same member in those cases in which the member provides a dispute resolution procedure.""

55.   50.Although there was no express grant of appellate jurisdiction by the IBSF Appeals Tribunal of this dispute between a member of the member nation (Nicholls) and the IBSF recognized member national federation (BSI), Nicholls

claimed the BSI member nation did not provide a dispute resolution procedure (Exhibit O, Nicholls Appeal for Discretionary Jurisdiction of Dispute before IBSF).

56. ~~60.~~Plaintiff Nicholls and his team with bobsleds had departed for Whistler, Canada earlier due to the 2-~~man bobsled~~Man Bobsled training for the NAC Races had begun on November 2, and the team wanted to be ready should the IBSF Appeals Tribunal grant emergency relief and permit the team to be licensed and compete in the first Whistler 4-Man Bobsled Race of the NAC Olympic qualifying races.

57. ~~61.~~On November 8, 2021, Team Nicholls being concerned the Whistler NAC 2-~~man bobsled~~Man Bobsled training and races were soon to be completed and the critical

training for 4-~~man bobsled~~Man Bobsled and races scheduled to begin in 2 days, filed a second emergency appeal before the IBSF requesting immediate consideration of the original filed emergency appeal and preventing irreparable harm to Plaintiffs (Exhibit P, Nicholls 2nd Emergency Appeal for Discretionary Jurisdiction of Dispute before IBSF).

58. ~~62.~~By IBSF Appeals Tribunal Interim Order No. 1, dated November 5, 2021, and served on the parties on November 8, 2021 (with apologies by the Chairman of Appeals Tribunal for delay) the chair considered the Plaintiff's

emergency petition as legitimate for discretionary jurisdiction, however, he stated the IBSF Appeals Tribunal should not exercise jurisdiction if the Nicholls appeal before the Israel National Olympic Committee was still pending. The Chair of the IBSF Appeals Tribunal requested the parties immediately address the issue of jurisdiction, specifically, whether the BSI claim the Nicholls appeal to the Israel National Olympic Committee was alive and pending for a decision (Exhibit Q, IBSF Appeals Tribunal Chairman November 5, 2021, Interim Order No.1).

59. 63.Defendants Greaves and Sidney, continued a pattern of wire and mail fraud in phone communications with the IBSF Chair of the IBSF Appeals Tribunal and emails falsely claiming the Israel National Olympic Committee still had

jurisdiction of the appeal filed by Plaintiffs and they were trying to "assist"

Plaintiffs through the appeal process (Exhibit R, BSI False Claim Nicholls Appeal

Still Pending before Israel National Olympic Committee).

60. Defendants Greaves and Sidney knowingly gave false information

to the IBSF Appeals Tribunal to delay consideration of the Plaintiff's case on

emergency appeal until after Plaintiffs could no longer have a realistic last

chance to be licensed, registered and entered to train and compete in the NAC

Whistler Olympic qualifying 4-Man Bobsled Races. In the

meantime, Defendant, Edelman

and his 2-~~man~~Man and 4-~~man teams~~Man Teams were training and racing in the Whistler NAC Olympic Qualifier Race.

61. ~~65.~~On November 9, 2021, the Chair of the IBSF Appeals Tribunal again requested the status of the appeal before the Israel NOC recognizing the emergency nature of the Plaintiffs~~'~~' appeal filed before the IBSF Appeals Tribunal (Exhibit S, IBSF Appeals Tribunal Chairman Request for Update on "pending" Nicholls Appeal Before Israel National Olympic Committee).

62. ~~66.~~Also on November 9, 2021, the Whistler NAC Olympic qualifier 2- ~~man bobsled~~Man Bobsled training and races concluded, and training for the NAC Olympic

qualifier 4-~~man bobsled races~~Man Bobsled Races scheduled November 13-14 would begin the next day.

63. ~~67.~~On November 10, 2021, Defendants Greaves and~~.~~ Sidney finally informed the Chairman of the IBSF Appeals Tribunal that the Israel National Olympic Committee did decline the Nicholls appeal on the basis there was no National Olympic Committee Jurisdiction over an independent national Olympic sport organization, however the BSI was working on establishing an *ad hoc* appeals tribunal (Exhibit T, BSI Admission Nicholls Appeal Before Israel NOC Not Pending).

64. On November 12, 2021, the day before the first Whistler NAC Olympic qualifier 4-Man Bobsled race, the chairman of the IBSF Appeals Tribunal declared the IBSF Appeals Tribunal did have jurisdiction over Plaintiffs' emergency appeal (Exhibit U, IBSF Appeals Tribunal Chairman Declaration IBSF Jurisdiction Over Nicholls Emergency Appeal).

65. Pursuant to IBSF International Rules, a Race Organizer must offer 3 days of training on ice to the National Bobsled Team and there must be at least 2 crash-free runs down the track during Official Training. Most importantly, the team must be officially entered and registered in the training and races by the

National Federation, in this case the Defendant BSI. BSI officers refused to issue

IBSF licenses to Plaintiff, Nicholls, and his Team Push Athletes and to register

and enter the Plaintiffs in the Whistler NAC 4-man bobsleighMan Bobsleigh

races.

66.      70.In recognition that timely emergency relief from the IBSF appeals

tribunal to permit training and racing in the Whistler IBSF NAC Olympic

Qualifying Races was not possible due to the time delay caused by the

Defendants' false and misleading communications regarding a "pending"

appeal before the Israel National Olympic Committee, Team Nicholls Athletes

and bobsleds traveled

back to home base, Park City, Utah. This was also the venue of the next IBSF NAC Olympic Qualifying Races.

67. ~~71.~~Defendant Edelman and his ~~brakeman~~Brakeman competed in the 3 NAC Whistler 2-~~man bobsled races~~Man Bobsled Races finishing 10th of 12, 10th of 15, and 9th of 12; and his 4-~~man bob~~Man Bob team in the 3 NAC Whistler 4-~~man bobsled~~Man Bobsled races finishing 9th of 11, 9~~111~~th of 10 and 8th of 9.

68. ~~72.~~On November 16, 2021 Plaintiffs, Team Nicholls, in a last gasp attempt to save the mission to compete in the February 2022 4-~~man~~Man Olympic ~~bobsled race~~Bobsled Race in Beijing, filed with the Chairman of the IBSF Appeals Tribunal a ~~"~~"MOTION FOR EMERGENCY INTERIM ORDER TO ~~PERMTT~~PERMIT BOBSLEIGH

SKELETON ISRAEL ATHLETE, DAVID NICHOLLS AND HIS PUSH ATHLETES, TO BE REGISTERED AND ENTERED INTO THE IBSF PARK CITY NAC TRAINING AND TWO & FOUR MAN RACES NOVEMBER 17 - 29, 2021"" (Exhibit V, Motion for Emergency Interim Order to Permit Team Nicholls to Train and Race in Park City NAC) November 17-29, 2021).

69.     73.The Motion stated, ""as a result of the false and misleading statements by Respondent [BSI] to the appeals tribunal that Petitioner was pursuing an

existing appeal before the Israel NOC prejudicially delayed the IBSF appeals tribunal of exercising jurisdiction, Petitioner did suffer irreparable harm by the failure to be registered and entered into the training and competition of the Whistler NAC".

70.     The motion requested that the BSI be sanctioned for filing false and misleading statements depriving Petitioners of the only opportunity for receiving prompt and timely emergency relief from the IBSF appeals tribunal. That relief and remedy: "Nicholls to be IBSF licensed along with his push athletes and further, to be registered and entered into the IBSF Park City, Utah NAC Olympic Qualifying Training and Races. Accordingly, until such time as there is a full

hearing with submission of documents, exhibits and written statements or

testimony with deliberation and final decision on the merits of the appeal, it

is respectfully requested the appeals tribunal issue an interim order:

A.   ~~1.~~ Directing the BSI, on November 17, 2021, to grant a

2021-2022 IBSF license to David Nicholls and the push athletes of his team (if

otherwise qualified) and further, register and enter them into the training and

remaining races of the IBSF Park City NAC; and

B.    2.Requesting the IBSF NAC officials and jury, along with the Park City NAC race officials and track manager to accommodate the Petitioner and his push athletes as late registered entries into the 2-manMan and 4-man trainingMan Training and racesRaces beginning Wednesday November 17, 2021."”

71.    75.On November 17, 2021, Defendants, Greaves and Sidney, submitted voluminous documents to the IBSF Appeals Tribunal which the BSI claimed to be new evidence with hearsay and false statements specifically stating the Special Select Hearing Committee of the BSI had changed its mind after hearing the

*ex parte* false statements from the Defendants, Greaves and Sidney, and the Committee would have issued a more severe punishment to Nicholls had the members of the DRAD Select Committee known he was "“lying"”.

72. On November 18, 2021, the IBSF appeals tribunal, after a Zoom video argument wherein Defendants Greaves and Sidney continued false and misleading statements orally and by submitted written documents, denied the Plaintiffs' Motion for Emergency Interim Order to direct BSI immediately license and register Plaintiffs in the Park City, Utah IBSF NAC 4-Man Olympic qualifying races. The IBSF Appeals Tribunal retained jurisdiction over the appeal to consider other issues raised instead of the emergency relief issues.

73. 77.On November 18, 2021, it was clear, Dave Nicholls, incomplete quadriplegic bobsled driverBobsled Driver for Israel and his push athletesPush Athletes were denied the opportunity to qualify for and compete in the Beijing 2022 Winter Olympic 4-manMan Bobsled Race as a result of the continuing conspiracy and conduct of wire and mail fraud by Defendants depriving Plaintiff, Nicholls, and the Plaintiffs' athlete pushers' Athlete Pushers of the opportunity to be Olympians.

74. 78.Defendant Edelman and his brakeman competed in the 2 Park City NAC 2-manMan Bobsled Races finishing 10th of 17 and 9th of 12; and his 4-Man Bob Team in the 2 NAC Park City 4-manMan Bobsled Races finishing 9th of 11 and 10th of 12.

75. The reason and motive for Defendants to discredit Nicholls and eliminate him from competition was to ensure that new Bobsled driver, Defendant Edelman, would be the highest ranked (only) Israeli Bobsled pilot to be qualified and eligible for the 2022 Olympics. The economic benefit of sponsor contributions and marketing opportunities and post-Olympic speaking engagements would flow to Edelman (who demanded media outlets refer to him as "The Hebrew Hammer") and his supporters, the Defendants BSI, and their fundraising entities, Defendants Israel Bobsled Skeleton LLC.

76.     In order for the beginner Edelman team to quickly become the Israel team qualified to be entered into the 2022 Beijing Olympic 4-Man Bobsled Race, the purpose of the conspiracy, he didn't have to beat other nations or other national drivers, he just had to place ahead of the Israel Dave Nicholls team in the NAC Olympic Qualifying Races in Whistler, Park City and Lake Placid. That was unlikely to happen in consideration of the expert 4-Man Bobsled driver ability of Plaintiff, Nicholls. So, the plan was to eliminate Nicholls and his Team from competing in the NAC Olympic Qualifying Races.

77.     Defendant Edelman and his brakeman competed in the 2 Lake Placid NAC 2-Man Bobsled Races finishing 11th of 16 and 12th of 15; his 4-Man Bobsled

Team crashed during Official Training and his 4-~~man~~Man Team was not qualified to be entered into the NAC Lake Placid 4-~~man~~Man Bobsled Races. The failure of Defendant Edelman to compete in the NAC Lake Placid 4-~~man~~Man Bobsled Races in Lake Placid resulted in his 4-~~man~~Man Bobsled Team not meeting the minimum IBSF Olympic qualifying requirement of 3 different tracks of competition for the 4-~~man~~Man Bobsled discipline and he was ruled ineligible and not qualified to compete in the 2022 Beijing Olympics 4-~~man~~Man Bobsled Races.

78.    82.Defendant, Edelman did not earn enough racing points in the IBSF NAC 2-manMan Bobsled Races to qualify for the top 30 quota of 2-manMan Bobsled Pilots eligible to race in the 2022 Beijing Olympics. By IBSF rule change since the 2018 Pyeongchang Olympics, where Edelman was able to bubble up into the Olympic top 30 quota for male Skeleton athletes from a ranking of 41, there was no IBSF bubble up rule allowed to permit Edelman to be elevated into the quota of thirty 2-manMan Bobsled Drivers in the 2022 Beijing Olympics.

79.    83.Defendants Edelman and BSI filed suit against the IBSF before the International Court of Arbitration for Sport (CAS), *Ad Hoc* Division, sitting in Beijing to compel the IBSF to enter Defendant Edelman's 2-manMan Bobsled Team into the quota of 30 for the Olympic Race. The Court denied the BSI Edelman

Petition summarily for several reasons, one being the Complainants failed to exhaust the available statutory remedy to file an Appeal before the IBSF Appeals Tribunal.

80.    ~~84.~~The acts of slander and libel via mail fraud and wire fraud form the enterprise, Bobsleigh Skeleton Israel, Defendants Greaves, Sidney, Spence and Edelman and his solely owned marketing company Defendant, Israel Bobsled Skeleton LLC, have continued through 2022 until the present day. Defendants

terminated Plaintiff Nicholls from the BSI without notice and hearing

~~confer in ing~~confirming oral discussions with the President of the IBSF in July

2022 (Exhibit W, BSI IBSF Letter 7-18-2022 ~~Teiiiiination~~Termination).

81.     ~~85.~~In October, at the beginning of the 2022-2023 IBSF training and

racing season for Bobsled, Para Bobsled & Skeleton, Plaintiff Nicholls, and his

Team were preparing to train on ice at the Whistler, British Columbia 2010

Olympic Track having received Confirmation their Training was to start

October 12~~t~~th. Nicholls was invited to pilot a Sled with Pushers, not as an

Athlete

IBSF Licensed by a National Federation, but as a previous Member of the

Canada Provisional Sports Organization (PSO), ~~"~~"British Columbia Bobsleigh

Skeleton

Association"". Plaintiff, Nicholls push athletes and brakeman made application to the BSI for IBSF licenses to train with Nicholls in Canada.

82. 86. Once the Nicholls team reserved training was confirmed by Matt McMurray, the organizer for the special training for members of the Canada Provisional Sports Organizations (PSO), the team packed up the U-Haul and departed on the 979-mile (1,566 km) trip from Park City, Utah to the 2010 Olympic bobsled trackBobsled Track at Bear Mountain, British Columbia, Canada.

83.    ~~87.~~Shortly before arriving, Nicholls received a text from Matt McMurray cancelling the confirmed training reservation. Upon traveling straight to the track, Nicholls learned directly from Matt McMurray that BSI President, Defendant Greaves, aware the Nicholls Team Pushers applying for licenses would be sliding with Nicholls, called McMurray notifying him the BSI licenses were not forth coming for the Athlete Pushers. Greaves then on the phone call vehemently described Nicholls as a thief stealing his ~~sled~~Sled and ~~shipping crate~~Shipping Crate which resulted in the rescinding of the training invitation to Plaintiff Nicholls and his Teammates.

84.    ~~88.~~Defendants BSI, David Greaves and Larry Sidney, continuing a pattern of false claims of theft and lying against Plaintiff, Nicholls in written correspondence text and phone messages have refused to grant or provide an IBSF

license to Plaintiff Nicholls and his Teammates in order that they may compete in IBSF able-bodied and para bobsled races in the 2023-2024 IBSF competition season, thereby denying them the opportunity to qualify and be eligible to participate in the 2026 Olympic and Paralympic Winter Games. (Exhibit X, BSI Nicholls Correspondence No License 2023 NAC Races).

85. ~~89.~~Defendants BSI, David Greaves and Larry Sidney, continuing a pattern of false claims of theft and lying against Plaintiff in written correspondence

text and phone messages have claimed they will refuse to grant or provide an IBSF license to Plaintiff Nicholls and his Teammates in order that they may compete in IBSF able-bodied and para bobsled races in the 2024-2025 IBSF competition season, thereby denying them the opportunity to qualify and be eligible to participate in the 2026 Olympic 4-manMan Bobsled competition and Paralympic Winter Games.

86.    90.Defendants BSI, David Greaves, Larry Sidney, as well as Adam Edelman and his marketing company, Israel Bobsled Skeleton LLC, have continued into 2023 and 2024 to discredit Plaintiff Nicholls in a pattern of making false and defamatory statements in public or private phone and written correspondence claiming he is guilty of theft and lying to International IBSF

officials and Canadian Police, further stating Nicholls will never receive an IBSF license in the future to pilot a ~~bobsled~~Bobsled from the nation of Israel.

87.    ~~91.~~The Defendant BSI and the Israel Olympic Committee did not contribute any financial aid, no funding, not a shekel, to Team Nicholls and the push athletes.  Nicholls and his sponsors funded the team paid for coaches, paid for athlete travel, paid for all equipment including 2 and 4-~~man bobsleds~~Man Bobsleds, paid for food, paid for bobsled transportation, paid for ~~unifoiiiis~~uniforms, paid travel for

40

programming or recruiting, paid for insurance coverage, and further, paid

for doctors and/or medical care. Plaintiffs suffered actual monetary damages well

in excess of One Hundred Thousand ($100,000) Dollars.

WHEREFORE, the Plaintiffs demand judgment be entered in their favor for

the actual monetary damages suffered by Plaintiffs and further, demand treble

damages from the Defendants permitted by the Racketeer Influenced Corrupt

Organizations Act, 18 U.S.C. §1964 (c).

### COUNT TWO
### DEFAMATION

DEFENDANTS GREAVES, SIDNEY, EDELMAN, SPENCE, BOBSLEIGH SKELETON ISRAEL, LLC, AND ISRAEL BOBSLED SKELETON, LLC, COMMITTED ACTS OF SLANDER AND LIBEL CAUSING ECONOMIC HARM AND DAMAGE TO REPUTATION OF PLAINTIFF, DAVID NICHOLLS

92Paragraphs 1 through 91 inclusive, are incorporated by reference

herein the same as if set forth here in their entirety.

88.    93Each of the Defendants made verbal false defaming statements

claiming Theft by Nicholls of the Edelman Bobsled and Shipping Crate to the

Calgary Police, the Park City Olympic Track Manager, the Whistler Olympic

Track

Case 2:24-cv-00411-AWA-CMB Document 41 Filed 11/22/24 PageID 9267 Page 199 of

Track

Race Director as well as written statements to the International Bobsleigh & Skeleton Federation, the IBSF Appeals Panel, the Israel National Olympic Committee all which deprived Plaintiff the economic opportunity to earn fame and celebrity by competing as a Paraplegic Bobsled Pilot in the Olympic Winter Games of 2022.

WHEREFORE, Plaintiff, David Nicholls demands judgment in his favor and against the Defendants, Greaves, Sidney, Edelman, and Spence in an amount to be decided by a jury.

## COUNT ~~THREE~~

### ~~TORTIOUS~~TWO T ORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

**DEFENDANTS GREAVES, SIDNEY, EDELMAN & SPENCE, BOBSLEIGH SKELETON ISRAEL, LLC, AND ISRAEL BOBSLED SKELETON, LLC, COMMITTED TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AND PROSPECTIVE ECONOMIC ADVANTAGES IN THAT DEFENDANTS KNOWINGLY INDUCED THE DIRECT BREAKING OF A BUSINESS AND ECONOMIC RELATIONSHIP, WITH IMPROPER MOTIVE AND MEANS**

89. ~~94.~~Paragraphs 1 through ~~93~~88, inclusive, are incorporated by reference

90. ~~95.~~Defendants, individually and in concert, recognized the

economic opportunity for marketing, sponsorship, and corporate/private

charitable

contributions to be made and received not only to fund BSI Team Edelman, but also to finance the expenses and compensation of Defendant BSI Executive Officers, David Greaves and Larry Sidney.

91. ~~96.~~Plaintiffs, Nicholls and Adaptive Bobsled & Sports Association Inc. could only raise sufficient sponsorship and private contributions to fund Nicholls

Team, his athletes, sleds and equipment, travel and all significant associated costs in preparation for the 2022 Winter Olympics and now for the 2026 Olympics.

92.    97.Defendants, accordingly, conspired and succeeded in, contriving and perpetuating the false claims of theft and perjury in order to have Plaintiffs eliminated from the competition for the BSI Olympic 4 Man Bobsled Team, thereby denying the economic benefits to Plaintiffs and diverted instead to the Defendants.

93. Defendants, Greaves and Sydney wrongfully and intentionally interfered with the ability of Nicholls and his Teammates to participate in the 2022 Olympic Winter Games by improper means contrary to the IBSF Statutes, Israel National Olympic Committee Rules and the Olympic Charter in that Defendants falsely engaged in dilatory conduct delaying the IBSF Athlete Appeal Process for Nicholls past the time for any National Team to participate and qualify for the 2022 Olympics.

94. Defendants, Greaves and Sydney wrongfully and intentionally interfered with the ability of Nicholls and his Teammates to participate in the 2022 Olympic Winter Games by improper means contrary to the IBSF Statutes, Israel National Olympic Committee Rules and the Olympic Charter in that

42

Defendants engaged in

Slander and Liable accusing Plaintiffs of stealing a Bobsled and Shipping Crate and corrupting the Athlete Statutory Appeal Process by reversing the Decision of the DRAD Committee Ruling Plaintiff Nicholls should be Licensed and permitted to participate in the IBSF NAC 2022 Olympic Qualifying Races in Whistler, Canada, Park City, Utah and Lake Placid, New York.

WHEREFORE, Plaintiffs, David Nicholls and Adaptive Bobsled & Sports Association, Inc. demand judgment in their favor and against the Defendants Defends.nts, Greaves, Sidney, Edelman and Spence, Bobsleigh Skeleton Israel, LLC., and Israel Bobsled Skeleton, LLC., in an amount to be decided by a Jury.

DATED this 7th day of June 2024

ROSING DAVIDSON FROST
/s/ Jared C. Bowman
Jared C. Bowman

Respectfully Submitted,
By:__THOMAS J. JONES, JR. P.C.

_____E  .

Attorney for Plaintiffs
410 Biden Street, Suite 301 Scranton, PA 43

18503 Ph: (570) 342-9296
Fax: (570) 342—601
Email: 1 j_____

Document comparison by Workshare Compare on Tuesday, November 12, 2024 1:36:31 PM

| Input: | |
|---|---|
| Document 1 ID | file://H:\5_PROJECTS\2024-11-12 Edelman Filing\Nicholls v. Greaves Complaint .pdf |
| Description | Nicholls v. Greaves Complaint |
| Document 2 ID | file://H:\5_PROJECTS\2024-11-12 Edelman Filing\Amended Complaint.pdf |
| Description | Amended Complaint |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 482 |
| Deletions | 328 |
| Moved from | 4 |
| Moved to | 4 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 818 |